PSA CWHL 06-10.txt

```
<DOCUMENT>
<TYPE>EX-99.1
<SEQUENCE>2
<FILENAME>v19593exv99w1.txt
<DESCRIPTION>EXHIBIT 99.1
<TEXT>
<PAGE>
```

EXHIBIT 99.1

EXECUTION COPY

========================

CWMBS, INC.,

Depositor

COUNTRYWIDE HOME LOANS, INC.,

Seller

PARK GRANADA LLC,

Seller

PARK MONACO INC.,

Seller

PARK SIENNA LLC,

Seller

COUNTRYWIDE HOME LOANS SERVICING LP,

Master Servicer

and

THE BANK OF NEW YORK,

Trustee

-------------------------

POOLING AND SERVICING AGREEMENT

Dated as of March 1, 2006

-------------------------

CHL MORTGAGE PASS-THROUGH TRUST 2006-10

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-10

========================

```
<PAGE>
```

TABLE OF CONTENTS

```
<TABLE>
<CAPTION>
```

Page 1

PSA CWHL 06-10.txt

PAGE

----

<S>              <C>
                       <C>

ARTICLE I
DEFINITIONS

ARTICLE II
CONVEYANCE OF MORTGAGE LOANS; REPRESENTATIONS AND WARRANTIES

SECTION 2.01.    Conveyance of Mortgage Loans................................................................... II-1
SECTION 2.02.    Acceptance by Trustee of the Mortgage Loans................................................. II-7
SECTION 2.03.    Representations, Warranties and Covenants of the Sellers and Master Servicer................. II-10
SECTION 2.04.    Representations and Warranties of the Depositor as to the Mortgage Loans..................... II-12
SECTION 2.05.    Delivery of Opinion of Counsel in Connection with Substitutions............................. II-13
SECTION 2.06.    Execution and Delivery of Certificates...................................................... II-13
SECTION 2.07.    REMIC Matters.............................................................................. II-13
SECTION 2.08.    Covenants of the Master Servicer............................................................ II-14

ARTICLE III
ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

SECTION 3.01.    Master Servicer to Service Mortgage Loans.................................................. III-1
SECTION 3.02.    Subservicing; Enforcement of the Obligations of Subservicers.............................. III-2
SECTION 3.03.    Rights of the Depositor and the Trustee in Respect of the Master Servicer................. III-2
SECTION 3.04.    Trustee to Act as Master Servicer.......................................................... III-2
SECTION 3.05.    Collection of Mortgage Loan Payments; Certificate Account; Distribution Account; Pre-funding Account and Capitalized Interest Account........... III-3
SECTION 3.06.    Collection of Taxes, Assessments and Similar Items; Escrow Accounts...................... III-6
SECTION 3.07.    Access to Certain Documentation and Information Regarding the Mortgage Loans.............. III-7
SECTION 3.08.    Permitted Withdrawals from the Certificate Account and the Distribution Account.......... III-7
SECTION 3.09.    Maintenance of Hazard Insurance; Maintenance of Primary Insurance Policies............... III-9
SECTION 3.10.    Enforcement of Due-on-Sale Clauses; Assumption Agreements................................ III-10
SECTION 3.11.    Realization Upon Defaulted Mortgage Loans; Repurchase of Certain Mortgage Loans.......... III-11
SECTION 3.12.    Trustee to Cooperate; Release of Mortgage Files.......................................... III-14

PSA CWHL 06-10.txt

SECTION 3.13.    Documents, Records and Funds in Possession of Master Servicer to be
Held for the Trustee......    III-14
SECTION 3.14.    Servicing
Compensation..................................................................
        III-15
SECTION 3.15.    Access to Certain
Documentation.............................................................
III-15
SECTION 3.16.    Annual Statement as to
Compliance.....................................................    III-16
SECTION 3.17.    Errors and Omissions Insurance; Fidelity
Bonds.............................................    III-16
</TABLE>

i

<PAGE>

<TABLE>
<CAPTION>

<S>              <C>
                      <C>
                                                      ARTICLE IV
                                DISTRIBUTIONS AND ADVANCES BY THE MASTER
SERVICER

SECTION 4.01.
Advances......................................................................
..........        IV-1
SECTION 4.02.    Priorities of
Distribution.................................................................
    IV-2
SECTION 4.03.
[Reserved]....................................................................
..........        IV-8
SECTION 4.04.    Allocation of Realized
Losses.......................................................    IV-8
SECTION 4.05.    Cross-Collateralization; Adjustments to Available
Funds.......................................    IV-9
SECTION 4.06.    Monthly Statements to
Certificateholders...................................................
IV-9
SECTION 4.07.    Determination of Pass-Through Rates for COFI
Certificates.................................    IV-10
SECTION 4.08.    Determination of Pass-Through Rates for LIBOR
Certificates..............................    IV-10
SECTION 4.09.
[Reserved]....................................................................
..........        IV-12

                                                      ARTICLE V
                                THE CERTIFICATES

SECTION 5.01.    The
Certificates.................................................................
......        V-1
SECTION 5.02.    Certificate Register; Registration of Transfer and Exchange of
Certificates...................        V-1
SECTION 5.03.    Mutilated, Destroyed, Lost or Stolen
Certificates...........................................        V-5
SECTION 5.04.    Persons Deemed
Owners......................................................................

PSA CWHL 06-10.txt

V-5
SECTION 5.05.    Access to List of Certificateholders' Names and
Addresses....................................    V-6
SECTION 5.06.    Maintenance of Office or
Agency.............................................................    V-6

ARTICLE VI
THE DEPOSITOR AND THE MASTER SERVICER

SECTION 6.01.    Respective Liabilities of the Depositor and the Master
Servicer...............................    VI-1
SECTION 6.02.    Merger or Consolidation of the Depositor or the Master
Servicer...............................    VI-1
SECTION 6.03.    Limitation on Liability of the Depositor, the Sellers, the Master
Servicer and Others.........    VI-1
SECTION 6.04.    Limitation on Resignation of Master
Servicer...............................................    VI-2

ARTICLE VII
DEFAULT

SECTION 7.01.    Events of
Default..................................................................
VII-1
SECTION 7.02.    Trustee to Act; Appointment of
Successor.......................................    VII-3
SECTION 7.03.    Notification to
Certificateholders............................................
VII-4

ARTICLE VIII
CONCERNING THE TRUSTEE

SECTION 8.01.    Duties of
Trustee..................................................................
VIII-1
SECTION 8.02.    Certain Matters Affecting the
Trustee..............................................    VIII-2
SECTION 8.03.    Trustee Not Liable for Certificates or Mortgage
Loans......................................    VIII-3
SECTION 8.04.    Trustee May Own
Certificates............................................................
VIII-3
SECTION 8.05.    Trustee's Fees and
Expenses................................................
VIII-3
SECTION 8.06.    Eligibility Requirements for
Trustee..............................................    VIII-3
SECTION 8.07.    Resignation and Removal of
Trustee................................................    VIII-4
SECTION 8.08.    Successor
Trustee..................................................................
VIII-5
SECTION 8.09.    Merger or Consolidation of
Trustee................................................    VIII-5
SECTION 8.10.    Appointment of Co-Trustee or Separate
Trustee..................................................    VIII-5
</TABLE>

ii

<PAGE>

PSA CWHL 06-10.txt

```
<TABLE>
<CAPTION>

<S>                    <C>
                                       <C>
```

SECTION 8.11.   Tax
Matters................................................................
......    VIII-7
SECTION 8.12.   Monitoring of Significance
Percentage.............................................    VIII-8


                                        ARTICLE IX
                                        TERMINATION

SECTION 9.01.   Termination upon Liquidation or Purchase of all Mortgage
Loans................................    IX-1
SECTION 9.02.   Final Distribution on the
Certificates..........................................    IX-1
SECTION 9.03.   Additional Termination
Requirements.......................................................    IX-2


                                        ARTICLE X
                                 MISCELLANEOUS PROVISIONS

SECTION 10.01.
Amendment.............................................................
..........    X-1
SECTION 10.02.   Recordation of Agreement;
Counterparts........................................    X-2
SECTION 10.03.   Governing
Law...................................................................
       X-2
SECTION 10.04.   Intention of
Parties............................................................
      X-2
SECTION 10.05.
Notices...............................................................
..........    X-4
SECTION 10.06.   Severability of
Provisions.................................................    X-5
SECTION 10.07.
Assignment............................................................
..........    X-5
SECTION 10.08.   Limitation on Rights of
Certificateholders.......................................    X-5
SECTION 10.09.   Inspection and Audit
Rights..................................................
X-6
SECTION 10.10.   Certificates Nonassessable and Fully
Paid.........................................    X-6
SECTION 10.11.
[Reserved]............................................................
..........    X-6
SECTION 10.12.   Protection of
Assets.............................................................
     X-6


                                        ARTICLE XI
                                 EXCHANGE ACT REPORTING

SECTION 11.01.   Filing
Obligations...........................................................
```

PSA CWHL 06-10.txt

...          XI-7
SECTION 11.02.   Form 10-D
Filings............................................................................
          XI-7
SECTION 11.03.   Form 8-K
Filings............................................................................
.          XI-8
SECTION 11.04.   Form 10-K
Filings............................................................................
          XI-8
SECTION 11.05.   Sarbanes-Oxley
Certification..................................................................
    XI-8
SECTION 11.06.   Form 15
Filing.............................................................................
..          XI-9
SECTION 11.07.   Report on Assessment of Compliance and
Attestation.................................................          XI-9
SECTION 11.08.   Use of Subservicers and
Subcontractors.................................................................          XI-10
SECTION 11.09.
Amendments.........................................................................
..........          XI-11
SECTION 11.10.   Reconciliation of
Accounts.........................................................................
XI-12
</TABLE>

                                    iii


<PAGE>


<TABLE>
<CAPTION>

<S>                <C>
                        <C>
                                                    SCHEDULES

Schedule I:      Mortgage Loan
Schedule...........................................................................
    S-I-1
Schedule II-A:   Representations and Warranties of
Countrywide.................................................          S-II-A-1
Schedule II-B:   Representations and Warranties of Park
Granada...................................................          S-II-B-1
Schedule II-C    Representations and Warranties of Park Monaco
Inc........................................          S-II-C-1
Schedule II-D    Representations and Warranties of Park Sienna
LLC........................................          S-II-D-1
Schedule III-A:  Representations and Warranties of Countrywide as to the Mortgage
Loans.......................          S-III-A-1
Schedule III-B:  Representations and Warranties of Countrywide as to the Countrywide
                 Mortgage
Loans..............................................................................
..          S-III-B-1
Schedule III-C:  Representations and Warranties of Park Granada as to the Park
Granada
                 Mortgage
Loans..............................................................................
..          S-III-C-1
Schedule III-D   Representations and Warranties of Park Monaco Inc. as to the Park
Monaco Inc. Mortgage Loans...          S-III-D-1
                            Page 6

PSA CWHL 06-10.txt

Schedule III-E   Representations and Warranties of Park Sienna LLC as to the Park Sienna LLC Mortgage Loans..... S-III-E-1
Schedule IV:     Representations and Warranties of the Master Servicer........................................   S-IV-1
Schedule V:      Principal Balance Schedules (if applicable).............................................   S-V-1
Schedule VI:     Form of Monthly Master Servicer Report.................................................   S-VI-I

EXHIBITS

Exhibit A:       Form of Senior Certificate (excluding Notional Amount Certificates)............................   A-1
Exhibit B:       Form of Subordinated Certificate..................................................... B-1
Exhibit C-1:     Form of Class A-R Certificate........................................................ C-1-1
Exhibit C-2:     [Reserved]..................................................................... C-2-1
Exhibit C-3      [Reserved]..................................................................... C-3-1
Exhibit D:       Form of Notional Amount Certificate.................................................   D-1
Exhibit E:       Form of Reverse of Certificates............................................................. E-1
Exhibit F-1:     Form of Initial Certification of Trustee (Initial Mortgage Loans)........................... F-1
Exhibit F-2:     Form of Initial Certification of Trustee (Supplemental Mortgage Loans)....................... F-2
Exhibit G-1:     Form of Delay Delivery Certification of Trustee (Initial Mortgage Loans)...................... G-1
Exhibit G-2:     Form of Delay Delivery Certification of Trustee (Supplemental Mortgage Loans)................... G-2
Exhibit H-1:     Form of Final Certification of Trustee (Initial Mortgage Loans)................................ H-1
Exhibit H-2:     Form of Final Certification of Trustee (Supplemental Mortgage Loans)........................... H-2
Exhibit I:       Form of Transfer Affidavit..................................................................... I-1
Exhibit J-1:     Form of Transferor Certificate (Residual).................................... J-1-1
Exhibit J-2:     Form of Transferor Certificate (Private)..................................... J-2-1
Exhibit K:       Form of Investment Letter [Non-Rule 144A].............................................   K-1
Exhibit L:       Form of Rule 144A Letter.......................................................... L-1
Exhibit M:       Form of Request for Release (for Trustee)........................................... M-1
Exhibit N:       Form of Request for Release of Documents (Mortgage Loan - Paid in Full, Repurchased and Replaced)............................................................... N-1
Exhibit O:       [Reserved]..................................................................... O-1
Exhibit P:       Form of Supplemental Transfer

PSA CWHL 06-10.txt

```
Agreement.....................................................   P-1
Exhibit Q:        Standard & Poor's LEVELS(R) Version 5.6d Glossary Revised,
                  Appendix
E.............................................................
..        Q-1
Exhibit R:
[Reserved]....................................................
..........        R-1
Exhibit S-1:
[Reserved]....................................................
..........        S-1-1
Exhibit S-2:
[Reserved]....................................................
..........        S-2-1
```

</TABLE>

<center>iv</center>

<PAGE>

<TABLE>
<CAPTION>

&lt;S&gt;                &lt;C&gt;
                               &lt;C&gt;

```
Exhibit T:
[Reserved]....................................................
..........        T-1
Exhibit U:        Monthly
Report........................................................
..        U-1
Exhibit V-1:      Form of Performance Certification
(Subservicer).................................................   V-1-1
Exhibit V-2:      Form of Performance Certification
(Trustee).....................................................   V-2-1
Exhibit W         Form of Servicing Criteria to be Addressed in Assessment of
Compliance
Statement.....................................................
..........        W-1
Exhibit X:        List of Item 1119
Parties.......................................................
 X-1
Exhibit Y:        Form of Sarbanes-Oxley Certification (Replacement of Master
Servicer).........................        Y-1
```

</TABLE>

<center>v</center>

<PAGE>

THIS POOLING AND SERVICING AGREEMENT, dated as of March 1, 2006, among CWMBS, INC., a Delaware corporation, as depositor (the "Depositor"), COUNTRYWIDE HOME LOANS, INC. ("Countrywide"), a New York corporation, as a seller (a "Seller"), PARK GRANADA LLC ("Park Granada"), a Delaware limited liability company, as a seller (a "Seller"), PARK MONACO INC. ("Park Monaco"), a Delaware corporation, as a seller (a "Seller"), PARK SIENNA LLC ("Park Sienna"), a Delaware limited liability company, as a seller (a "Seller") COUNTRYWIDE HOME LOANS SERVICING LP, a Texas limited partnership, as master servicer (the "Master Servicer"), and THE BANK OF NEW YORK, a banking corporation organized under the laws of the State of New York, as trustee (the "Trustee").

<center>WITNESSETH THAT</center>
<center>Page 8</center>

PSA CWHL 06-10.txt

          In consideration of the mutual agreements herein contained, the
parties hereto agree as follows:

                          PRELIMINARY STATEMENT

          The Depositor is the owner of the Trust Fund that is hereby conveyed to
the Trustee in return for the Certificates. For federal income tax purposes, the
Trust Fund (other than the Pre-Funding Account and the Capitalized Interest
Account) will consist of two real estate mortgage investment conduits (each a
"REMIC" or, in the alternative, the "Lower Tier REMIC" and the "Master REMIC").
Each Certificate, other than the Class A-R Certificate, will represent ownership
of one or more regular interests in the Master REMIC for purposes of the REMIC
Provisions. The Class A-R Certificate will represent ownership of the sole class
of residual interest in the Lower Tier REMIC and the Master REMIC. The Master
REMIC will hold as assets the several classes of uncertificated Lower Tier REMIC
Interests (other than the Class LTR-A-R Interest). The Lower Tier REMIC will
hold as assets all property of the Trust Fund (other than the Pre-Funding
Account and the Capitalized Interest Account). Each Lower Tier REMIC Interest
(other than the Class LTR-A-R Interest) is hereby designated as a regular
interest in the Lower Tier REMIC . The latest possible maturity date of all
REMIC regular interests created herein shall be the Latest Possible Maturity
Date.

<PAGE>

          The following table sets forth characteristics of the Master REMIC
Certificates, together with the minimum denominations and integral multiples in
excess thereof in which such Classes shall be issuable (except that one
Certificate of each Class of Certificates may be issued in a different amount
and, in addition, one Residual Certificate representing the Tax Matters Person
Certificate may be issued in a different amount):

<TABLE>
<CAPTION>

| Class Designation | Initial Class Certificate Balance | Pass-Through Rate (per annum) | Minimum Denomination | Integral Multiples in Exercise of Minimum |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Class 1-A-1 | $ 85,911,000.00 | 5.85% | $ 25,000.00 | $ 1,000.00 |
| Class 1-A-2 | $ 17,636,273.00 | 5.85% | $ 25,000.00 | $ 1,000.00 |
| Class 1-A-3 | $ 18,000,000.00 | 6.00% | $  1,000.00 | $ 1,000.00 |
| Class 1-A-4 | $ 76,926,771.00 | (1) | $ 25,000.00 | $ 1,000.00 |
| Class 1-A-5 | $ 12,821,129.00 | (2) | $ 25,000.00 | $ 1,000.00 |
| Class 1-A-6 | $ 14,750,000.00 | 6.00% | $ 25,000.00 | $ 1,000.00 |
| Class 1-A-7 | $ 36,000,000.00 | 6.00% | $ 25,000.00 | $ 1,000.00 |
| Class 1-A-8 | $ 53,224,000.00 | 6.00% | $ 25,000.00 | $ 1,000.00 |
| Class 1-A-9 | $  1,100,000.00 | 6.00% | $ 25,000.00 | |

PSA CWHL 06-10.txt

| | | | |
|---|---|---|---|
| $ 1,000.00 | | | |
| Class 1-A-10 | $ 52,322,000.00 | 5.85% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class 1-A-11 | $ 40,108,000.00 | 5.85% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class 1-A-12 | $ 11,117,273.00 | 5.85% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class 1-A-13 | $ 20,709,454.00 | (3) | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class 1-A-14 | (4) | (5) | $ 25,000.00(6) |
| $ 1,000.00(6) | | | |
| Class 1-A-15 | $ 50,048,000.00 | 6.00% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class 1-A-16 | $ 26,952,000.00 | 6.00% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class 2-A-1 | $ 54,138,000.0 | 6.00% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class 2-A-2 | $  3,300,000.00 | 6.00% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class 1-X | (7) | (8) | $ 25,000.00(6) |
| $ 1,000.00(6) | | | |
| Class 2-X | (9) | (10) | $ 25,000.00(6) |
| $ 1,000.00(6) | | | |
| Class PO | $  4,294,743.00 | (11) | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class A-R(12) | $       100.00(13) | 6.00% | (13) |
| (13) | | | |
| Class M-1 | $  6,036,000.00 | 6.00% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class M-2 | $  9,656,000.00 | 6.00% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class B-1 | $  3,621,000.00 | 6.00% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class B-2 | $  1,810,000.00 | 6.00% | $ 25,000.00 |
| $ 1,000.00 | | | |
| Class B-3 | $  1,207,000.00 | 6.00% | $ 100,000.00 |
| $ 1,000.00 | | | |
| Class B-4 | $    905,000.00 | 6.00% | $ 100,000.00 |
| $ 1,000.00 | | | |
| Class B-5 | $    906,256.77 | 6.00% | $ 100,000.00 |
| $ 1,000.00 | | | |

</TABLE>

----------

(1)     The Class 1-A-4 Certificates will bear interest during each Interest
        Accrual Period at a per annum rate of LIBOR plus 0.50%, subject to a
        maximum and minimum Pass-Through Rate of 7.00% and 0.50% per annum,
        respectively. The Pass-Through Rate for the Class 1-A-4 Certificates for
        the Interest Accrual Period for the first Distribution Date is 5.24% per
        annum.

(2)     The Class 1-A-5 Certificates will bear interest during each Interest
        Accrual Period at a per annum rate of 39.00% minus (6 x LIBOR), subject to
        a maximum and minimum Pass-Through Rate of 39.00% and 0.00% per annum,
        respectively. The Pass-Through Rate for the Class 1-A-5 Certificates for
        the Interest Accrual Period for the first Distribution Date is 10.56% per
        annum.

2

<PAGE>

(3)     The Class 1-A-13 Certificates will bear interest during each Interest

PSA CWHL 06-10.txt

Accrual Period at a per annum rate of LIBOR plus 0.30%, subject to a maximum and minimum Pass-Through Rate of 7.50% and 0.30% per annum, respectively. The Pass-Through Rate for the Class 1-A-4 Certificates for the Interest Accrual Period for the first Distribution Date is 5.04% per annum.

(4)    The Class 1-A-14 Certificates will be Notional Amount Certificates, will have no Class Certificate Balance and will bear interest on its Notional Amount (initially, $20,709,454).

(5)    The Class 1-A-14 Certificates will bear interest during each Interest Accrual Period at a per annum rate of 7.20% minus LIBOR, subject to a maximum and minimum Pass-Through Rate of 7.20% and 0.00% per annum, respectively. The Pass-Through Rate for the Class 1-A-14 Certificates for the Interest Accrual Period for the first Distribution Date is 2.46% per annum

(6)    Minimum denomination is based on the Notional Amount of such Class.

(7)    The Class 1-X Certificates will be Notional Amount Certificates, will have no Class Certificate Balance and will bear interest on its Notional Amount (initially, $427,236,363).

(8)    The Pass-Through Rate for the Class 1-X Certificates for the Interest Accrual Period for any Distribution Date will be equal to the excess of (a) the weighted average of the Adjusted Net Mortgage Rates of the Non-Discount Mortgage Loans in Loan Group 1, weighted on the basis of the Stated Principal Balance thereof as of the Due Date in the preceding calendar month (after giving effect to Principal Prepayments received in the Prepayment Period related to such prior Due Date), over (b) 6.00%. The Pass-Through Rate for the Class 1-X Certificates for the Interest Accrual Period for the first Distribution Date is 0.29181% per annum.

(9)    The Class 2-X Certificates will be Notional Amount Certificates, will have no Class Certificate Balance and will bear interest on its Notional Amount (initially, $49,356,398).

(10)    The Pass-Through Rate for the Class 2-X Certificates for the Interest Accrual Period for any Distribution Date will be equal to the excess of (a) the weighted average of the Adjusted Net Mortgage Rates of the Non-Discount Mortgage Loans in Loan Group 2, weighted on the basis of the Stated Principal Balance thereof as of the Due Date in the preceding calendar month (after giving effect to Principal Prepayments received in the Prepayment Period related to such prior Due Date), over (b) 6.00%. The Pass-Through Rate for the Class 2-X Certificates for the Interest Accrual Period for the first Distribution Date is 0.28130% per annum.

(11)    The Class PO Certificates are Principal Only Certificates and will not receive any distributions of interest.

(12)    The Class A-R Certificates represent the sole Class of residual interest in the Master REMIC.

(13)    The Class A-R Certificate shall be issued as two separate certificates, one with an initial Certificate Balance of $99.99 and the Tax Matters Person Certificate with an initial Certificate Balance of $0.01.

3

<PAGE>

The following table specifies the class designation, interest rate, and principal amount for each class of Lower Tier REMIC Interests:

PSA CWHL 06-10.txt

<TABLE>
<CAPTION>

| LOWER TIER REMIC INTEREST | INITIAL PRINCIPAL BALANCE | INTEREST RATE | CORRESPONDING MASTER REMIC CERTIFICATE |
|---|---|---|---|
| <S> | <C> | <C> | <C> |
| LTR-1-A-1 | $ 85,911,000.00 | 5.85% | 1-A-1 |
| LTR-1-A-2 | $ 17,636,000.00 | 5.85% | 1-A-2 |
| LTR-1-A-3 | $ 18,000,000.00 | 6.00% | 1-A-3 |
| LTR-1-A-4 | $ 76,926,771.00 | 6.00% | 1-A-5 |
| LTR-1-A-5 | $ 12,821,129.00 | 6.00% | 1-A-5 |
| LTR-1-A-6 | $ 14,750,000.00 | 6.00% | 1-A-6 |
| LTR-1-A-7 | $ 36,000,000.00 | 6.00% | 1-A-7 |
| LTR-1-A-8 | $ 53,224,000.00 | 6.00% | 1-A-8 |
| LTR-1-A-9 | $  1,100,000.00 | 6.00% | 1-A-9 |
| LTR-1-A-10 | $ 52,322,000.00 | 5.85% | 1-A-10 |
| LTR-1-A-11 | $ 40,108,000.00 | 5.85% | 1-A-11 |
| LTR-1-A-12 | $ 11,117,273.00 | 5.85% | 1-A-12 |
| LTR-1-A-13 | $ 20,709,454.00 | 7.50% | 1-A-13 and 1-A-14 (1) |
| LTR-1-A-15 | $ 50,048,000.00 | 6.00% | 1-A-15 |
| LTR-1-A-16 | $ 26,952,000.00 | 6.00% | 1-A-16 |
| LTR-1-X | (2) | (3) | 1-X |
| LTR-2-A-1 | $ 54,138,000.00 | 6.00% | 2-A-1 |
| LTR-2-A-2 | $  3,300,000.00 | 6.00% | 2-A-2 |
| LTR-2-X | (2) | (4) | 2-X |
| LTR-1-$100 | $         100.00 | 6.00% | A-R |
| LTR-PO | $  4,294,743.00 | (5) | PO |
| LTR-M-1 | $  6,036,000.00 | 6.00% | M-1 |
| LTR-M-2 | $  9,656,000.00 | 6.00% | M-2 |
| LTR-B-1 | $  3,621,000.00 | 6.00% | B-1 |
| LTR-B-2 | $  1,810,000.00 | 6.00% | B-2 |
| LTR-B-3 | $  1,207,000.00 | 6.00% | B-3 |
| LTR-B-4 | $    905,000.00 | 6.00% | B-4 |
| LTR-B-5 | $    906,256.77 | 6.00% | B-5 |
| LTR-A-R | (6) | (6) | N/A |

</TABLE>

(1) For each Distribution Date, the Class 1-A-14 Certificates are entitled to a specified portion of the interest payable on the Class LTR-1-A-13 Lower Tier REMIC Interest. Specifically, for each

4

<PAGE>

Distribution Date, the Class 1-A-14 Certificates are entitled to the interest payable on the Class LTR-1-A-13 Lower Tier REMIC Interest at a per annum rate equal to 7.20% minus LIBOR, but not less than 0.00%.

(2) This Class of Lower Tier REMIC Interest pays no principal.

(3) For each Distribution Date, the Class LTR-1-X Lower Tier REMIC Interest is entitled to a specified portion of the interest payable on the Non-Discount Mortgage Loans in Loan Group 1. Specifically, for each related Distribution Date, this Class of Lower Tier REMIC Interest is entitled to interest accruals on each such Non-Discount Mortgage Loan in excess of an Adjusted Net Mortgage Rate of 6.00% per annum.

(4) For each Distribution Date, the Class LTR-2-X Lower Tier REMIC Interest is entitled to a specified portion of the interest payable on the Non-Discount Mortgage Loans in Loan Group 2. Specifically, for each related Distribution Date, this Class of Lower Tier REMIC Interest is entitled to interest accruals

PSA CWHL 06-10.txt

on each such Non-Discount Mortgage Loan in excess of an Adjusted Net Mortgage Rate of 6.00% per annum.

(5) This Class of Lower Tier REMIC Interest pays no interest.

(6) The LT-A-R is the sole class of residual interest in the Lower Tier REMIC. It pays no interest or principal.

On each Distribution Date, interest shall be payable on the Lower Tier REMIC Interests according the formulas described above, and principal, Realized Losses and Subsequent Recoveries shall be allocated among the Lower Tier REMIC Interests in the same manner that such items are allocated among their corresponding Certificate Classes.

The foregoing REMIC structure is intended to cause all of the cash from the Mortgage Loans to flow through to the Master REMIC as cash flow on a REMIC regular interest, without creating any shortfall-actual or potential (other than for credit losses) to any REMIC regular interest.

5

<PAGE>

Set forth below are designations of Classes or Components of Certificates and other defined terms to the categories used herein:

<TABLE>
<CAPTION>
<S>                                        <C>
Accretion Directed Certificates.....       Class 1-A-4, Class 1-A-5 and Class 1-A-7 Certificates.

Accretion Directed Components.......       None.

Accrual Certificates................       Class 1-A-6 Certificates.

Accrual Components..................       None.

Book-Entry Certificates.............       All Classes of Certificates other than the Physical Certificates.

COFI Certificates...................       None.

Combined Certificates...............       None.

Component Certificates..............       None.

Components..........................       None.

Delay Certificates..................       All interest-bearing Classes of Certificates other than the Non-Delay      Certificates, if any.

ERISA-Restricted Certificates.......       The Residual Certificates and Private Certificates; until an ERISA-Qualifying      Underwriting has occurred with respect to such Class, the Class PO, the Class      1-X and the Class 2-X Certificates; and any Certificate of a Class that ceases      to satisfy the applicable rating requirement under an Underwriter's Exemption.

Floating Rate Certificates..........       Class 1-A-4 and Class 1-A-13 Certificates.

PSA CWHL 06-10.txt

| | |
|---|---|
| Group 1 Certificates................ | Group 1 Senior Certificates and the portions of the Subordinated Certificates related to Loan Group 1. |
| Group 1 Senior Certificates......... Class 1-A-4, Class 1-A-5, Class 1-A-6, Class 1-A-10, Class 1-A-11, Class 1-A-12, Class 1-A-16, Class 1-X and Class A-R | Class 1-A-1, Class 1-A-2, Class 1-A-3, Class 1-A-7, Class 1-A-8, Class 1-A-9, Class 1-A-13, Class 1-A-14, Class 1-A-15, Certificates and Class PO-1 Component. |
| Group 2 Certificates................ | Group 2 Senior Certificates and the portions of the Subordinated Certificates related to Loan Group 2. |
| Group 2 Senior Certificates......... Certificates and Class PO-2 Component. | Class 2-A-1, Class 2-A-2 and Class 2-X |
| Inverse Floating Rate Certificates.. | Class 1-A-5 and Class 1-A-14 Certificates. |
| LIBOR Certificates.................. Inverse Floating Rate Certificates. | The Floating Rate Certificates and the |

</TABLE>

6

<PAGE>

<TABLE>
<CAPTION>
<S>                                     <C>

| | |
|---|---|
| Non-Delay Certificates.............. | LIBOR Certificates. |
| Notional Amount Certificates........ Certificates. | Class 1-A-14, Class 1-X and Class 2-X |
| Notional Amount Components.......... | None. |
| Offered Certificates................ Private Certificates. | All Classes of Certificates other than the |
| Physical Certificates............... Certificates. | Private Certificates and the Residual |
| Planned Principal Classes........... Class 1-A-11, Class 1-A-12 and Class | Class 1-A-1, Class 1-A-2, Class 1-A-10, 1-A-13 Certificates. |
| Principal Only Certificates......... | Class PO Certificates. |
| Private Certificates................ Certificates. | Class B-3, Class B-4 and Class B-5 |
| Rating Agencies..................... | S&P and Fitch. |
| Regular Certificates................ Residual Certificates. | All Classes of Certificates, other than the |
| Residual Certificates............... | Class A-R Certificates. |
| Scheduled Principal Classes......... | None. |

PSA CWHL 06-10.txt

Senior Certificate Group............   The Group 1 Senior Certificates and the
Group 2 Senior Certificates, as applicable.

Senior Certificates................   The Group 1 Senior Certificates and Group 2
Senior Certificates.

Subordinated Certificates...........   Class M, Class B-1, Class B-2, Class B-3,
Class B-4 and Class B-5 Certificates.

Targeted Balance Classes............   Class 1-A-4, Class 1-A-5, Class 1-A-6, and
Class 1-A-7 Certificates.

Underwriter.........................   Bear, Stearns & Co. Inc. and Banc of
America Securities LLC.
</TABLE>

        With respect to any of the foregoing designations as to which the
corresponding reference is "None," all defined terms and provisions herein
relating solely to such designations shall be of no force or effect, and any
calculations herein incorporating references to such designations shall be
interpreted without reference to such designations and amounts. Defined terms
and provisions herein relating to statistical rating agencies not designated
above as Rating Agencies shall be of no force or effect.

        If the aggregate Stated Principal Balance of the Initial Mortgage
Loans on the Closing Date is equal to or greater than the aggregate Class
Certificate Balance of the Certificates as of such date, all references herein
to "Aggregate Supplemental Purchase Amount", "Aggregate Supplemental Transfer
Amount", "Capitalized Interest Account", "Capitalized Interest Requirement",
"Funding Period", "Funding Period Distribution Date", "Remaining Non-PO
Pre-funding Account", "Remaining PO Pre-funding Account", "Supplemental Cut-off
Date", "Pre-funding Account", "Supplemental Mortgage Loan", "Supplemental
Transfer Agreement" and "Supplemental Transfer Date" shall be of no force or
effect and all provisions herein related thereto shall similarly be of no force
or effect.

                                       7

<PAGE>

                              ARTICLE I

                             DEFINITIONS

        Whenever used in this Agreement, the following words and phrases, unless
the context otherwise requires, shall have the following meanings:

        Account: Any Escrow Account, the Certificate Account, the
Distribution Account, the Pre-funding Account, the Capitalized Interest Account
or any other account related to the Trust Fund or the Mortgage Loans.

        Accretion Directed Certificates: As specified in the Preliminary
Statement.

        Accretion Direction Rule: The Class 1-A-6 Accretion Direction Rule.

        Accrual Amount: With respect to any Class of Accrual Certificates or
any Accrual Component and any Distribution Date prior to the related Accrual
Termination Date, the amount allocable to interest on such Class of Accrual
Certificates or Accrual Component with respect to such Distribution Date
pursuant to Section 4.02(a).

                              Page 15

PSA CWHL 06-10.txt

Accrual Certificates: As specified in the Preliminary Statement.

Accrual Components: As specified in the Preliminary Statement.

Accrual Termination Date: The Class 1-A-6 Accrual Termination Date.

Additional Designated Information: As defined in Section 11.02.

Adjusted Mortgage Rate: As to each Mortgage Loan, and at any time, the per annum rate equal to the Mortgage Rate less the Master Servicing Fee Rate.

Adjusted Net Mortgage Rate: As to each Mortgage Loan, and at any time, the per annum rate equal to the Mortgage Rate less the sum of the Trustee Fee Rate and the Master Servicing Fee Rate. For purposes of determining whether any Substitute Mortgage Loan is a Discount Mortgage Loan or a Non-Discount Mortgage Loan and for purposes of calculating the applicable PO Percentage and the applicable Non-PO Percentage, each Substitute Mortgage Loan shall be deemed to have an Adjusted Net Mortgage Rate equal to the Adjusted Net Mortgage Rate of the Deleted Mortgage Loan for which it is substituted.

Advance: As to a Loan Group, the payment required to be made by the Master Servicer with respect to any Distribution Date pursuant to Section 4.01, the amount of any such payment being equal to the aggregate of payments of principal and interest (net of the Master Servicing Fee) on the Mortgage Loans in such Loan Group that were due on the related Due Date and not received by the Master Servicer as of the close of business on the related Determination Date, together with an amount equivalent to interest on each Mortgage Loan as to which the related Mortgaged Property is an REO Property (net of any net income from such REO Property), less the aggregate amount of any such delinquent payments that the Master Servicer has determined would constitute a Nonrecoverable Advance, if advanced.

I-1

<PAGE>

Aggregate Planned Balance: With respect to any group of Planned Principal Classes or Components and any Distribution Date, the amount set forth for such group for such Distribution Date in Schedule V hereto.

Aggregate Supplemental Purchase Amount: With respect to any Supplemental Transfer Date, the "Aggregate Supplemental Purchase Amount" identified in the related Supplemental Transfer Agreement, which shall be an estimate of the aggregate Stated Principal Balance of the Supplemental Mortgage Loans identified in such Supplemental Transfer Agreement.

Aggregate Supplemental Transfer Amount: With respect to any Supplemental Transfer Date, the Stated Principal Balance of the related Supplemental Cut-off date of the Supplemental Mortgage Loans conveyed on such Supplemental Transfer Date, as listed on the revised Mortgage Loan Schedule delivered pursuant to Section 2.01(f); provided, however, that such amount shall not exceed the amount on deposit in the Pre-funding Account.

Aggregate Targeted Balance: With respect to any group of Targeted Principal Classes or Components and any Distribution Date, the amount set forth for such group for such Distribution Date in Schedule V hereto.

Agreement: This Pooling and Servicing Agreement and all amendments or supplements hereto.

Allocable Share: As to any Distribution Date and any Mortgage Loan (i) with respect to each Class PO Component, zero, (ii) with respect to the

PSA CWHL 06-10.txt
Class 1-X and Class 2-X Certificates, (a) the ratio that the excess, if any, of
the Adjusted Net Mortgage Rate with respect to such Mortgage Loan, over the
related Required Coupon bears to such Adjusted Net Mortgage Rate or (b) if the
Adjusted Net Mortgage Rate with respect to such Mortgage Loan does not exceed
the related Required Coupon, zero and (iii) with respect to each other Class of
Certificates the product of (a) the lesser of (I) the ratio that the related
Required Coupon bears to the Adjusted Net Mortgage Rate of such Mortgage Loan
and (II) one, multiplied by (b) the ratio that the amount calculated with
respect to such Distribution Date (A) with respect to the Senior Certificates of
the related Senior Certificate Group (other than the related Class PO
Component), pursuant to clause (i) of the definition of Class Optimal Interest
Distribution Amount (without giving effect to any reduction of such amount
pursuant to Section 4.02(d)) and (B) with respect to the Subordinated
Certificates, pursuant to the definition of Assumed Interest Amount or after a
Senior Termination Date pursuant to clause (i) of the definition of Class
Optimal Interest Distribution Amount (without giving effect to any reduction of
such amount pursuant to Section 4.02(d)) bears to the amount calculated with
respect to such Distribution Date for each Class of Certificates pursuant to
clause (i) of the definition of Class Optimal Interest Distribution Amount
(without giving effect to any reduction of such amount pursuant to Section
4.02(d)) or the definition of Assumed Interest Amount, as applicable.

     Amount Available for Senior Principal: As to any Distribution Date
and (a) Loan Group 1, the Available Funds for such Distribution Date and Loan
Group, reduced by the aggregate amount distributable (or allocable to the
Accrual Amount, if applicable) on such Distribution Date in respect of interest
on the related Senior Certificates pursuant to Section 4.02(a)(1)(ii) and (b)
Loan Group 2, the Available Funds for such Distribution Date and Loan Group,
reduced by the aggregate amount distributable (or allocable to the Accrual
Amount, if applicable) on such Distribution Date in respect of interest on the
related Senior Certificates pursuant to Section 4.02(a)(2)(ii).

     Amount Held for Future Distribution: As to any Distribution Date and
Mortgage Loans in a Loan Group, the aggregate amount held in the Certificate
Account at the close of business on the related Determination Date on account of
(i) Principal Prepayments received after the related Prepayment

                              I-2

<PAGE>

Period and Liquidation Proceeds and Subsequent Recoveries received in the month
of such Distribution Date relating to such Loan Group and (ii) all Scheduled
Payments due after the related Due Date relating to such Loan Group.

     Applicable Credit Support Percentage: As defined in Section 4.02(e).

     Appraised Value: With respect to any Mortgage Loan, the Appraised
Value of the related Mortgaged Property shall be: (i) with respect to a Mortgage
Loan other than a Refinancing Mortgage Loan, the lesser of (a) the value of the
Mortgaged Property based upon the appraisal made at the time of the origination
of such Mortgage Loan and (b) the sale price of the Mortgaged Property at the
time of the origination of such Mortgage Loan; (ii) with respect to a
Refinancing Mortgage Loan other than a Streamlined Documentation Mortgage Loan,
the value of the Mortgaged Property based upon the appraisal made-at the time of
the origination of such Refinancing Mortgage Loan; and (iii) with respect to a
Streamlined Documentation Mortgage Loan, (a) if the loan-to-value ratio with
respect to the Original Mortgage Loan at the time of the origination thereof was
80% or less and the loan amount of the new mortgage loan is $650,000 or less,
the value of the Mortgaged Property based upon the appraisal made at the time of
the origination of the Original Mortgage Loan and (b) if the loan-to-value ratio
with respect to the Original Mortgage Loan at the time of the origination
thereof was greater than 80% or the loan amount of the new loan being originated
                              Page 17

PSA CWHL 06-10.txt

is greater than $650,000, the value of the Mortgaged Property based upon the appraisal (which may be a drive-by appraisal) made at the time of the origination of such Streamlined Documentation Mortgage Loan.

Assumed Balance: For a Distribution Date and Loan Group, an amount equal to the Subordinated Percentage for that Distribution Date relating to that Loan Group of the aggregate of the applicable Non-PO Percentage of the Stated Principal Balance of each Mortgage Loan in such Loan Group as of the Due Date occurring in the month prior to the month of that Distribution Date (after giving effect to Principal Prepayments received in the Prepayment Period related to such Due Date).

Assumed Interest Amount: With respect to any Distribution Date and each Class of Subordinated Certificates, one month's interest accrued during the related Interest Accrual Period at the Pass-Through Rate for such Class on the applicable Subordinated Portion immediately prior to that Distribution Date.

Available Funds: As to any Distribution Date and the Mortgage Loans in a Loan Group, the sum of (a) the aggregate amount held in the Certificate Account at the close of business on the related Determination Date, including any Subsequent Recoveries, in respect of such Mortgage Loans, net of the related Amount Held for Future Distribution and net of amounts permitted to be withdrawn from the Certificate Account pursuant to clauses (i) - (viii), inclusive, of Section 3.08(a) in respect of such Mortgage Loans and amounts permitted to be withdrawn from the Distribution Account pursuant to clauses (i) - (v), inclusive, of Section 3.08(b) in respect of such Mortgage Loans, (b) the amount of the related Advance, (c) in connection with Defective Mortgage Loans in such Loan Group, as applicable, the aggregate of the Purchase Prices and Substitution Adjustment Amounts deposited on the related Distribution Account Deposit Date; provided, however, that after a Senior Termination Date, Available Funds with respect to the Loan Group relating to the remaining Senior Certificate Group shall include the Available Funds from the other Loan Groups after all distributions are made on the Senior Certificates of the other Senior Certificate Group or Groups and on any Distribution Date thereafter, Available Funds shall be calculated based upon all the Mortgage Loans in the Mortgage Pool, as opposed to the Mortgage Loans in the related Loan Group, (d) on each Funding Period Distribution Date, the amount, if any, transferred from the Capitalized Interest Account in respect of the applicable Capitalized Interest Requirement, and (e) on the last Funding Period Distribution Date, the amount, if any, transferred from

I-3

<PAGE>

the Pre-funding Account representing the Remaining Non-PO Pre-funding Amount and the Remaining PO Pre-funding Amount.

Bankruptcy Code: The United States Bankruptcy Reform Act of 1978, as amended.

Book-Entry Certificates: As specified in the Preliminary Statement.

Business Day: Any day other than (i) a Saturday or a Sunday, or (ii) a day on which banking institutions in the City of New York, New York, or the States of California or Texas or the city in which the Corporate Trust Office of the Trustee is located are authorized or obligated by law or executive order to be closed.

Capitalized Interest Account: The separate Eligible Account designated as such and created and maintained by the Trustee pursuant to Section 3.05(h) hereof. The Capitalized Interest Account shall be treated as an "outside reserve fund" under applicable Treasury regulations and shall not be part of any

PSA CWHL 06-10.txt
REMIC. Except as provided in Section 3.05(h) hereof, any investment earnings on the amounts on deposit in the Capitalized Interest Account shall be treated as owned by the Depositor and will be taxable to the Depositor.

Capitalized Interest Requirement: With respect to each Funding Period Distribution Date, the excess, if any, of (a) the sum of (1) the amount calculated pursuant to clause (i) of the definition of Class Optimal Interest Distribution Amount for each Class of Certificates for such Distribution Date, plus (2) the Trustee Fee, over (b) with respect to each Mortgage Loan, (1) 1/12 of the product of the related Adjusted Mortgage Rate and the related Stated Principal Balance as of the related Due date (prior to giving effect to any Scheduled Payment due on such Mortgage Loan on such Due Date) minus (2) any related reductions required by Section 4.02(d) hereof. On the Closing Date, the amount deposited in the Capitalized Interest Account shall be $231,091.71.

Certificate: Any one of the Certificates executed by the Trustee in substantially the forms attached hereto as exhibits.

Certificate Account: The separate Eligible Account or Accounts created and maintained by the Master Servicer pursuant to Section 3.05 with a depository institution in the name of the Master Servicer for the benefit of the Trustee on behalf of Certificateholders and designated "Countrywide Home Loans Servicing LP, in trust for the registered holders of CHL Mortgage Pass-Through Trust 2006-10, Mortgage Pass-Through Certificates, Series 2006-10."

Certificate Balance: With respect to any Certificate at any date (other than the Notional Amount Certificates), the maximum dollar amount of principal to which the Holder thereof is then entitled hereunder, such amount being equal to the Denomination thereof (A) plus any increase in the Certificate Balance of each Certificate pursuant to Section 4.02 due to the receipt of Subsequent Recoveries, (B) minus the sum of (i) all distributions of principal previously made with respect thereto and (ii) all Realized Losses allocated thereto and, in the case of the Subordinated Certificates, all other reductions in Certificate Balance previously allocated thereto pursuant to Section 4.04 and (C) in the case of any Class of Accrual Certificates, increased by the Accrual Amount added to the Class Certificate Balance of such Class prior to such date. The Notional Amount Certificates have no Certificate Balances.

Certificate Group: The Group 1 Certificates or the Group 2 Certificates, as the context requires.

I-4

<PAGE>

Certificate Owner: With respect to a Book-Entry Certificate, the Person who is the beneficial owner of such Book-Entry Certificate. For the purposes of this Agreement, in order for a Certificate Owner to enforce any of its rights hereunder, it shall first have to provide evidence of its beneficial ownership interest in a Certificate that is reasonably satisfactory to the Trustee, the Depositor, and/or the Master Servicer, as applicable.

Certificate Register: The register maintained pursuant to Section 5.02 hereof.

Certificateholder or Holder: The person in whose name a Certificate is registered in the Certificate Register, except that, solely for the purpose of giving any consent pursuant to this Agreement, any Certificate registered in the name of the Depositor or any affiliate of the Depositor shall be deemed not to be Outstanding and the Percentage Interest evidenced thereby shall not be taken into account in determining whether the requisite amount of Percentage Interests necessary to effect such consent has been obtained; provided, however, that if any such Person (including the Depositor) owns 100% of the Percentage

PSA CWHL 06-10.txt

Interests evidenced by a Class of Certificates, such Certificates shall be deemed to be Outstanding for purposes of any provision hereof (other than the second sentence of Section 10.01 hereof) that requires the consent of the Holders of Certificates of a particular Class as a condition to the taking of any action hereunder. The Trustee is entitled to rely conclusively on a certification of the Depositor or any affiliate of the Depositor in determining which Certificates are registered in the name of an affiliate of the Depositor.

Certification Party: As defined in Section 11.05.

Certifying Person: As defined in Section 11.05.

Class: All Certificates bearing the same Class designation as set forth in the Preliminary Statement.

Class 1-A-6 Accretion Direction Rule: On each Distribution Date up to and including the Accrual Termination Date, the Accrual Amount for the Class 1-A-6 Certificates will be distributed as principal in the same order of priority specified in Section 4.02(a)(1)(iv)(y)(3)(b)(2)-(5).

Class 1-A-6 Accrual Termination Date: The earlier of the Senior Credit Support Depletion Date and the Distribution Date on which the respective Class Certificate Balances of the Class 1-A-4, Class 1-A-5 and Class 1-A-7 Certificates are reduced to zero.

Class Certificate Balance: With respect to any Class and as to any date of determination, the aggregate of the Certificate Balances of all Certificates of such Class as of such date.

Class Interest Shortfall: As to any Distribution Date and Class, the amount by which the amount described in clause (i) of the definition of Class Optimal Interest Distribution Amount for such Class exceeds the amount of interest actually distributed on such Class on such Distribution Date pursuant to such clause (i).

Class Optimal Interest Distribution Amount: With respect to any Distribution Date and interest bearing Class or, with respect to any interest-bearing Component, the sum of (i) one month's interest accrued during the related Interest Accrual Period at the Pass-Through Rate for such Class on the related Class Certificate Balance, Component Balance, Notional Amount or Component Notional Amount, as applicable, immediately prior to such Distribution Date, subject to reduction as provided in Section 4.02(d) and (ii) any Class Unpaid Interest Amounts for such Class or Component.

I-5

<PAGE>

Class PO Component: The Class PO-1 or Class PO-2 Component, as applicable.

Class PO Deferred Amount: As to any Distribution Date and Loan Group, the aggregate of the applicable PO Percentage of each Realized Loss on a Discount Mortgage Loan in that Loan Group to be allocated to the related Class PO Component on such Distribution Date on or prior to the related Senior Credit Support Depletion Date or previously allocated to such Class PO Component and not yet paid to the Holders of the Class PO Certificates.

Class Subordination Percentage: With respect to any Distribution Date and each Class of Subordinated Certificates, the quotient (expressed as a percentage) of (a) the Class Certificate Balance of such Class of Subordinated Certificates immediately prior to such Distribution Date divided by (b) the aggregate of the Class Certificate Balances immediately prior to such

PSA CWHL 06-10.txt
Distribution Date of all Classes of Certificates.

Class Unpaid Interest Amounts: As to any Distribution Date and Class of interest bearing Certificates, the amount by which the aggregate Class Interest Shortfalls for such Class on prior Distribution Dates exceeds the amount distributed on such Class on prior Distribution Dates pursuant to clause (ii) of the definition of Class Optimal Interest Distribution Amount.

Closing Date: March 30, 2006.

Code: The Internal Revenue Code of 1986, including any successor or amendatory provisions.

COFI: The Monthly Weighted Average Cost of Funds Index for the Eleventh District Savings Institutions published by the Federal Home Loan Bank of San Francisco.

COFI Certificates: As specified in the Preliminary Statement.

Commission: The U.S. Securities and Exchange Commission.

Combined Certificates: As specified in the Preliminary Statement.

Combined Certificates Payment Rule: Not applicable.

Compensating Interest: As to any Distribution Date and Loan Group an amount equal to the product of one-twelfth of 0.125% and the aggregate Stated Principal Balance of the Mortgage Loans in such Loan Group as of the Due Date in the prior calendar month.

Component: As specified in the Preliminary Statement.

Component Balance: With respect to any Component and any Distribution Date, the Initial Component Balance thereof on the Closing Date, (A) plus any increase in the Component Balance of such Component pursuant to Section 4.02 due to the receipt of Subsequent Recoveries, (B) minus the sum of all amounts applied in reduction of the principal balance of such Component and Realized Losses allocated thereto on previous Distribution Dates.

Component Certificates: As specified in the Preliminary Statement.

Component Notional Amount: Not applicable.

Confirmation: Not applicable.

I-6

<PAGE>

Coop Shares: Shares issued by a Cooperative Corporation.

Cooperative Corporation: The entity that holds title (fee or an acceptable leasehold estate) to the real property and improvements constituting the Cooperative Property and which governs the Cooperative Property, which Cooperative Corporation must qualify as a Cooperative Housing Corporation under Section 216 of the Code.

Cooperative Loan: Any Mortgage Loan secured by Coop Shares and a Proprietary Lease.

Cooperative Property: The real property and improvements owned by the Cooperative Corporation, including the allocation of individual dwelling units to the holders of the Coop Shares of the Cooperative Corporation.

PSA CWHL 06-10.txt

Cooperative Unit: A single family dwelling located in a Cooperative Property.

Corporate Trust Office: The designated office of the Trustee in the State of New York at which at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this Agreement is located at 101 Barclay Street, 8W, New York, New York 10286 (Attn: Mortgage-Backed Securities Group, CWMBS, Inc. Series 2006-10), facsimile no. (212) 815-3986, and which is the address to which notices to and correspondence with the Trustee should be directed.

Corridor Contract: Not applicable.

Corridor Contract Assignment Agreement: Not applicable.

Corridor Contract Counterparty: Not applicable.

Corridor Contract Reserve Fund: Not applicable.

Corridor Contract Scheduled Termination Date: Not applicable.

Countrywide: Countrywide Home Loans, Inc., a New York corporation, and its successors and assigns in its capacity as the seller of the Countrywide Mortgage Loans to the Depositor.

Countrywide Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule for which Countrywide is the applicable Seller.

Covered Certificates: Not applicable.

Cross-Over Situation: For any Distribution Date and for each Loan Group (after taking into account principal distributions on such Distribution Date) with respect to the Class A and Class B Lower Tier REMIC Interests, a situation in which the Class A and Class B Interests corresponding to any Loan Group are in the aggregate less than 1% of the Subordinated Portion of the Loan Group to which they correspond.

Cut-off Date: In the case of any Initial Mortgage Loan, the Initial Cut-off Date, and in the case of any Supplemental Mortgage Loan, the related Supplemental Cut-off Date.

Cut-off Date Pool Principal Balance: An amount equal to the sum of (x) the Initial Cut-off Date Pool Principal Balance plus (y) the amount, if any, deposited in the Pre-funding Account on the Closing Date.

I-7

<PAGE>

Cut-off Date Principal Balance: As to any Mortgage Loan, the Stated Principal Balance thereof as of the close of business on the Cut-off Date.

Debt Service Reduction: With respect to any Mortgage Loan, a reduction by a court of competent jurisdiction in a proceeding under the Bankruptcy Code in the Scheduled Payment for such Mortgage Loan which became final and non-appealable, except such a reduction resulting from a Deficient Valuation or any reduction that results in a permanent forgiveness of principal.

Defective Mortgage Loan: Any Mortgage Loan which is required to be repurchased pursuant to Section 2.02 or 2.03.

Deficient Valuation: With respect to any Mortgage Loan, a valuation

PSA CWHL 06-10.txt

by a court of competent jurisdiction of the Mortgaged Property in an amount less than the then-outstanding indebtedness under the Mortgage Loan, or any reduction in the amount of principal to be paid in connection with any Scheduled Payment that results in a permanent forgiveness of principal, which valuation or reduction results from an order of such court which is final and non-appealable in a proceeding under the Bankruptcy Code.

Definitive Certificates: Any Certificate evidenced by a Physical Certificate and any Certificate issued in lieu of a Book-Entry Certificate pursuant to Section 5.02(e).

Delay Certificates: As specified in the Preliminary Statement.

Delay Delivery Certification: As defined in Section 2.02(a) hereof.

Delay Delivery Mortgage Loans: The Mortgage Loans for which all or a portion of a related Mortgage File is not delivered to the Trustee on the Closing Date or Supplemental Transfer Date, as applicable. The number of Delay Delivery Mortgage Loans shall not exceed 50% of the aggregate number of the Mortgage Loans in each Loan Group as of the Closing Date and 90% of the Supplemental Mortgage Loans conveyed on a Supplemental Transfer Date. To the extent that Countrywide Home Loans Servicing LP shall be in possession of any Mortgage Files with respect to any Delay Delivery Mortgage Loan, until delivery of such Mortgage File to the Trustee as provided in Section 2.01, Countrywide Home Loans Servicing LP shall hold such files as Master Servicer hereunder, as agent and in trust for the Trustee.

Deleted Mortgage Loan: As defined in Section 2.03(c) hereof.

Denomination: With respect to each Certificate, the amount set forth on the face thereof as the "Initial Certificate Balance of this Certificate" or the "Initial Notional Amount of this Certificate" or, if neither of the foregoing, the Percentage Interest appearing on the face thereof.

Depositor: CWMBS, Inc., a Delaware corporation, or its successor in interest.

Depository: The initial Depository shall be The Depository Trust Company, the nominee of which is CEDE & Co., as the registered Holder of the Book-Entry Certificates. The Depository shall at all times be a "clearing corporation" as defined in Section 8-102(a)(5) of the Uniform Commercial Code of the State of New York.

Depository Participant: A broker, dealer, bank or other financial institution or other Person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

I-8

<PAGE>

Determination Date: As to any Distribution Date, the 22nd day of each month or if such 22nd day is not a Business Day the next preceding Business Day; provided, however, that if such 22nd day or such Business Day, whichever is applicable, is less than two Business Days prior to the related Distribution Date, the Determination Date shall be the first Business Day which is two Business Days preceding such Distribution Date.

Discount Mortgage Loan: Any Mortgage Loan in a Loan Group with an Adjusted Net Mortgage Rate that is less than the Required Coupon for that Loan Group.

Distribution Account: The separate Eligible Account created and

PSA CWHL 06-10.txt

maintained by the Trustee pursuant to Section 3.05 in the name of the Trustee for the benefit of the Certificateholders and designated "The Bank of New York in trust for registered holders of CHL Mortgage Pass-Through Trust 2006-10, Mortgage Pass-Through Certificates, Series 2006-10." Funds in the Distribution Account shall be held in trust for the Certificateholders for the uses and purposes set forth in this Agreement.

Distribution Account Deposit Date: As to any Distribution Date, 12:30 p.m. Pacific time on the Business Day immediately preceding such Distribution Date.

Distribution Date: The 25th day of each calendar month after the initial issuance of the Certificates, or if such 25th day is not a Business Day, the next succeeding Business Day, commencing in April 2006.

Due Date: With respect to any Distribution Date, the first day of the calendar month in which that Distribution Date occurs.

EDGAR: The Commission's Electronic Data Gathering, Analysis and Retrieval system.

Eligible Account: Any of (i) an account or accounts maintained with a federal or state chartered depository institution or trust company, the short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the debt obligations of such holding company) have the highest short-term ratings of Moody's or Fitch and one of the two highest short-term ratings of S&P, if S&P is a Rating Agency, at the time any amounts are held on deposit therein, or (ii) an account or accounts in a depository institution or trust company in which such accounts are insured by the FDIC (to the limits established by the FDIC) and the uninsured deposits in which accounts are otherwise secured such that, as evidenced by an Opinion of Counsel delivered to the Trustee and to each Rating Agency, the Certificateholders have a claim with respect to the funds in such account or a perfected first priority security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution or trust company in which such account is maintained, or (iii) a trust account or accounts maintained with (a) the trust department of a federal or state chartered depository institution or (b) a trust company, acting in its fiduciary capacity or (iv) any other account acceptable to each Rating Agency. Eligible Accounts may bear interest, and may include, if otherwise qualified under this definition, accounts maintained with the Trustee.

Eligible Repurchase Month: As defined in Section 3.11 hereof.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

ERISA-Qualifying Underwriting: A best efforts or firm commitment underwriting or private placement that meets the requirements of the Underwriter's Exemption.

I-9

<PAGE>

ERISA-Restricted Certificate: As specified in the Preliminary Statement.

Escrow Account: The Eligible Account or Accounts established and maintained pursuant to Section 3.06(a) hereof.

PSA_CWHL_06-10.txt
Event of Default: As defined in Section 7.01 hereof.

Excess Proceeds: With respect to any Liquidated Mortgage Loan, the amount, if any, by which the sum of any Liquidation Proceeds received with respect to such Mortgage Loan during the calendar month in which such Mortgage Loan became a Liquidated Mortgage Loan plus any Subsequent Recoveries received with respect to such Mortgage Loan, net of any amounts previously reimbursed to the Master Servicer as Nonrecoverable Advance(s) with respect to such Mortgage Loan pursuant to Section 3.08(a)(iii), exceeds (i) the unpaid principal balance of such Liquidated Mortgage Loan as of the Due Date in the month in which such Mortgage Loan became a Liquidated Mortgage Loan plus (ii) accrued interest at the Mortgage Rate from the Due Date as to which interest was last paid or advanced (and not reimbursed) to Certificateholders up to the Due Date applicable to the Distribution Date immediately following the calendar month during which such liquidation occurred.

Exchange Act: The Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

Exchange Act Reports: Any reports on Form 10-D, Form 8-K and Form 10-K required to be filed by the Depositor with respect to the Trust Fund under the Exchange Act.

Expense Rate: As to each Mortgage Loan, the sum of the Master Servicing Fee Rate and the Trustee Fee Rate.

FDIC: The Federal Deposit Insurance Corporation, or any successor thereto.

FHLMC: The Federal Home Loan Mortgage Corporation, a corporate instrumentality of the United States created and existing under Title III of the Emergency Home Finance Act of 1970, as amended, or any successor thereto.

Final Certification: As defined in Section 2.02(a) hereof.

FIRREA: The Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

Fitch: Fitch, Inc., or any successor thereto. If Fitch is designated as a Rating Agency in the Preliminary Statement, for purposes of Section 10.05(b) the address for notices to Fitch shall be Fitch, Inc., One State Street Plaza, New York, New York 10004, Attention: Residential Mortgage Surveillance Group, or such other address as Fitch may hereafter furnish to the Depositor and the Master Servicer.

FNMA: The Federal National Mortgage Association, a federally chartered and privately owned corporation organized and existing under the Federal National Mortgage Association Charter Act, or any successor thereto.

Form 10-D Disclosure Item: With respect to any Person, any material litigation or governmental proceedings pending against such Person, or against any of the Trust Fund, the Depositor, the Trustee, the co-trustee, the Master Servicer or any Subservicer if such Person has actual knowledge thereof.

I-10

<PAGE>

Form 10-K Disclosure Item: With respect to any Person, (a) any Form 10-D Disclosure Item and (b) any affiliations or relationships between such Person and any Item 1119 Party.

Funding Period: The period from the Closing Date until the earliest

PSA CWHL 06-10.txt

of (i) the date on which the amount on deposit in the Pre-funding Account is less than $150,000, (ii) an Event of Default occurs and (iii) April 30, 2006.

Funding Period Distribution Date: Each Distribution Date during the Funding Period and, if the Funding Period ends after the Distribution Date in a month, the immediately succeeding Distribution Date.

Group 1 Senior Certificates: As specified in the Preliminary Statement.

Group 2 Senior Certificates: As specified in the Preliminary Statement.

Index: With respect to any Interest Accrual Period for the COFI Certificates, if any, the then-applicable index used by the Trustee pursuant to Section 4.07 to determine the applicable Pass-Through Rate for such Interest Accrual Period for the COFI Certificates.

Indirect Participant: A broker, dealer, bank or other financial institution or other Person that clears through or maintains a custodial relationship with a Depository Participant.

Initial Certification: As defined in Section 2.02(a) hereof.

Initial Component Balance: As specified in the Preliminary Statement.

Initial Cut-off Date: With respect to any Initial Mortgage Loan, the later of (i) the date of origination of such Mortgage Loan and (ii) March 1, 2006.

Initial Cut-off Date Pool Principal Balance: $557,350,880.99.

Initial Mortgage Loan: A Mortgage Loan conveyed to the Trust Fund on the Closing Date pursuant to this Agreement as identified on the Mortgage Loan Schedule delivered to the Trustee on the Closing Date.

Insurance Policy: With respect to any Mortgage Loan included in the Trust Fund, any insurance policy, including all riders and endorsements thereto in effect, including any replacement policy or policies for any Insurance Policies.

Insurance Proceeds: Proceeds paid by an insurer pursuant to any Insurance Policy, in each case other than any amount included in such Insurance Proceeds in respect of Insured Expenses.

Insured Expenses: Expenses covered by an Insurance Policy or any other insurance policy with respect to the Mortgage Loans.

Interest Accrual Period: With respect to each Class of Delay Certificates, its corresponding Lower Tier REMIC Regular Interest and any Distribution Date, the calendar month prior to the month of such Distribution Date. With respect to any Class of Non-Delay Certificates, its corresponding Lower Tier REMIC Regular Interest and any Distribution Date, the one month period commencing on the 25th day of the month preceding the month in which such Distribution Date occurs and ending on the 24th day of the month in which such Distribution Date occurs.

I-11

<PAGE>

Interest Determination Date: With respect to (a) any Interest
Page 26

PSA CWHL 06-10.txt

Accrual Period for any LIBOR Certificates and (b) any Interest Accrual Period for the COFI Certificates for which the applicable Index is LIBOR, the second Business Day prior to the first day of such Interest Accrual Period.

Item 1119 Party: The Depositor, any Seller, the

Master Servicer, the Trustee, any Subservicer, any originator identified in the Prospectus Supplement and any other material transaction party, as identified in Exhibit W hereto, as updated pursuant to Section 11.04.

Latest Possible Maturity Date: The Distribution Date following the third anniversary of the scheduled maturity date of the Mortgage Loan having the latest scheduled maturity date as of the Cut-off Date.

Lender PMI Mortgage Loan: Certain Mortgage Loans as to which the lender (rather than the borrower) acquires the Primary Insurance Policy and charges the related borrower an interest premium.

LIBOR: The London interbank offered rate for one-month United States dollar deposits calculated in the manner described in Section 4.08.

LIBOR Certificates: As specified in the Preliminary Statement.

Limited Exchange Act Reporting Obligations: The obligations of the Master Servicer under Section 3.16(b), Section 6.02 and Section 6.04 with respect to notice and information to be provided to the Depositor and Article XI (except Section 11.07(a)(1) and (2)).

Liquidated Mortgage Loan: With respect to any Distribution Date, a defaulted Mortgage Loan (including any REO Property) which was liquidated in the calendar month preceding the month of such Distribution Date and as to which the Master Servicer has determined (in accordance with this Agreement) that it has received all amounts it expects to receive in connection with the liquidation of such Mortgage Loan, including the final disposition of an REO Property.

Liquidation Proceeds: Amounts, including Insurance Proceeds, received in connection with the partial or complete liquidation of defaulted Mortgage Loans, whether through trustee's sale, foreclosure sale or otherwise or amounts received in connection with any condemnation or partial release of a Mortgaged Property and any other proceeds received in connection with an REO Property, less the sum of related unreimbursed Master Servicing Fees, Servicing Advances and Advances.

Loan Group: Any of Loan Group 1 or Loan Group 2, as applicable.

Loan Group 1: All Mortgage Loans identified as Loan Group 1 Mortgage Loans on the Mortgage Loan Schedule.

Loan Group 2: All Mortgage Loans identified as Loan Group 2 Mortgage Loans on the Mortgage Loan Schedule.

Loan Group Principal Balance: As to any Distribution Date and Loan Group, the aggregate Stated Principal Balance of the Mortgage Loans in that Loan Group as of the Due Date in the month preceding the month of the Distribution Date (after giving effect to Principal Prepayments received in the Prepayment Period related to such prior Due Date).

I-12

<PAGE>

Loan-to-Value Ratio: With respect to any Mortgage Loan and as to any date of determination, the fraction (expressed as a percentage) the numerator of

PSA CWHL 06-10.txt

which is the principal balance of the related Mortgage Loan at such date of determination and the denominator of which is the Appraised Value of the related Mortgaged Property.

Lost Mortgage Note: Any Mortgage Note the original of which was permanently lost or destroyed and has not been replaced.

Lower Tier REMIC: As specified in the Preliminary Statement.

Lower Tier REMIC Interest: As specified in the Preliminary Statement.

Lower Tier REMIC Regular Interest: As specified in the Preliminary Statement.

LTR-A-R Interest: As specified in the Preliminary Statement.

Maintenance: With respect to any Cooperative Unit, the rent paid by the Mortgagor to the Cooperative Corporation pursuant to the Proprietary Lease.

Majority in Interest: As to any Class of Regular Certificates, the Holders of Certificates of such Class evidencing, in the aggregate, at least 51% of the Percentage Interests evidenced by all Certificates of such Class.

Master REMIC: As described in the Preliminary Statement.

Master Servicer: Countrywide Home Loans Servicing LP, a Texas limited partnership, and its successors and assigns, in its capacity as master servicer hereunder.

Master Servicer Advance Date: As to any Distribution Date, 12:30 p.m. Pacific time on the Business Day immediately preceding such Distribution Date.

Master Servicing Fee: As to each Mortgage Loan and any Distribution Date, an amount payable out of each full payment of interest received on such Mortgage Loan and equal to one-twelfth of the Master Servicing Fee Rate multiplied by the Stated Principal Balance of such Mortgage Loan as of the Due Date in the month preceding the month of such Distribution Date, subject to reduction as provided in Section 3.14.

Master Servicing Fee Rate: With respect to each Mortgage Loan, 0.20% per annum.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS Mortgage Loan: Any Mortgage Loan registered with MERS on the MERS System.

MERS (R) System: The system of recording transfers of mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number for any MERS Mortgage Loan.

MOM Loan: Any Mortgage Loan as to which MERS is acting as mortgagee, solely as nominee for the originator of such Mortgage Loan and its successors and assigns.

I-13

<PAGE>

PSA CWHL 06-10.txt

Monthly Statement: The statement delivered to the Certificateholders pursuant to Section 4.06.

Moody's: Moody's Investors Service, Inc., or any successor thereto. If Moody's is designated as a Rating Agency in the Preliminary Statement, for purposes of Section 10.05(b) the address for notices to Moody's shall be Moody's Investors Service, Inc., 99 Church Street, New York, New York 10007, Attention: Residential Pass-Through Monitoring, or such other address as Moody's may hereafter furnish to the Depositor or the Master Servicer.

Mortgage: The mortgage, deed of trust or other instrument creating a first lien on an estate in fee simple or leasehold interest in real property securing a Mortgage Note.

Mortgage File: The mortgage documents listed in Section 2.01 hereof pertaining to a particular Mortgage Loan and any additional documents delivered to the Trustee to be added to the Mortgage File pursuant to this Agreement.

Mortgage Loans: Such of the mortgage loans as from time to time are transferred and assigned to the Trustee pursuant to the provisions hereof and any Supplemental Transfer Agreement and that are held as a part of the Trust Fund (including any REO Property), the mortgage loans so held being identified in the Mortgage Loan Schedule, notwithstanding foreclosure or other acquisition of title of the related Mortgaged Property.

Mortgage Loan Schedule: The list of Mortgage Loans (as from time to time amended by the Master Servicer to reflect the addition of Substitute Mortgage Loans, the addition of any Supplemental Mortgage Loans pursuant to the provisions of this Agreement and any Supplemental Transfer Agreement and the deletion of Deleted Mortgage Loans pursuant to the provisions of this Agreement) transferred to the Trustee as part of the Trust Fund and from time to time subject to this Agreement, attached hereto as Schedule I, setting forth the following information with respect to each Mortgage Loan by Loan Group:

> (i)   the loan number;
>
> (ii)  the Mortgagor's name and the street address of the Mortgaged Property, including the zip code;
>
> (iii) the maturity date;
>
> (iv)  the original principal balance;
>
> (v)   the Cut-off Date Principal Balance;
>
> (vi)  the first payment date of the Mortgage Loan;
>
> (vii) the Scheduled Payment in effect as of the Cut-off Date;
>
> (viii) the Loan-to-Value Ratio at origination;
>
> (ix)  a code indicating whether the residential dwelling at the time of origination was represented to be owner-occupied;

I-14

<PAGE>

> (x)   a code indicating whether the residential dwelling is either (a) a detached single family dwelling (b) a dwelling in a de minimis PUD, (c) a condominium unit or PUD (other than a de minimis PUD), (d) a two- to four-unit residential property or

PSA CWHL 06-10.txt

(e) a Cooperative Unit;

(xi)  the Mortgage Rate;

(xii)  a code indicating whether the Mortgage Loan is a Countrywide
       Mortgage Loan, a Park Granada Mortgage Loan, a Park Monaco
       Mortgage Loan or a Park Sienna Mortgage Loan;

(xiii)  a code indicating whether the Mortgage Loan is a Lender PMI
        Mortgage Loan and, in the case of any Lender PMI Mortgage
        Loan, a percentage representing the amount of the related
        interest premium charged to the borrower;

(xiv)  the purpose for the Mortgage Loan;

(xv)   the type of documentation program pursuant to which the
       Mortgage Loan was originated;

(xvi)  the direct servicer as of the Cut-off Date and the Master
       Servicing Fee Rate; and

(xvii)  a code indicating whether the Mortgage Loan is a MERS
        Mortgage Loan.

       Such schedule shall also set forth the total of the amounts described
under (iv) and (v) above for all of the Mortgage Loans and for each Loan Group
and in the aggregate. Countrywide shall update the Mortgage Loan Schedule in
connection with each Supplemental Transfer Agreement within a reasonable period
of time after delivery to it of the Schedule of Supplemental Mortgage Loans
attached to the related Supplemental Transfer Agreement as Schedule A thereto.

       Mortgage Note: The original executed note or other evidence of
indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan.

       Mortgage Rate: The annual rate of interest borne by a Mortgage Note
from time to time, net of any interest premium charged by the mortgagee to
obtain or maintain any Primary Insurance Policy.

       Mortgaged Property: The underlying property securing a Mortgage
Loan, which, with respect to a Cooperative Loan, is the related Coop Shares and
Proprietary Lease.

       Mortgagor: The obligor(s) on a Mortgage Note.

       National Cost of Funds Index: The National Monthly Median Cost of
Funds Ratio to SAIF-Insured Institutions published by the Office of Thrift
Supervision.

       Net Prepayment Interest Shortfalls: As to any Distribution Date and
Loan Group, the amount by which the aggregate of Prepayment Interest Shortfalls
for such Loan Group exceeds an amount equal to the sum of (a) the Compensating
Interest for such Loan Group and Distribution Date and (b) the excess, if any,
of the Compensating Interest for the other Loan Group for such Distribution Date
over Prepayment Interest Shortfalls experienced by the Mortgage Loans in such
other Loan Group.

I-15

<PAGE>

       Non-Delay Certificates: As specified in the Preliminary Statement.

       Non-Discount Mortgage Loan: Any Mortgage Loan in a Loan Group with

PSA CWHL 06-10.txt

an Adjusted Net Mortgage Rate that is greater than or equal to the Required Coupon for such Loan Group.

Non-PO Formula Principal Amount: As to any Distribution Date and Loan Group, the sum of (i) the sum of the applicable Non-PO Percentage of (a) the principal portion of each Scheduled Payment (without giving effect to any reductions thereof caused by any Debt Service Reductions or Deficient Valuations) due on each Mortgage Loan in the related Loan Group on the related Due Date, (b) the Stated Principal Balance of each Mortgage Loan in the related Loan Group that was repurchased by a Seller or purchased by the Master Servicer pursuant to this Agreement as of such Distribution Date, (c) the Substitution Adjustment Amount in connection with any Deleted Mortgage Loan in such Loan Group received with respect to such Distribution Date, (d) any Insurance Proceeds or Liquidation Proceeds allocable to recoveries of principal of Mortgage Loans in the related Loan Group that are not yet Liquidated Mortgage Loans received during the calendar month preceding the month of such Distribution Date, (e) with respect to each Mortgage Loan in a Loan Group that became a Liquidated Mortgage Loan during the calendar month preceding the month of such Distribution Date, the amount of the Liquidation Proceeds allocable to principal received during the calendar month preceding the month of such Distribution Date with respect to such Mortgage Loan and (f) all Principal Prepayments for such Loan Group received during the related Prepayment Period, (ii) (A) any Subsequent Recoveries for such Loan Group received during the calendar month preceding the month of such Distribution Date, or (B) with respect to Subsequent Recoveries attributable to a Discount Mortgage Loan in such Loan Group which incurred a Realized Loss after the Senior Credit Support Depletion Date, the Non-PO Percentage of any Subsequent Recoveries received during the calendar month preceding the month of such Distribution Date and (iii) in the case of Loan Group 1, on the last Funding Period Distribution Date, the Remaining Non-PO Pre-funding Amount.

Non-PO Percentage: As to any Discount Mortgage Loan in a Loan Group, a fraction (expressed as a percentage) the numerator of which is the Adjusted Net Mortgage Rate of such Discount Mortgage Loan and the denominator of which is the Required Coupon for such Loan Group. As to any Non-Discount Mortgage Loan, 100%.

Nonrecoverable Advance: Any portion of an Advance previously made or proposed to be made by the Master Servicer that, in the good faith judgment of the Master Servicer, will not be ultimately recoverable by the Master Servicer from the related Mortgagor, related Liquidation Proceeds, Subsequent Recoveries or otherwise.

Notice of Final Distribution: The notice to be provided pursuant to Section 9.02 to the effect that final distribution on any of the Certificates shall be made only upon presentation and surrender thereof.

Notional Amount: With respect to any Distribution Date and the Class 1-A-14 Certificates, an amount equal to the Class Certificate Balance of the Class 1-A-13 Certificates immediately prior to such Distribution Date. With respect to any Distribution Date and the Class 1-X Certificates, an amount equal to the aggregate of the Stated Principal Balances of the Non-Discount Mortgage Loans in Loan Group 1 as of the Due Date in the preceding calendar month (after giving effect to Principal Prepayments received in the Prepayment Period related to such Due Date). With respect to any Distribution Date and the Class 2-X Certificates, an amount equal to the aggregate of the Stated Principal Balances of the Non-Discount Mortgage Loans in Loan Group 2 as of the Due Date in the preceding calendar month (after giving effect to Principal Prepayments received in the Prepayment Period related to such Due Date).

I-16

<PAGE>

PSA CWHL 06-10.txt

Notional Amount Certificates: As specified in the Preliminary Statement.

Offered Certificates: As specified in the Preliminary Statement.

Officer's Certificate: A certificate (i) in the case of the Depositor, signed by the Chairman of the Board, the Vice Chairman of the Board, the President, a Managing Director, a Vice President (however denominated), an Assistant Vice President, the Treasurer, the Secretary, or one of the Assistant Treasurers or Assistant Secretaries of the Depositor, (ii) in the case of the Master Servicer, signed by the President, an Executive Vice President, a Vice President, an Assistant Vice President, the Treasurer, or one of the Assistant Treasurers or Assistant Secretaries of Countrywide GP, Inc., its general partner or (iii) if provided for in this Agreement, signed by a Servicing Officer, as the case may be, and delivered to the Depositor and the Trustee, as the case may be, as required by this Agreement or (iv) in the case of any other Person, signed by an authorized officer of such Person.

Opinion of Counsel: A written opinion of counsel, who may be counsel for a Seller, the Depositor or the Master Servicer, including, in-house counsel, reasonably acceptable to the Trustee; provided, however, that with respect to the interpretation or application of the REMIC Provisions, such counsel must (i) in fact be independent of a Seller, the Depositor and the Master Servicer, (ii) not have any direct financial interest in a Seller, the Depositor or the Master Servicer or in any affiliate thereof, and (iii) not be connected with a Seller, the Depositor or the Master Servicer as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Optional Termination: The termination of the trust created hereunder in connection with the purchase of the Mortgage Loans pursuant to Section 9.01(a) hereof.

Original Applicable Credit Support Percentage: With respect to each of the following Classes of Certificates, the corresponding percentage described below, as of the Closing Date:

<TABLE>
<CAPTION>
<S>                        <C>
Class M-1...................    4.00%
Class M-2...................    3.00%
Class B-1...................    1.40%
Class B-2...................    0.80%
Class B-3...................    0.50%
Class B-4...................    0.30%
Class B-5...................    0.15%
</TABLE>

Original Mortgage Loan: The mortgage loan refinanced in connection with the origination of a Refinancing Mortgage Loan.

Original Subordinate Principal Balance: On or prior to a Senior Termination Date, the Subordinated Percentage for a Loan Group of the aggregate of the applicable Non-PO Percentage of the Stated Principal Balances of the Mortgage Loans in such Loan Group, in each case as of the Cut-off Date; or if such date is after a Senior Termination Date, the aggregate of the Class Certificate Balances of the Subordinated Certificates as of the Closing Date.

OTS: The Office of Thrift Supervision.

Outside Reference Date: As to any Interest Accrual Period for the COFI Certificates, the close of business on the tenth day thereof.

Page 32

PSA CWHL 06-10.txt

I-17

<PAGE>

Outstanding: With respect to the Certificates as of any date of determination, all Certificates theretofore executed and authenticated under this Agreement except:

(i) Certificates theretofore canceled by the Trustee or delivered to the Trustee for cancellation; and

(ii) Certificates in exchange for which or in lieu of which other Certificates have been executed and delivered by the Trustee pursuant to this Agreement.

Outstanding Mortgage Loan: As of any Due Date, a Mortgage Loan with a Stated Principal Balance greater than zero, which was not the subject of a Principal Prepayment in Full prior to such Due Date or during the Prepayment Period related to such Due Date and which did not become a Liquidated Mortgage Loan prior to such Due Date.

Overcollateralized Group: As defined in Section 4.05.

Ownership Interest: As to any Residual Certificate, any ownership interest in such Certificate including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial.

Park Granada: Park Granada LLC, a Delaware limited liability company, and its successors and assigns, in its capacity as the seller of the Park Granada Mortgage Loans to the Depositor.

Park Granada Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule for which Park Granada is the applicable Seller.

Park Monaco: Park Monaco Inc., a Delaware corporation, and its successors and assigns, in its capacity as the seller of the Park Monaco Mortgage Loans to the Depositor.

Park Monaco Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule for which Park Monaco is the applicable Seller.

Park Sienna: Park Sienna LLC, a Delaware limited liability company, and its successors and assigns, in its capacity as the seller of the Park Sienna Mortgage Loans to the Depositor.

Park Sienna Mortgage Loans: The Mortgage Loans identified as such on the Mortgage Loan Schedule for which Park Sienna is the applicable Seller.

Pass-Through Rate: For any interest bearing Class of Certificates or Component, the per annum rate set forth or calculated in the manner described in the Preliminary Statement.

Percentage Interest: As to any Certificate, the percentage interest evidenced thereby in distributions required to be made on the related Class, such percentage interest being set forth on the face thereof or equal to the percentage obtained by dividing the Denomination of such Certificate by the aggregate of the Denominations of all Certificates of the same Class.

Performance Certification: As defined in Section 11.05.

Permitted Investments: At any time, any one or more of the following

PSA CWHL 06-10.txt

obligations and securities:

I-18

<PAGE>

(i) obligations of the United States or any agency thereof, provided such obligations are backed by the full faith and credit of the United States;

(ii) general obligations of or obligations guaranteed by any state of the United States or the District of Columbia receiving the highest long-term debt rating of each Rating Agency, or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the Certificates by each Rating Agency;

(iii) commercial or finance company paper which is then receiving the highest commercial or finance company paper rating of each Rating Agency, or such lower rating as will not result in the downgrading or withdrawal of the ratings then assigned to the Certificates by each Rating Agency;

(iv) certificates of deposit, demand or time deposits, or bankers' acceptances issued by any depository institution or trust company incorporated under the laws of the United States or of any state thereof and subject to supervision and examination by federal and/or state banking authorities, provided that the commercial paper and/or long term unsecured debt obligations of such depository institution or trust company (or in the case of the principal depository institution in a holding company system, the commercial paper or long-term unsecured debt obligations of such holding company, but only if Moody's is not a Rating Agency) are then rated one of the two highest long-term and the highest short-term ratings of each Rating Agency for such securities, or such lower ratings as will not result in the downgrading or withdrawal of the rating then assigned to the Certificates by either Rating Agency;

(v) repurchase obligations with respect to any security described in clauses (i) and (ii) above, in either case entered into with a depository institution or trust company (acting as principal) described in clause (iv) above;

(vi) units of a taxable money-market portfolio having the highest rating assigned by each Rating Agency (except if Fitch is a Rating Agency and has not rated the portfolio, the highest rating assigned by Moody's) and restricted to obligations issued or guaranteed by the United States of America or entities whose obligations are backed by the full faith and credit of the United States of America and repurchase agreements collateralized by such obligations; and

(vii) such other relatively risk free investments bearing interest or sold at a discount acceptable to each Rating Agency as will not result in the downgrading or withdrawal of the rating then assigned to the Certificates by either Rating Agency, as evidenced by a signed writing delivered by each Rating Agency

provided, that no such instrument shall be a Permitted Investment if such instrument evidences the right to receive interest only payments with respect to the obligations underlying such instrument.

PSA CWHL 06-10.txt
         Permitted Transferee: Any person other than (i) the United States,
any State or political subdivision thereof, or any agency or instrumentality of
any of the foregoing, (ii) a foreign government, International Organization or
any agency or instrumentality of either of the foregoing, (iii) an organization
(except certain farmers' cooperatives described in section 521 of the Code)
which is exempt from tax imposed by Chapter 1 of the Code (including the tax
imposed by section 511 of the Code on

                                    I-19


<PAGE>

unrelated business taxable income) on any excess inclusions (as defined in
section 860E(c)(l) of the Code) with respect to any Residual Certificate, (iv)
rural electric and telephone cooperatives described in section 1381(a)(2)(C) of
the Code, (v) an "electing large partnership" as defined in Section 775 of the
Code, (vi) a Person that is not a citizen or resident of the United States, a
corporation, partnership, or other entity created or organized in or under the
laws of the United States, any state thereof or the District of Columbia, or an
estate or trust whose income from sources without the United States is
includible in gross income for United States federal income tax purposes
regardless of its connection with the conduct of a trade or business within the
United States or a trust if a court within the United States is able to exercise
primary supervision over the administration of the trust and one or more United
States persons have the authority to control all substantial decisions of the
trust unless such Person has furnished the transferor and the Trustee with a
duly completed Internal Revenue Service Form W-8ECI or any applicable successor
form, and (vii) any other Person so designated by the Depositor based upon an
Opinion of Counsel that the Transfer of an Ownership Interest in a Residual
Certificate to such Person may cause any REMIC hereunder to fail to qualify as a
REMIC at any time that the Certificates are outstanding. The terms "United
States," "State" and "International Organization" shall have the meanings set
forth in section 7701 of the Code or successor provisions. A corporation will
not be treated as an instrumentality of the United States or of any State or
political subdivision thereof for these purposes if all of its activities are
subject to tax and, with the exception of the Federal Home Loan Mortgage
Corporation, a majority of its board of directors is not selected by such
government unit.

         Person: Any individual, corporation, partnership, joint venture,
limited liability company, association, joint-stock company, trust,
unincorporated organization or government, or any agency or political
subdivision thereof.

         Physical Certificate: As specified in the Preliminary Statement.

         Plan: An "employee benefit plan" as defined in section 3(3) of ERISA
that is subject to Title I of ERISA, a "plan" as defined in section 4975 of the
Code that is subject to section 4975 of the Code, or any Person investing on
behalf of or with plan assets (as defined in 29 CFR Section 2510.3-101 or
otherwise under ERISA) of such an employee benefit plan or plan.

         Planned Balance: With respect to any group of Planned Principal
Classes or Components in the aggregate and any Distribution Date appearing in
Schedule V hereto, the Aggregate Planned Balance for such group and Distribution
Date. With respect to any other Planned Principal Class or Component and any
Distribution Date appearing in Schedule V hereto, the applicable amount
appearing opposite such Distribution Date for such Class or Component.

         Planned Principal Classes: As specified in the Preliminary
Statement.

         PO Formula Principal Amount: As to any Distribution Date and related
                                    Page 35

PSA CWHL 06-10.txt

Class PO Component, the sum of (i) the sum of the applicable PO Percentage of (a) the principal portion of each Scheduled Payment (without giving effect to any reductions thereof caused by any Debt Service Reductions or Deficient Valuations) due on each Mortgage Loan in the related Loan Group on the related Due Date, (b) the Stated Principal Balance of each Mortgage Loan in the related Loan Group that was repurchased by a Seller or purchased by the Master Servicer pursuant to this Agreement as of such Distribution Date, (c) the Substitution Adjustment Amount in connection with any Deleted Mortgage Loan in the related Loan Group received with respect to such Distribution Date, (d) any Insurance Proceeds or Liquidation Proceeds allocable to recoveries of principal of Mortgage Loans in the related Loan Group that are not yet Liquidated Mortgage Loans received during the calendar month preceding the month of such Distribution Date, (e) with respect to each Mortgage Loan in the related Loan Group that became a Liquidated Mortgage Loan during the calendar month preceding the month of such

I-20

<PAGE>

Distribution Date, the amount of Liquidation Proceeds allocable to principal received with respect to such Mortgage Loan during the calendar month preceding the month of such Distribution Date with respect to such Mortgage Loan, and (f) all Principal Prepayments with respect to the Mortgage Loans in the related Loan Group received during the related Prepayment Period, (ii) with respect to Subsequent Recoveries attributable to a Discount Mortgage Loan in the related Loan Group which incurred a Realized Loss after the Senior Credit Support Depletion Date, the PO Percentage of any such Subsequent Recoveries on the Mortgage Loans in such Loan Group received during the calendar month preceding the month of such Distribution Date and (iii) in the case of the Class PO-1 Component, on the last Funding Period Distribution Date, the Remaining PO Pre-funding Amount.

PO Percentage: As to any Discount Mortgage Loan in a Loan Group, a fraction (expressed as a percentage) the numerator of which is the excess of the Required Coupon for such Loan Group over the Adjusted Net Mortgage Rate of such Discount Mortgage Loan and the denominator of which is such Required Coupon. As to any Non-Discount Mortgage Loan, 0%.

PO Sublimit: $500,534.

Pool Stated Principal Balance: As of any date of determination, the aggregate of the Stated Principal Balances of the Outstanding Mortgage Loans, plus amounts, if any, on deposit in the Pre-funding Account.

Pre-funding Account: The separate Eligible Account created and maintained by the Trustee pursuant to Section 3.05 in the name of the Trustee for the benefit of the Certificateholders and designated "The Bank of New York, in trust for registered holders of CHL Mortgage Loan Trust 2006-10, Mortgage Pass-Through Certificates, Series 2006-10." Funds in the Pre-funding Account shall be held in trust for the Certificateholders for the uses and purposes set forth in this Agreement and shall not be a part of any REMIC created hereunder; provided, however, that any investment income earned from Permitted Investments made with funds in the Pre-funding Account shall be for the account of the Depositor.

Pre-funded Amount: The amount deposited in the Pre-funding Account on the Closing Date, which shall equal $46,149,119.01.

Prepayment Charge: With respect to any Mortgage Loan, the charges or premiums, if any, due in connection with a full or partial Principal Prepayment of such Mortgage Loan within the related Prepayment Charge Period in accordance with the terms thereof.

PSA CWHL 06-10.txt

Prepayment Charge Amount: As to any Loan Group and Distribution Date, the sum of the Prepayment Charges collected on the Mortgage Loans in that Loan Group during the related Prepayment Period and any amounts in respect of such Mortgage Loans paid pursuant to Section 3.19 for such Distribution Date.

Prepayment Charge Period: With respect to any Mortgage Loan, the period of time during which a Prepayment Charge may be imposed.

Prepayment Interest Excess: As to any Principal Prepayment received by Countrywide Home Loans Servicing LP from the first day through the fifteenth day of any calendar month (other than the calendar month in which the Initial Cut-off Date occurs), all amounts paid by the related Mortgagor in respect of interest on such Principal Prepayment. All Prepayment Interest Excess shall be paid to the Master Servicer as additional master servicing compensation.

I-21

<PAGE>

Prepayment Interest Shortfall: As to any Distribution Date, Mortgage Loan and Principal Prepayment received on or after the sixteenth day of the month preceding the month of such Distribution Date (or, in the case of the first Distribution Date, on or after March 1, 2006) and on or before the last day of the month preceding the month of such Distribution Date, the amount, if any, by which one month's interest at the related Mortgage Rate, net of the Master Servicing Fee Rate, on such Principal Prepayment exceeds the amount of interest paid in connection with such Principal Prepayment.

Prepayment Period: As to any Distribution Date and the related Due Date, the period from the 16th day of the calendar month immediately preceding the month of such Distribution Date (or, in the case of the first Distribution Date, from March 1, 2006) through the 15th day of the calendar month of such Distribution Date.

Primary Insurance Policy: Each policy of primary mortgage guaranty insurance or any replacement policy therefor with respect to any Mortgage Loan.

Prime Rate: The prime commercial lending rate of The Bank of New York, as publicly announced to be in effect from time to time. The Prime Rate shall be adjusted automatically, without notice, on the effective date of any change in such prime commercial lending rate. The Prime Rate is not necessarily The Bank of New York's lowest rate of interest.

Principal Only Certificates: As specified in the Preliminary Statement.

Principal Prepayment: Any payment of principal by a Mortgagor on a Mortgage Loan that is received in advance of its scheduled Due Date and is not accompanied by an amount representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment. Partial Principal Prepayments shall be applied by the Master Servicer in accordance with the terms of the related Mortgage Note.

Principal Prepayment in Full: Any Principal Prepayment made by a Mortgagor of the entire principal balance of a Mortgage Loan.

Principal Relocation Payment: A payment from any Loan Group to an Lower Tier REMIC Regular Interest other than a Regular Interest corresponding to that Loan Group as provided in the Preliminary Statement. Principal Relocation Payments from a Loan Group shall be made of the amounts in respect of principal from the Mortgage Loans of the Loan Group and shall include a proportionate allocation of the Realized Losses from the Mortgage Loans of the Loan Group.

PSA CWHL 06-10.txt

Priority Amount: With respect to any Distribution Date, an amount equal to the sum of (i) the product of (A) the Scheduled Principal Distribution Amount for Loan Group 1, (B) the Shift Percentage and (C) the Priority Percentage and (ii) the product of (A) the Unscheduled Principal Distribution Amount for Loan Group 1, (B) the Shift Percentage and (C) the Priority Percentage.

Priority Percentage: With respect to any Distribution Date, the percentage equivalent of a fraction, the numerator of which is the aggregate Class Certificate Balance of the Class 1-A-8 and Class 1-A-9 Certificates immediately prior to such Distribution Date, and the denominator of which is the aggregate of the applicable Non-PO Percentage of the Stated Principal Balance of each Mortgage Loan in Loan Group 1 as of the Due Date in the month preceding the month of such Distribution Date (after giving effect to Principal Prepayments received in the Prepayment Period related to that prior Due Date).

Private Certificate: As specified in the Preliminary Statement.

I-22

<PAGE>

Pro Rata Share: As to any Distribution Date, the Subordinated Principal Distribution Amount and any Class of Subordinated Certificates, the portion of the Subordinated Principal Distribution Amount allocable to such Class, equal to the product of the Subordinated Principal Distribution Amount on such Distribution Date and a fraction, the numerator of which is the related Class Certificate Balance thereof and the denominator of which is the aggregate of the Class Certificate Balances of the Subordinated Certificates.

Proprietary Lease: With respect to any Cooperative Unit, a lease or occupancy agreement between a Cooperative Corporation and a holder of related Coop Shares.

Prospectus: The Prospectus dated March 28, 2006 generally relating to mortgage pass-through certificates to be sold by the Depositor.

Prospectus Supplement: The Prospectus Supplement dated March 29, 2006 relating to the Offered Certificates.

PUD: Planned Unit Development.

Purchase Price: With respect to any Mortgage Loan required to be purchased by a Seller pursuant to Section 2.02 or 2.03 hereof or purchased at the option of the Master Servicer pursuant to Section 3.11, an amount equal to the sum of (i) 100% of the unpaid principal balance of the Mortgage Loan on the date of such purchase, (ii) accrued interest thereon at the applicable Mortgage Rate (or at the applicable Adjusted Mortgage Rate if (x) the purchaser is the Master Servicer or (y) if the purchaser is Countrywide and Countrywide is an affiliate of the Master Servicer) from the date through which interest was last paid by the Mortgagor to the Due Date in the month in which the Purchase Price is to be distributed to Certificateholders and (iii) costs and damages incurred by the Trust Fund in connection with a repurchase pursuant to Section 2.03 hereof that arises out of a violation of any predatory or abusive lending law with respect to the related Mortgage Loan.

Qualified Insurer: A mortgage guaranty insurance company duly qualified as such under the laws of the state of its principal place of business and each state having jurisdiction over such insurer in connection with the insurance policy issued by such insurer, duly authorized and licensed in such states to transact a mortgage guaranty insurance business in such states and to write the insurance provided by the insurance policy issued by it, approved as a

PSA CWHL 06-10.txt
FNMA-approved mortgage insurer and having a claims paying ability rating of at least "AA" or equivalent rating by a nationally recognized statistical rating organization. Any replacement insurer with respect to a Mortgage Loan must have at least as high a claims paying ability rating as the insurer it replaces had on the Closing Date.

Rating Agency: Each of the Rating Agencies specified in the Preliminary Statement. If any such organization or a successor is no longer in existence, "Rating Agency" shall be such nationally recognized statistical rating organization, or other comparable Person, as is designated by the Depositor, notice of which designation shall be given to the Trustee. References herein to a given rating category of a Rating Agency shall mean such rating category without giving effect to any modifiers.

Realized Loss: With respect to each Liquidated Mortgage Loan, an amount (not less than zero or more than the Stated Principal Balance of the Mortgage Loan) as of the date of such liquidation, equal to (i) the Stated Principal Balance of the Liquidated Mortgage Loan as of the date of such liquidation, plus (ii) interest at the Adjusted Net Mortgage Rate from the Due Date as to which interest was last paid or advanced (and not reimbursed) to Certificateholders up to the Due Date in the month in which Liquidation Proceeds are required to be distributed on the Stated Principal Balance of such Liquidated Mortgage Loan from time to time, minus (iii) the Liquidation Proceeds, if any, received during

I-23

<PAGE>

the month in which such liquidation occurred, to the extent applied as recoveries of interest at the Adjusted Net Mortgage Rate and to principal of the Liquidated Mortgage Loan. With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, if the principal amount due under the related Mortgage Note has been reduced, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation. With respect to each Mortgage Loan which has become the subject of a Debt Service Reduction and any Distribution Date, the amount, if any, by which the principal portion of the related Scheduled Payment has been reduced.

To the extent the Master Servicer receives Subsequent Recoveries with respect to any Liquidated Mortgage Loan, the amount of the Realized Loss with respect to that Mortgage Loan will be reduced by such Subsequent Recoveries.

Recognition Agreement: With respect to any Cooperative Loan, an agreement between the Cooperative Corporation and the originator of such Mortgage Loan which establishes the rights of such originator in the Cooperative Property.

Record Date: As to any Distribution Date, the last Business Day of the month preceding the month of each Distribution Date.

Reference Bank: As defined in Section 4.08(b).

Refinancing Mortgage Loan: Any Mortgage Loan originated in connection with the refinancing of an existing mortgage loan.

Regular Certificates: As specified in the Preliminary Statement.

Regulation AB: Subpart 229.1100 - Asset Backed Securities (Regulation AB), 17 C.F.R. Sections 229.1100-229.1123, as such may be amended

PSA CWHL 06-10.txt

from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Relief Act: The Servicemembers Civil Relief Act.

Relief Act Reductions: With respect to any Distribution Date and any Mortgage Loan as to which there has been a reduction in the amount of interest collectible thereon for the most recently ended calendar month as a result of the application of the Relief Act or any similar state laws, the amount, if any, by which (i) interest collectible on such Mortgage Loan for the most recently ended calendar month is less than (ii) interest accrued thereon for such month pursuant to the Mortgage Note.

Remaining Non-PO Pre-funding Amount: With respect to the last Funding Period Distribution Date, the excess of the amount on deposit in the Pre-funding Account on such date over the Remaining PO Pre-funding Amount.

Remaining PO Pre-funding Amount: With respect to the last Funding Period Distribution Date, the excess of the PO Sublimit over the product of the applicable PO Percentage of the Stated Principal Balance of each Supplemental Mortgage Loan as of the related Supplemental Cut-off Date.

REMIC: A "real estate mortgage investment conduit" within the meaning of section 860D of the Code.

I-24

<PAGE>

REMIC Change of Law: Any proposed, temporary or final regulation, revenue ruling, revenue procedure or other official announcement or interpretation relating to REMICs and the REMIC Provisions issued after the Closing Date.

REMIC Provisions: Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and related provisions, and regulations promulgated thereunder, as the foregoing may be in effect from time to time as well as provisions of applicable state laws.

REO Property: A Mortgaged Property acquired by the Trust Fund through foreclosure or deed-in-lieu of foreclosure in connection with a defaulted Mortgage Loan.

Reportable Event: Any event required to be reported on Form 8-K and, in any event, the following:

(a) entry into a definitive agreement related to the Trust Fund, the Certificates or the Mortgage Loans, or an amendment to a Transaction Document, even if the Depositor is not a party to such agreement (e.g., a servicing agreement with a servicer contemplated by Item 1108(a)(3) of Regulation AB);

(b) termination of a Transaction Document (other than by expiration of the agreement on its stated termination date or as a result of all parties completing their obligations under such agreement), even if the Depositor is not a party to such agreement (e.g., a servicing agreement with a servicer contemplated by Item 1108(a)(3) of Regulation AB);

(c) with respect to the Master Servicer only, if the Master Servicer

PSA CWHL 06-10.txt

becomes aware of any bankruptcy or receivership with respect to Countrywide, the Depositor, the Master Servicer, any Subservicer, the Trustee, any enhancement or support provider contemplated by Items 1114(b) or 1115 of Regulation AB, or any other material party contemplated by Item 1101(d)(1) of Regulation AB;

(d) with respect to the Trustee, the Master Servicer and the Depositor only, the occurrence of an early amortization, performance trigger or other event, including an Event of Default under this Agreement;

(e) the resignation, removal, replacement, substitution of the Master Servicer, any Subservicer or the Trustee;

(f) with respect to the Master Servicer only, if the Master Servicer becomes aware that (i) any material enhancement or support specified in Item 1114(a)(1) through (3) of Regulation AB or Item 1115 of Regulation AB that was previously applicable regarding one or more Classes of the Certificates has terminated other than by expiration of the contract on its stated termination date or as a result of all parties completing their obligations under such agreement; (ii) any material enhancement specified in Item 1114(a)(1) through (3) of Regulation AB or Item 1115 of Regulation AB has been added with respect to one or more Classes of the Certificates; or (iii) any existing material enhancement or support specified in Item 1114(a)(1) through (3) of Regulation AB or Item 1115 of Regulation AB with respect to one or more Classes of the Certificates has been materially amended or modified; and

I-25

<PAGE>

(g) with respect to the Trustee, the Master Servicer and the Depositor only, a required distribution to Holders of the Certificates is not made as of the required Distribution Date under this Agreement.

Reporting Subcontractor: With respect to the Master Servicer or the Trustee, any Subcontractor determined by such Person pursuant to Section 11.08(b) to be "participating in the servicing function" within the meaning of Item 1122 of Regulation AB. References to a Reporting Subcontractor shall refer only to the Subcontractor of such Person and shall not refer to Subcontractors generally.

Request for Release: The Request for Release submitted by the Master Servicer to the Trustee, substantially in the form of Exhibits M and N, as appropriate.

Required Coupon: With respect to the Mortgage Loans in Loan Group 1, 6.00% per annum and with respect to the Mortgage Loans in Loan Group 2, 6.00% per annum.

Required Insurance Policy: With respect to any Mortgage Loan, any insurance policy that is required to be maintained from time to time under this Agreement.

Residual Certificates: As specified in the Preliminary Statement.

Responsible Officer: When used with respect to the Trustee, any Vice President, any Assistant Vice President, the Secretary, any Assistant Secretary, any Trust Officer or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and also to whom, with respect to a particular matter, such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

PSA CWHL 06-10.txt
Restricted Classes: As defined in Section 4.02(e).

S&P: Standard & Poor's, a division of The McGraw-Hill Companies, Inc. If S&P is designated as a Rating Agency in the Preliminary Statement, for purposes of Section 10.05(b) the address for notices to S&P shall be Standard & Poor's, 55 Water Street, New York, New York 10041, Attention: Mortgage Surveillance Monitoring, or such other address as S&P may hereafter furnish to the Depositor and the Master Servicer.

Sarbanes-Oxley Certification: As defined in Section 11.05.

Scheduled Balances: Not applicable.

Scheduled Classes: As specified in the Preliminary Statement.

Scheduled Payment: The scheduled monthly payment on a Mortgage Loan due on any Due Date allocable to principal and/or interest on such Mortgage Loan which, unless otherwise specified herein, shall give effect to any related Debt Service Reduction and any Deficient Valuation that affects the amount of the monthly payment due on such Mortgage Loan.

Scheduled Principal Distribution Amount: As to any Distribution Date, an amount equal to the Non-PO Percentage of all amounts described in subclauses (a) through (d) of clause (i) of the definition of Non-PO Formula Principal Amount for such Distribution Date.

Securities Act: The Securities Act of 1933, as amended.

I-26

<PAGE>

Seller: Countrywide, Park Granada, Park Monaco or Park Sienna, as applicable.

Senior Certificate Group: As specified in the Preliminary Statement.

Senior Certificates: As specified in the Preliminary Statement.

Senior Credit Support Depletion Date: The date on which the Class Certificate Balance of each Class of Subordinated Certificates has been reduced to zero.

Senior Percentage: As to any Senior Certificate Group and Distribution Date, the percentage equivalent of a fraction the numerator of which is the aggregate of the Class Certificate Balances of each Class of Senior Certificates of such Senior Certificate Group (other than the related Class PO Component, if any, and Notional Amount Certificates) immediately prior to such Distribution Date and the denominator of which is the aggregate of the applicable Non-PO Percentage of the Stated Principal Balance of each Mortgage Loan in the related Loan Group as of the Due Date occurring in the month prior to the month of such Distribution Date (after giving effect to Principal Prepayments received in the Prepayment Period related to such prior Due Date); provided, however, that on any Distribution Date after a Senior Termination Date, the Senior Percentage for the Senior Certificates of the remaining Senior Certificate Group is the percentage equivalent of a fraction, the numerator of which is the aggregate of the Class Certificate Balances of each such Class of Senior Certificates (other than the related Class PO Component, if any, and Notional Amount Certificates) of such remaining Senior Certificate Group immediately prior to such Distribution Date and the denominator is the aggregate of the Class Certificate Balances of all Classes of Certificates (other than the Class PO Certificates and the Notional Amount Certificates), immediately prior to such Distribution Date.

PSA CWHL 06-10.txt

Senior Prepayment Percentage: As to a Senior Certificate Group and any Distribution Date during the five years beginning on the first Distribution Date, 100%. The Senior Prepayment Percentage for any Distribution Date occurring on or after the fifth anniversary of the first Distribution Date will, except as provided herein, be as follows: for any Distribution Date in the first year thereafter, the related Senior Percentage plus 70% of the related Subordinated Percentage for such Distribution Date; for any Distribution Date in the second year thereafter, the related Senior Percentage plus 60% of the related Subordinated Percentage for such Distribution Date; for any Distribution Date in the third year thereafter, the related Senior Percentage plus 40% of the related Subordinated Percentage for such Distribution Date; for any Distribution Date in the fourth year thereafter, the related Senior Percentage plus 20% of the related Subordinated Percentage for such Distribution Date; and for any Distribution Date thereafter, the related Senior Percentage for such Distribution Date (unless on any Distribution Date the Senior Percentage exceeds the initial Senior Percentage of such Senior Certificate Group, in which case the Senior Prepayment Percentage for each Senior Certificate Group for such Distribution Date will once again equal 100%). Notwithstanding the foregoing, no decrease in any Senior Prepayment Percentage will occur unless both of the Senior Step Down Conditions are satisfied with respect to all of the Loan Groups.

Senior Principal Distribution Amount: As to any Distribution Date and Senior Certificate Group, the sum of (i) the related Senior Percentage of the applicable Non-PO Percentage of all amounts described in subclauses (a) through (d) of clause (i) of the definition of "Non-PO Formula Principal Amount" with respect to the related Loan Group for such Distribution Date, (ii) with respect to any Mortgage Loan in the related Loan Group that became a Liquidated Mortgage Loan during the calendar month preceding the month of such Distribution Date, the lesser of (x) the related Senior Percentage of the applicable Non-PO Percentage of the Stated Principal Balance of such Mortgage Loan and (y) the related Senior Prepayment Percentage of the applicable Non-PO Percentage of the amount of the Liquidation Proceeds allocable to principal received with respect to the Mortgage Loan and (iii) the sum

I-27

<PAGE>

of (x) the related Senior Prepayment Percentage of the applicable Non-PO Percentage of the amounts described in subclause (f) of clause (i) of the definition of "Non-PO Formula Principal Amount" with respect to the related Loan Group for such Distribution Date plus (y) in the case of the Group 1 Senior Certificates, on the last Funding Period Distribution Date, the amount, if any, of the Remaining Non-PO Pre-funding Amount plus (z) the related Senior Prepayment Percentage of any Subsequent Recoveries described in clause (ii) of the definition of "Non-PO Formula Principal Amount" for such Distribution Date ; provided, however, on any Distribution Date after a Senior Termination Date, the Senior Principal Distribution Amount for the remaining Senior Certificate Group will be calculated pursuant to the above formula based on all the Mortgage Loans in the Mortgage Pool, as opposed to the Mortgage Loans in the related Loan Group and, if such Distribution Date is a Senior Termination Date, shall be reduced by the amount of the principal distribution made pursuant to (a) if the Group 1 Senior Certificates are reduced to zero on such date, Section 4.02(a)(1)(iv)(y) and (b) if the Group 2 Senior Certificates are reduced to zero on such date, Section 4.02(a)(2)(iv)(y).

Senior Step Down Conditions: With respect to the Mortgage Loans in a Loan Group: (i) the outstanding principal balance of all Mortgage Loans delinquent 60 days or more (including Mortgage Loans in foreclosure, REO Property and Mortgage Loans the mortgagors of which are in bankruptcy) (averaged over the preceding six month period), as a percentage of (a) if such date is on or prior to a Senior Termination Date, the Subordinated Percentage for such Loan Group of the aggregate of the applicable Non-PO Percentage of the aggregate

PSA CWHL 06-10.txt

Stated Principal Balance of the Mortgage Loans in that Loan Group, or (b) if such date is after a Senior Termination Date, the aggregate Class Certificate Balance of the Subordinated Certificates, does not equal or exceed 50%, and (ii) cumulative Realized Losses on the Mortgage Loans in each Loan Group do not exceed: (a) commencing with the Distribution Date on the fifth anniversary of the first Distribution Date, 30% of the Original Subordinate Principal Balance, (b) commencing with the Distribution Date on the sixth anniversary of the first Distribution Date, 35% of the Original Subordinate Principal Balance, (c) commencing with the Distribution Date on the seventh anniversary of the first Distribution Date, 40% of the Original Subordinate Principal Balance, (d) commencing with the Distribution Date on the eighth anniversary of the first Distribution Date, 45% of the Original Subordinate Principal Balance, and (e) commencing with the Distribution Date on the ninth anniversary of the first Distribution Date, 50% of the Original Subordinate Principal Balance.

Senior Termination Date: For any Senior Certificate Group, the Distribution Date on which the aggregate Class Certificate Balance of the Senior Certificates in such Senior Certificate Group (other than the related Class PO Component) has been reduced to zero.

Servicing Advances: All customary, reasonable and necessary "out of pocket" costs and expenses incurred in the performance by the Master Servicer of its servicing obligations, including, but not limited to, the cost of (i) the preservation, restoration and protection of a Mortgaged Property, (ii) any expenses reimbursable to the Master Servicer pursuant to Section 3.11 and any enforcement or judicial proceedings, including foreclosures, (iii) the management and liquidation of any REO Property and (iv) compliance with the obligations under Section 3.09.

Servicing Criteria: The "servicing criteria" set forth in Item 1122(d) of Regulation AB.

Servicing Officer: Any officer of the Master Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and facsimile signature appear on a list of servicing officers furnished to the Trustee by the Master Servicer on the Closing Date pursuant to this Agreement, as such list may from time to time be amended.

Shift Percentage: For any Distribution Date occurring during the five years beginning on the first Distribution Date will equal 0%. For any Distribution Date thereafter, the Shift Percentage for

I-28

<PAGE>

any Distribution Date occurring on or after the fifth anniversary of the first Distribution Date will be as follows: for any Distribution Date in the first year thereafter, 30%; for any Distribution Date in the second year thereafter, 40%; for any Distribution Date in the third year thereafter, 60%; for any Distribution Date in the fourth year thereafter, 80%; and for any Distribution Date thereafter, 100%.

Startup Day: The Closing Date.

Stated Principal Balance: As to any Mortgage Loan and Due Date, the unpaid principal balance of such Mortgage Loan as of such Due Date, as specified in the amortization schedule at the time relating thereto (before any adjustment to such amortization schedule by reason of any moratorium or similar waiver or grace period) after giving effect to the sum of: (i) any previous partial Principal Prepayments and the payment of principal due on such Due Date, irrespective of any delinquency in payment by the related Mortgagor, and (ii) Liquidation Proceeds allocable to principal (other than with respect to any Liquidated Mortgage Loan) received in the prior calendar month and Principal

PSA CWHL 06-10.txt
Prepayments received through the last day of the related Prepayment Period, in each case, with respect to that Mortgage Loan.

Streamlined Documentation Mortgage Loan: Any Mortgage Loan originated pursuant to Countrywide's Streamlined Loan Documentation Program then in effect. For the purposes of this Agreement, a Mortgagor is eligible for a mortgage pursuant to Countrywide's Streamlined Loan Documentation Program if that Mortgagor is refinancing an existing mortgage loan that was originated or acquired by Countrywide where, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve-month period.

Subcontractor: Any vendor, subcontractor or other Person that is not responsible for the overall servicing (as "servicing" is commonly understood by participants in the mortgage-backed securities market) of Mortgage Loans but performs one or more discrete functions identified in Item 1122(d) of Regulation AB with respect to Mortgage Loans under the direction or authority of the Master Servicer or a Subservicer or the Trustee, as the case may be.

Subordinated Certificates: As specified in the Preliminary Statement.

Subordinated Percentage: As to any Loan Group and Distribution Date on or prior to a Senior Termination Date, 100% minus the Senior Percentage for the Senior Certificate Group relating to such Loan Group for such Distribution Date. As to any Distribution Date after a Senior Termination Date, 100% minus the Senior Percentage for such Distribution Date.

Subordinated Portion: For any Distribution Date, an amount equal to the aggregate Stated Principal Balance of the Mortgage Loans in the related Loan Group as of the end of the Prepayment Period related to the immediately preceding Distribution Date, minus the aggregate Class Certificate Balance of the related Senior Certificates immediately prior to such Distribution Date.

Subordinated Prepayment Percentage: As to any Distribution Date and Loan Group, 100% minus the related Senior Prepayment Percentage for such Distribution Date.

Subordinated Principal Distribution Amount: With respect to any Distribution Date and Loan Group, an amount equal to the excess of (A) the sum, not less than zero, of (i) the Subordinated Percentage of the applicable Non-PO Percentage for such Loan Group of all amounts described in subclauses (a) through (d) of clause (i) of the definition of "Non-PO Formula Principal Amount" for such Distribution Date, (ii) with respect to each Mortgage Loan that became a Liquidated Mortgage Loan during the calendar month preceding the month of such Distribution Date, the applicable Non-PO Percentage of the amount of the Liquidation Proceeds allocated to principal received with respect thereto remaining after application thereof pursuant to clause (ii) of the definition of Senior Principal Distribution Amount, up to the Subordinated Percentage for such Loan Group of the applicable Non-PO

I-29

<PAGE>

Percentage of the Stated Principal Balance of such Mortgage Loan, (iii) the Subordinated Prepayment Percentage of the applicable Non-PO Percentage of all amounts described in subclause (f) of clause (i) of the definition of "Non-PO Formula Principal Amount" for such Loan Group and Distribution Date, and (iv) the related Subordinated Prepayment Percentage of any Subsequent Recoveries described in clause (ii) of the definition of "Non-PO Formula Principal Amount" for such Distribution Date, over (B) the amount of any payments in respect of Class PO Deferred Amounts for the related Class PO Component on the related Distribution Date, , provided, however, that on any Distribution Date after a

PSA CWHL 06-10.txt

Senior Termination Date, the Subordinated Principal Distribution Amount will not be calculated by Loan Group but will equal the amount calculated pursuant to the formula set forth above based on the applicable Subordinated Percentage or Subordinated Prepayment Percentage, as applicable, for the Subordinated Certificates for such Distribution Date with respect to all of the Mortgage Loans as opposed to the Mortgage Loans in the related Loan Group.

Subordinate Pass-Through Rate: Not applicable.

Subsequent Recoveries: As to any Distribution Date, with respect to a Liquidated Mortgage Loan that resulted in a Realized Loss in a prior calendar month, unexpected amounts received by the Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.08) specifically related to such Liquidated Mortgage Loan.

Subservicer: Any person to whom the Master Servicer has contracted for the servicing of all or a portion of the Mortgage Loans pursuant to Section 3.02 hereof.

Substitute Mortgage Loan: A Mortgage Loan substituted by the applicable Seller for a Deleted Mortgage Loan which must, on the date of such substitution, as confirmed in a Request for Release, substantially in the form of Exhibit M, (i) have a Stated Principal Balance, after deduction of the principal portion of the Scheduled Payment due in the month of substitution, not in excess of, and not more than 10% less than the Stated Principal Balance of the Deleted Mortgage Loan; (ii) be accruing interest at a rate no lower than and not more than 1% per annum higher than, that of the Deleted Mortgage Loan; (iii) have a Loan-to-Value Ratio no higher than that of the Deleted Mortgage Loan; (iv) have a remaining term to maturity no greater than (and not more than one year less than that of) the Deleted Mortgage Loan; (v) not be a Cooperative Loan unless the Deleted Mortgage Loan was a Cooperative Loan and (vi) comply with each representation and warranty set forth in Section 2.03 hereof.

Substitution Adjustment Amount: The meaning ascribed to such term pursuant to Section 2.03.

Supplemental Cut-off Date: With respect to any Supplemental Mortgage Loan, the later of (i) the date of origination of such Mortgage Loan and (ii) the first day of the month in which the related Supplemental Transfer Date occurs.

Supplemental Mortgage Loan: Any Mortgage Loan other than an Initial Mortgage Loan conveyed to the Trust Fund pursuant to Section 2.01 hereof and to a Supplemental Transfer Agreement, which Mortgage Loan shall be listed on the revised Mortgage Loan Schedule delivered pursuant to this Agreement and on Schedule A to such Supplemental Transfer Agreement. When used with respect to a single Supplemental Transfer Date. Supplemental Mortgage Loan shall mean a Supplemental Mortgage Loan conveyed to the Trust Fund on that Supplemental Transfer Date.

I-30

<PAGE>

Supplemental Transfer Agreement: A Supplemental Transfer Agreement substantially in the form of Exhibit P hereto, executed and delivered by the related Seller or Sellers, the Master Servicer, the Depositor and the Trustee as provided in Section 2.01 hereof.

Supplemental Transfer Date: For any Supplemental Transfer Agreement, the date the related Supplemental Mortgage Loans are transferred to the Trust Fund pursuant to the related Supplemental Transfer Agreement.

Targeted Balance: With respect to any group of Targeted Principal

PSA CWHL 06-10.txt

Classes or Components in the aggregate and any Distribution Date appearing in Schedule V hereto, the Aggregate Targeted Balance for such group and Distribution Date. With respect to any other Targeted Principal Class or Component and any Distribution Date appearing in Schedule V hereto, the applicable amount appearing opposite such Distribution Date for such Class or Component.

Targeted Principal Classes: As specified in the Preliminary Statement.

Tax Matters Person: The person designated as "tax matters person" in the manner provided under Treasury regulation(SECTION) 1.860F-4(d) and Treasury regulation Section 301.6231(a)(7)-1. Initially, the Tax Matters Person shall be the Trustee.

Tax Matters Person Certificate: The Class A-R Certificate with a Denomination of $0.01.

Transaction Documents: This Agreement and any other document or agreement entered into in connection with the Trust Fund, the Certificates or the Mortgage Loans.

Transfer: Any direct or indirect transfer or sale of any Ownership Interest in a Residual Certificate.

Trust Fund: The corpus of the trust created hereunder consisting of (i) the Mortgage Loans and all interest and principal received on or with respect thereto after the Cut-off Date to the extent not applied in computing the Cut-off Date Principal Balance thereof; (ii) the Certificate Account, the Distribution Account, the Pre-funding Account and the Capitalized Interest Account, and all amounts deposited therein pursuant to the applicable provisions of this Agreement; (iii) property that secured a Mortgage Loan and has been acquired by foreclosure, deed-in-lieu of foreclosure or otherwise; and (iv) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing.

Trustee: The Bank of New York and its successors and, if a successor trustee is appointed hereunder, such successor.

Trustee Advance Rate: With respect to any Advance made by the Trustee pursuant to Section 4.01(b), a per annum rate of interest determined as of the date of such Advance equal to the Prime Rate in effect on such date plus 5.00%.

Trustee Fee: As to any Distribution Date, an amount equal to one-twelfth of the Trustee Fee Rate multiplied by the sum of (i) the Pool Stated Principal Balance and (ii) any amounts remaining in the Pre-funding Account (excluding any investment earnings thereon) with respect to such Distribution Date.

Trustee Fee Rate: With respect to each Mortgage Loan, 0.009% per annum.

I-31

<PAGE>

Undercollateralized Group: As defined in Section 4.05.

Underwriter's Exemption: Prohibited Transaction Exemption 2002-41, 67 Fed. Reg. 54487 (2002), as amended (or any successor thereto), or any substantially similar administrative exemption granted by the U.S. Department of Labor.

Underwriter: As specified in the Preliminary Statement.
Page 47

PSA CWHL 06-10.txt

Unscheduled Principal Distribution Amount: With respect to any Distribution Date, an amount equal to the sum of (i) with respect to each Mortgage Loan that became a Liquidated Mortgage Loan during the calendar month preceding the month of such Distribution Date, the applicable Non-PO Percentage of the Liquidation Proceeds allocable to principal received with respect to such Mortgage Loan and (ii) the applicable Non-PO Percentage of the amount described in subclause (f) of clause (i) of the definition of Non-PO Formula Principal Amount for such Distribution Date and (iii) any Subsequent Recoveries described in clause (ii) of the definition of Non-PO Formula Principal Amount for such Distribution Date.

Voting Rights: The portion of the voting rights of all of the Certificates which is allocated to any Certificate. As of any date of determination, (a) 1% of all Voting Rights shall be allocated to each Class of Notional Amount Certificates, if any (such Voting Rights to be allocated among the holders of Certificates of each such Class in accordance with their respective Percentage Interests), and (b) the remaining Voting Rights (or 100% of the Voting Rights if there is no Class of Notional Amount Certificates) shall be allocated among Holders of the remaining Classes of Certificates in proportion to the Certificate Balances of their respective Certificates on such date.

Yield Supplement Amount: Not applicable.

I-32

<PAGE>

ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
REPRESENTATIONS AND WARRANTIES

SECTION 2.01. Conveyance of Mortgage Loans.

(a) Each Seller, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Depositor, without recourse, all its respective right, title and interest in and to the related Initial Mortgage Loans, including all interest and principal received or receivable by such Seller, on or with respect to the applicable Initial Mortgage Loans after the Initial Cut-off Date and all interest and principal payments on the related Initial Mortgage Loans received prior to the Initial Cut-off Date in respect of installments of interest and principal due thereafter, but not including payments of principal and interest due and payable on such Initial Mortgage Loans, on or before the Initial Cut-off Date. On or prior to the Closing Date, Countrywide shall deliver to the Depositor or, at the Depositor's direction, to the Trustee or other designee of the Depositor, the Mortgage File for each Mortgage Loan listed in the Mortgage Loan Schedule (except that, in the case of the Delay Delivery Mortgage Loans (which may include Countrywide Mortgage Loans, Park Granada Mortgage Loans, Park Monaco Mortgage Loans and Park Sienna Mortgage Loans), such delivery may take place within thirty (30) days following the Closing Date or twenty (20) days following the applicable Supplemental Transfer Date, as applicable). Such delivery of the Mortgage Files shall be made against payment by the Depositor of the purchase price, previously agreed to by the Sellers and Depositor, for the Mortgage Loans. With respect to any Initial Mortgage Loan that does not have a first payment date on or before the Due Date in the month of the first Distribution Date or any Supplemental Mortgage Loan that does not have a first payment date on or before the Due Date in the month after the related Supplemental Transfer Date, Countrywide shall deposit into the Distribution Account on or before the Distribution Account Deposit Date relating to the first applicable Distribution Date, an amount equal to one month's interest at the related Adjusted Mortgage Rate on the Cut-off Date Principal Balance of such Mortgage Loan.

PSA CWHL 06-10.txt

(b) Immediately upon the conveyance of the Initial Mortgage Loans referred to in clause (a), the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund together with the Depositor's right to require each Seller to cure any breach of a representation or warranty made herein by such Seller or to repurchase or substitute for any affected Mortgage Loan in accordance herewith.

(c) In connection with the transfer and assignment set forth in clause (b) above, the Depositor has delivered or caused to be delivered to the Trustee (or, in the case of the Delay Delivery Mortgage Loans that are Initial Mortgage Loans, will deliver or cause to be delivered to the Trustee within thirty (30) days following the Closing Date and in the case of the Delay Delivery Mortgage Loans that are Supplemental Mortgage Loans, will deliver or cause to be delivered to the Trustee within twenty (20) days following the applicable Supplemental Transfer Date) for the benefit of the Certificateholders the following documents or instruments with respect to each Mortgage Loan so assigned:

(i) (A) the original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____ without recourse," with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); or

II-1

<PAGE>

(B) with respect to any Lost Mortgage Note, a lost note affidavit from Countrywide stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note;

(ii) except as provided below and for each Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage or a copy of such Mortgage certified by Countrywide as being a true and complete copy of the Mortgage (or, in the case of a Mortgage for which the related Mortgaged Property is located in the Commonwealth of Puerto Rico, a true copy of the Mortgage certified as such by the applicable notary) and in the case of each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded;

(iii) in the case of each Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage (which may be included in a blanket assignment or assignments), together with, except as provided below, all interim recorded assignments of such mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates); provided that, if the related Mortgage has not been returned from the applicable public recording office, such assignment of the Mortgage may exclude the information to be provided by the recording office; provided, further, that such assignment of Mortgage need not be delivered in the case of a Mortgage for which the related Mortgaged Property is located in the Commonwealth of Puerto Rico;

(iv) the original or copies of each assumption, modification, written assurance or substitution agreement, if any;

Page 49

PSA CWHL 06-10.txt

(v) except as provided below, the original or duplicate original lender's title policy or a printout of the electronic equivalent and all riders thereto; and

(vi) in the case of a Cooperative Loan, the originals of the following documents or instruments:

(A) The Coop Shares, together with a stock power in blank;

(B) The executed Security Agreement;

(C) The executed Proprietary Lease;

(D) The executed Recognition Agreement;

(E) The executed UCC-1 financing statement with evidence of recording thereon which have been filed in all places required to perfect the Seller's interest in the Coop Shares and the Proprietary Lease; and

(F) The executed UCC-3 financing statements or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken line from the mortgagee to the Trustee with evidence of recording thereon (or in a form suitable for recordation).

II-2

<PAGE>

In addition, in connection with the assignment of any MERS Mortgage Loan, each Seller agrees that it will cause, at the Trustee's expense, the MERS(R) System to indicate that the Mortgage Loans sold by such Seller to the Depositor have been assigned by that Seller to the Trustee in accordance with this Agreement (and any Supplemental Transfer Agreement, as applicable) for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS(R) System to identify the series of the Certificates issued in connection with such Mortgage Loans. Each Seller further agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the information referenced in this paragraph with respect to any Mortgage Loan sold by such Seller to the Depositor during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

In the event that in connection with any Mortgage Loan that is not a MERS Mortgage Loan the Depositor cannot deliver (a) the original recorded Mortgage, (b) all interim recorded assignments or (c) the lender's title policy (together with all riders thereto) satisfying the requirements of clause (ii), (iii) or (v) above, respectively, concurrently with the execution and delivery of this Agreement because such document or documents have not been returned from the applicable public recording office in the case of clause (ii) or (iii) above, or because the title policy has not been delivered to either the Master Servicer or the Depositor by the applicable title insurer in the case of clause (v) above, the Depositor shall promptly deliver to the Trustee, in the case of clause (ii) or (iii) above, such original Mortgage or such interim assignment, as the case may be, with evidence of recording indicated thereon upon receipt thereof from the public recording office, or a copy thereof, certified, if appropriate, by the relevant recording office, but in no event shall any such delivery of the original Mortgage and each such interim assignment or a copy thereof, certified, if appropriate, by the relevant recording office, be made later than one year following the Closing Date, or, in the case of clause (v) above, no later than 120 days following the Closing Date; provided, however, in the event the Depositor is unable to deliver by such date each Mortgage and each such interim assignment by reason of the fact that any such documents have not

PSA CWHL 06-10.txt
been returned by the appropriate recording office, or, in the case of each such
interim assignment, because the related Mortgage has not been returned by the
appropriate recording office, the Depositor shall deliver such documents to the
Trustee as promptly as possible upon receipt thereof and, in any event, within
720 days following the Closing Date. The Depositor shall forward or cause to be
forwarded to the Trustee (a) from time to time additional original documents
evidencing an assumption or modification of a Mortgage Loan and (b) any other
documents required to be delivered by the Depositor or the Master Servicer to
the Trustee. In the event that the original Mortgage is not delivered and in
connection with the payment in full of the related Mortgage Loan and the public
recording office requires the presentation of a "lost instruments affidavit and
indemnity" or any equivalent document, because only a copy of the Mortgage can
be delivered with the instrument of satisfaction or reconveyance, the Master
Servicer shall execute and deliver or cause to be executed and delivered such a
document to the public recording office. In the case where a public recording
office retains the original recorded Mortgage or in the case where a Mortgage is
lost after recordation in a public recording office, Countrywide shall deliver
to the Trustee a copy of such Mortgage certified by such public recording office
to be a true and complete copy of the original recorded Mortgage.

        As promptly as practicable subsequent to such transfer and
assignment, and in any event, within thirty (30) days thereafter, the Trustee
shall (i) as the assignee thereof, affix the following language to each
assignment of Mortgage: "CWMBS Series 2006-10, The Bank of New York, as
trustee", (ii) cause such assignment to be in proper form for recording in the
appropriate public office for real property records and (iii) cause to be
delivered for recording in the appropriate public office for real property
records the assignments of the Mortgages to the Trustee, except that, with
respect to any assignments of Mortgage as to which the Trustee has not received
the information required to prepare such assignment in recordable form, the
Trustee's obligation to do so and to deliver the same for such

                                    II-3

<PAGE>

recording shall be as soon as practicable after receipt of such information and
in any event within thirty (30) days after receipt thereof and that the Trustee
need not cause to be recorded any assignment which relates to a Mortgage Loan
(a) the Mortgaged Property and Mortgage File relating to which are located in
California or (b) in any other jurisdiction (including Puerto Rico) under the
laws of which in the opinion of counsel the recordation of such assignment is
not necessary to protect the Trustee's and the Certificateholders' interest in
the related Mortgage Loan.

        In the case of Mortgage Loans that have been prepaid in full as of
the Closing Date, the Depositor, in lieu of delivering the above documents to
the Trustee, will deposit in the Certificate Account the portion of such payment
that is required to be deposited in the Certificate Account pursuant to Section
3.05 hereof.

        Notwithstanding anything to the contrary in this Agreement, within
thirty (30) days after the Closing Date with respect to the Initial Mortgage
Loans, Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco
and Park Sienna) shall either (i) deliver to the Depositor, or at the
Depositor's direction, to the Trustee or other designee of the Depositor the
Mortgage File as required pursuant to this Section 2.01 for each Delay Delivery
Mortgage Loan or (ii) either (A) substitute a Substitute Mortgage Loan for the
Delay Delivery Mortgage Loan or (B) repurchase the Delay Delivery Mortgage Loan,
which substitution or repurchase shall be accomplished in the manner and subject
to the conditions set forth in Section 2.03 (treating each Delay Delivery
Mortgage Loan as a Deleted Mortgage Loan for purposes of such Section 2.03);
provided, however, that if Countrywide fails to deliver a Mortgage File for any
Delay Delivery Mortgage Loan within the thirty (30) day period provided in the

PSA CWHL 06-10.txt
prior sentence, Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) shall use its best reasonable efforts to effect a substitution, rather than a repurchase of, such Deleted Mortgage Loan and provided further that the cure period provided for in Section 2.02 or in Section 2.03 shall not apply to the initial delivery of the Mortgage File for such Delay Delivery Mortgage Loan, but rather Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) shall have five (5) Business Days to cure such failure to deliver. At the end of such thirty (30) day period the Trustee shall send a Delay Delivery Certification for the Delay Delivery Mortgage Loans delivered during such thirty (30) day period in accordance with the provisions of Section 2.02.

Notwithstanding anything to the contrary in this Agreement, within twenty (20) days after a Supplemental Transfer Date with respect to all of the Supplemental Mortgage Loans sold to the Depositor on such Supplemental Transfer Date, Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) shall either (i) deliver to the Depositor, or at the Depositor's direction, to the Trustee or other designee of the Depositor the Mortgage File as required pursuant to this Section 2.01 for each Delay Delivery Mortgage Loan or (ii) (A) substitute a Substitute Mortgage Loan for the Delay Delivery Mortgage Loan or (B) repurchase the Delay Delivery Mortgage Loan, which substitution or repurchase shall be accomplished in the manner and subject to the conditions set forth in Section 2.03 (treating each Delay Delivery Mortgage Loan as a Deleted Mortgage Loan for purposes of such Section 2.03); provided, however, that if Countrywide fails to deliver a Mortgage File for any Delay Delivery Mortgage Loan within the twenty (20) day period provided in the prior sentence, Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) shall use its best reasonable efforts to effect a substitution, rather than a repurchase of, such Deleted Mortgage Loan and provided further that the cure period provided for in Section 2.02 or in Section 2.03 shall not apply to the initial delivery of the Mortgage File for such Delay Delivery Mortgage Loan, but rather Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) shall have five (5) Business Days to cure such failure to deliver. At the end of such twenty (20) day period the Trustee shall send a Delay Delivery Certification for the Delay Delivery Mortgage Loans delivered during such twenty (20) day period in accordance with the provisions of Section 2.02.

II-4

<PAGE>

(d) Subject to the execution and delivery of the related Supplemental Transfer Agreement as provided in Section 2.01(e) hereof and the terms and conditions of this Agreement, each Seller sells, transfers, assigns, sets over and otherwise conveys to the Depositor, without recourse, on each Supplemental Transfer Date, with respect to each Supplemental Mortgage Loan sold by such Seller to the Depositor, all the right, title and interest of that Seller in and to the Supplemental Mortgage Loans sold by it identified in such Supplemental Transfer Agreement, including all interest and principal received and receivable by such Seller on or with respect to the related Supplemental Mortgage Loans on and after the related Supplemental Cut-off Date (to the extent not applied in computing the Cut-off Date Principal Balance thereof) or deposited into the Certificate Account by the related Seller, other than principal and interest due on such Supplemental Mortgage Loans prior to the related Supplemental Cut-off Date.

Immediately upon the conveyance of the Supplemental Mortgage Loans referred to in the preceding paragraph, the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for benefit of the Certificateholders, without recourse, all right title and interest in all of the Supplemental Mortgage Loans.

Each Seller has entered into this Agreement in consideration for the

PSA CWHL 06-10.txt
purchase of the Mortgage Loans sold by such Seller to the Depositor and has
agreed to take the actions specified herein. The Depositor, concurrently with
the execution and delivery of this Agreement, hereby sells, transfers, assigns
and otherwise conveys to the Trustee for the use and benefit of the
Certificateholders, without recourse, all right title and interest in the
portion of the Trust Fund not otherwise conveyed to the Trust Fund pursuant to
Sections 2.01(a) or (b).

        (e) Upon five (5) Business Days written notice to the Trustee, the
Depositor, the Master Servicer (if the Master Servicer is not a Seller) and the
Rating Agencies, on any other Business Day during the Funding Period designated
by Countrywide, Park Granada, Park Monaco and Park Sienna, if applicable, the
Depositor and the Trustee shall complete, execute and deliver a Supplemental
Transfer Agreement so long as no Rating Agency has provided notice that the
execution and delivery of such Supplemental Transfer Agreement will result in a
reduction or withdrawal of the any ratings assigned to the Certificates. After
the execution and delivery of such Supplemental Transfer Agreement, on the
Supplemental Transfer Date, the Trustee shall set aside in the Pre-funding
Account an amount equal to the Aggregate Supplemental Purchase Amount.

        The transfer of Supplemental Mortgage Loans and the other property
and rights relating to them on a Supplemental Transfer Date is subject to the
satisfaction of each of the following conditions:

        (i) each Supplemental Mortgage Loan conveyed on such Supplemental
Transfer Date satisfies the representations and warranties applicable to
it under this Agreement; provided, however, that with respect to a breach
of a representation and warranty with respect to a Supplemental Mortgage
Loan, the obligation under 2.03(c) of this Agreement of
Countrywide, Park Granada, Park Monaco and Park Sienna, if applicable, to
cure, repurchase or replace such Supplemental Mortgage Loan shall
constitute the sole remedy against such Seller respecting such breach
available to Certificateholders, the Depositor or the Trustee;

        (ii) the Trustee, each Underwriter and the Rating Agencies are
provided with an Opinion of Counsel or Opinions of Counsel with respect to
the tax treatment of the Trust Fund, to be delivered as provided pursuant
to Section 2.01(f);

        (iii) the Rating Agencies and each Underwriter are provided with an
Opinion of Counsel or Opinions of Counsel with respect to the validity of
the conveyance of the

                                    II-5

<PAGE>

        Supplemental Mortgage Loans conveyed on such Supplemental Transfer Date,
to be delivered as provided pursuant to Section 2.01(f);

        (iv) the execution and delivery of such Supplemental Transfer
Agreement or conveyance of the related Supplemental Mortgage Loans does
not result in a reduction or withdrawal of any ratings assigned to the
Certificates by the Rating Agencies;

        (v) the Supplemental Mortgage Loans conveyed on such Supplemental
Transfer Date were selected in a manner reasonably believed not to be
adverse to the interests of the Certificateholders;

        (vi) no Supplemental Mortgage Loan conveyed on such Supplemental
Transfer date was 30 or more days delinquent;

        (vii) the aggregate of the PO Percentages of the Stated Principal
Balance of all Supplemental Mortgage Loans shall not exceed the PO

PSA CWHL 06-10.txt

Sublimit;

(viii) following the conveyance of the Supplemental Mortgage Loans on such Supplemental Transfer Date to the Trust Fund, the characteristics of the Mortgage Loans will comply with the Pool Characteristics (including the permitted variances listed therein); provided, that for the purpose of making these calculations, the characteristics for any Initial Mortgage Loan made will be taken as of the Initial Cut-off Date and the characteristics for any Supplemental Mortgage Loan will be taken as of the related Supplemental Cut-off Date;

(ix) none of the Sellers or the Depositor shall be insolvent or shall be rendered insolvent as a result of such transfer; and

(x) the Depositor shall have delivered to the Trustee an Officer's Certificate confirming the satisfaction of each of these conditions precedent.

The Trustee shall not be required to investigate or otherwise verify compliance with these conditions, except for its own receipt of documents specified above, and shall be entitled to rely on the required Officer's Certificate.

(f) Within seven Business Days after each Supplemental Transfer Date, upon (1) delivery to the Trustee by the Depositor or Countrywide of the Opinions of Counsel referred to in Sections 2.01(e)(ii) and (iii), (2) delivery to the Trustee by Countrywide of a revised Mortgage Loan Schedule reflecting the Supplemental Mortgage Loans conveyed on such Supplemental Transfer Date and (3) delivery to the Trustee by the Depositor of an Officer's Certificate confirming the satisfaction of each of the conditions precedent set forth in this Section 2.01(f), the Trustee shall pay to each Seller the portion of the Aggregate Supplemental Transfer Amount used to purchase Supplemental Mortgage Loans from such Seller from those funds that were set aside in the Pre-funding Account pursuant to Section 2.01(e). The positive difference, if any, between the Aggregate Supplemental Transfer Amount and the Aggregate Supplemental Purchase Amount shall be reinvested by the Trustee in the Pre-funding Account.

(g) The Trustee shall not be required to investigate or otherwise verify compliance with the conditions set forth in the preceding paragraph, except for its own receipt of documents specified above, and shall be entitled to rely on the required Officer's Certificate.

Within thirty days after the final Supplemental Transfer Date, the Depositor shall deliver to the Trustee a letter of a nationally recognized firm of independent public accountants stating whether or

II-6

<PAGE>

not the Supplemental Mortgage Loans conveyed on such Supplemental Transfer Date conform to the characteristics in Section 2.01(e)(vi), (vii) and (viii).

(h) Neither the Depositor nor the Trust will acquire or hold any Mortgage Loan that would violate the representations made by Countrywide set forth in clause (47) of Schedule III-A hereto.

SECTION 2.02. Acceptance by Trustee of the Mortgage Loans.

(a) The Trustee acknowledges receipt of the documents identified in the Initial Certification in the form annexed hereto as Exhibit F-1 and declares that it holds and will hold such documents and the other documents delivered to it constituting the Mortgage Files, and that it holds or will hold such other assets as are included in the Trust Fund, in trust for the exclusive use and

PSA CWHL 06-10.txt
benefit of all present and future Certificateholders. The Trustee acknowledges
that it will maintain possession of the Mortgage Notes in the State of
California, unless otherwise permitted by the Rating Agencies.

        The Trustee agrees to execute and deliver on the Closing Date to the
Depositor, the Master Servicer and Countrywide (on its own behalf and on behalf
of Park Granada, Park Monaco and Park Sienna) an Initial Certification in the
form annexed hereto as Exhibit F-1. Based on its review and examination, and
only as to the documents identified in such Initial Certification, the Trustee
acknowledges that such documents appear regular on their face and relate to such
Mortgage Loan. The Trustee shall be under no duty or obligation to inspect,
review or examine said documents, instruments, certificates or other papers to
determine that the same are genuine, enforceable or appropriate for the
represented purpose or that they have actually been recorded in the real estate
records or that they are other than what they purport to be on their face.

        On or about the thirtieth (30th) day after the Closing Date, the
Trustee shall deliver to the Depositor, the Master Servicer and Countrywide (on
its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) a
Delay Delivery Certification with respect to the Initial Mortgage Loans in the
form annexed hereto as Exhibit G-1, with any applicable exceptions noted
thereon.

        Not later than 90 days after the Closing Date, the Trustee shall
deliver to the Depositor, the Master Servicer and Countrywide (on its own behalf
and on behalf of Park Granada, Park Monaco and Park Sienna) a Final
Certification with respect to the Initial Mortgage Loans in the form annexed
hereto as Exhibit H-1, with any applicable exceptions noted thereon. If, in the
course of such review, the Trustee finds any document constituting a part of a
Mortgage File which does not meet the requirements of Section 2.01, the Trustee
shall list such as an exception in the Final Certification; provided, however
that the Trustee shall not make any determination as to whether (i) any
endorsement is sufficient to transfer all right, title and interest of the party
so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note or
(ii) any assignment is in recordable form or is sufficient to effect the
assignment of and transfer to the assignee thereof under the mortgage to which
the assignment relates. Countrywide (on its own behalf and on behalf of Park
Granada, Park Monaco and Park Sienna) shall promptly correct or cure such defect
within 90 days from the date it was so notified of such defect and, if
Countrywide does not correct or cure such defect within such period, Countrywide
(on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna)
shall either (a) substitute for the related Mortgage Loan a Substitute Mortgage
Loan, which substitution shall be accomplished in the manner and subject to the
conditions set forth in Section 2.03, or (b) purchase such Mortgage Loan from
the Trustee within 90 days from the date Countrywide (on its own behalf and on
behalf of Park Granada, Park Monaco and Park Sienna) was notified of such defect
in writing at the Purchase Price of such Mortgage Loan; provided, however, that
in no event shall such substitution or purchase occur more than 540 days from
the Closing Date, except that if the substitution or purchase of a Mortgage Loan
pursuant to this provision is required by reason of a delay in delivery of any
documents by the appropriate recording office, and there is a

                                    II-7

<PAGE>

dispute between either the Master Servicer or Countrywide (on its own behalf and
on behalf of Park Granada, Park Monaco and Park Sienna) and the Trustee over the
location or status of the recorded document, then such substitution or purchase
shall occur within 720 days from the Closing Date. The Trustee shall deliver
written notice to each Rating Agency within 270 days from the Closing Date
indicating each Mortgage Loan (a) which has not been returned by the appropriate
recording office or (b) as to which there is a dispute as to location or status
of such Mortgage Loan. Such notice shall be delivered every 90 days thereafter

PSA CWHL 06-10.txt

until the related Mortgage Loan is returned to the Trustee. Any such substitution pursuant to (a) above or purchase pursuant to (b) above shall not be effected prior to the delivery to the Trustee of the Opinion of Counsel required by Section 2.05 hereof, if any, and any substitution pursuant to (a) above shall not be effected prior to the additional delivery to the Trustee of a Request for Release substantially in the form of Exhibit N. No substitution is permitted to be made in any calendar month after the Determination Date for such month. The Purchase Price for any such Mortgage Loan shall be deposited by Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) in the Certificate Account on or prior to the Distribution Account Deposit Date for the Distribution Date in the month following the month of repurchase and, upon receipt of such deposit and certification with respect thereto in the form of Exhibit N hereto, the Trustee shall release the related Mortgage File to Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) and shall execute and deliver at Countrywide's (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) request such instruments of transfer or assignment prepared by Countrywide, in each case without recourse, as shall be necessary to vest in Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna), or its designee, the Trustee's interest in any Mortgage Loan released pursuant hereto. If pursuant to the foregoing provisions Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) repurchases an Initial Mortgage Loan that is a MERS Mortgage Loan, the Master Servicer shall either (i) cause MERS to execute and deliver an assignment of the Mortgage in recordable form to transfer the Mortgage from MERS to Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) or its designee and shall cause such Mortgage to be removed from registration on the MERS(R) System in accordance with MERS' rules and regulations or (ii) cause MERS to designate on the MERS(R) System Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) or its designee as the beneficial holder of such Mortgage Loan.

          (b) Upon delivery of the Supplemental Mortgage Loans pursuant to a Supplemental Transfer Agreement, the Trustee shall acknowledge receipt of the documents identified in any Supplemental Certification in the form annexed hereto as Exhibit F-2 and declare that it will hold such documents and the other documents delivered to it constituting the Mortgage Files, and that it will hold such other assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders. The Trustee acknowledges that it will maintain possession of the Mortgage Notes in the State of California, unless otherwise permitted by the Rating Agencies.

          The Trustee agrees to execute and deliver on the Supplemental Transfer Date to the Depositor, the Master Servicer and Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) a Supplemental Certification in the form annexed hereto as Exhibit F-2. Based on its review and examination, and only as to the documents identified in such Supplemental Certification, the Trustee shall acknowledge that such documents appear regular on their face and relate to such Supplemental Mortgage Loan. The Trustee shall be under no duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face.

          On or about the twentieth (20th) day after the Supplemental Transfer Date, the Trustee shall deliver to the Depositor, the Master Servicer and Countrywide (on its own behalf and on behalf of

II-8

<PAGE>

Park Granada, Park Monaco and Park Sienna) a Delay Delivery Certification with

PSA CWHL 06-10.txt
respect to the Supplemental Mortgage Loans in the form annexed hereto as Exhibit
G-2, with any applicable exceptions noted thereon.

        Not later than 90 days after the final Supplemental Transfer Date,
the Trustee shall deliver to the Depositor, the Master Servicer and Countrywide
(on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) a
Final Certification with respect to the Supplemental Mortgage Loans in the form
annexed hereto as Exhibit H-2, with any applicable exceptions noted thereon.

        (c) If, in the course of such review of the Mortgage Files relating
to the Supplemental Mortgage Loans, the Trustee finds any document constituting
a part of a Mortgage File which does not meet the requirements of Section 2.01,
the Trustee shall list such as an exception in the Final Certification;
provided, however that the Trustee shall not make any determination as to
whether (i) any endorsement is sufficient to transfer all right, title and
interest of the party so endorsing, as noteholder or assignee thereof, in and to
that Mortgage Note or (ii) any assignment is in recordable form or is sufficient
to effect the assignment of and transfer to the assignee thereof under the
mortgage to which the assignment relates. Countrywide (on its own behalf and on
behalf of Park Granada, Park Monaco and Park Sienna) shall promptly correct or
cure such defect within 90 days from the date it was so notified of such defect
and, if Countrywide does not correct or cure such defect within such period,
Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and
Park Sienna) shall either (a) substitute for the related Mortgage Loan a
Substitute Mortgage Loan, which substitution shall be accomplished in the manner
and subject to the conditions set forth in Section 2.03, or (b) purchase such
Mortgage Loan from the Trustee within 90 days from the date Countrywide (on its
own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) was
notified of such defect in writing at the Purchase Price of such Mortgage Loan;
provided, however, that in no event shall such substitution or purchase occur
more than 540 days from the Closing Date, except that if the substitution or
purchase of a Mortgage Loan pursuant to this provision is required by reason of
a delay in delivery of any documents by the appropriate recording office, and
there is a dispute between either the Master Servicer or Countrywide (on its own
behalf and on behalf of Park Granada, Park Monaco and Park Sienna) and the
Trustee over the location or status of the recorded document, then such
substitution or purchase shall occur within 720 days from the Closing Date. The
Trustee shall deliver written notice to each Rating Agency within 270 days from
the Closing Date indicating each Mortgage Loan (a) which has not been returned
by the appropriate recording office or (b) as to which there is a dispute as to
location or status of such Mortgage Loan. Such notice shall be delivered every
90 days thereafter until the related Mortgage Loan is returned to the Trustee.
Any such substitution pursuant to (a) above or purchase pursuant to (b) above
shall not be effected prior to the delivery to the Trustee of the Opinion of
Counsel required by Section 2.05 hereof, if any, and any substitution pursuant
to (a) above shall not be effected prior to the additional delivery to the
Trustee of a Request for Release substantially in the form of Exhibit N. No
substitution is permitted to be made in any calendar month after the
Determination Date for such month. The Purchase Price for any such Mortgage Loan
shall be deposited by Countrywide (on its own behalf and on behalf of Park
Granada, Park Monaco and Park Sienna) in the Certificate Account on or prior to
the Distribution Account Deposit Date for the Distribution Date in the month
following the month of repurchase and, upon receipt of such deposit and
certification with respect thereto in the form of Exhibit N hereto, the Trustee
shall release the related Mortgage File to Countrywide (on its own behalf and on
behalf of Park Granada, Park Monaco and Park Sienna) and shall execute and
deliver at Countrywide's (on its own behalf and on behalf of Park Granada, Park
Monaco and Park Sienna) request such instruments of transfer or assignment
prepared by Countrywide, in each case without recourse, as shall be necessary to
vest in Countrywide (on its own behalf and on behalf of Park Granada, Park
Monaco and Park Sienna), or a designee, the Trustee's interest in any Mortgage
Loan released pursuant hereto. If pursuant to the foregoing provisions
Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and

PSA CWHL 06-10.txt
Park Sienna) repurchases a Supplemental Mortgage Loan that is a MERS Mortgage Loan, the Master Servicer shall

II-9

<PAGE>

either (i) cause MERS to execute and deliver an assignment of the Mortgage in recordable form to transfer the Mortgage from MERS to Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) and shall cause such Mortgage to be removed from registration on the MERS(R) System in accordance with MERS' rules and regulations or (ii) cause MERS to designate on the MERS(R) System Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) or its designee as the beneficial holder of such Mortgage Loan.

(d) The Trustee shall retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions set forth herein. The Master Servicer shall promptly deliver to the Trustee, upon the execution or receipt thereof, the originals of such other documents or instruments constituting the Mortgage File as come into the possession of the Master Servicer from time to time.

(e) It is understood and agreed that the respective obligations of each Seller to substitute for or to purchase any Mortgage Loan sold to the Depositor by it which does not meet the requirements of Section 2.01 above shall constitute the sole remedy respecting such defect available to the Trustee, the Depositor and any Certificateholder against that Seller.

(f) [Reserved].

(g) [Reserved].

(h) Neither the Depositor nor the Trust will acquire or hold any Mortgage Loan that would violate the representations made by Countrywide set forth in clauses (50) and (51) of Schedule III-A hereto.

SECTION 2.03. Representations, Warranties and Covenants of the Sellers and  Master Servicer.

(a) Countrywide hereby makes the representations and warranties set forth in (i) Schedule II-A, Schedule II-B, Schedule II-C and Schedule II-D hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, (ii) Schedule III-A hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if so specified therein, as of the Initial Cut-off Date with respect to all of the Initial Mortgage Loans and as of the related Supplemental Cut-off Date with respect to all of the Supplemental Mortgage Loans, and (iii) Schedule III-B hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if so specified therein, as of the Initial Cut-off Date with respect to the Initial Mortgage Loans that are Countrywide Mortgage Loans and as of the related Supplemental Cut-off Date with respect to the Supplemental Mortgage Loans. Park Granada hereby makes the representations and warranties set forth in (i) Schedule II-B hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date and (ii) Schedule III-C hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if so specified therein, as of the Initial Cut-off Date with respect to the Initial Mortgage Loans that are Park Granada Mortgage Loans and as of the related Supplemental Cut-off Date with respect to the Supplemental Mortgage Loans that are Park Granada Mortgage Loans. Park Monaco hereby makes the representations and warranties set forth in (i) Schedule II-C hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as

PSA CWHL 06-10.txt
of the Closing Date and (ii) Schedule III-D hereto, and by this reference
incorporated herein, to the Depositor, the Master Servicer and the Trustee, as
of the Closing Date, or if so specified therein, as of the Initial Cut-off Date
with respect to the Initial Mortgage Loans that are Park Monaco Mortgage Loans
as of the related Supplemental Cut-off Date with respect to the Supplemental
Mortgage


                                    II-10

<PAGE>

Loans that are Park Monaco Mortgage Loans. Park Sienna hereby makes the
representations and warranties set forth in (i) Schedule II-D hereto, and by
this reference incorporated herein, to the Depositor, the Master Servicer and
the Trustee, as of the Closing Date and (ii) Schedule III-E hereto, and by this
reference incorporated herein, to the Depositor, the Master Servicer and the
Trustee, as of the Closing Date, or if so specified therein, as of the Initial
Cut-off Date with respect to the Initial Mortgage Loans that are Park Sienna
Mortgage Loans and as of the related Supplemental Cut-off Date with respect to
the Supplemental Mortgage Loans that are Park Sienna Mortgage Loans.

          (b) The Master Servicer hereby makes the representations and
warranties set forth in Schedule IV hereto, and by this reference incorporated
herein, to the Depositor and the Trustee, as of the Closing Date.

          (c) Upon discovery by any of the parties hereto of a breach of a
representation or warranty with respect to a Mortgage Loan made pursuant to
Section 2.03(a) or a breach of representation or warranty with respect to a
Supplemental Mortgage Loan under Section 2.01(e)(i) that materially and
adversely affects the interests of the Certificateholders in that Mortgage Loan,
the party discovering such breach shall give prompt notice thereof to the other
parties. Each Seller hereby covenants that within 90 days of the earlier of its
discovery or its receipt of written notice from any party of a breach of any
representation or warranty with respect to a Mortgage Loan sold by it pursuant
to Section 2.03(a) and with respect to a breach of a representation and warranty
with respect to a Supplemental Mortgage Loan sold by it under Section 2.01(e)(i)
which materially and adversely affects the interests of the Certificateholders
in that Mortgage Loan, it shall cure such breach in all material respects, and
if such breach is not so cured, shall, (i) if such 90-day period expires prior
to the second anniversary of the Closing Date, remove such Mortgage Loan (a
"Deleted Mortgage Loan") from the Trust Fund and substitute in its place a
Substitute Mortgage Loan, in the manner and subject to the conditions set forth
in this Section; or (ii) repurchase the affected Mortgage Loan or Mortgage Loans
from the Trustee at the Purchase Price in the manner set forth below; provided,
however, that any such substitution pursuant to (i) above shall not be effected
prior to the delivery to the Trustee of the Opinion of Counsel required by
Section 2.05 hereof, if any, and any such substitution pursuant to (i) above
shall not be effected prior to the additional delivery to the Trustee of a
Request for Release substantially in the form of Exhibit N and the Mortgage File
for any such Substitute Mortgage Loan. The Seller repurchasing a Mortgage Loan
pursuant to this Section 2.03(c) shall promptly reimburse the Master Servicer
and the Trustee for any expenses reasonably incurred by the Master Servicer or
the Trustee in respect of enforcing the remedies for such breach. With respect
to the representations and warranties described in this Section which are made
to the best of a Seller's knowledge, if it is discovered by either the
Depositor, a Seller or the Trustee that the substance of such representation and
warranty is inaccurate and such inaccuracy materially and adversely affects the
value of the related Mortgage Loan or the interests of the Certificateholders
therein, notwithstanding that Seller's lack of knowledge with respect to the
substance of such representation or warranty, such inaccuracy shall be deemed a
breach of the applicable representation or warranty.

          With respect to any Substitute Mortgage Loan or Loans, sold to the

PSA CWHL 06-10.txt
Depositor by a Seller, Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) shall deliver to the Trustee for the benefit of the Certificateholders the Mortgage Note, the Mortgage, the related assignment of the Mortgage, and such other documents and agreements as are required by Section 2.01, with the Mortgage Note endorsed and the Mortgage assigned as required by Section 2.01. No substitution is permitted to be made in any calendar month after the Determination Date for such month. Scheduled Payments due with respect to Substitute Mortgage Loans in the month of substitution shall not be part of the Trust Fund and will be retained by the related Seller on the next succeeding Distribution Date. For the month of substitution, distributions to Certificateholders will include the monthly payment due on any Deleted Mortgage Loan for such month and thereafter that Seller shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Master Servicer shall amend the

II-11

<PAGE>

Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the substitution of the Substitute Mortgage Loan or Loans and the Master Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee. Upon such substitution, the Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement in all respects, and the related Seller shall be deemed to have made with respect to such Substitute Mortgage Loan or Loans, as of the date of substitution, the representations and warranties made pursuant to Section 2.03(a) with respect to such Mortgage Loan. Upon any such substitution and the deposit to the Certificate Account of the amount required to be deposited therein in connection with such substitution as described in the following paragraph, the Trustee shall release the Mortgage File held for the benefit of the Certificateholders relating to such Deleted Mortgage Loan to the related Seller and shall execute and deliver at such Seller's direction such instruments of transfer or assignment prepared by Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna), in each case without recourse, as shall be necessary to vest title in that Seller, or its designee, the Trustee's interest in any Deleted Mortgage Loan substituted for pursuant to this Section 2.03.

        For any month in which a Seller substitutes one or more Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer will determine the amount (if any) by which the aggregate principal balance of all Substitute Mortgage Loans sold to the Depositor by that Seller as of the date of substitution is less than the aggregate Stated Principal Balance of all Deleted Mortgage Loans repurchased by that Seller (after application of the scheduled principal portion of the monthly payments due in the month of substitution). The amount of such shortage (the "Substitution Adjustment Amount") plus an amount equal to the aggregate of any unreimbursed Advances with respect to such Deleted Mortgage Loans shall be deposited in the Certificate Account by Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) on or before the Distribution Account Deposit Date for the Distribution Date in the month succeeding the calendar month during which the related Mortgage Loan became required to be purchased or replaced hereunder.

        In the event that a Seller shall have repurchased a Mortgage Loan, the Purchase Price therefor shall be deposited in the Certificate Account pursuant to Section 3.05 on or before the Distribution Account Deposit Date for the Distribution Date in the month following the month during which that Seller became obligated hereunder to repurchase or replace such Mortgage Loan and upon such deposit of the Purchase Price, the delivery of the Opinion of Counsel required by Section 2.05 and receipt of a Request for Release in the form of Exhibit N hereto, the Trustee shall release the related Mortgage File held for the benefit of the Certificateholders to such Person, and the Trustee shall execute and deliver at such Person's direction such instruments of transfer or

PSA CWHL 06-10.txt

assignment prepared by such Person, in each case without recourse, as shall be necessary to transfer title from the Trustee. It is understood and agreed that the obligation under this Agreement of any Person to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred and is continuing shall constitute the sole remedy against such Persons respecting such breach available to Certificateholders, the Depositor or the Trustee on their behalf.

The representations and warranties made pursuant to this Section 2.03 shall survive delivery of the respective Mortgage Files to the Trustee for the benefit of the Certificateholders.

SECTION 2.04. Representations and Warranties of the Depositor as to the Mortgage Loans.

The Depositor hereby represents and warrants to the Trustee with respect to each Mortgage Loan as of the date hereof or such other date set forth herein that as of the Closing Date, and following the transfer of the Initial Mortgage Loans to it by each Seller, the Depositor had good title to the Initial Mortgage Loans and the Mortgage Notes were subject to no offsets, defenses or counterclaims.

II-12

<PAGE>

The Depositor hereby assigns, transfers and conveys to the Trustee all of its rights with respect to the Mortgage Loans including, without limitation, the representations and warranties of each Seller made pursuant to Section 2.03(a)(ii) hereof, together with all rights of the Depositor to require each Seller to cure any breach thereof or to repurchase or substitute for any affected Mortgage Loan in accordance with this Agreement.

It is understood and agreed that the representations and warranties set forth in this Section 2.04 shall survive delivery of the Mortgage Files to the Trustee. Upon discovery by the Depositor or the Trustee of a breach of any of the foregoing representations and warranties set forth in this Section 2.04 (referred to herein as a "breach"), which breach materially and adversely affects the interest of the Certificateholders, the party discovering such breach shall give prompt written notice to the others and to each Rating Agency.

SECTION 2.05. Delivery of Opinion of Counsel in Connection with Substitutions.

(a) Notwithstanding any contrary provision of this Agreement, no substitution pursuant to Section 2.02 or Section 2.03 shall be made more than 90 days after the Closing Date unless Countrywide delivers to the Trustee an Opinion of Counsel, which Opinion of Counsel shall not be at the expense of either the Trustee or the Trust Fund, addressed to the Trustee, to the effect that such substitution will not (i) result in the imposition of the tax on "prohibited transactions" on the Trust Fund or contributions after the Startup Date, as defined in Sections 860F(a)(2) and 860G(d) of the Code, respectively, or (ii) cause each REMIC created hereunder to fail to qualify as a REMIC at any time that any Certificates are outstanding.

(b) Upon discovery by the Depositor, a Seller, the Master Servicer, or the Trustee that any Mortgage Loan does not constitute a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code, the party discovering such fact shall promptly (and in any event within five (5) Business Days of discovery) give written notice thereof to the other parties. In connection therewith, the Trustee shall require Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna), at its option, to either (i) substitute, if the conditions in Section 2.03(c) with respect to substitutions are satisfied, a Substitute Mortgage Loan for the affected Mortgage Loan, or (ii) repurchase the affected Mortgage Loan within 90 days of

PSA CWHL 06-10.txt

such discovery in the same manner as it would a Mortgage Loan for a breach of representation or warranty made pursuant to Section 2.03. The Trustee shall reconvey to Countrywide the Mortgage Loan to be released pursuant hereto in the same manner, and on the same terms and conditions, as it would a Mortgage Loan repurchased for breach of a representation or warranty contained in Section 2.03.

SECTION 2.06. Execution and Delivery of Certificates.

The Trustee acknowledges the transfer and assignment to it of the Trust Fund and, concurrently with such transfer and assignment, has executed and delivered to or upon the order of the Depositor, the Certificates in authorized denominations evidencing directly or indirectly the entire ownership of the Trust Fund. The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates and to perform the duties set forth in this Agreement, to the end that the interests of the Holders of the Certificates may be adequately and effectively protected.

SECTION 2.07. REMIC Matters.

The Preliminary Statement sets forth the designations and "latest possible maturity date" for federal income tax purposes of all interests created hereby. The "Startup Day" for purposes of the

II-13

<PAGE>

REMIC Provisions shall be the Closing Date. The "tax matters person" with respect to each REMIC hereunder shall be the Trustee and the Trustee shall hold the Tax Matters Person Certificate. Each REMIC's fiscal year shall be the calendar year.

SECTION 2.08. Covenants of the Master Servicer.

The Master Servicer hereby covenants to the Depositor and the Trustee as follows:

(a) the Master Servicer shall comply in the performance of its obligations under this Agreement with all reasonable rules and requirements of the insurer under each Required Insurance Policy; and

(b) no written information, certificate of an officer, statement furnished in writing or written report delivered to the Depositor, any affiliate of the Depositor or the Trustee and prepared by the Master Servicer pursuant to this Agreement will contain any untrue statement of a material fact or omit to state a material fact necessary to make such information, certificate, statement or report not misleading.

II-14

<PAGE>

ARTICLE III

ADMINISTRATION AND SERVICING
OF MORTGAGE LOANS

SECTION 3.01. Master Servicer to Service Mortgage Loans.

For and on behalf of the Certificateholders, the Master Servicer shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and customary and usual standards of practice of prudent mortgage loan servicers. In connection with such servicing and administration, the Master

PSA CWHL_06-10.txt
Servicer shall have full power and authority, acting alone and/or through
Subservicers as provided in Section 3.02 hereof, subject to the terms hereof (i)
to execute and deliver, on behalf of the Certificateholders and the Trustee,
customary consents or waivers and other instruments and documents, (ii) to
consent to transfers of any Mortgaged Property and assumptions of the Mortgage
Notes and related Mortgages (but only in the manner provided in this Agreement),
(iii) to collect any Insurance Proceeds and other Liquidation Proceeds (which,
for the purpose of this Section, includes any Subsequent Recoveries), and (iv)
to effectuate foreclosure or other conversion of the ownership of the Mortgaged
Property securing any Mortgage Loan; provided that the Master Servicer shall not
take any action that is inconsistent with or prejudices the interests of the
Trust Fund or the Certificateholders in any Mortgage Loan or the rights and
interests of the Depositor, the Trustee and the Certificateholders under this
Agreement. The Master Servicer shall represent and protect the interests of the
Trust Fund in the same manner as it protects its own interests in mortgage loans
in its own portfolio in any claim, proceeding or litigation regarding a Mortgage
Loan, and shall not make or permit any modification, waiver or amendment of any
Mortgage Loan which would cause any REMIC created hereunder to fail to qualify
as a REMIC or result in the imposition of any tax under Section 860F(a) or
Section 860G(d) of the Code. Without limiting the generality of the foregoing,
the Master Servicer, in its own name or in the name of the Depositor and the
Trustee, is hereby authorized and empowered by the Depositor and the Trustee,
when the Master Servicer believes it appropriate in its reasonable judgment, to
execute and deliver, on behalf of the Trustee, the Depositor, the
Certificateholders or any of them, any and all instruments of satisfaction or
cancellation, or of partial or full release or discharge and all other
comparable instruments, with respect to the Mortgage Loans, and with respect to
the Mortgaged Properties held for the benefit of the Certificateholders. The
Master Servicer shall prepare and deliver to the Depositor and/or the Trustee
such documents requiring execution and delivery by either or both of them as are
necessary or appropriate to enable the Master Servicer to service and administer
the Mortgage Loans to the extent that the Master Servicer is not permitted to
execute and deliver such documents pursuant to the preceding sentence. Upon
receipt of such documents, the Depositor and/or the Trustee shall execute such
documents and deliver them to the Master Servicer. The Master Servicer further
is authorized and empowered by the Trustee, on behalf of the Certificateholders
and the Trustee, in its own name or in the name of the Subservicer, when the
Master Servicer or the Subservicer, as the case may be, believes it appropriate
in its best judgment to register any Mortgage Loan on the MERS(R) System, or
cause the removal from the registration of any Mortgage Loan on the MERS(R)
System, to execute and deliver, on behalf of the Trustee and the
Certificateholders or any of them, any and all instruments of assignment and
other comparable instruments with respect to such assignment or re-recording of
a Mortgage in the name of MERS, solely as nominee for the Trustee and its
successors and assigns.

     In accordance with the standards of the preceding paragraph, the
Master Servicer shall advance or cause to be advanced funds as necessary for the
purpose of effecting the payment of taxes and assessments on the Mortgaged
Properties, which advances shall be reimbursable in the first instance from
related collections from the Mortgagors pursuant to Section 3.06, and further as
provided in Section 3.08. The costs incurred by the Master Servicer, if any, in
effecting the timely payments of taxes and assessments on the Mortgaged
Properties and related insurance premiums shall not, for the purpose of

                                III-1

<PAGE>

calculating monthly distributions to the Certificateholders, be added to the
Stated Principal Balances of the related Mortgage Loans, notwithstanding that
the terms of such Mortgage Loans so permit.

          SECTION 3.02. Subservicing; Enforcement of the Obligations of

PSA CWHL 06-10.txt
Subservicers.

(a) The Master Servicer may arrange for the subservicing of any Mortgage Loan by a Subservicer pursuant to a subservicing agreement; provided, however, that such subservicing arrangement and the terms of the related subservicing agreement must provide for the servicing of such Mortgage Loans in a manner consistent with the servicing arrangements contemplated hereunder. Unless the context otherwise requires, references in this Agreement to actions taken or to be taken by the Master Servicer in servicing the Mortgage Loans include actions taken or to be taken by a Subservicer on behalf of the Master Servicer. Notwithstanding the provisions of any subservicing agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Master Servicer and a Subservicer or reference to actions taken through a Subservicer or otherwise, the Master Servicer shall remain obligated and liable to the Depositor, the Trustee and the Certificateholders for the servicing and administration of the Mortgage Loans in accordance with the provisions of this Agreement without diminution of such obligation or liability by virtue of such subservicing agreements or arrangements or by virtue of indemnification from the Subservicer and to the same extent and under the same terms and conditions as if the Master Servicer alone were servicing and administering the Mortgage Loans. All actions of each Subservicer performed pursuant to the related subservicing agreement shall be performed as an agent of the Master Servicer with the same force and effect as if performed directly by the Master Servicer.

(b) For purposes of this Agreement, the Master Servicer shall be deemed to have received any collections, recoveries or payments with respect to the Mortgage Loans that are received by a Subservicer regardless of whether such payments are remitted by the Subservicer to the Master Servicer.

SECTION 3.03. Rights of the Depositor and the Trustee in Respect of the Master Servicer.

The Depositor may, but is not obligated to, enforce the obligations of the Master Servicer hereunder and may, but is not obligated to, perform, or cause a designee to perform, any defaulted obligation of the Master Servicer hereunder and in connection with any such defaulted obligation to exercise the related rights of the Master Servicer hereunder; provided that the Master Servicer shall not be relieved of any of its obligations hereunder by virtue of such performance by the Depositor or its designee. Neither the Trustee nor the Depositor shall have any responsibility or liability for any action or failure to act by the Master Servicer nor shall the Trustee or the Depositor be obligated to supervise the performance of the Master Servicer hereunder or otherwise.

SECTION 3.04. Trustee to Act as Master Servicer.

In the event that the Master Servicer shall for any reason no longer be the Master Servicer hereunder (including by reason of an Event of Default or termination by the Depositor), the Trustee or its successor shall thereupon assume all of the rights and obligations of the Master Servicer hereunder arising thereafter (except that the Trustee shall not be (i) liable for losses of the Master Servicer pursuant to Section 3.09 hereof or any acts or omissions of the predecessor Master Servicer hereunder), (ii) obligated to make Advances if it is prohibited from doing so by applicable law, (iii) obligated to effectuate repurchases or substitutions of Mortgage Loans hereunder including, but not limited to, repurchases or substitutions of Mortgage Loans pursuant to Section 2.02 or 2.03 hereof, (iv) responsible for expenses of the Master Servicer pursuant to Section 2.03 or (v) deemed to have made any representations and warranties of the Master Servicer hereunder). Any such assumption shall be subject to Section 7.02

III-2

<PAGE>

PSA CWHL 06-10.txt

hereof. If the Master Servicer shall for any reason no longer be the Master Servicer (including by reason of any Event of Default or termination by the Depositor), the Trustee or its successor shall succeed to any rights and obligations of the Master Servicer under each subservicing agreement.

The Master Servicer shall, upon request of the Trustee, but at the expense of the Master Servicer, deliver to the assuming party all documents and records relating to each subservicing agreement or substitute subservicing agreement and the Mortgage Loans then being serviced thereunder and an accounting of amounts collected or held by it and otherwise use its best efforts to effect the orderly and efficient transfer of the substitute subservicing agreement to the assuming party.

SECTION 3.05. Collection of Mortgage Loan Payments; Certificate Account; Distribution Account; Pre-funding Account and Capitalized Interest Account.

(a) The Master Servicer shall make reasonable efforts in accordance with the customary and usual standards of practice of prudent mortgage servicers to collect all payments called for under the terms and provisions of the Mortgage Loans to the extent such procedures shall be consistent with this Agreement and the terms and provisions of any related Required Insurance Policy. Consistent with the foregoing, the Master Servicer may in its discretion (i) waive any late payment charge or any Prepayment Charge or any penalty interest in connection with the prepayment of a Mortgage Loan and (ii) extend the due dates for payments due on a Mortgage Note for a period not greater than 180 days; provided, however, that the Master Servicer cannot extend the maturity of any such Mortgage Loan past the date on which the final payment is due on the latest maturing Mortgage Loan as of the Cut-off Date. In the event of any such arrangement, the Master Servicer shall make Advances on the related Mortgage Loan in accordance with the provisions of Section 4.01 during the scheduled period in accordance with the amortization schedule of such Mortgage Loan without modification thereof by reason of such arrangements. The Master Servicer shall not be required to institute or join in litigation with respect to collection of any payment (whether under a Mortgage, Mortgage Note or otherwise or against any public or governmental authority with respect to a taking or condemnation) if it reasonably believes that enforcing the provision of the Mortgage or other instrument pursuant to which such payment is required is prohibited by applicable law.

(b) The Master Servicer shall establish and maintain a Certificate Account into which the Master Servicer shall deposit or cause to be deposited no later than two Business Days after receipt (or, if the current long-term credit rating of Countrywide is reduced below "A-" by S&P or Fitch, or "A3" by Moody's, the Master Servicer shall deposit or cause to be deposited on a daily basis within one Business Day of receipt), except as otherwise specifically provided herein, the following payments and collections remitted by Subservicers or received by it in respect of Mortgage Loans subsequent to the Cut-off Date (other than in respect of principal and interest due on the Mortgage Loans on or before the Cut-off Date) and the following amounts required to be deposited hereunder:

(i) all payments on account of principal on the Mortgage Loans, including Principal Prepayments;

(ii) all payments on account of interest on the Mortgage Loans, net of the Master Servicing Fee, Prepayment Interest Excess and any lender-paid mortgage insurance premiums;

(iii) [reserved];

III-3
Page 65

PSA CWHL 06-10.txt

<PAGE>

(iv) all Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds, other than proceeds to be applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with the Master Servicer's normal servicing procedures;

(v) any amount required to be deposited by the Master Servicer or the Depositor pursuant to Section 3.05(e) in connection with any losses on Permitted Investments for which it is responsible;

(vi) any amounts required to be deposited by the Master Servicer pursuant to Section 3.09(c) and in respect of net monthly rental income from REO Property pursuant to Section 3.11 hereof;

(vii) all Substitution Adjustment Amounts;

(viii) all Advances made by the Master Servicer pursuant to Section 4.01; and

(ix) any other amounts required to be deposited hereunder.

In addition, with respect to any Mortgage Loan that is subject to a buydown agreement, on each Due Date for such Mortgage Loan, in addition to the monthly payment remitted by the Mortgagor, the Master Servicer shall cause funds to be deposited into the Certificate Account in an amount required to cause an amount of interest to be paid with respect to such Mortgage Loan equal to the amount of interest that has accrued on such Mortgage Loan from the preceding Due Date at the Mortgage Rate net of the Master Servicing Fee.

The foregoing requirements for remittance by the Master Servicer shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments in the nature of Prepayment Charges, late payment charges or assumption fees, if collected, need not be remitted by the Master Servicer. In the event that the Master Servicer shall remit any amount not required to be remitted, it may at any time withdraw or direct the institution maintaining the Certificate Account to withdraw such amount from the Certificate Account, any provision herein to the contrary notwithstanding. Such withdrawal or direction may be accomplished by delivering written notice thereof to the Trustee or such other institution maintaining the Certificate Account which describes the amounts deposited in error in the Certificate Account. The Master Servicer shall maintain adequate records with respect to all withdrawals made pursuant to this Section. All funds deposited in the Certificate Account shall be held in trust for the Certificateholders until withdrawn in accordance with Section 3.08.

(c) [Reserved].

(d) The Trustee shall establish and maintain, on behalf of the Certificateholders, the Distribution Account. The Trustee shall, promptly upon receipt, deposit in the Distribution Account and retain therein the following:

(i) the aggregate amount remitted by the Master Servicer to the Trustee pursuant to Section 3.08(a)(ix);

(ii) any amount deposited by the Master Servicer or the Depositor pursuant to Section 3.05(e) in connection with any losses on Permitted Investments for which it is responsible; and

III-4

<PAGE>

(iii) any other amounts deposited hereunder which are required to be

PSA CWHL 06-10.txt
deposited in the Distribution Account.

In the event that the Master Servicer shall remit any amount not required to be remitted, it may at any time direct the Trustee to withdraw such amount from the Distribution Account, any provision herein to the contrary notwithstanding. Such direction may be accomplished by delivering an Officer's Certificate to the Trustee which describes the amounts deposited in error in the Distribution Account. All funds deposited in the Distribution Account shall be held by the Trustee in trust for the Certificateholders until disbursed in accordance with this Agreement or withdrawn in accordance with Section 3.08. In no event shall the Trustee incur liability for withdrawals from the Distribution Account at the direction of the Master Servicer.

(e) Each institution at which the Certificate Account, the Pre-funding Account, the Capitalized Interest Account or the Distribution Account is maintained shall invest the funds therein as directed in writing by the Master Servicer in Permitted Investments, which shall mature not later than (i) in the case of the Certificate Account, the Pre-funding Account or the Capitalized Interest Account the second Business Day next preceding the related Distribution Account Deposit Date (except that if such Permitted Investment is an obligation of the institution that maintains such account, then such Permitted Investment shall mature not later than the Business Day next preceding such Distribution Account Deposit Date) and (ii) in the case of the Distribution Account, the Business Day next preceding the Distribution Date (except that if such Permitted Investment is an obligation of the institution that maintains such fund or account, then such Permitted Investment shall mature not later than such Distribution Date) and, in each case, shall not be sold or disposed of prior to its maturity. All such Permitted Investments shall be made in the name of the Trustee, for the benefit of the Certificateholders. All income and gain net of any losses realized from any such investment of funds on deposit in the Certificate Account or the Distribution Account shall be for the benefit of the Master Servicer as servicing compensation and shall be remitted to it monthly as provided herein. The amount of any realized losses in the Certificate Account or the Distribution Account incurred in any such account in respect of any such investments shall promptly be deposited by the Master Servicer in the Certificate Account or paid to the Trustee for deposit into the Distribution Account, as applicable. The amount of any losses in the Pre-funding Account or the Capitalized Interest account incurred in respect of any such investments shall promptly be deposited by the Depositor in the Pre-funding account or the Capitalized Interest Account, as applicable. All income or gain (net of any losses) realized from any such investment of funds on deposit in the Capitalized Interest Account shall be credited to the Capitalized Interest Account. The Trustee in its fiduciary capacity shall not be liable for the amount of any loss incurred in respect of any investment or lack of investment of funds held in the Certificate Account, the Pre-funding Account, the Capitalized Interest Account or the Distribution Account and made in accordance with this Section 3.05.

(f) The Master Servicer shall give notice to the Trustee, each Seller, each Rating Agency and the Depositor of any proposed change of the location of the Certificate Account prior to any change thereof. The Trustee shall give notice to the Master Servicer, each Seller, each Rating Agency and the Depositor of any proposed change of the location of the Distribution Account, the Capitalized Interest Account or the Pre-funding Account prior to any change thereof.

(g) The Trustee shall establish and maintain, on behalf of the Certificateholders, the Pre-funding Account. On the Closing Date Countrywide shall remit the Pre-funded Amount to the Trustee for deposit in the Pre-funding Account. On each Supplemental Transfer Date, upon satisfaction of the conditions for such Supplemental Transfer Date set forth in Section 2.01(e), with respect to the related Supplemental Transfer Agreement, the Trustee shall pay to each Seller selling Supplemental Mortgage Loans to the Depositor on such Supplemental Transfer Date the portion of the Aggregate Supplemental Transfer Amount held in

PSA CWHL 06-10.txt
escrow pursuant to Section 2.01(e) as payment of the purchase

III-5

<PAGE>

price for the Supplemental Mortgage Loans sold by such Seller. If at any time
the Depositor becomes aware that the Cut-off Date Stated Principal Balance of
Supplemental Mortgage Loans reflected on any Supplemental Transfer Agreement
exceeds the actual Cut-off Date Stated Principal Balance of the relevant
Supplemental Mortgage Loans, the Depositor may so notify the Trustee and the
Trustee shall redeposit into the Pre-funding Account the excess reported to it
by the Depositor.

If any funds remain in the Pre-funding Account at the end of the
Funding Period, to the extent that they represent earnings on the amounts
originally deposited into the Pre-funding Account, the Trustee shall distribute
them to the order of the Depositor. The remaining funds shall be transferred to
the Distribution Account to be included as part of principal distributions to
the Class PO Certificates, to the extent of the Remaining PO Pre-funded Amount
and to the other Classes of Senior Certificates, to the extent of the Remaining
Non-PO Pre-funded Amount, as applicable

(h) The Trustee shall establish and maintain, on behalf of the
Certificateholders, the Capitalized Interest Account. On the Closing Date,
Countrywide shall remit the aggregate Capitalized Interest Requirement to the
Trustee for deposit in the Capitalized Interest Account. On each Distribution
Account Deposit Date related to a Funding Period Distribution Date, upon
satisfaction of the conditions for such Supplemental Transfer Date set forth in
Section 2.01(e), with respect to the related Supplemental Transfer Agreement,
the Trustee shall transfer from the Capitalized Interest Account to the
Distribution Account an amount equal to the Capitalized Interest Requirement
(which, to the extent required, may include investment earnings on amounts on
deposit therein) with respect to the amount remaining in the Pre-funding Account
for the related Distribution Date as identified by Countrywide in the
Supplemental Transfer Agreement.

If any funds remain in the Capitalized Interest Account at the end
of the Funding Period, the Trustee shall make the transfer described in the
preceding paragraph if necessary for the remaining Funding Period Distribution
Date and the Trustee shall distribute any remaining funds in the Capitalized
Interest Account to the order of the Depositor.

SECTION 3.06. Collection of Taxes, Assessments and Similar Items;
Escrow Accounts.

(a) To the extent required by the related Mortgage Note and not
violative of current law, the Master Servicer shall establish and maintain one
or more accounts (each, an "Escrow Account") and deposit and retain therein all
collections from the Mortgagors (or advances by the Master Servicer) for the
payment of taxes, assessments, hazard insurance premiums or comparable items for
the account of the Mortgagors. Nothing herein shall require the Master Servicer
to compel a Mortgagor to establish an Escrow Account in violation of applicable
law.

(b) Withdrawals of amounts so collected from the Escrow Accounts may
be made only to effect timely payment of taxes, assessments, hazard insurance
premiums, condominium or PUD association dues, or comparable items, to reimburse
the Master Servicer out of related collections for any payments made pursuant to
Sections 3.01 hereof (with respect to taxes and assessments and insurance
premiums) and 3.09 hereof (with respect to hazard insurance), to refund to any
Mortgagors any sums determined to be overages, to pay interest, if required by
law or the terms of the related Mortgage or Mortgage Note, to Mortgagors on
balances in the Escrow Account or to clear and terminate the Escrow Account at

PSA CWHL 06-10.txt
the termination of this Agreement in accordance with Section 9.01 hereof. The
Escrow Accounts shall not be a part of the Trust Fund.

(c) The Master Servicer shall advance any payments referred to in
Section 3.06(a) that are not timely paid by the Mortgagors on the date when the
tax, premium or other cost for which such

III-6

<PAGE>

payment is intended is due, but the Master Servicer shall be required so to
advance only to the extent that such advances, in the good faith judgment of the
Master Servicer, will be recoverable by the Master Servicer out of Insurance
Proceeds, Liquidation Proceeds or otherwise.

SECTION 3.07. Access to Certain Documentation and Information
Regarding the Mortgage Loans.

The Master Servicer shall afford each Seller, the Depositor and the
Trustee reasonable access to all records and documentation regarding the
Mortgage Loans and all accounts, insurance information and other matters
relating to this Agreement, such access being afforded without charge, but only
upon reasonable request and during normal business hours at the office
designated by the Master Servicer.

Upon reasonable advance notice in writing, the Master Servicer will
provide to each Certificateholder and/or Certificate Owner which is a savings
and loan association, bank or insurance company certain reports and reasonable
access to information and documentation regarding the Mortgage Loans sufficient
to permit such Certificateholder and/or Certificate Owner to comply with
applicable regulations of the OTS or other regulatory authorities with respect
to investment in the Certificates; provided that the Master Servicer shall be
entitled to be reimbursed by each such Certificateholder and/or Certificate
Owner for actual expenses incurred by the Master Servicer in providing such
reports and access.

SECTION 3.08. Permitted Withdrawals from the Certificate Account and
the Distribution Account.

(a) The Master Servicer may from time to time make withdrawals from
the Certificate Account for the following purposes:

(i) to pay to the Master Servicer (to the extent not previously
retained by the Master Servicer) the servicing compensation to which it is
entitled pursuant to Section 3.14, and to pay to the Master Servicer, as
additional servicing compensation, earnings on or investment income with
respect to funds in or credited to the Certificate Account;

(ii) to reimburse each of the Master Servicer and the Trustee for
unreimbursed Advances made by it, such right of reimbursement pursuant to
this subclause (ii) being limited to amounts received on the Mortgage
Loan(s) in respect of which any such Advance was made;

(iii) to reimburse each of the Master Servicer and the Trustee for
any Nonrecoverable Advance previously made by it;

(iv) to reimburse the Master Servicer for Insured Expenses from the
related Insurance Proceeds;

(v) to reimburse the Master Servicer for (a) unreimbursed Servicing
Advances, the Master Servicer's right to reimbursement pursuant to this
clause (a) with respect to any Mortgage Loan being limited to amounts
received on such Mortgage Loan(s) which represent late recoveries of the
Page 69

PSA CWHL 06-10.txt
payments for which such advances were made pursuant to Section 3.01 or
Section 3.06 and (b) for unpaid Master Servicing Fees as provided in
Section 3.11 hereof;

III-7

<PAGE>

(vi) to pay to the purchaser, with respect to each Mortgage Loan or
property acquired in respect thereof that has been purchased pursuant to
Section 2.02, 2.03 or 3.11, all amounts received thereon after the date of
such purchase;

(vii) to reimburse the Sellers, the Master Servicer or the Depositor
for expenses incurred by any of them and reimbursable pursuant to Section
6.03 hereof;

(viii) to withdraw any amount deposited in the Certificate Account
and not required to be deposited therein;

(ix) on or prior to the Distribution Account Deposit Date, to
withdraw an amount equal to the sum of (a) the related Available Funds and
(b) the Trustee Fee for such Distribution Date and remit such amount to
the Trustee for deposit in the Distribution Account; and

(x) to clear and terminate the Certificate Account upon termination
of this Agreement pursuant to Section 9.01 hereof.

The Master Servicer shall keep and maintain separate accounting, on
a Mortgage Loan by Mortgage Loan basis, for the purpose of justifying any
withdrawal from the Certificate Account pursuant to such subclauses (i), (ii),
(iv), (v) and (vi). Prior to making any withdrawal from the Certificate Account
pursuant to subclause (iii), the Master Servicer shall deliver to the Trustee an
Officer's Certificate of a Servicing Officer indicating the amount of any
previous Advance determined by the Master Servicer to be a Nonrecoverable
Advance and identifying the related Mortgage Loans(s), and their respective
portions of such Nonrecoverable Advance.

(b) The Trustee shall withdraw funds from the Distribution Account
for distributions to Certificateholders in the manner specified in this
Agreement (and to withhold from the amounts so withdrawn, the amount of any
taxes that it is authorized to withhold pursuant to the last paragraph of
Section 8.11). In addition, the Trustee may from time to time make withdrawals
from the Distribution Account for the following purposes:

(i) to pay to itself the Trustee Fee for the related Distribution
Date;

(ii) to pay to the Master Servicer as additional servicing
compensation earnings on or investment income with respect to funds in the
Distribution Account;

(iii) to withdraw and return to the Master Servicer any amount
deposited in the Distribution Account and not required to be deposited
therein;

(iv) to reimburse the Trustee for any unreimbursed Advances made by
it pursuant to Section 4.01(b) hereof, such right of reimbursement
pursuant to this subclause (iv) being limited to (x) amounts received on
the related Mortgage Loan(s) in respect of which any such Advance was made
and (y) amounts not otherwise reimbursed to the Trustee pursuant to
Section 3.08(a)(ii) hereof;

III-8

PSA CWHL 06-10.txt

<PAGE>

          (v) to reimburse the Trustee for any Nonrecoverable Advance
previously made by the Trustee pursuant to Section 4.01(b) hereof, such
right of reimbursement pursuant to this subclause (v) being limited to
amounts not otherwise reimbursed to the Trustee pursuant to Section
3.08(a)(iii) hereof; and

          (vi) to clear and terminate the Distribution Account upon
termination of the Agreement pursuant to Section 9.01 hereof.

          SECTION 3.09. Maintenance of Hazard Insurance; Maintenance of
                    Primary Insurance Policies.

          (a) The Master Servicer shall cause to be maintained, for each
Mortgage Loan, hazard insurance with extended coverage in an amount that is at
least equal to the lesser of (i) the maximum insurable value of the improvements
securing such Mortgage Loan or (ii) the greater of (y) the outstanding principal
balance of the Mortgage Loan and (z) an amount such that the proceeds of such
policy shall be sufficient to prevent the Mortgagor and/or the mortgagee from
becoming a co-insurer. Each such policy of standard hazard insurance shall
contain, or have an accompanying endorsement that contains, a standard mortgagee
clause. Any amounts collected by the Master Servicer under any such policies
(other than the amounts to be applied to the restoration or repair of the
related Mortgaged Property or amounts released to the Mortgagor in accordance
with the Master Servicer's normal servicing procedures) shall be deposited in
the Certificate Account. Any cost incurred by the Master Servicer in maintaining
any such insurance shall not, for the purpose of calculating monthly
distributions to the Certificateholders or remittances to the Trustee for their
benefit, be added to the principal balance of the Mortgage Loan, notwithstanding
that the terms of the Mortgage Loan so permit. Such costs shall be recoverable
by the Master Servicer out of late payments by the related Mortgagor or out of
the proceeds of liquidation of the Mortgage Loan or Subsequent Recoveries to the
extent permitted by Section 3.08 hereof. It is understood and agreed that no
earthquake or other additional insurance is to be required of any Mortgagor or
maintained on property acquired in respect of a Mortgage other than pursuant to
such applicable laws and regulations as shall at any time be in force and as
shall require such additional insurance. If the Mortgaged Property is located at
the time of origination of the Mortgage Loan in a federally designated special
flood hazard area and such area is participating in the national flood insurance
program, the Master Servicer shall cause flood insurance to be maintained with
respect to such Mortgage Loan. Such flood insurance shall be in an amount equal
to the least of (i) the outstanding principal balance of the related Mortgage
Loan, (ii) the replacement value of the improvements which are part of such
Mortgaged Property, and (iii) the maximum amount of such insurance available for
the related Mortgaged Property under the national flood insurance program.

          (b) The Master Servicer shall not take any action which would result
in non-coverage under any applicable Primary Insurance Policy of any loss which,
but for the actions of the Master Servicer, would have been covered thereunder.
The Master Servicer shall not cancel or refuse to renew any such Primary
Insurance Policy that is in effect at the date of the initial issuance of the
Certificates and is required to be kept in force hereunder unless the
replacement Primary Insurance Policy for such canceled or non-renewed policy is
maintained with a Qualified Insurer.

          Except with respect to any Lender PMI Mortgage Loans, the Master
Servicer shall not be required to maintain any Primary Insurance Policy (i) with
respect to any Mortgage Loan with a Loan-to-Value Ratio less than or equal to
80% as of any date of determination or, based on a new appraisal, the principal
balance of such Mortgage Loan represents 80% or less of the new appraised value
or (ii) if maintaining such Primary Insurance Policy is prohibited by applicable
law. With respect to the Lender PMI Mortgage Loans, the Master Servicer shall
                              Page 71

PSA CWHL 06-10.txt
maintain the Primary Insurance Policy for the life of such Mortgage Loans,
unless otherwise provided for in the related Mortgage Note or prohibited by law.

III-9

<PAGE>

        The Master Servicer agrees to effect the timely payment of the
premiums on each Primary Insurance Policy, and such costs not otherwise
recoverable shall be recoverable by the Master Servicer from the related
proceeds of liquidation and Subsequent Recoveries.

        (c) In connection with its activities as Master Servicer of the
Mortgage Loans, the Master Servicer agrees to present on behalf of itself, the
Trustee and Certificateholders, claims to the insurer under any Primary
Insurance Policies and, in this regard, to take such reasonable action as shall
be necessary to permit recovery under any Primary Insurance Policies respecting
defaulted Mortgage Loans. Any amounts collected by the Master Servicer under any
Primary Insurance Policies shall be deposited in the Certificate Account.

        SECTION 3.10. Enforcement of Due-on-Sale Clauses; Assumption
                Agreements.

        (a) Except as otherwise provided in this Section, when any property
subject to a Mortgage has been conveyed by the Mortgagor, the Master Servicer
shall to the extent that it has knowledge of such conveyance, enforce any
due-on-sale clause contained in any Mortgage Note or Mortgage, to the extent
permitted under applicable law and governmental regulations, but only to the
extent that such enforcement will not adversely affect or jeopardize coverage
under any Required Insurance Policy. Notwithstanding the foregoing, the Master
Servicer is not required to exercise such rights with respect to a Mortgage Loan
if the Person to whom the related Mortgaged Property has been conveyed or is
proposed to be conveyed satisfies the terms and conditions contained in the
Mortgage Note and Mortgage related thereto and the consent of the mortgagee
under such Mortgage Note or Mortgage is not otherwise so required under such
Mortgage Note or Mortgage as a condition to such transfer. In the event that the
Master Servicer is prohibited by law from enforcing any such due-on-sale clause,
or if coverage under any Required Insurance Policy would be adversely affected,
or if nonenforcement is otherwise permitted hereunder, the Master Servicer is
authorized, subject to Section 3.10(b), to take or enter into an assumption and
modification agreement from or with the person to whom such property has been or
is about to be conveyed, pursuant to which such person becomes liable under the
Mortgage Note and, unless prohibited by applicable state law, the Mortgagor
remains liable thereon, provided that the Mortgage Loan shall continue to be
covered (if so covered before the Master Servicer enters such agreement) by the
applicable Required Insurance Policies. The Master Servicer, subject to Section
3.10(b), is also authorized with the prior approval of the insurers under any
Required Insurance Policies to enter into a substitution of liability agreement
with such Person, pursuant to which the original Mortgagor is released from
liability and such Person is substituted as Mortgagor and becomes liable under
the Mortgage Note. Notwithstanding the foregoing, the Master Servicer shall not
be deemed to be in default under this Section by reason of any transfer or
assumption which the Master Servicer reasonably believes it is restricted by law
from preventing, for any reason whatsoever.

        (b) Subject to the Master Servicer's duty to enforce any due-on-sale
clause to the extent set forth in Section 3.10(a) hereof, in any case in which a
Mortgaged Property has been conveyed to a Person by a Mortgagor, and such Person
is to enter into an assumption agreement or modification agreement or supplement
to the Mortgage Note or Mortgage that requires the signature of the Trustee, or
if an instrument of release signed by the Trustee is required releasing the
Mortgagor from liability on the Mortgage Loan, the Master Servicer shall prepare
and deliver or cause to be prepared and delivered to the Trustee for signature
and shall direct, in writing, the Trustee to execute the assumption agreement

PSA CWHL 06-10.txt
with the Person to whom the Mortgaged Property is to be conveyed and such
modification agreement or supplement to the Mortgage Note or Mortgage or other
instruments as are reasonable or necessary to carry out the terms of the
Mortgage Note or Mortgage or otherwise to comply with any applicable laws
regarding assumptions or the transfer of the Mortgaged Property to such Person.
In connection with any such assumption, no material term of the Mortgage Note
may be changed. In addition, the substitute Mortgagor and the Mortgaged Property
must be acceptable to the Master Servicer in accordance with its

III-10

<PAGE>

underwriting standards as then in effect. Together with each such substitution,
assumption or other agreement or instrument delivered to the Trustee for
execution by it, the Master Servicer shall deliver an Officer's Certificate
signed by a Servicing Officer stating that the requirements of this subsection
have been met in connection therewith. The Master Servicer shall notify the
Trustee that any such substitution or assumption agreement has been completed by
forwarding to the Trustee the original of such substitution or assumption
agreement, which in the case of the original shall be added to the related
Mortgage File and shall, for all purposes, be considered a part of such Mortgage
File to the same extent as all other documents and instruments constituting a
part thereof. Any fee collected by the Master Servicer for entering into an
assumption or substitution of liability agreement will be retained by the Master
Servicer as additional servicing compensation.

        SECTION 3.11. Realization Upon Defaulted Mortgage Loans; Repurchase
        of Certain Mortgage Loans.

        (a) The Master Servicer shall use reasonable efforts to foreclose
upon or otherwise comparably convert the ownership of properties securing such
of the Mortgage Loans as come into and continue in default and as to which no
satisfactory arrangements can be made for collection of delinquent payments. In
connection with such foreclosure or other conversion, the Master Servicer shall
follow such practices and procedures as it shall deem necessary or advisable and
as shall be normal and usual in its general mortgage servicing activities and
meet the requirements of the insurer under any Required Insurance Policy;
provided, however, that the Master Servicer shall not be required to expend its
own funds in connection with any foreclosure or towards the restoration of any
property unless it shall determine (i) that such restoration and/or foreclosure
will increase the proceeds of liquidation of the Mortgage Loan after
reimbursement to itself of such expenses and (ii) that such expenses will be
recoverable to it through the proceeds of liquidation of the Mortgage Loan and
Subsequent Recoveries (respecting which it shall have priority for purposes of
withdrawals from the Certificate Account). The Master Servicer shall be
responsible for all other costs and expenses incurred by it in any such
proceedings; provided, however, that it shall be entitled to reimbursement
thereof from the proceeds of liquidation of the Mortgage Loan and Subsequent
Recoveries with respect to the related Mortgaged Property, as provided in the
definition of Liquidation Proceeds. If the Master Servicer has knowledge that a
Mortgaged Property which the Master Servicer is contemplating acquiring in
foreclosure or by deed in lieu of foreclosure is located within a 1 mile radius
of any site listed in the Expenditure Plan for the Hazardous Substance Clean Up
Bond Act of 1984 or other site with environmental or hazardous waste risks known
to the Master Servicer, the Master Servicer will, prior to acquiring the
Mortgaged Property, consider such risks and only take action in accordance with
its established environmental review procedures.

        With respect to any REO Property, the deed or certificate of sale
shall be taken in the name of the Trustee for the benefit of the
Certificateholders, or its nominee, on behalf of the Certificateholders. The
Trustee's name shall be placed on the title to such REO Property solely as the
Trustee hereunder and not in its individual capacity. The Master Servicer shall

PSA CWHL 06-10.txt

ensure that the title to such REO Property references the Pooling and Servicing
Agreement and the Trustee's capacity thereunder. Pursuant to its efforts to sell
such REO Property, the Master Servicer shall either itself or through an agent
selected by the Master Servicer protect and conserve such REO Property in the
same manner and to such extent as is customary in the locality where such REO
Property is located and may, incident to its conservation and protection of the
interests of the Certificateholders, rent the same, or any part thereof, as the
Master Servicer deems to be in the best interest of the Certificateholders for
the period prior to the sale of such REO Property. The Master Servicer shall
prepare for and deliver to the Trustee a statement with respect to each REO
Property that has been rented showing the aggregate rental income received and
all expenses incurred in connection with the maintenance of such REO Property at
such times as is necessary to enable the Trustee to comply with the reporting
requirements of the REMIC

III-11

<PAGE>

Provisions. The net monthly rental income, if any, from such REO Property shall
be deposited in the Certificate Account no later than the close of business on
each Determination Date. The Master Servicer shall perform the tax reporting and
withholding required by Sections 1445 and 6050J of the Code with respect to
foreclosures and abandonments, the tax reporting required by Section 6050H of
the Code with respect to the receipt of mortgage interest from individuals and
any tax reporting required by Section 6050P of the Code with respect to the
cancellation of indebtedness by certain financial entities, by preparing such
tax and information returns as may be required, in the form required, and
delivering the same to the Trustee for filing.

          In the event that the Trust Fund acquires any Mortgaged Property as
aforesaid or otherwise in connection with a default or imminent default on a
Mortgage Loan, the Master Servicer shall dispose of such Mortgaged Property as
soon as practicable in a manner that maximizes the Liquidation Proceeds thereof,
but in no event later than three years after its acquisition by the Trust Fund.
In that event, the Trustee shall have been supplied with an Opinion of Counsel
to the effect that the holding by the Trust Fund of such Mortgaged Property
subsequent to a three-year period, if applicable, will not result in the
imposition of taxes on "prohibited transactions" of any REMIC hereunder as
defined in section 860F of the Code or cause any REMIC hereunder to fail to
qualify as a REMIC at any time that any Certificates are outstanding, the Trust
Fund may continue to hold such Mortgaged Property (subject to any conditions
contained in such Opinion of Counsel) after the expiration of such three-year
period. Notwithstanding any other provision of this Agreement, no Mortgaged
Property acquired by the Trust Fund shall be rented (or allowed to continue to
be rented) or otherwise used for the production of income by or on behalf of the
Trust Fund in such a manner or pursuant to any terms that would (i) cause such
Mortgaged Property to fail to qualify as "foreclosure property" within the
meaning of section 860G(a)(8) of the Code or (ii) subject any REMIC hereunder to
the imposition of any federal, state or local income taxes on the income earned
from such Mortgaged Property under Section 860G(c) of the Code or otherwise,
unless the Master Servicer has agreed to indemnify and hold harmless the Trust
Fund with respect to the imposition of any such taxes.

          In the event of a default on a Mortgage Loan one or more of whose
obligor is not a United States Person, as that term is defined in Section
7701(a)(30) of the Code, in connection with any foreclosure or acquisition of a
deed in lieu of foreclosure (together, "foreclosure") in respect of such
Mortgage Loan, the Master Servicer will cause compliance with the provisions of
Treasury Regulation Section 1.1445-2(d)(3) (or any successor thereto) necessary
to assure that no withholding tax obligation arises with respect to the proceeds
of such foreclosure except to the extent, if any, that proceeds of such
foreclosure are required to be remitted to the obligors on such Mortgage Loan.

PSA CWHL 06-10.txt
        The decision of the Master Servicer to foreclose on a defaulted
Mortgage Loan shall be subject to a determination by the Master Servicer that
the proceeds of such foreclosure would exceed the costs and expenses of bringing
such a proceeding. The income earned from the management of any REO Properties,
net of reimbursement to the Master Servicer for expenses incurred (including any
property or other taxes) in connection with such management and net of
unreimbursed Master Servicing Fees, Advances and Servicing Advances, shall be
applied to the payment of principal of and interest on the related defaulted
Mortgage Loans (with interest accruing as though such Mortgage Loans were still
current) and all such income shall be deemed, for all purposes in this
Agreement, to be payments on account of principal and interest on the related
Mortgage Notes and shall be deposited into the Certificate Account. To the
extent the net income received during any calendar month is in excess of the
amount attributable to amortizing principal and accrued interest at the related
Mortgage Rate on the related Mortgage Loan for such calendar month, such excess
shall be considered to be a partial prepayment of principal of the related
Mortgage Loan.

                                    III-12

<PAGE>

        The proceeds from any liquidation of a Mortgage Loan, as well as any
income from an REO Property, will be applied in the following order of priority:
first, to reimburse the Master Servicer for any related unreimbursed Servicing
Advances and Master Servicing Fees; second, to reimburse the Master Servicer or
the Trustee for any unreimbursed Advances; third, to reimburse the Certificate
Account for any Nonrecoverable Advances (or portions thereof) that were
previously withdrawn by the Master Servicer or the Trustee pursuant to Section
3.08(a)(iii) that related to such Mortgage Loan; fourth, to accrued and unpaid
interest (to the extent no Advance has been made for such amount or any such
Advance has been reimbursed) on the Mortgage Loan or related REO Property, at
the Adjusted Net Mortgage Rate to the Due Date occurring in the month in which
such amounts are required to be distributed; and fifth, as a recovery of
principal of the Mortgage Loan. Excess Proceeds, if any, from the liquidation of
a Liquidated Mortgage Loan will be retained by the Master Servicer as additional
servicing compensation pursuant to Section 3.14.

        The Master Servicer, in its sole discretion, shall have the right to
purchase for its own account from the Trust Fund any Mortgage Loan which is 151
days or more delinquent at a price equal to the Purchase Price; provided,
however, that the Master Servicer may only exercise this right on or before the
next to the last day of the calendar month in which such Mortgage Loan became
151 days delinquent (such month, the "Eligible Repurchase Month"); provided
further, that any such Mortgage Loan which becomes current but thereafter
becomes delinquent may be purchased by the Master Servicer pursuant to this
Section in any ensuing Eligible Repurchase Month. The Purchase Price for any
Mortgage Loan purchased hereunder shall be deposited in the Certificate Account
and the Trustee, upon receipt of a certificate from the Master Servicer in the
form of Exhibit N hereto, shall release or cause to be released to the purchaser
of such Mortgage Loan the related Mortgage File and shall execute and deliver
such instruments of transfer or assignment prepared by the purchaser of such
Mortgage Loan, in each case without recourse, as shall be necessary to vest in
the purchaser of such Mortgage Loan any Mortgage Loan released pursuant hereto
and the purchaser of such Mortgage Loan shall succeed to all the Trustee's
right, title and interest in and to such Mortgage Loan and all security and
documents related thereto. Such assignment shall be an assignment outright and
not for security. The purchaser of such Mortgage Loan shall thereupon own such
Mortgage Loan, and all security and documents, free of any further obligation to
the Trustee or the Certificateholders with respect thereto.

        (b) Countrywide may agree to a modification of any Mortgage Loan
(the "Modified Mortgage Loan") if (i) the modification is in lieu of a
refinancing and (ii) the Mortgage Rate on the Modified Mortgage Loan is
                                  Page 75

PSA CWHL 06-10.txt
approximately a prevailing market rate for newly-originated mortgage loans
having similar terms and (iii) Countrywide purchases the Modified Mortgage Loan
from the Trust Fund as described below. Effective immediately after the
modification, and, in any event, on the same Business Day on which the
modification occurs, all interest of the Trustee in the Modified Mortgage Loan
shall automatically be deemed transferred and assigned to Countrywide and all
benefits and burdens of ownership thereof, including the right to accrued
interest thereon from the date of modification and the risk of default thereon,
shall pass to Countrywide. The Master Servicer shall promptly deliver to the
Trustee a certification of a Servicing Officer to the effect that all
requirements of this paragraph have been satisfied with respect to the Modified
Mortgage Loan. For federal income tax purposes, the Trustee shall account for
such purchase as a prepayment in full of the Modified Mortgage Loan.

        Countrywide shall deliver to the Master Servicer, and the Master
Servicer shall deposit the Purchase Price for any Modified Mortgage Loan in the
Certificate Account pursuant to Section 3.05 within one Business Day after the
purchase of the Modified Mortgage Loan. Upon receipt by the Trustee of written
notification of any such deposit signed by a Servicing Officer, the Trustee
shall release to Countrywide the related Mortgage File and shall execute and
deliver such instruments of transfer or assignment, in each case without
recourse, as shall be necessary to vest in the Countrywide any Modified Mortgage
Loan previously transferred and assigned pursuant hereto. Countrywide covenants
and agrees

                                III-13

<PAGE>

to indemnify the Trust Fund against any liability for any "prohibited
transaction" taxes and any related interest, additions, and penalties imposed on
the Trust Fund established hereunder as a result of any modification of a
Mortgage Loan effected pursuant to this subsection (b), any holding of a
Modified Mortgage Loan by the Trust Fund or any purchase of a Modified Mortgage
Loan by Countrywide (but such obligation shall not prevent the Countrywide or
any other appropriate Person from in good faith contesting any such tax in
appropriate proceedings and shall not prevent Countrywide from withholding
payment of such tax, if permitted by law, pending the outcome of such
proceedings). Countrywide shall have no right of reimbursement for any amount
paid pursuant to the foregoing indemnification, except to the extent that the
amount of any tax, interest, and penalties, together with interest thereon, is
refunded to the Trust Fund or Countrywide.

        SECTION 3.12. Trustee to Cooperate; Release of Mortgage Files.

        Upon the payment in full of any Mortgage Loan, or the receipt by the
Master Servicer of a notification that payment in full will be escrowed in a
manner customary for such purposes, the Master Servicer will immediately notify
the Trustee by delivering, or causing to be delivered a "Request for Release"
substantially in the form of Exhibit N. Upon receipt of such request, the
Trustee shall promptly release the related Mortgage File to the Master Servicer,
and the Trustee shall at the Master Servicer's direction execute and deliver to
the Master Servicer the request for reconveyance, deed of reconveyance or
release or satisfaction of mortgage or such instrument releasing the lien of the
Mortgage in each case provided by the Master Servicer, together with the
Mortgage Note with written evidence of cancellation thereon. The Master Servicer
is authorized to cause the removal from the registration on the MERS System of
such Mortgage and to execute and deliver, on behalf of the Trustee and the
Certificateholders or any of them, any and all instruments of satisfaction or
cancellation or of partial or full release. Expenses incurred in connection with
any instrument of satisfaction or deed of reconveyance shall be chargeable to
the related Mortgagor. From time to time and as shall be appropriate for the
servicing or foreclosure of any Mortgage Loan, including for such purpose,
collection under any policy of flood insurance, any fidelity bond or errors or

PSA CWHL 06-10.txt
omissions policy, or for the purposes of effecting a partial release of any
Mortgaged Property from the lien of the Mortgage or the making of any
corrections to the Mortgage Note or the Mortgage or any of the other documents
included in the Mortgage File, the Trustee shall, upon delivery to the Trustee
of a Request for Release in the form of Exhibit M signed by a Servicing Officer,
release the Mortgage File to the Master Servicer. Subject to the further
limitations set forth below, the Master Servicer shall cause the Mortgage File
or documents so released to be returned to the Trustee when the need therefor by
the Master Servicer no longer exists, unless the Mortgage Loan is liquidated and
the proceeds thereof are deposited in the Certificate Account, in which case the
Master Servicer shall deliver to the Trustee a Request for Release in the form
of Exhibit N, signed by a Servicing Officer.

        If the Master Servicer at any time seeks to initiate a foreclosure
proceeding in respect of any Mortgaged Property as authorized by this Agreement,
the Master Servicer shall deliver or cause to be delivered to the Trustee, for
signature, as appropriate, any court pleadings, requests for trustee's sale or
other documents necessary to effectuate such foreclosure or any legal action
brought to obtain judgment against the Mortgagor on the Mortgage Note or the
Mortgage or to obtain a deficiency judgment or to enforce any other remedies or
rights provided by the Mortgage Note or the Mortgage or otherwise available at
law or in equity.

        SECTION 3.13. Documents, Records and Funds in Possession of Master
                 Servicer to be Held for the Trustee.

        Notwithstanding any other provisions of this Agreement, the Master
Servicer shall transmit to the Trustee as required by this Agreement all
documents and instruments in respect of a

                                III-14

<PAGE>

Mortgage Loan coming into the possession of the Master Servicer from time to
time and shall account fully to the Trustee for any funds received by the Master
Servicer or which otherwise are collected by the Master Servicer as Liquidation
Proceeds, Insurance Proceeds or Subsequent Recoveries in respect of any Mortgage
Loan. All Mortgage Files and funds collected or held by, or under the control
of, the Master Servicer in respect of any Mortgage Loans, whether from the
collection of principal and interest payments or from Liquidation Proceeds and
any Subsequent Recoveries, including but not limited to, any funds on deposit in
the Certificate Account, shall be held by the Master Servicer for and on behalf
of the Trustee and shall be and remain the sole and exclusive property of the
Trustee, subject to the applicable provisions of this Agreement. The Master
Servicer also agrees that it shall not create, incur or subject any Mortgage
File or any funds that are deposited in the Certificate Account, Distribution
Account or any Escrow Account, or any funds that otherwise are or may become due
or payable to the Trustee for the benefit of the Certificateholders, to any
claim, lien, security interest, judgment, levy, writ of attachment or other
encumbrance, or assert by legal action or otherwise any claim or right of setoff
against any Mortgage File or any funds collected on, or in connection with, a
Mortgage Loan, except, however, that the Master Servicer shall be entitled to
set off against and deduct from any such funds any amounts that are properly due
and payable to the Master Servicer under this Agreement.

        SECTION 3.14. Servicing Compensation.

        As compensation for its activities hereunder, the Master Servicer
shall be entitled to retain or withdraw from the Certificate Account an amount
equal to the Master Servicing Fee; provided, that the aggregate Master Servicing
Fee with respect to any Distribution Date shall be reduced (i) by an amount
equal to the aggregate of the Prepayment Interest Shortfalls on all of the
Mortgage Loans, if any, with respect to such Distribution Date, but not to

PSA CWHL 06-10.txt

exceed the Compensating Interest for such Distribution Date, and (ii) with respect to the first Distribution Date, an amount equal to any amount to be deposited into the Distribution Account by the Depositor pursuant to Section 2.01(a) and not so deposited.

Additional servicing compensation in the form of Excess Proceeds, Prepayment Interest Excess, Prepayment Charges, assumption fees, late payment charges and all income and gain net of any losses realized from Permitted Investments on funds in the Certificate Account and Distribution Account shall be retained by the Master Servicer to the extent not required to be deposited in the Certificate Account pursuant to Section 3.05 hereof. The Master Servicer shall be required to pay all expenses incurred by it in connection with its master servicing activities hereunder (including payment of any premiums for hazard insurance and any Primary Insurance Policy and maintenance of the other forms of insurance coverage required by this Agreement) and shall not be entitled to reimbursement therefor except as specifically provided in this Agreement.

SECTION 3.15. Access to Certain Documentation.

The Master Servicer shall provide to the OTS and the FDIC and to comparable regulatory authorities supervising Holders and/or Certificate Owners and the examiners and supervisory agents of the OTS, the FDIC and such other authorities, access to the documentation regarding the Mortgage Loans required by applicable regulations of the OTS and the FDIC. Such access shall be afforded without charge, but only upon reasonable and prior written request and during normal business hours at the offices designated by the Master Servicer. Nothing in this Section shall limit the obligation of the Master Servicer to observe any applicable law prohibiting disclosure of information regarding the Mortgagors and the failure of the Master Servicer to provide access as provided in this Section as a result of such obligation shall not constitute a breach of this Section.

III-15

<PAGE>

SECTION 3.16. Annual Statement as to Compliance.

(a) The Master Servicer shall deliver to the Depositor and the Trustee on or before March 15 of each year, commencing with its 2007 fiscal year, an Officer's Certificate stating, as to the signer thereof, that (i) a review of the activities of the Master Servicer during the preceding calendar year (or applicable portion thereof) and of the performance of the Master Servicer under this Agreement has been made under such officer's supervision and (ii) to the best of such officer's knowledge, based on such review, the Master Servicer has fulfilled all its obligations under this Agreement in all material respects throughout such year (or applicable portion thereof), or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof.

(b) The Master Servicer shall cause each Subservicer to deliver to the Depositor and the Trustee on or before March 15 of each year, commencing with its 2007 fiscal year, an Officer's Certificate stating, as to the signer thereof, that (i) a review of the activities of such Subservicer during the preceding calendar year (or applicable portion thereof) and of the performance of the Subservicer under the applicable Subservicing Agreement or primary servicing agreement, has been made under such officer's supervision and (ii) to the best of such officer's knowledge, based on such review, such Subservicer has fulfilled all its obligations under the applicable Subservicing Agreement or primary servicing agreement, in all material respects throughout such year (or applicable portion thereof), or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such

PSA CWHL 06-10.txt
officer and the nature and status thereof.

      (c) The Trustee shall forward a copy of each such statement to each Rating Agency.

      SECTION 3.17. Errors and Omissions Insurance; Fidelity Bonds.

      The Master Servicer shall for so long as it acts as master servicer under this Agreement, obtain and maintain in force (a) a policy or policies of insurance covering errors and omissions in the performance of its obligations as Master Servicer hereunder and (b) a fidelity bond in respect of its officers, employees and agents. Each such policy or policies and bond shall, together, comply with the requirements from time to time of FNMA or FHLMC for persons performing servicing for mortgage loans purchased by FNMA or FHLMC. In the event that any such policy or bond ceases to be in effect, the Master Servicer shall obtain a comparable replacement policy or bond from an insurer or issuer, meeting the requirements set forth above as of the date of such replacement.

III-16

<PAGE>

ARTICLE IV

DISTRIBUTIONS AND
ADVANCES BY THE MASTER SERVICER

      SECTION 4.01. Advances.

      (a) The Master Servicer shall determine on or before each Master Servicer Advance Date whether it is required to make an Advance pursuant to the definition thereof. If the Master Servicer determines it is required to make an Advance, it shall, on or before the Master Servicer Advance Date, either (i) deposit into the Certificate Account an amount equal to the Advance or (ii) make an appropriate entry in its records relating to the Certificate Account that any Amount Held for Future Distribution for the applicable Loan Group has been used by the Master Servicer in discharge of its obligation to make any such Advance. Any funds so applied shall be replaced by the Master Servicer by deposit in the Certificate Account no later than the close of business on the next Master Servicer Advance Date. The Master Servicer shall be entitled to be reimbursed from the Certificate Account for all Advances of its own funds made pursuant to this Section as provided in Section 3.08. The obligation to make Advances with respect to any Mortgage Loan shall continue if such Mortgage Loan has been foreclosed or otherwise terminated and the related Mortgaged Property has not been liquidated.

      (b) If the Master Servicer determines that it will be unable to comply with its obligation to make the Advances as and when described in the second sentence of Section 4.01(a), it shall use its best efforts to give written notice thereof to the Trustee (each such notice a "Trustee Advance Notice"; and such notice may be given by telecopy), not later than 3:00 P.M., New York time, on the Business Day immediately preceding the related Master Servicer Advance Date, specifying the amount that it will be unable to deposit (each such amount an "Advance Deficiency") and certifying that such Advance Deficiency constitutes an Advance hereunder and is not a Nonrecoverable Advance. If the Trustee receives a Trustee Advance Notice on or before 3:30 P.M., New York time on a Master Servicer Advance Date, the Trustee shall, not later than 3:00 P.M., New York time, on the related Distribution Date, deposit in the Distribution Account an amount equal to the Advance Deficiency identified in such Trustee Advance Notice unless it is prohibited from so doing by applicable law. Notwithstanding the foregoing, the Trustee shall not be required to make such deposit if the Trustee shall have received written notification from the Master Servicer that the Master Servicer has deposited or caused to be deposited in the Certificate Account an amount equal to such Advance Deficiency. All

PSA CWHL 06-10.txt

Advances made by the Trustee pursuant to this Section 4.01(b) shall accrue interest on behalf of the Trustee at the Trustee Advance Rate from and including the date such Advances are made to but excluding the date of repayment, with such interest being an obligation of the Master Servicer and not the Trust Fund. The Master Servicer shall reimburse the Trustee for the amount of any Advance made by the Trustee pursuant to this Section 4.01(b) together with accrued interest, not later than the fifth day following the related Master Servicer Advance Date. In the event that the Master Servicer does not reimburse the Trustee in accordance with the requirements of the preceding sentence, the Trustee shall have the right, but not the obligation, to immediately (a) terminate all of the rights and obligations of the Master Servicer under this Agreement in accordance with Section 7.01 and (b) subject to the limitations set forth in Section 3.04, assume all of the rights and obligations of the Master Servicer hereunder.

(c) The Master Servicer shall, not later than the close of business on the second Business Day immediately preceding each Distribution Date, deliver to the Trustee a report (in form and substance reasonably satisfactory to the Trustee) that indicates (i) the Mortgage Loans with respect to which the Master Servicer has determined that the related Scheduled Payments should be advanced and (ii) the amount of the related Scheduled Payments. The Master Servicer shall deliver to the Trustee on

IV-1

<PAGE>

the related Master Servicer Advance Date an Officer's Certificate of a Servicing Officer indicating the amount of any proposed Advance determined by the Master Servicer to be a Nonrecoverable Advance.

SECTION 4.02. Priorities of Distribution.

(a) (1) With respect to Available Funds for Loan Group 1, on each Distribution Date, the Trustee shall withdraw such Available Funds from the Distribution Account and apply such funds to distributions on the specified Classes of Group 1 Senior Certificates in the following order and priority and, in each case, to the extent of Available Funds remaining:

(i) [Reserved];

(ii) concurrently, to each interest-bearing Class of Group 1 Senior Certificates, an amount allocable to interest equal to the related Class Optimal Interest Distribution Amount, any shortfall being allocated among such Classes in proportion to the amount of the Class Optimal Interest Distribution Amount with respect to the Group 1 Certificates that would have been distributed in the absence of such shortfall, provided that prior to an Accrual Termination Date, the related Accrual Amount shall be distributed as provided in Section 4.02(a)(1)(iii);

(iii) the Accrual Amount for each Class of Accrual Certificates in the Group 1 Senior Certificates shall be distributed as principal to the applicable Classes of Accretion Directed Certificates in accordance with the Accretion Direction Rule for such Class of Accrual Certificates;

(iv) to each Class of Group 1 Senior Certificates, concurrently, as follows:

(x) to the Class PO-1 Component, the related PO Formula Principal Amount, until the Component Balance thereof is reduced to zero; and

(y) the related Non-PO Formula Principal Amount, up to the amount of the Senior Principal Distribution Amount for Loan Group 1

Page 80

PSA CWHL 06-10.txt
for such Distribution Date, in the following order of priority:

1. to the Class A-R Certificates, until its Class
Certificate Balance is reduced to zero;

2. concurrently, to the Class 1-A-8 and Class 1-A-9
Certificates, pro rata, the Priority Amount, until their
respective Class Certificate Balances are reduced to zero;

3. concurrently, as follows:

a. 17.2916396719%, sequentially, to the Class 1-A-15 and
Class 1-A-16 Certificates, in that order, until their
respective Class Certificate Balances are reduced to zero;

b. 82.7083603281%, in the following order:

(1) to the Class 1-A-1, Class 1-A-2, Class 1-A-10,
Class 1-A-11, Class 1-A-12 and Class 1-A-13
Certificates, in an amount up to the amount
necessary to reduce their aggregate Class

IV-2

<PAGE>

Certificate Balance to their Aggregate Planned
Balance for that Distribution Date, concurrently as
follows;

(x) 45.4545455743%, sequentially, to the
Class 1-A-1 and Class 1-A-2 Certificates, in that order,
until their respective Class Certificate Balances are
reduced to zero;

(y) 45.4545455743%, sequentially, to the
Class 1-A-10, Class 1-A-11 and Class 1-A-12
Certificates, in that order, until their respective
Class Certificate Balances are reduced to zero; and

(z) 9.090908815%, to the Class 1-A-13
Certificates, until its Class Certificate Class Balance
is reduced to zero;

(2) to the Class 1-A-4, Class 1-A-5 and Class 1-A-7
Certificates, in an amount up to the amount
necessary to reduce their aggregate Class
Certificate Balance to their aggregate Targeted
Balance that Distribution Date, sequentially as
follows:

(x) to the Class 1-A-7 Certificates, in an
amount up to the amount necessary to reduce its Class
Certificate Balance to its Targeted Balance for that
Distribution Date;

(y) concurrently, to the Class 1-A-4 and
Class 1-A-5 Certificates, pro rata, until their
respective Class Certificate Balances are reduced to
zero; and

(z) to the Class 1-A-7 Certificates, without
regard to its Targeted Balance for that Distribution
Date, until its Class Certificate Balance is reduced to
Page 81

PSA CWHL 06-10.txt

zero;

(3) to the Class 1-A-6 Certificates, in an amount up to the amount necessary to reduce its Class Certificate Balance to its Targeted Balance for that Distribution Date;

(4) to the Class 1-A-4, Class 1-A-5 and Class 1-A-7 Certificates, without regard to their Aggregate Targeted Balance for that Distribution Date, sequentially as follows:

(x) to the Class 1-A-7 Certificates, in an amount up to the amount necessary to reduce its Class Certificate Balance to its Targeted Balance for that Distribution Date;

(y) concurrently, to the Class 1-A-4 and Class 1-A-5 Certificates, pro rata, until their respective Class Certificate Balances are reduced to zero; and

(z) to the Class 1-A-7 Certificates, without regard to its Targeted Balance for that Distribution Date, until its Class Certificate Balance is reduced to zero;

IV-3

<PAGE>

(5) to the Class 1-A-6 Certificates, without regard to its Targeted Balance for that Distribution Date, until its Class Certificate Balance is reduced to zero;

(6) to the Class 1-A-1, Class 1-A-2, Class 1-A-10, Class 1-A-11, Class 1-A-12 and Class 1-A-13 Certificates, without regard to their Aggregate Planned Balance for that Distribution Date, concurrently as follows:

(x) 45.4545455743%, sequentially, to the Class 1-A-1 and Class 1-A-2 Certificates, in that order, until respective Class Certificate Balances are reduced to zero;

(y) 45.4545455743%, sequentially, to the Class 1-A-10, Class 1-A-11 and Class 1-A-12 Certificates, in that order, until their respective Class Certificates are reduced to zero; and

(z) 9.090908815%, to the Class 1-A-13 Certificates, until its Class Certificate Class Balance is reduced to zero;

4. to the Class 1-A-3 Certificates, until its Class Certificate Balance is reduced to zero; and

5. concurrently, to the Class 1-A-8 and Class 1-A-9 Certificates, pro rata, without regard to the Priority Amount, until their respective Class Certificate Balances are reduced to zero; and

Page 82

PSA CWHL 06-10.txt

(v) to the Class PO-1 Component, any related Class PO Deferred Amount, up to an amount not to exceed the amount calculated pursuant to clause (A) of the definition of the Subordinated Principal Distribution Amount for Loan Group 1 actually received or advanced for such Distribution Date (with such amount to be allocated first from amounts calculated pursuant to (A)(i), then (ii), and then (iii) of the definition of Subordinated Principal Distribution Amount).

(2) With respect to the Available Funds for Loan Group 2 on each Distribution Date, the Trustee shall withdraw such Available Funds from the Distribution Account and apply such funds to distributions on the specified Classes of Group 2 Senior Certificates in the following order and priority, and in each case, to the extent of Available Funds remaining:

(i) [Reserved];

(ii) concurrently, to each interest-bearing Class of Group 2 Senior Certificates, an amount allocable to interest equal to the related Class Optimal Interest Distribution Amount, any shortfall being allocated among such Classes in proportion to the amount of the Class Optimal Interest Distribution Amount with respect to the Group 2 Certificates that would have been distributed in the absence of such shortfall, provided that prior to an Accrual Termination Date, the related Accrual Amount shall be distributed as provided in Section 4.02(a)(2)(iii);

(iii) [Reserved];

(iv) to each Class of Group 2 Senior Certificates, concurrently as follows:

IV-4

<PAGE>

(x) to the Class PO-2 Component, the related PO Formula Principal Amount, until the Component Balance thereof is reduced to zero; and

(y) the related Non-PO Formula Principal Amount, up to the amount of the Senior Principal Distribution Amount for Loan Group 2 for such Distribution Date, concurrently, to the Class 2-A-1 and Class 2-A-2 Certificates, rata, until their respective Class Certificate Balances are reduced to zero; and

(v) to the Class PO-2 Component, any related Class PO Deferred Amount, up to an amount not to exceed the amount calculated pursuant to clause (A) of the definition of the Subordinated Principal Distribution Amount for Loan Group 2 actually received or advanced for such Distribution Date (with such amount to be allocated first from amounts calculated pursuant to (A)(i) and (ii) then (iii) of the definition of Subordinated Principal Distribution Amount).

(3) On each Distribution Date, after making the distributions described in Section 4.02(a)(1) and Section 4.02(a)(2) above, the remaining Available Funds from each Loan Group will be distributed to the Senior Certificates to the extent provided in Section 4.05 hereof.

(4) On each Distribution Date, Available Funds from both Loan Groups remaining after making the distributions described in Sections 4.02(a)(1), 4.02(a)(2) and 4.02(a)(3) above, will be distributed to the Subordinated Certificates and the Class A-R Certificates in the following order and priority and, in each case, to the extent of such funds remaining:

(A) to the Class M-1 Certificates, an amount allocable to

Page 83

PSA CWHL 06-10.txt

interest equal to the Class Optimal Interest Distribution
Amount for such Class for such Distribution Date;

(B) to the Class M-1 Certificates, an amount allocable to
principal equal to its Pro Rata Share for such Distribution
Date until the Class Certificate Balance thereof is reduced to
zero;

(C) to the Class M-2 Certificates, an amount allocable to
interest equal to the Class Optimal Interest Distribution
Amount for such Class for such Distribution Date;

(D) to the Class M-2 Certificates, an amount allocable to
principal equal to its Pro Rata Share for such Distribution
Date until the Class Certificate Balance thereof is reduced to
zero;

(E) to the Class B-1 Certificates, an amount allocable to
interest equal to the Class Optimal Interest Distribution
Amount for such Class for such Distribution Date;

(F) to the Class B-1 Certificates, an amount allocable to
principal equal to its Pro Rata Share for such Distribution
Date until the Class Certificate Balance thereof is reduced to
zero;

(G) to the Class B-2 Certificates, an amount allocable to
interest equal to the Class Optimal Interest Distribution
Amount for such Class for such Distribution Date;

IV-5

<PAGE>

(H) to the Class B-2 Certificates, an amount allocable to
principal equal to its Pro Rata Share for such Distribution
Date until the Class Certificate Balance thereof is reduced to
zero;

(I) to the Class B-3 Certificates, an amount allocable to
interest equal to the Class Optimal Interest Distribution
Amount for such Class for such Distribution Date;

(J) to the Class B-3 Certificates, an amount allocable to
principal equal to its Pro Rata Share for such Distribution
Date until the Class Certificate Balance thereof is reduced to
zero;

(K) to the Class B-4 Certificates, an amount allocable to
interest equal to the Class Optimal Interest Distribution
Amount for such Class for such Distribution Date;

(L) to the Class B-4 Certificates, an amount allocable to
principal equal to its Pro Rata Share for such Distribution
Date until the Class Certificate Balance thereof is reduced to
zero;

(M) to the Class B-5 Certificates, an amount allocable to
interest equal to the Class Optimal Interest Distribution
Amount for such Class for such Distribution Date;

(N) to the Class B-5 Certificates, an amount allocable to
principal equal to its Pro Rata Share for such Distribution
Date until the Class Certificate Balance thereof is reduced to

PSA CWHL 06-10.txt
zero; and

(O) to the Class A-R Certificates, any remaining funds (other than the $100 held in trust for the Class P Certificates) in the Trust Fund.

On any Distribution Date, amounts distributed in respect of Class PO Deferred Amounts will not reduce the Component Balance of the related Class PO Component.

On any Distribution Date, to the extent the Amount Available for Senior Principal for a Loan Group is insufficient to make the full distribution required to be made pursuant to the applicable subclauses (iv)(x) above, (A) the amount distributable on the applicable Class PO Component in respect of principal pursuant to such subclause (iv)(x), shall be equal to the product of (1) the Amount Available for Senior Principal for such Loan Group and (2) a fraction, the numerator of which is the related PO Formula Principal Amount and the denominator of which is the sum of such PO Formula Principal Amount and the applicable Senior Principal Distribution Amount and (B) the amount distributable on the related Senior Certificates, other than the applicable Class PO Component, in respect of principal pursuant to such clause (iv)(y) shall be equal to the product of (1) such Amount Available for Senior Principal and (2) a fraction, the numerator of which is the applicable Senior Principal Distribution Amount and the denominator of which is the sum of such Senior Principal Distribution Amount and the related PO Formula Principal Amount.

(b) On each Distribution Date prior to and including the applicable Accrual Termination Date with respect to each Class or Component of Accrual Certificates, the Accrual Amount for such Class or Component for such Distribution Date shall not (except as provided in the second to last sentence in this paragraph) be distributed as interest with respect to such Class or Component of Accrual

IV-6

<PAGE>

Certificates, but shall instead be added to the related Class Certificate Balance of such Class on the related Distribution Date. With respect to any Distribution Date prior to and including the applicable Accrual Termination Date on which principal payments on any Class or Component of Accrual Certificates are distributed pursuant to Section 4.02(a)(1)(iv)(y) or Section 4.02(a)(2)(iv)(y), as applicable, the related Accrual Amount shall be deemed to have been added on such Distribution Date to the related Class Certificate Balance or Component Balance (and included in the amount distributable on the related Class or Classes or Component of Accretion Directed Certificates pursuant to Section 4.02(a)(1)(iii) or Section 4.02(a)(2)(iii), as applicable, for such Distribution Date) and the related distribution thereon shall be deemed to have been applied concurrently towards the reduction of all or a portion of the amount so added and, to the extent of any excess, towards the reduction of the Class Certificate Balance or Component Balance of such Class or Component of Accrual Certificates immediately prior to such Distribution Date. Notwithstanding any such distribution, each such Class or Component shall continue to be a Class of Accrual Certificates on each subsequent Distribution Date until the applicable Accrual Termination Date.

(c) On each Distribution Date on or after the Senior Credit Support Depletion Date, notwithstanding the allocation and priorities set forth in Sections 4.02(a)(1)(iv)(y) the portion of Available Funds for Loan Group 1 available to be distributed as principal of the related Classes of Senior Certificates (other than the related Class PO Component) shall be distributed concurrently, as principal, on the related Classes, pro rata, on the basis of their respective Class Certificate Balances, until the Class Certificate Balances thereof are reduced to zero.

PSA CWHL 06-10.txt

(d) On each Distribution Date, the amount referred to in clause (i) of the definition of Class Optimal Interest Distribution Amount for each Class of Certificates for such Distribution Date shall be reduced for each Class of Senior Certificates of a Senior Certificate Group and each Class of Subordinated Certificates by (i) the related Class' pro rata share of Net Prepayment Interest Shortfalls for such Loan Group based (x) with respect to a Class of Senior Certificates, on the related Class Optimal Interest Distribution Amount and (y) with respect to the Class of Subordinated Certificates on or prior to a Senior Termination Date on the Assumed Interest Amount and after such Senior Termination Date, the related Class' Class Optimal Interest Distribution Amount for such Distribution Date, without taking into account such Net Prepayment Interest Shortfalls, and (ii) the related Class' Allocable Share of the interest portion of the related Debt Service Reduction and each Relief Act Reduction for the Mortgage Loans in the related Loan Group (or, after the Senior Credit Support Depletion Date, any Mortgage Loan) incurred during the calendar month preceding the month of such Distribution Date.

(e) Notwithstanding the priority and allocation contained in Section 4.02(a)(4), if, on any Distribution Date, with respect to any Class of Subordinated Certificates (other than the Subordinated Certificates then outstanding with the highest priority of distribution), the sum of the related Class Subordination Percentages of such Class and of all Classes of Subordinated Certificates which have a higher numerical Class designation than such Class (the "Applicable Credit Support Percentage") is less than the Original Applicable Credit Support Percentage for such Class, no distribution of Principal Prepayments will be made to any such Classes (the "Restricted Classes") and the amount of such Principal Prepayments otherwise distributable to the Restricted Classes shall be distributed to any Classes of Subordinated Certificates having lower numerical Class designations than such Class, pro rata, based on their respective Class Certificate Balances immediately prior to such Distribution Date and shall be distributed in the sequential order provided in Section 4.02(a)(4).

(f) If the amount of a Realized Loss on a Mortgage Loan in a Loan Group has been reduced by application of Subsequent Recoveries with respect to such Mortgage Loan, the amount of such Subsequent Recoveries will be applied sequentially, in the order of payment priority, to increase the Class Certificate Balance of each related Class of Certificates to which Realized Losses have been allocated, but

IV-7

<PAGE>

in each case by not more than the amount of Realized Losses previously allocated to that Class of Certificates pursuant to Section 4.04. Holders of such Certificates will not be entitled to any payment in respect of the Class Optimal Interest Distribution Amount on the amount of such increases for any Interest Accrual Period preceding the Distribution Date on which such increase occurs. Any such increases shall be applied pro rata to the Certificate Balance of each Certificate of such Class.

SECTION 4.03. [Reserved].

SECTION 4.04. Allocation of Realized Losses.

(a) On or prior to each Determination Date, the Trustee shall determine the total amount of Realized Losses with respect to the related Distribution Date. For purposes of allocating losses to the Subordinated Certificates, the Class M-1 Certificates will be deemed to have a lower numerical Class designation, and to be of a higher relative payment priority, than any other Class of Subordinated Certificates.

PSA CWHL 06-10.txt

Realized Losses with respect to any Distribution Date shall be allocated as follows:

(i) the applicable PO Percentage of any Realized Loss on a Mortgage Loan in a Loan Group shall be allocated to the related Class PO Component, until the Component Balance thereof is reduced to zero; and

(ii) the applicable Non-PO Percentage of any Realized Loss shall be allocated first to the Subordinated Certificates in reverse order of their respective numerical Class designations (beginning with the Class of Subordinated Certificates then outstanding with the highest numerical Class designation) until the respective Class Certificate Balance of each such Class is reduced to zero, and second to the related Senior Certificates (other than any Notional Amount Certificates, if applicable, and the related Class PO Component), pro rata on the basis of their respective Class Certificate Balances or, in the case of any Class of Accrual Certificates or Accrual Component, on the basis of the lesser of their respective Class Certificate Balance or Component Balance, as applicable, and their respective initial Class Certificate Balances or Component Balance, as applicable, in each case immediately prior to the related Distribution Date, until the respective Class Certificate Balance or Component Balance of each such Class or Component is reduced to zero; provided, however, that the Non-PO Percentage of any Realized Losses on the Mortgage Loans in Loan Group 1 that would otherwise be allocated to the Class 1-A-8 Certificates shall instead be allocated to the Class 1-A-9 Certificates, until its Class Certificate Balance is reduced to zero,.

(b) The Class Certificate Balance of the Subordinated Certificates then outstanding with the highest numerical Class designation shall be reduced on each Distribution Date by the sum of (i) the amount of any payments on the Class PO Certificates in respect of Class PO Deferred Amounts and (ii) the amount, if any, by which the aggregate of the Class Certificate Balances of all outstanding Classes of Certificates (after giving effect to the distribution of principal and the allocation of Realized Losses and Class PO Deferred Amounts on such Distribution Date) exceeds the Pool Stated Principal Balance for the following Distribution Date.

(c) Any Realized Losses allocated to a Class of Certificates or any reduction in the Class Certificate Balance of a Class of Certificates pursuant to Section 4.04(a) above shall be allocated among the Certificates of such Class in proportion to their respective Certificate Balances.

IV-8

<PAGE>

(d) Any allocation of Realized Losses to a Certificate or to any Component or any reduction in the Certificate Balance or Component Balance of a Certificate or Component, pursuant to Section 4.04(a) above shall be accomplished by reducing the Certificate Balance or Component Balance thereof, as applicable, immediately following the distributions made on the related Distribution Date in accordance with the definition of "Certificate Balance" or "Component Balance," as the case may be.

SECTION 4.05. Cross-Collateralization; Adjustments to Available Funds.

(a) [Reserved].

(b) If on any Distribution Date the Class Certificate Balance of Senior Certificates in a Certificate Group (other than the related Class PO Component) is greater than the aggregate of the Non-PO Percentages of the Stated Principal Balance of the Mortgage Loans in the related Loan Group (the "Undercollateralized Group"), then the Trustee shall reduce the Available Funds

PSA CWHL 06-10.txt

of the other Loan Group that are not undercollateralized (the "Overcollateralized Group"), as follows:

(1) to add to the Available Funds of the Undercollateralized Group an amount equal to the Available Funds of the Overcollateralized Group remaining after making distributions to the Senior Certificates of the Overcollateralized Group on such Distribution Date pursuant to Section 4.02; and

(2) to the Senior Certificates of the Undercollateralized Group, to the extent of the principal portion of Available Funds of the Overcollateralized Group remaining after making distributions to the Senior Certificates of the Overcollateralized Group on such Distribution Date pursuant to Section 4.02, until the Class Certificate Balance of the Senior Certificates of such Undercollateralized Group equals the aggregate of the Non-PO Percentages of the Stated Principal Balance of the Mortgage Loans in the related Loan Group.

SECTION 4.06. Monthly Statements to Certificateholders.

(a) Concurrently with each distribution on a Distribution Date, the Trustee will forward by electronic delivery to each Rating Agency and make available to Certificateholders on the Trustee's website (http://www.bnyinvestorreporting.com) a statement generally setting forth the information contained in Exhibit T hereto.

(b) The Trustee's responsibility for disbursing the above information to the Certificateholders is limited to the availability, timeliness and accuracy of the information provided by the Master Servicer.

(c) On or before the fifth Business Day following the end of each Prepayment Period (but in no event later than the third Business Day prior to the related Distribution Date), the Master Servicer shall deliver to the Trustee (which delivery may be by electronic data transmission) a report in substantially the form set forth as Schedule VI hereto.

(d) Within a reasonable period of time after the end of each calendar year, the Trustee shall cause to be furnished to each Person who at any time during the calendar year was a Certificateholder, a statement containing the information set forth in items (1), (2) and (7) on Exhibit T aggregated for such calendar year or applicable portion thereof during which such Person was a Certificateholder. Such obligation of the Trustee shall be deemed to have been satisfied to the extent that substantially comparable information shall be provided by the Trustee pursuant to any requirements of the Code as from time to time in effect.

IV-9

<PAGE>

SECTION 4.07. Determination of Pass-Through Rates for COFI Certificates.

The Pass-Through Rate for each Class of COFI Certificates for each Interest Accrual Period after the initial Interest Accrual Period shall be determined by the Trustee as provided below on the basis of the Index and the applicable formulae appearing in footnotes corresponding to the COFI Certificates in the table relating to the Certificates in the Preliminary Statement.

Except as provided below, with respect to each Interest Accrual Period following the initial Interest Accrual Period, the Trustee shall not later than two Business Days prior to such Interest Accrual Period but following the publication of the applicable Index determine the Pass-Through Rate at which

PSA CWHL 06-10.txt
interest shall accrue in respect of the COFI Certificates during the related
Interest Accrual Period.

Except as provided below, the Index to be used in determining the
respective Pass-Through Rates for the COFI Certificates for a particular
Interest Accrual Period shall be COFI for the second calendar month preceding
the Outside Reference Date for such Interest Accrual Period. If at the Outside
Reference Date for any Interest Accrual Period, COFI for the second calendar
month preceding such Outside Reference Date has not been published, the Trustee
shall use COFI for the third calendar month preceding such Outside Reference
Date. If COFI for neither the second nor third calendar months preceding any
Outside Reference Date has been published on or before the related Outside
Reference Date, the Index for such Interest Accrual Period and for all
subsequent Interest Accrual Periods shall be the National Cost of Funds Index
for the third calendar month preceding such Interest Accrual Period (or the
fourth preceding calendar month if such National Cost of Funds Index for the
third preceding calendar month has not been published by such Outside Reference
Date). In the event that the National Cost of Funds Index for neither the third
nor fourth calendar months preceding an Interest Accrual Period has been
published on or before the related Outside Reference Date, then for such
Interest Accrual Period and for each succeeding Interest Accrual Period, the
Index shall be LIBOR, determined in the manner set forth below.

With respect to any Interest Accrual Period for which the applicable
Index is LIBOR, LIBOR for such Interest Accrual Period will be established by
the Trustee on the related Interest Determination Date as provided in Section
4.08.

In determining LIBOR and any Pass-Through Rate for the COFI
Certificates or any Reserve Interest Rate, the Trustee may conclusively rely and
shall be protected in relying upon the offered quotations (whether written,
oral or on the Reuters Screen) from the Reference Banks or the New York City banks as
to LIBOR or the Reserve Interest Rate, as appropriate, in effect from time to
time. The Trustee shall not have any liability or responsibility to any Person
for (i) the Trustee's selection of New York City banks for purposes of
determining any Reserve Interest Rate or (ii) its inability, following a
good-faith reasonable effort, to obtain such quotations from the Reference Banks
or the New York City banks or to determine such arithmetic mean, all as provided
for in this Section 4.07.

The establishment of LIBOR and each Pass-Through Rate for the COFI
Certificates by the Trustee shall (in the absence of manifest error) be final,
conclusive and binding upon each Holder of a Certificate and the Trustee.

SECTION 4.08. Determination of Pass-Through Rates for LIBOR
Certificates.

(a) On each Interest Determination Date so long as any LIBOR
Certificates are outstanding, the Trustee will determine LIBOR on the basis of
the British Bankers' Association ("BBA") "Interest Settlement Rate" for
one-month deposits in U.S. dollars as quoted on the Bloomberg Terminal as of
each LIBOR Determination Date.

IV-10

<PAGE>

(b) If on any Interest Determination Date, LIBOR cannot be
determined as provided in paragraph (A) of this Section 4.08, the Trustee shall
either (i) request each Reference Bank to inform the Trustee of the quotation
offered by its principal London office for making one-month United States
dollar deposits in leading banks in the London interbank market, as of 11:00 a.m.
(London time) on such Interest Determination Date or (ii) in lieu of making any
such request, rely on such Reference Bank quotations that appear at such time on

PSA_CWHL 06-10.txt

the Reuters Screen LIBOR Page (as defined in the International Swap Dealers Association Inc. Code of Standard Wording, Assumptions and Provisions for Swaps, 1986 Edition), to the extent available. LIBOR for the next Interest Accrual Period will be established by the Trustee on each interest Determination Date as follows:

(i) If on any Interest Determination Date two or more Reference Banks provide such offered quotations, LIBOR for the next applicable Interest Accrual Period shall be the arithmetic mean of such offered quotations (rounding such arithmetic mean upwards if necessary to the nearest whole multiple of 1/32%).

(ii) If on any Interest Determination Date only one or none of the Reference Banks provides such offered quotations, LIBOR for the next Interest Accrual Period shall be whichever is the higher of (i) LIBOR as determined on the previous Interest Determination Date or (ii) the Reserve Interest Rate. The "Reserve Interest Rate" shall be the rate per annum which the Trustee determines to be either (i) the arithmetic mean (rounded upwards if necessary to the nearest whole multiple of 1/32%) of the one-month United States dollar lending rates that New York City banks selected by the Trustee are quoting, on the relevant Interest Determination Date, to the principal London offices of at least two of the Reference Banks to which such quotations are, in the opinion of the Trustee, being so made, or (ii) in the event that the Trustee can determine no such arithmetic mean, the lowest one-month United States dollar lending rate which New York City banks selected by the Trustee are quoting on such Interest Determination Date to leading European banks.

(iii) If on any Interest Determination Date the Trustee is required but is unable to determine the Reserve Interest Rate in the manner provided in paragraph (b) above, LIBOR for the related Classes of Certificates shall be LIBOR as determined on the preceding applicable Interest Determination Date. If on the initial LIBOR Determination Date the Trustee is required but unable to determine LIBOR in the manner provided above, LIBOR for the next Interest Accrual Period will be 4.74%.

Until all of the LIBOR Certificates are paid in full, the Trustee will at all times retain at least four Reference Banks for the purpose of determining LIBOR with respect to each Interest Determination Date. The Master Servicer initially shall designate the Reference Banks. Each "Reference Bank" shall be a leading bank engaged in transactions in Eurodollar deposits in the international Eurocurrency market, shall not control, be controlled by, or be under common control with, the Trustee and shall have an established place of business in London. If any such Reference Bank should be unwilling or unable to act as such or if the Master Servicer should terminate its appointment as Reference Bank, the Trustee shall promptly appoint or cause to be appointed another Reference Bank. The Trustee shall have no liability or responsibility to any Person for (i) the selection of any Reference Bank for purposes of determining LIBOR or (ii) any inability to retain at least four Reference Banks which is caused by circumstances beyond its reasonable control.

(c) The Pass-Through Rate for each Class of LIBOR Certificates for each Interest Accrual Period shall be determined by the Trustee on each Interest Determination Date so long as the LIBOR Certificates are outstanding on the basis of LIBOR and the respective formulae appearing in

IV-11

<PAGE>

footnotes corresponding to the LIBOR Certificates in the table relating to the Certificates in the Preliminary Statement.

In determining LIBOR, any Pass-Through Rate for the LIBOR

PSA CWHL 06-10.txt
Certificates, any Interest Settlement Rate, or any Reserve Interest Rate, the
Trustee may conclusively rely and shall be protected in relying upon the offered
quotations (whether written, oral or on the Dow Jones Markets) from the BBA
designated banks, the Reference Banks or the New York City banks as to LIBOR,
the Interest Settlement Rate or the Reserve Interest Rate, as appropriate, in
effect from time to time. The Trustee shall not have any liability or
responsibility to any Person for (i) the Trustee's selection of New York City
banks for purposes of determining any Reserve Interest Rate or (ii) its
inability, following a good-faith reasonable effort, to obtain such quotations
from, the BBA designated banks, the Reference Banks or the New York City banks
or to determine such arithmetic mean, all as provided for in this Section 4.08.

        The establishment of LIBOR and each Pass-Through Rate for the LIBOR
Certificates by the Trustee shall (in the absence of manifest error) be final,
conclusive and binding upon each Holder of a Certificate and the Trustee.

        SECTION 4.09. [Reserved].

                                IV-12

<PAGE>


                                ARTICLE V

                            THE CERTIFICATES

        SECTION 5.01. The Certificates.

        The Certificates shall be substantially in the forms attached hereto
as exhibits. The Certificates shall be issuable in registered form, in the
minimum denominations, integral multiples in excess thereof (except that one
Certificate in each Class may be issued in a different amount which must be in
excess of the applicable minimum denomination) and aggregate denominations per
Class set forth in the Preliminary Statement.

        Subject to Section 9.02 hereof respecting the final distribution on
the Certificates, on each Distribution Date the Trustee shall make distributions
to each Certificateholder of record on the preceding Record Date either (x) by
wire transfer in immediately available funds to the account of such holder at a
bank or other entity having appropriate facilities therefor, if (i) such Holder
has so notified the Trustee at least five Business Days prior to the related
Record Date and (ii) such Holder shall hold (A) a Notional Amount Certificate,
(B) 100% of the Class Certificate Balance of any Class of Certificates or (C)
Certificates of any Class with aggregate principal Denominations of not less
than $1,000,000 or (y) by check mailed by first class mail to such
Certificateholder at the address of such holder appearing in the Certificate
Register.

        The Certificates shall be executed by manual or facsimile signature
on behalf of the Trustee by an authorized officer. Certificates bearing the
manual or facsimile signatures of individuals who were, at the time when such
signatures were affixed, authorized to sign on behalf of the Trustee shall bind
the Trustee, notwithstanding that such individuals or any of them have ceased to
be so authorized prior to the countersignature and delivery of such Certificates
or did not hold such offices at the date of such Certificate. No Certificate
shall be entitled to any benefit under this Agreement, or be valid for any
purpose, unless countersigned by the Trustee by manual signature, and such
countersignature upon any Certificate shall be conclusive evidence, and the only
evidence, that such Certificate has been duly executed and delivered hereunder.
All Certificates shall be dated the date of their countersignature. On the
Closing Date, the Trustee shall countersign the Certificates to be issued at the
direction of the Depositor, or any affiliate thereof.

        The Depositor shall provide, or cause to be provided, to the Trustee

PSA CWHL 06-10.txt

on a continuous basis, an adequate inventory of Certificates to facilitate transfers.

SECTION 5.02. Certificate Register; Registration of Transfer and Exchange of Certificates.

(a) The Trustee shall maintain, or cause to be maintained in accordance with the provisions of Section 5.06 hereof, a Certificate Register for the Trust Fund in which, subject to the provisions of subsections (b) and (c) below and to such reasonable regulations as it may prescribe, the Trustee shall provide for the registration of Certificates and of transfers and exchanges of Certificates as herein provided. Upon surrender for registration of transfer of any Certificate, the Trustee shall execute and deliver, in the name of the designated transferee or transferees, one or more new Certificates of the same Class and aggregate Percentage Interest.

At the option of a Certificateholder, Certificates may be exchanged for other Certificates of the same Class in authorized denominations and evidencing the same aggregate Percentage Interest upon surrender of the Certificates to be exchanged at the office or agency of the Trustee. Whenever any

V-1

<PAGE>

Certificates are so surrendered for exchange, the Trustee shall execute, authenticate, and deliver the Certificates which the Certificateholder making the exchange is entitled to receive. Every Certificate presented or surrendered for registration of transfer or exchange shall be accompanied by a written instrument of transfer in form satisfactory to the Trustee duly executed by the holder thereof or his attorney duly authorized in writing.

No service charge to the Certificateholders shall be made for any registration of transfer or exchange of Certificates, but payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer or exchange of Certificates may be required.

All Certificates surrendered for registration of transfer or exchange shall be cancelled and subsequently destroyed by the Trustee in accordance with the Trustee's customary procedures.

(b) No transfer of a Private Certificate shall be made unless such transfer is made pursuant to an effective registration statement under the Securities Act and any applicable state securities laws or is exempt from the registration requirements under said Act and such state securities laws. In the event that a transfer is to be made in reliance upon an exemption from the Securities Act and such laws, in order to assure compliance with the Securities Act and such laws, the Certificateholder desiring to effect such transfer and such Certificateholder's prospective transferee shall each certify to the Trustee in writing the facts surrounding the transfer in substantially the forms set forth in Exhibit J (the "Transferor Certificate") and (i) deliver a letter in substantially the form of either Exhibit K (the "Investment Letter") or Exhibit L (the "Rule 144A Letter") or (ii) there shall be delivered to the Trustee at the expense of the transferor an Opinion of Counsel that such transfer may be made pursuant to an exemption from the Securities Act. The Depositor shall provide to any Holder of a Private Certificate and any prospective transferee designated by any such Holder, information regarding the related Certificates and the Mortgage Loans and such other information as shall be necessary to satisfy the condition to eligibility set forth in Rule 144A(d)(4) for transfer of any such Certificate without registration thereof under the Securities Act pursuant to the registration exemption provided by Rule 144A. The Trustee and the Master Servicer shall cooperate with the Depositor in providing the Rule 144A information referenced in the preceding sentence,

PSA CWHL 06-10.txt

including providing to the Depositor such information regarding the Certificates, the Mortgage Loans and other matters regarding the Trust Fund as the Depositor shall reasonably request to meet its obligation under the preceding sentence. Each Holder of a Private Certificate desiring to effect such transfer shall, and does hereby agree to, indemnify the Trustee and the Depositor, the Sellers and the Master Servicer against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of an ERISA-Restricted Certificate shall be made unless the Trustee shall have received either (i) a representation from the transferee of such Certificate acceptable to and in form and substance satisfactory to the Trustee (in the event such Certificate is a Private Certificate, such requirement is satisfied only by the Trustee's receipt of a representation letter from the transferee substantially in the form of Exhibit K or Exhibit L, or in the event such Certificate is a Residual Certificate, such requirement is satisfied only by the Trustee's receipt of a representation letter from the transferee substantially in the form of Exhibit I), to the effect that (x) such transferee is not a Plan or (y) in the case of a Certificate that is an ERISA-Restricted Certificate and that has been the subject of an ERISA-Qualifying Underwriting, a representation that the transferee is an insurance company which is purchasing such Certificate with funds contained in an "insurance company general account" (as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("PTCE 95-60")) and that the purchase and holding of such Certificate satisfy the requirements for exemptive relief under Sections I and III of PTCE 95-60 or (ii) in the case of any ERISA-Restricted Certificate presented for registration in the name of a Plan, an Opinion of Counsel satisfactory to the Trustee, which Opinion of Counsel shall not be an expense of either the Trustee, the Master Servicer or the Trust Fund, addressed to

V-2

<PAGE>

the Trustee and the Master Servicer, to the effect that the purchase and holding of such ERISA-Restricted Certificate will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, and will not subject the Trustee or the Master Servicer to any obligation in addition to those expressly undertaken in this Agreement or to any liability. For purposes of the preceding sentence, with respect to an ERISA-Restricted Certificate that is not a Residual Certificate, in the event the representation letter or Opinion of Counsel referred to in the preceding sentence is not so furnished, one of the representations in clause (i), as appropriate, shall be deemed to have been made to the Trustee by the transferee's (including an initial acquiror's) acceptance of the ERISA-Restricted Certificate. Notwithstanding anything else to the contrary herein, any purported transfer of an ERISA-Restricted Certificate to or on behalf of a Plan without the delivery to the Trustee of an Opinion of Counsel satisfactory to the Trustee as described above shall be void and of no effect.

To the extent permitted under applicable law (including, but not limited to, ERISA), the Trustee shall be under no liability to any Person for any registration of or transfer of any ERISA-Restricted Certificate or Covered Certificate that is in fact not permitted by this Section 5.02(b) or for making any payments due on such Certificate to the Holder thereof or taking any other action with respect to such Holder under the provisions of this Agreement so long as the transfer was registered by the Trustee in accordance with the foregoing requirements.

(c) Each Person who has or who acquires any Ownership Interest in a Residual Certificate shall be deemed by the acceptance or acquisition of such Ownership Interest to have agreed to be bound by the following provisions, and the rights of each Person acquiring any Ownership Interest in a Residual Certificate are expressly subject to the following provisions:

PSA CWHL 06-10.txt

(i) Each Person holding or acquiring any Ownership Interest in a Residual Certificate shall be a Permitted Transferee and shall promptly notify the Trustee of any change or impending change in its status as a Permitted Transferee.

(ii) Except in connection with (i) the registration of the Tax Matters Person Certificate in the name of the Trustee or (ii) any registration in the name of, or transfer of a Residual Certificate to, an affiliate of the Depositor (either directly or through a nominee) in connection with the initial issuance of the Certificates, no Ownership Interest in a Residual Certificate may be registered on the Closing Date or thereafter transferred, and the Trustee shall not register the Transfer of any Residual Certificate unless the Trustee shall have been furnished with an affidavit (a "Transfer Affidavit") of the initial owner or the proposed transferee in the form attached hereto as Exhibit I.

(iii) Each Person holding or acquiring any Ownership Interest in a Residual Certificate shall agree (A) to obtain a Transfer Affidavit from any other Person to whom such Person attempts to Transfer its Ownership Interest in a Residual Certificate, (B) to obtain a Transfer Affidavit from any Person for whom such Person is acting as nominee, trustee or agent in connection with any Transfer of a Residual Certificate and (C) not to Transfer its Ownership Interest in a Residual Certificate or to cause the Transfer of an Ownership Interest in a Residual Certificate to any other Person if it has actual knowledge that such Person is not a Permitted Transferee.

(iv) Any attempted or purported Transfer of any Ownership Interest in a Residual Certificate in violation of the provisions of this Section 5.02(c) shall be absolutely null and void and shall vest no rights in the purported Transferee. If any purported transferee shall become a Holder of a Residual Certificate in violation of the provisions of this Section 5.02(c), then the last preceding Permitted Transferee shall be restored to all rights as Holder thereof retroactive to the

V-3

<PAGE>

date of registration of Transfer of such Residual Certificate. The Trustee shall be under no liability to any Person for any registration of Transfer of a Residual Certificate that is in fact not permitted by Section 5.02(b) and this Section 5.02(c) or for making any payments due on such Certificate to the Holder thereof or taking any other action with respect to such Holder under the provisions of this Agreement so long as the Transfer was registered after receipt of the related Transfer Affidavit, Transferor Certificate and either the Rule 144A Letter or the Investment Letter, if required. The Trustee shall be entitled but not obligated to recover from any Holder of a Residual Certificate that was in fact not a Permitted Transferee at the time it became a Holder or, at such subsequent time as it became other than a Permitted Transferee, all payments made on such Residual Certificate at and after either such time. Any such payments so recovered by the Trustee shall be paid and delivered by the Trustee to the last preceding Permitted Transferee of such Certificate.

(v) The Depositor shall use its best efforts to make available, upon receipt of written request from the Trustee, all information necessary to compute any tax imposed under Section 860E(e) of the Code as a result of a Transfer of an Ownership Interest in a Residual Certificate to any Holder who is not a Permitted Transferee.

The restrictions on Transfers of a Residual Certificate set forth in

PSA CWHL 06-10.txt
this Section 5.02(c) shall cease to apply (and the applicable portions of the
legend on a Residual Certificate may be deleted) with respect to Transfers
occurring after delivery to the Trustee of an Opinion of Counsel, which Opinion
of Counsel shall not be an expense of the Trust Fund, the Trustee, the Master
Servicer or any Seller, to the effect that the elimination of such restrictions
will not cause any REMIC hereunder to fail to qualify as a REMIC at any time
that the Certificates are outstanding or result in the imposition of any tax on
the Trust Fund, a Certificateholder or another Person. Each Person holding or
acquiring any Ownership Interest in a Residual Certificate hereby consents to
any amendment of this Agreement which, based on an Opinion of Counsel furnished
to the Trustee, is reasonably necessary (a) to ensure that the record ownership
of, or any beneficial interest in, a Residual Certificate is not transferred,
directly or indirectly, to a Person that is not a Permitted Transferee and (b)
to provide for a means to compel the Transfer of a Residual Certificate which is
held by a Person that is not a Permitted Transferee to a Holder that is a
Permitted Transferee.

        (d)  The preparation and delivery of all certificates and opinions
referred to above in this Section 5.02 in connection with transfer shall be at
the expense of the parties to such transfers.

        (e)  Except as provided below, the Book-Entry Certificates shall at
all times remain registered in the name of the Depository or its nominee and at
all times: (i) registration of the Certificates may not be transferred by the
Trustee except to another Depository; (ii) the Depository shall maintain
book-entry records with respect to the Certificate Owners and with respect to
ownership and transfers of such Book-Entry Certificates; (iii) ownership and
transfers of registration of the Book-Entry Certificates on the books of the
Depository shall be governed by applicable rules established by the Depository;
(iv) the Depository may collect its usual and customary fees, charges and
expenses from its Depository Participants; (v) the Trustee shall deal with the
Depository, Depository Participants and indirect participating firms as
representatives of the Certificate Owners of the Book-Entry Certificates for
purposes of exercising the rights of holders under this Agreement, and requests
and directions for and votes of such representatives shall not be deemed to be
inconsistent if they are made with respect to different Certificate Owners; and
(vi) the Trustee may rely and shall be fully protected in relying upon
information furnished by the Depository with respect to its Depository
Participants and furnished by the Depository Participants with respect to
indirect participating firms and persons shown on the books of such indirect
participating firms as direct or indirect Certificate Owners.

                                      V-4
<PAGE>

        All transfers by Certificate Owners of Book-Entry Certificates shall
be made in accordance with the procedures established by the Depository
Participant or brokerage firm representing such Certificate Owner. Each
Depository Participant shall only transfer Book-Entry Certificates of
Certificate Owners it represents or of brokerage firms for which it acts as
agent in accordance with the Depository's normal procedures.

        If (x) (i) the Depository or the Depositor advises the Trustee in
writing that the Depository is no longer willing or able to properly discharge
its responsibilities as Depository, and (ii) the Trustee or the Depositor is
unable to locate a qualified successor or (y) after the occurrence of an Event
of Default, Certificate Owners representing at least 51% of the Certificate
Balance of the Book-Entry Certificates together advise the Trustee and the
Depository through the Depository Participants in writing that the continuation
of a book-entry system through the Depository is no longer in the best interests
of the Certificate Owners, the Trustee shall notify all Certificate Owners,
through the Depository, of the occurrence of any such event and of the
availability of definitive, fully-registered Certificates (the "Definitive
                                  Page 95

PSA CWHL 06-10.txt

Certificates") to Certificate Owners requesting the same. Upon surrender to the Trustee of the related Class of Certificates by the Depository, accompanied by the instructions from the Depository for registration, the Trustee shall issue the Definitive Certificates. Neither the Master Servicer, the Depositor nor the Trustee shall be liable for any delay in delivery of such instruction and each may conclusively rely on, and shall be protected in relying on, such instructions. The Master Servicer shall provide the Trustee with an adequate inventory of certificates to facilitate the issuance and transfer of Definitive Certificates. Upon the issuance of Definitive Certificates all references herein to obligations imposed upon or to be performed by the Depository shall be deemed to be imposed upon and performed by the Trustee, to the extent applicable with respect to such Definitive Certificates and the Trustee shall recognize the Holders of the Definitive Certificates as Certificateholders hereunder; provided that the Trustee shall not by virtue of its assumption of such obligations become liable to any party for any act or failure to act of the Depository.

SECTION 5.03. Mutilated, Destroyed, Lost or Stolen Certificates.

If (a) any mutilated Certificate is surrendered to the Trustee, or the Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Certificate and (b) there is delivered to the Master Servicer and the Trustee such security or indemnity as may be required by them to save each of them harmless, then, in the absence of notice to the Trustee that such Certificate has been acquired by a bona fide purchaser, the Trustee shall execute, countersign and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Certificate, a new Certificate of like Class, tenor and Percentage Interest. In connection with the issuance of any new Certificate under this Section 5.03, the Trustee may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith. Any replacement Certificate issued pursuant to this Section 5.03 shall constitute complete and indefeasible evidence of ownership, as if originally issued, whether or not the lost, stolen or destroyed Certificate shall be found at any time.

SECTION 5.04. Persons Deemed Owners.

The Master Servicer, the Trustee and any agent of the Master Servicer or the Trustee may treat the Person in whose name any Certificate is registered as the owner of such Certificate for the purpose of receiving distributions as provided in this Agreement and for all other purposes whatsoever, and neither the Master Servicer, the Trustee nor any agent of the Master Servicer or the Trustee shall be affected by any notice to the contrary.

V-5

<PAGE>

SECTION 5.05. Access to List of Certificateholders' Names and Addresses.

If three or more Certificateholders and/or Certificate Owners (a) request such information in writing from the Trustee, (b) state that such Certificateholders and/or Certificate Owners desire to communicate with other Certificateholders and/or Certificate Owners with respect to their rights under this Agreement or under the Certificates, and (c) provide a copy of the communication which such Certificateholders and/or Certificate Owners propose to transmit, or if the Depositor or Master Servicer shall request such information in writing from the Trustee, then the Trustee shall, within ten Business Days after the receipt of such request, (x) provide the Depositor, the Master Servicer or such Certificateholders and/or Certificate Owners at such recipients' expense the most recent list of the Certificateholders of such Trust Fund held by the Trustee, if any, and (y) assist the Depositor, the Master Servicer or such Certificateholders and/or Certificate Owners at such

PSA CWHL 06-10.txt
recipients' expense with obtaining from the Depository a list of the related
Depository Participants acting on behalf of Certificate Owners of Book Entry
Certificates. The Depositor and every Certificateholder and Certificate Owner,
by receiving and holding a Certificate or beneficial interest therein, agree
that the Trustee shall not be held accountable by reason of the disclosure of
any such information as to the list of the Certificateholders and/or Depository
Participants hereunder, regardless of the source from which such information was
derived.

          SECTION 5.06. Maintenance of Office or Agency.

          The Trustee will maintain or cause to be maintained at its expense
an office or offices or agency or agencies in New York City where Certificates
may be surrendered for registration of transfer or exchange. The Trustee
initially designates its Corporate Trust Office for such purposes. The Trustee
will give prompt written notice to the Certificateholders of any change in such
location of any such office or agency.

                                    V-6

<PAGE>

                               ARTICLE VI

                    THE DEPOSITOR AND THE MASTER SERVICER

          SECTION 6.01. Respective Liabilities of the Depositor and the Master
Servicer.

          The Depositor and the Master Servicer shall each be liable in
accordance herewith only to the extent of the obligations specifically and
respectively imposed upon and undertaken by them herein.

          SECTION 6.02. Merger or Consolidation of the Depositor or the Master
Servicer.

          The Depositor will keep in full effect its existence, rights and
franchises as a corporation under the laws of the United States or under the
laws of one of the states thereof and will obtain and preserve its qualification
to do business as a foreign corporation in each jurisdiction in which such
qualification is or shall be necessary to protect the validity and
enforceability of this Agreement, or any of the Mortgage Loans and to perform
its duties under this Agreement. The Master Servicer will keep in effect its
existence, rights and franchises as a limited partnership under the laws of the
United States or under the laws of one of the states thereof and will obtain and
preserve its qualification or registration to do business as a foreign
partnership in each jurisdiction in which such qualification or registration is
or shall be necessary to protect the validity and enforceability of this
Agreement or any of the Mortgage Loans and to perform its duties under this
Agreement.

          Any Person into which the Depositor or the Master Servicer may be
merged or consolidated, or any Person resulting from any merger or consolidation
to which the Depositor or the Master Servicer shall be a party, or any person
succeeding to the business of the Depositor or the Master Servicer, shall be the
successor of the Depositor or the Master Servicer, as the case may be,
hereunder, without the execution or filing of any paper or any further act on
the part of any of the parties hereto, anything herein to the contrary
notwithstanding; provided, however, that the successor or surviving Person to
the Master Servicer shall be qualified to service mortgage loans on behalf of
FNMA or FHLMC.

          As a condition to the effectiveness of any merger or consolidation,
at least 15 calendar days prior to the effective date of any merger or
                                 Page 97

PSA CWHL 06-10.txt
consolidation of the Master Servicer, the Master Servicer shall provide (x)
written notice to the Depositor of any successor pursuant to this Section and
(y) in writing and in form and substance reasonably satisfactory to the
Depositor, all information reasonably requested by the Depositor in order to
comply with its reporting obligation under Item 6.02 of Form 8-K with respect to
a replacement Master Servicer.

        SECTION 6.03. Limitation on Liability of the Depositor, the Sellers,
the Master Servicer and Others.

        None of the Depositor, the Master Servicer or any Seller or any of
the directors, officers, employees or agents of the Depositor, the Master
Servicer or any Seller shall be under any liability to the Certificateholders
for any action taken or for refraining from the taking of any action in good
faith pursuant to this Agreement, or for errors in judgment; provided, however,
that this provision shall not protect the Depositor, the Master Servicer, any
Seller or any such Person against any breach of representations or warranties
made by it herein or protect the Depositor, the Master Servicer or any Seller or
any such Person from any liability which would otherwise be imposed by reasons
of willful misfeasance, bad faith or gross negligence in the performance of
duties or by reason of reckless disregard of obligations and duties hereunder.
The Depositor, the Master Servicer, each Seller and any director, officer,
employee or agent of the Depositor, the Master Servicer or each Seller may rely
in good faith on

                                    VI-1

<PAGE>

any document of any kind prima facie properly executed and submitted by any
Person respecting any matters arising hereunder. The Depositor, the Master
Servicer, each Seller and any director, officer, employee or agent of the
Depositor, the Master Servicer or any Seller shall be indemnified by the Trust
Fund and held harmless against any loss, liability or expense incurred in
connection with any audit, controversy or judicial proceeding relating to a
governmental taxing authority or any legal action relating to this Agreement or
the Certificates, other than any loss, liability or expense related to any
specific Mortgage Loan or Mortgage Loans (except as any such loss, liability or
expense shall be otherwise reimbursable pursuant to this Agreement) and any
loss, liability or expense incurred by reason of willful misfeasance, bad faith
or gross negligence in the performance of duties hereunder or by reason of
reckless disregard of obligations and duties hereunder. None of the Depositor,
the Master Servicer or any Seller shall be under any obligation to appear in,
prosecute or defend any legal action that is not incidental to its respective
duties hereunder and which in its opinion may involve it in any expense or
liability; provided, however, that any of the Depositor, the Master Servicer or
any Seller may in its discretion undertake any such action that it may deem
necessary or desirable in respect of this Agreement and the rights and duties of
the parties hereto and interests of the Trustee and the Certificateholders
hereunder. In such event, the legal expenses and costs of such action and any
liability resulting therefrom shall be expenses, costs and liabilities of the
Trust Fund, and the Depositor, the Master Servicer and each Seller shall be
entitled to be reimbursed therefor out of the Certificate Account.

        SECTION 6.04. Limitation on Resignation of Master Servicer.

        The Master Servicer shall not resign from the obligations and duties
hereby imposed on it except (a) upon appointment of a successor servicer and
receipt by the Trustee of a letter from each Rating Agency that such a
resignation and appointment will not result in a downgrade or withdrawal of the
rating of any of the Certificates or (b) upon determination that its duties
hereunder are no longer permissible under applicable law. Any such determination
under clause (b) permitting the resignation of the Master Servicer shall be
evidenced by an Opinion of Counsel to such effect delivered to the Trustee. No

PSA CWHL 06-10.txt

resignation of the Master Servicer shall become effective until the Trustee or a successor master servicer shall have assumed the Master Servicer's responsibilities, duties, liabilities (other than those liabilities arising prior to the appointment of such successor) and obligations hereunder and the Depositor shall have received the information described in the following sentence. As a condition to the effectiveness of any such resignation, at least 15 calendar days prior to the effective date of such resignation, the Master Servicer shall provide (x) written notice to the Depositor of any successor pursuant to this Section and (y) in writing and in form and substance reasonably satisfactory to the Depositor, all information reasonably requested by the Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8-K with respect to the resignation of the Master Servicer.

VI-2

<PAGE>

ARTICLE VII

DEFAULT

SECTION 7.01. Events of Default.

"Event of Default," wherever used herein, means any one of the following events:

(i) any failure by the Master Servicer to deposit in the Certificate Account or remit to the Trustee any payment required to be made under the terms of this Agreement, which failure shall continue unremedied for five days after the date upon which written notice of such failure shall have been given to the Master Servicer by the Trustee or the Depositor or to the Master Servicer and the Trustee by the Holders of Certificates having not less than 25% of the Voting Rights evidenced by the Certificates; or

(ii) any failure by the Master Servicer to observe or perform in any material respect any other of the covenants or agreements on the part of the Master Servicer contained in this Agreement (except with respect to a failure related to a Limited Exchange Act Reporting Obligation), which failure materially affects the rights of Certificateholders, that failure continues unremedied for a period of 60 days after the date on which written notice of such failure shall have been given to the Master Servicer by the Trustee or the Depositor, or to the Master Servicer and the Trustee by the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates; provided, however, that the sixty-day cure period shall not apply to the initial delivery of the Mortgage File for Delay Delivery Mortgage Loans nor the failure to substitute or repurchase in lieu of delivery; or

(iii) a decree or order of a court or agency or supervisory authority having jurisdiction in the premises for the appointment of a receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Master Servicer and such decree or order shall have remained in force undischarged or unstayed for a period of 60 consecutive days; or

(iv) the Master Servicer shall consent to the appointment of a receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Master Servicer or all or substantially all of the property of the Master Servicer; or

Page 99

PSA CWHL 06-10.txt

(v) the Master Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of, or commence a voluntary case under, any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

(vi) the Master Servicer shall fail to reimburse in full the Trustee within five days of the Master Servicer Advance Date for any Advance made by the Trustee pursuant to Section 4.01(b) together with accrued and unpaid interest.

If an Event of Default described in clauses (i) to (vi) of this Section shall occur, then, and in each and every such case, so long as such Event of Default shall not have been remedied, the Trustee may, or, if an Event of Default described in clauses (i) to (v) of this Section shall occur, then, and in each and every such case, so long as such Event of Default shall not have been remedied, at the direction of the

VII-1

<PAGE>

Holders of Certificates evidencing not less than 66-2/3% of the Voting Rights evidenced by the Certificates, the Trustee shall, by notice in writing to the Master Servicer (with a copy to each Rating Agency and the Depositor), terminate all of the rights and obligations of the Master Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof, other than its rights as a Certificateholder hereunder.

In addition, if during the period that the Depositor is required to file Exchange Act Reports with respect to the Trust Fund, the Master Servicer shall fail to observe or perform any of the obligations that constitute a Limited Exchange Act Reporting Obligation or the obligations set forth in Section 3.16(a) or Section 11.07(a)(1) and (2), and such failure continues for the lesser of 10 calendar days or such period in which the applicable Exchange Act Report can be filed timely (without taking into account any extensions), so long as such failure shall not have been remedied, the Trustee shall, but only at the direction of the Depositor, terminate all of the rights and obligations of the Master Servicer under this Agreement and in and to the Mortgage Loans and the proceeds thereof, other than its rights as a Certificateholder hereunder. The Depositor shall not be entitled to terminate the rights and obligations of the Master Servicer if a failure of the Master Servicer to identify a Subcontractor "participating in the servicing function" within the meaning of Item 1122 of Regulation AB was attributable solely to the role or functions of such Subcontractor with respect to mortgage loans other than the Mortgage Loans.

On and after the receipt by the Master Servicer of such written notice, all authority and power of the Master Servicer hereunder, whether with respect to the Mortgage Loans or otherwise, shall pass to and be vested in the Trustee. The Trustee shall thereupon make any Advance which the Master Servicer failed to make subject to Section 4.01 hereof whether or not the obligations of the Master Servicer have been terminated pursuant to this Section. The Trustee is hereby authorized and empowered to execute and deliver, on behalf of the Master Servicer, as attorney-in-fact or otherwise, any and all documents and other instruments, and to do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwise. Unless expressly provided in such written notice, no such termination shall affect any obligation of the Master Servicer to pay amounts owed pursuant to Article VIII. The Master Servicer agrees to cooperate with the Trustee in effecting the termination of the Master Servicer's responsibilities and rights hereunder, including, without limitation, the transfer to the Trustee of all cash amounts which shall at the time be credited to the Certificate Account, or thereafter be received with respect to the

PSA CWHL 06-10.txt
Mortgage Loans.

          Notwithstanding any termination of the activities of the Master
Servicer hereunder, the Master Servicer shall be entitled to receive, out of any
late collection of a Scheduled Payment on a Mortgage Loan which was due prior to
the notice terminating such Master Servicer's rights and obligations as Master
Servicer hereunder and received after such notice, that portion thereof to which
such Master Servicer would have been entitled pursuant to Sections 3.08(a)(i)
through (viii), and any other amounts payable to such Master Servicer hereunder
the entitlement to which arose prior to the termination of its activities
hereunder.

          If the Master Servicer is terminated, the Trustee shall provide the
Depositor in writing and in form and substance reasonably satisfactory to the
Depositor, all information reasonably requested by the Depositor in order to
comply with its reporting obligation under Item 6.02 of Form 8-K with respect to
a successor master servicer in the event the Trustee should succeed to the
duties of the Master Servicer as set forth herein.

                                    VII-2
<PAGE>

          SECTION 7.02. Trustee to Act; Appointment of Successor.

          On and after the time the Master Servicer receives a notice of
termination pursuant to Section 7.01 hereof, the Trustee shall, subject to and
to the extent provided in Section 3.04, be the successor to the Master Servicer
in its capacity as master servicer under this Agreement and the transactions set
forth or provided for herein and shall be subject to all the responsibilities,
duties and liabilities relating thereto placed on the Master Servicer by the
terms and provisions hereof and applicable law including the obligation to make
Advances pursuant to Section 4.01. As compensation therefor, the Trustee shall
be entitled to all funds relating to the Mortgage Loans that the Master Servicer
would have been entitled to charge to the Certificate Account or Distribution
Account if the Master Servicer had continued to act hereunder. Notwithstanding
the foregoing, if the Trustee has become the successor to the Master Servicer in
accordance with Section 7.01 hereof, the Trustee may, if it shall be unwilling
to so act, or shall, if it is prohibited by applicable law from making Advances
pursuant to Section 4.01 hereof or if it is otherwise unable to so act, appoint,
or petition a court of competent jurisdiction to appoint, any established
mortgage loan servicing institution the appointment of which does not adversely
affect the then current rating of the Certificates, by each Rating Agency as the
successor to the Master Servicer hereunder in the assumption of all or any part
of the responsibilities, duties or liabilities of the Master Servicer hereunder.
Any successor to the Master Servicer shall be an institution which is a FNMA and
FHLMC approved seller/servicer in good standing, which has a net worth of at
least $15,000,000, and which is willing to service the Mortgage Loans and (i)
executes and delivers to the Depositor and the Trustee an agreement accepting
such delegation and assignment, which contains an assumption by such Person of
the rights, powers, duties, responsibilities, obligations and liabilities of the
Master Servicer (other than liabilities of the Master Servicer under Section
6.03 hereof incurred prior to termination of the Master Servicer under Section
7.01), with like effect as if originally named as a party to this Agreement; and
provided further that each Rating Agency acknowledges that its rating of the
Certificates in effect immediately prior to such assignment and delegation will
not be qualified or reduced, as a result of such assignment and delegation and
(ii) provides to the Depositor in writing fifteen days prior to the effective
date of such appointment and in form and substance reasonably satisfactory to
the Depositor, all information reasonably requested by the Depositor in order to
comply with its reporting obligation under Item 6.02 of Form 8-K with respect to
a replacement master servicer. The Trustee shall provide written notice to the
Depositor of such successor pursuant to this Section. Pending appointment of a
successor to the Master Servicer hereunder, the Trustee, unless the Trustee is
                                  Page 101

PSA CWHL 06-10.txt
prohibited by law from so acting, shall, subject to Section 3.04 hereof, act in such capacity as hereinabove provided. In connection with such appointment and assumption, the Trustee may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree; provided, however, that no such compensation shall be in excess of the Master Servicing Fee permitted to be paid to the Master Servicer hereunder. The Trustee and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession. Neither the Trustee nor any other successor master servicer shall be deemed to be in default hereunder by reason of any failure to make, or any delay in making, any distribution hereunder or any portion thereof or any failure to perform, or any delay in performing, any duties or responsibilities hereunder, in either case caused by the failure of the Master Servicer to deliver or provide, or any delay in delivering or providing, any cash, information, documents or records to it.

        Any successor to the Master Servicer as master servicer shall give notice to the Mortgagors of such change of servicer and shall, during the term of its service as master servicer maintain in force the policy or policies that the Master Servicer is required to maintain pursuant to Section 3.09.

        In connection with the termination or resignation of the Master Servicer hereunder, either (i) the successor Master Servicer, including the Trustee if the Trustee is acting as successor Master Servicer, shall represent and warrant that it is a member of MERS in good standing and shall agree to

                                VII-3

<PAGE>

comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS, or (ii) the predecessor Master Servicer shall cooperate with the successor Master Servicer either (x) in causing MERS to execute and deliver an assignment of Mortgage in recordable form to transfer the Mortgage from MERS to the Trustee and to execute and deliver such other notices, documents and other instruments as may be necessary or desirable to effect a transfer of such Mortgage Loan or servicing of such Mortgage Loan on the MERS(R) System to the successor Master Servicer or (y) in causing MERS to designate on the MERS(R) System the successor Master Servicer as the servicer of such Mortgage Loan. The predecessor Master Servicer shall file or cause to be filed any such assignment in the appropriate recording office. The successor Master Servicer shall cause such assignment to be delivered to the Trustee promptly upon receipt of the original with evidence of recording thereon or a copy certified by the public recording office in which such assignment was recorded.

        SECTION 7.03. Notification to Certificateholders.

        (a) Upon any termination of or appointment of a successor to the Master Servicer, the Trustee shall give prompt written notice thereof to Certificateholders and to each Rating Agency.

        (b) Within 60 days after the occurrence of any Event of Default, the Trustee shall transmit by mail to all Certificateholders notice of each such Event of Default hereunder known to the Trustee, unless such Event of Default shall have been cured or waived.

                                VII-4

<PAGE>

                            ARTICLE VIII

                    CONCERNING THE TRUSTEE

        SECTION 8.01. Duties of Trustee.
                        Page 102

PSA CWHL 06-10.txt

The Trustee, prior to the occurrence of an Event of Default and after the curing of all Events of Default that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement. In case an Event of Default has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee that are specifically required to be furnished pursuant to any provision of this Agreement shall examine them to determine whether they are in the form required by this Agreement; provided, however, that the Trustee shall not be responsible for the accuracy or content of any such resolution, certificate, statement, opinion, report, document, order or other instrument.

No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; provided, however, that:

(i) unless an Event of Default known to the Trustee shall have occurred and be continuing, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee and the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement which it believed in good faith to be genuine and to have been duly executed by the proper authorities respecting any matters arising hereunder;

(ii) the Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it shall be finally proven that the Trustee was negligent in ascertaining the pertinent facts;

(iii) the Trustee shall not be liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of Holders of Certificates evidencing not less than 25% of the Voting Rights of Certificates relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement; and

(iv) without in any way limiting the provisions of this Section 8.01 or Section 8.02 hereof, the Trustee shall be entitled to rely conclusively on the information delivered to it by the Master Servicer in a Trustee Advance Notice in determining whether or not it is required to make an Advance under Section 4.01(b), shall have no responsibility to ascertain or confirm any information contained in any Trustee Advance Notice, and shall have no obligation to make any Advance under Section 4.01(b) in the absence of a Trustee Advance Notice or actual knowledge

VIII-1

<PAGE>

of a Responsible Officer of the Trustee that (A) such Advance was not made by the Master Servicer and (B) such Advance is not a Nonrecoverable Advance.

PSA CWHL 06-10.txt

SECTION 8.02. Certain Matters Affecting the Trustee.

Except as otherwise provided in Section 8.01:

(i) the Trustee may request and rely upon and shall be protected in acting or refraining from acting upon any resolution, Officers' Certificate, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties and the Trustee shall have no responsibility to ascertain or confirm the genuineness of any signature of any such party or parties;

(ii) the Trustee may consult with counsel, financial advisers or accountants and the advice of any such counsel, financial advisers or accountants and any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such Opinion of Counsel;

(iii) the Trustee shall not be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement;

(iv) the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing so to do by Holders of Certificates evidencing not less than 25% of the Voting Rights allocated to each Class of Certificates;

(v) the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, accountants or attorneys;

(vi) the Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties or in the exercise of any of its rights or powers hereunder if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not assured to it;

(vii) the Trustee shall not be liable for any loss on any investment of funds pursuant to this Agreement (other than as issuer of the investment security);

(viii) the Trustee shall not be deemed to have knowledge of an Event of Default until a Responsible Officer of the Trustee shall have received written notice thereof; and

(ix) the Trustee shall be under no obligation to exercise any of the trusts, rights or powers vested in it by this Agreement or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Certificateholders, pursuant to the provisions of this Agreement, unless such Certificateholders shall have offered to the Trustee reasonable security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which may be incurred therein or thereby.

VIII-2

<PAGE>

PSA CWHL 06-10.txt

SECTION 8.03. Trustee Not Liable for Certificates or Mortgage Loans.

The recitals contained herein and in the Certificates shall be taken as the statements of the Depositor or a Seller, as the case may be, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of this Agreement or of the Certificates or of any Mortgage Loan or related document or of MERS or the MERS System other than with respect to the Trustee's execution and counter-signature of the Certificates. The Trustee shall not be accountable for the use or application by the Depositor or the Master Servicer of any funds paid to the Depositor or the Master Servicer in respect of the Mortgage Loans or deposited in or withdrawn from the Certificate Account by the Depositor or the Master Servicer.

SECTION 8.04. Trustee May Own Certificates.

The Trustee in its individual or any other capacity may become the owner or pledgee of Certificates with the same rights as it would have if it were not the Trustee.

SECTION 8.05. Trustee's Fees and Expenses.

The Trustee, as compensation for its activities hereunder, shall be entitled to withdraw from the Distribution Account on each Distribution Date an amount equal to the Trustee Fee for such Distribution Date. The Trustee and any director, officer, employee or agent of the Trustee shall be indemnified by the Master Servicer and held harmless against any loss, liability or expense (including reasonable attorney's fees) (i) incurred in connection with any claim or legal action relating to (a) this Agreement, (b) the Certificates or (c) in connection with the performance of any of the Trustee's duties hereunder, other than any loss, liability or expense incurred by reason of willful misfeasance, bad faith or negligence in the performance of any of the Trustee's duties hereunder or incurred by reason of any action of the Trustee taken at the direction of the Certificateholders and (ii) resulting from any error in any tax or information return prepared by the Master Servicer. Such indemnity shall survive the termination of this Agreement or the resignation or removal of the Trustee hereunder. Without limiting the foregoing, the Master Servicer covenants and agrees, except as otherwise agreed upon in writing by the Depositor and the Trustee, and except for any such expense, disbursement or advance as may arise from the Trustee's negligence, bad faith or willful misconduct, to pay or reimburse the Trustee, for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any of the provisions of this Agreement with respect to: (A) the reasonable compensation and the expenses and disbursements of its counsel not associated with the closing of the issuance of the Certificates, (B) the reasonable compensation, expenses and disbursements of any accountant, engineer or appraiser that is not regularly employed by the Trustee, to the extent that the Trustee must engage such persons to perform acts or services hereunder and (C) printing and engraving expenses in connection with preparing any Definitive Certificates. Except as otherwise provided herein, the Trustee shall not be entitled to payment or reimbursement for any routine ongoing expenses incurred by the Trustee in the ordinary course of its duties as Trustee, Registrar, Tax Matters Person or Paying Agent hereunder or for any other expenses.

SECTION 8.06. Eligibility Requirements for Trustee.

The Trustee hereunder shall at all times be a corporation or association organized and doing business under the laws of a state or the United States of America, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000, subject to supervision or examination by federal or state authority and with a credit rating which would not cause either of the Rating Agencies to reduce or withdraw

PSA CWHL 06-10.txt
their respective then current ratings of the Certificates (or having provided
such security from time to time as is sufficient to avoid such reduction) as
evidenced in writing by each Rating Agency. If such corporation or association
publishes reports of

VIII-3

<PAGE>

condition at least annually, pursuant to law or to the requirements of the
aforesaid supervising or examining authority, then for the purposes of this
Section 8.06 the combined capital and surplus of such corporation or association
shall be deemed to be its combined capital and surplus as set forth in its most
recent report of condition so published. In case at any time the Trustee shall
cease to be eligible in accordance with the provisions of this Section 8.06, the
Trustee shall resign immediately in the manner and with the effect specified in
Section 8.07 hereof. The entity serving as Trustee may have normal banking and
trust relationships with the Depositor and its affiliates or the Master Servicer
and its affiliates; provided, however, that such entity cannot be an affiliate
of the Master Servicer other than the Trustee in its role as successor to the
Master Servicer.

          SECTION 8.07. Resignation and Removal of Trustee.

          The Trustee may at any time resign and be discharged from the trusts
hereby created by giving written notice of resignation to the Depositor, the
Master Servicer and each Rating Agency not less than 60 days before the date
specified in such notice when, subject to Section 8.08, such resignation is to
take effect, and acceptance by a successor trustee in accordance with Section
8.08 meeting the qualifications set forth in Section 8.06. If no successor
trustee meeting such qualifications shall have been so appointed and have
accepted appointment within 30 days after the giving of such notice or
resignation, the resigning Trustee may petition any court of competent
jurisdiction for the appointment of a successor trustee.

          As a condition to the effectiveness of any such resignation, at
least 15 calendar days prior to the effective date of such resignation, the
Trustee shall provide (x) written notice to the Depositor of any successor
pursuant to this Section and (y) in writing and in form and substance reasonably
satisfactory to the Depositor, all information reasonably requested by the
Depositor in order to comply with its reporting obligation under Item 6.02 of
Form 8-K with respect to the resignation of the Trustee.

          If at any time (i) the Trustee shall cease to be eligible in
accordance with the provisions of Section 8.06 hereof and shall fail to resign
after written request thereto by the Depositor, (ii) the Trustee shall become
incapable of acting, or shall be adjudged as bankrupt or insolvent, or a
receiver of the Trustee or of its property shall be appointed, or any public
officer shall take charge or control of the Trustee or of its property or
affairs for the purpose of rehabilitation, conservation or liquidation,(iii) (A)
a tax is imposed with respect to the Trust Fund by any state in which the
Trustee or the Trust Fund is located, (B) the imposition of such tax would be
avoided by the appointment of a different trustee and (C) the Trustee fails to
indemnify the Trust Fund against such tax or (iv) during the period that the
Depositor is required to file Exchange Act Reports with respect to the Trust
Fund, the Trustee fails to comply with its obligations under the last sentence
of Section 7.01, the preceding paragraph, Section 8.09 or Article XI and such
failure is not remedied within the lesser of 10 calendar days or such period in
which the applicable Exchange Act Report can be filed timely (without taking
into account any extensions), then, in the case of clauses (i) through (iii),
the Depositor or the Master Servicer, or in the case of clause (iv), the
Depositor, may remove the Trustee and appoint a successor trustee by written
instrument, in triplicate, one copy of which instrument shall be delivered to
the Trustee, one copy of which shall be delivered to the Master Servicer and one

PSA CWHL 06-10.txt
copy of which shall be delivered to the successor trustee.

The Holders of Certificates entitled to at least 51% of the Voting Rights may at any time remove the Trustee and appoint a successor trustee by written instrument or instruments, in triplicate, signed by such Holders or their attorneys-in-fact duly authorized, one complete set of which instruments shall be delivered by the successor Trustee to the Master Servicer, one complete set to the Trustee so removed, one complete set to the successor so appointed and one complete set to the Depositor, together with a written description of the basis of such removal. Notice of any removal of the Trustee shall be given to each Rating Agency by the successor trustee.

VIII-4

<PAGE>

Any resignation or removal of the Trustee and appointment of a successor trustee pursuant to any of the provisions of this Section 8.07 shall become effective upon acceptance of appointment by the successor trustee as provided in Section 8.08 hereof.

SECTION 8.08. Successor Trustee.

Any successor trustee appointed as provided in Section 8.07 hereof shall execute, acknowledge and deliver to the Depositor and to its predecessor trustee and the Master Servicer an instrument accepting such appointment hereunder and thereupon the resignation or removal of the predecessor trustee shall become effective and such successor trustee, without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties and obligations of its predecessor hereunder, with the like effect as if originally named as trustee herein. The Depositor, the Master Servicer and the predecessor trustee shall execute and deliver such instruments and do such other things as may reasonably be required for more fully and certainly vesting and confirming in the successor trustee all such rights, powers, duties, and obligations.

No successor trustee shall accept appointment as provided in this Section 8.08 unless at the time of such acceptance such successor trustee shall be eligible under the provisions of Section 8.06 hereof, its appointment shall not adversely affect the then current rating of the Certificates and such successor trustee has provided to the Depositor in writing and in form and substance reasonably satisfactory to the Depositor, all information reasonably requested by the Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8-K with respect to a replacement Trustee.

Upon acceptance of appointment by a successor trustee as provided in this Section 8.08, the Depositor shall mail notice of the succession of such trustee hereunder to all Holders of Certificates. If the Depositor fails to mail such notice within 10 days after acceptance of appointment by the successor trustee, the successor trustee shall cause such notice to be mailed at the expense of the Depositor.

SECTION 8.09. Merger or Consolidation of Trustee.

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to the business of the Trustee, shall be the successor of the Trustee hereunder, provided that such corporation shall be eligible under the provisions of Section 8.06 hereof without the execution or filing of any paper or further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

As a condition to the effectiveness of any merger or consolidation, at least 15 calendar days prior to the effective date of any merger or

PSA CWHL 06-10.txt
consolidation of the Trustee, the Trustee shall provide (x) written notice to
the Depositor of any successor pursuant to this Section and (y) in writing and
in form and substance reasonably satisfactory to the Depositor, all information
reasonably requested by the Depositor in order to comply with its reporting
obligation under Item 6.02 of Form 8-K with respect to a replacement Trustee.

     SECTION 8.10. Appointment of Co-Trustee or Separate Trustee.

     Notwithstanding any other provisions of this Agreement, at any time,
for the purpose of meeting any legal requirements of any jurisdiction in which
any part of the Trust Fund or property securing any Mortgage Note may at the
time be located, the Master Servicer and the Trustee acting jointly shall have
the power and shall execute and deliver all instruments to appoint one or more
Persons approved by the Trustee to act as co-trustee or co-trustees jointly with
the Trustee, or separate trustee or

               VIII-5

<PAGE>

separate trustees, of all or any part of the Trust Fund, and to vest in such
Person or Persons, in such capacity and for the benefit of the
Certificateholders, such title to the Trust Fund or any part thereof, whichever
is applicable, and, subject to the other provisions of this Section 8.10, such
powers, duties, obligations, rights and trusts as the Master Servicer and the
Trustee may consider necessary or desirable. If the Master Servicer shall not
have joined in such appointment within 15 days after the receipt by it of a
request to do so, or in the case an Event of Default shall have occurred and be
continuing, the Trustee alone shall have the power to make such appointment. No
co-trustee or separate trustee hereunder shall be required to meet the terms of
eligibility as a successor trustee under Section 8.06 and no notice to
Certificateholders of the appointment of any co-trustee or separate trustee
shall be required under Section 8.08.

     Every separate trustee and co-trustee shall, to the extent permitted
by law, be appointed and act subject to the following provisions and conditions:

     (i) To the extent necessary to effectuate the purposes of this
Section 8.10, all rights, powers, duties and obligations conferred or
imposed upon the Trustee, except for the obligation of the Trustee under
this Agreement to advance funds on behalf of the Master Servicer, shall be
conferred or imposed upon and exercised or performed by the Trustee and
such separate trustee or co-trustee jointly (it being understood that such
separate trustee or co-trustee is not authorized to act separately without
the Trustee joining in such act), except to the extent that under any law
of any jurisdiction in which any particular act or acts are to be
performed (whether as Trustee hereunder or as successor to the Master
Servicer hereunder), the Trustee shall be incompetent or unqualified to
perform such act or acts, in which event such rights, powers, duties and
obligations (including the holding of title to the applicable Trust Fund
or any portion thereof in any such jurisdiction) shall be exercised and
performed singly by such separate trustee or co-trustee, but solely at the
direction of the Trustee;

     (ii) No trustee hereunder shall be held personally liable by reason
of any act or omission of any other trustee hereunder and such appointment
shall not, and shall not be deemed to, constitute any such separate
trustee or co-trustee as agent of the Trustee;

     (iii) The Trustee may at any time accept the resignation of or
remove any separate trustee or co-trustee; and

     (iv) The Master Servicer, and not the Trustee, shall be liable for
the payment of reasonable compensation, reimbursement and indemnification

PSA CWHL 06-10.txt
to any such separate trustee or co-trustee.

Any notice, request or other writing given to the Trustee shall be deemed to have been given to each of the separate trustees and co-trustees, when and as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Agreement and the conditions of this Article VIII. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Trustee or separately, as may be provided therein, subject to all the provisions of this Agreement, specifically including every provision of this Agreement relating to the conduct of, affecting the liability of, or affording protection to, the Trustee. Every such instrument shall be filed with the Trustee and a copy thereof given to the Master Servicer and the Depositor.

Any separate trustee or co-trustee may, at any time, constitute the Trustee its agent or attorney-in-fact, with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Agreement on its behalf and in its name. If any separate trustee or co-trustee

VIII-6

<PAGE>

shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

SECTION 8.11. Tax Matters.

It is intended that the assets with respect to which any REMIC election is to be made, as set forth in the Preliminary Statement, shall constitute, and that the conduct of matters relating to such assets shall be such as to qualify such assets as, a "real estate mortgage investment conduit" as defined in and in accordance with the REMIC Provisions. In furtherance of such intention, the Trustee covenants and agrees that it shall act as agent (and the Trustee is hereby appointed to act as agent) on behalf of any such REMIC and that in such capacity it shall: (a) prepare and file, or cause to be prepared and filed, in a timely manner, a U.S. Real Estate Mortgage Investment Conduit Income Tax Return (Form 1066 or any successor form adopted by the Internal Revenue Service) and prepare and file or cause to be prepared and filed with the Internal Revenue Service and applicable state or local tax authorities income tax or information returns for each taxable year with respect to any such REMIC, containing such information and at the times and in the manner as may be required by the Code or state or local tax laws, regulations, or rules, and furnish or cause to be furnished to Certificateholders the schedules, statements or information at such times and in such manner as may be required thereby; (b) within thirty days of the Closing Date, furnish or cause to be furnished to the Internal Revenue Service, on Forms 8811 or as otherwise may be required by the Code, the name, title, address, and telephone number of the person that the holders of the Certificates may contact for tax information relating thereto, together with such additional information as may be required by such Form, and update such information at the time or times in the manner required by the Code; (c) make or cause to be made elections that such assets be treated as a REMIC on the federal tax return for its first taxable year (and, if necessary, under applicable state law); (d) prepare and forward, or cause to be prepared and forwarded, to the Certificateholders and to the Internal Revenue Service and, if necessary, state tax authorities, all information returns and reports as and when required to be provided to them in accordance with the REMIC Provisions, including without limitation, the calculation of any original issue discount using the Prepayment Assumption; (e) provide information necessary for the computation of tax imposed on the transfer of a Residual Certificate to a Person that is not a Permitted Transferee, or an agent (including a broker, nominee or

PSA_CWHL_06-10.txt
other middleman) of a Non-Permitted Transferee, or a pass-through entity in
which a Non-Permitted Transferee is the record holder of an interest (the
reasonable cost of computing and furnishing such information may be charged to
the Person liable for such tax); (f) to the extent that they are under its
control conduct matters relating to such assets at all times that any
Certificates are outstanding so as to maintain the status as a REMIC under the
REMIC Provisions; (g) not knowingly or intentionally take any action or omit to
take any action that would cause the termination of the tax status of any REMIC;
(h) pay, from the sources specified in the last paragraph of this Section 8.11,
the amount of any federal or state tax, including prohibited transaction taxes
as described below, imposed on any such REMIC prior to its termination when and
as the same shall be due and payable (but such obligation shall not prevent the
Trustee or any other appropriate Person from contesting any such tax in
appropriate proceedings and shall not prevent the Trustee from withholding
payment of such tax, if permitted by law, pending the outcome of such
proceedings); (i) ensure that federal, state or local income tax or information
returns shall be signed by the Trustee or such other person as may be required
to sign such returns by the Code or state or local laws, regulations or rules;
(j) maintain records relating to any such REMIC, including but not limited to
the income, expenses, assets and liabilities thereof and the fair market value
and adjusted basis of the assets determined at such intervals as may be required
by the Code, as may be necessary to prepare the foregoing returns, schedules,
statements or information; and (k) as and when necessary and appropriate,
represent any such REMIC in any administrative or judicial proceedings relating
to an examination or audit by any governmental taxing authority, request an
administrative adjustment as to any taxable year of any such REMIC, enter into
settlement agreements with any governmental taxing agency, extend any statute of
limitations relating to

                                    VIII-7

<PAGE>

any tax item of any such REMIC, and otherwise act on behalf of any such REMIC in
relation to any tax matter or controversy involving it.

        In order to enable the Trustee to perform its duties as set forth
herein, the Depositor shall provide, or cause to be provided, to the Trustee
within ten (10) days after the Closing Date all information or data that the
Trustee requests in writing and determines to be relevant for tax purposes to
the valuations and offering prices of the Certificates, including, without
limitation, the price, yield, prepayment assumption and projected cash flows of
the Certificates and the Mortgage Loans. Thereafter, the Depositor shall provide
to the Trustee promptly upon written request therefor, any such additional
information or data that the Trustee may, from time to time, reasonably request
in order to enable the Trustee to perform its duties as set forth herein. The
Depositor hereby indemnifies the Trustee for any losses, liabilities, damages,
claims or expenses of the Trustee arising from any errors or miscalculations of
the Trustee that result from any failure of the Depositor to provide, or to
cause to be provided, accurate information or data to the Trustee on a timely
basis.

        In the event that any tax is imposed on "prohibited transactions" of
any REMIC hereunder as defined in Section 860F(a)(2) of the Code, on the "net
income from foreclosure property" of such REMIC as defined in Section 860G(c) of
the Code, on any contribution to any REMIC hereunder after the Startup Day
pursuant to Section 860G(d) of the Code, or any other tax is imposed, including,
without limitation, any minimum tax imposed upon any REMIC hereunder pursuant to
Sections 23153 and 24874 of the California Revenue and Taxation Code, if not
paid as otherwise provided for herein, such tax shall be paid by (i) the
Trustee, if any such other tax arises out of or results from a breach by the
Trustee of any of its obligations under this Agreement, (ii) the Master
Servicer, in the case of any such minimum tax, or if such tax arises out of or
results from a breach by the Master Servicer or a Seller of any of their
                                 Page 110

PSA CWHL 06-10.txt
obligations under this Agreement, (iii) any Seller, if any such tax arises out
of or results from that Seller's obligation to repurchase a Mortgage Loan
pursuant to Section 2.02 or 2.03 or (iv) in all other cases, or in the event
that the Trustee, the Master Servicer or any Seller fails to honor its
obligations under the preceding clauses (i),(ii) or (iii), any such tax will be
paid with amounts otherwise to be distributed to the Certificateholders, as
provided in Section 3.08(b).

SECTION 8.12. Monitoring of Significance Percentage.

With respect to each Distribution Date, the Trustee shall calculate
the "significance percentage" (as defined in Item 1115 of Regulation AB) of each
derivative instrument, if any, based on the aggregate Class Certificate Balance
of the related Classes of Covered Certificates for such derivative instrument
and Distribution Date (after all distributions to be made thereon on such
Distribution Date) and based on the methodology provided in writing by or on
behalf of Countrywide no later than the fifth Business Day preceding such
Distribution Date. On each Distribution Date, the Trustee shall provide to
Countrywide a written report (which written report may include similar
information with respect to other derivative instruments relating to
securitization transactions sponsored by Countrywide) specifying the
"significance percentage" of each derivative instrument, if any, for that
Distribution Date. If the "significance percentage" of any derivative instrument
exceeds 7.0% with respect to any Distribution Date, the Trustee shall make a
separate notation thereof in the written report described in the preceding
sentence. Such written report may contain such assumptions and disclaimers as
are deemed necessary and appropriate by the Trustee.

VIII-8

<PAGE>

ARTICLE IX

TERMINATION

SECTION 9.01. Termination upon Liquidation or Purchase of all
Mortgage Loans.

Subject to Section 9.03, the obligations and responsibilities of the
Depositor, the Sellers, the Master Servicer and the Trustee created hereby with
respect to the Trust Fund shall terminate upon the earlier of (a) the purchase
by the Master Servicer of all Mortgage Loans (and REO Properties) remaining in
the Trust Fund at the price equal to the sum of (i) 100% of the Stated Principal
Balance of each Mortgage Loan plus one month's accrued interest thereon at the
applicable Adjusted Mortgage Rate, (ii) the lesser of (x) the appraised value of
any REO Property as determined by the higher of two appraisals completed by two
independent appraisers selected by the Master Servicer at the expense of the
Master Servicer and (y) the Stated Principal Balance of each Mortgage Loan
related to any REO Property, and (iii) any remaining unpaid costs and damages
incurred by the Trust Fund that arises out of an actual violation of any
predatory or abusive lending law or regulation, in all cases plus accrued and
unpaid interest thereon at the applicable Adjusted Mortgage Rate and (b) the
later of (i) the maturity or other liquidation (or any Advance with respect
thereto) of the last Mortgage Loan remaining in the Trust Fund and the
disposition of all REO Property and (ii) the distribution to Certificateholders
of all amounts required to be distributed to them pursuant to this Agreement. In
no event shall the trusts created hereby continue beyond the earlier of (i) the
expiration of 21 years from the death of the survivor of the descendants of
Joseph P. Kennedy, the late Ambassador of the United States to the Court of St.
James's, living on the date hereof and (ii) the Latest Possible Maturity Date.

The Master Servicer shall have the right to purchase all Mortgage
Loans and REO Properties in the Trust Fund pursuant to clause (a) in the

PSA CWHL 06-10.txt
preceding paragraph of this Section 9.01 only on or after the date on which the
Pool Stated Principal Balance, at the time of any such repurchase, is less than
or equal to ten percent (10%) of the Cut-off Date Pool Principal Balance.

SECTION 9.02. Final Distribution on the Certificates.

If on any Determination Date, the Master Servicer determines that
there are no Outstanding Mortgage Loans and no other funds or assets in the
Trust Fund other than the funds in the Certificate Account, the Master Servicer
shall direct the Trustee promptly to send a final distribution notice to each
Certificateholder. If the Master Servicer elects to terminate the Trust Fund
pursuant to clause (a) of Section 9.01, at least 20 days prior to the date
notice is to be mailed to the affected Certificateholders, the Master Servicer
shall notify the Depositor and the Trustee of the date the Master Servicer
intends to terminate the Trust Fund and of the applicable repurchase price of
the Mortgage Loans and REO Properties.

Notice of any termination of the Trust Fund, specifying the
Distribution Date on which Certificateholders may surrender their Certificates
for payment of the final distribution and cancellation, shall be given promptly
by the Trustee by letter to Certificateholders mailed not earlier than the 10th
day and no later than the 15th day of the month next preceding the month of such
final distribution. Any such notice shall specify (a) the Distribution Date upon
which final distribution on the Certificates will be made upon presentation and
surrender of Certificates at the office therein designated, (b) the amount of
such final distribution, (c) the location of the office or agency at which such
presentation and surrender must be made, and (d) that the Record Date otherwise
applicable to such Distribution Date is not applicable, distributions being made
only upon presentation and surrender of the Certificates at the office

IX-1

<PAGE>

therein specified. The Master Servicer will give such notice to each Rating
Agency at the time such notice is given to Certificateholders.

In the event such notice is given, the Master Servicer shall cause
all funds in the Certificate Account to be remitted to the Trustee for deposit
in the Distribution Account on or before the Business Day prior to the
applicable Distribution Date in an amount equal to the final distribution in
respect of the Certificates. Upon such final deposit with respect to the Trust
Fund and the receipt by the Trustee of a Request for Release therefor, the
Trustee shall promptly release to the Master Servicer the Mortgage Files for the
Mortgage Loans.

Upon presentation and surrender of the Certificates, the Trustee
shall cause to be distributed to the Certificateholders of each Class in
proportion to their respective Percentage Interests, with respect to
Certificateholders of the same Class, an amount equal to (i) as to each Class of
Regular Certificates, the Certificate Balance thereof plus (a) accrued interest
thereon (or on their Notional Amount, if applicable) in the case of an interest
bearing Certificate and (b) any Class PO Deferred Amounts in the case of any
Class PO Certificates, and (ii) as to the Residual Certificates, the amount, if
any, which remains on deposit in the Distribution Account (other than the
amounts retained to meet claims) after application pursuant to clause (i) above.
Notwithstanding the reduction of the Class Certificate Balance of any Class of
Certificates to zero, such Class will be outstanding hereunder (solely for the
purpose of receiving distributions and not for any other purpose) until the
termination of the respective obligations and responsibilities of the Depositor,
each Seller, the Master Servicer and the Trustee hereunder in accordance with
Article IX.

Page 112

PSA_CWHL 06-10.txt
In the event that any affected Certificateholders shall not surrender Certificates for cancellation within six months after the date specified in the above mentioned written notice, the Trustee shall give a second written notice to the remaining Certificateholders to surrender their Certificates for cancellation and receive the final distribution with respect thereto. If within six months after the second notice all the applicable Certificates shall not have been surrendered for cancellation, the Trustee may take appropriate steps, or may appoint an agent to take appropriate steps, to contact the remaining Certificateholders concerning surrender of their Certificates, and the cost thereof shall be paid out of the funds and other assets which remain a part of the Trust Fund. If within one year after the second notice all Certificates shall not have been surrendered for cancellation then, the Class A-R Certificateholders shall be entitled to all unclaimed funds and other assets of the Trust Fund which remain subject hereto.

SECTION 9.03. Additional Termination Requirements.

(a) In the event the Master Servicer exercises its purchase option as provided in Section 9.01, the Trust Fund shall be terminated in accordance with the following additional requirements, unless the Trustee has been supplied with an Opinion of Counsel, at the expense of the Master Servicer, to the effect that the failure to comply with the requirements of this Section 9.03 will not (i) result in the imposition of taxes on "prohibited transactions" on any REMIC as defined in section 860F of the Code, or (ii) cause any REMIC to fail to qualify as a REMIC at any time that any Certificates are outstanding:

(1) Within 90 days prior to the final Distribution Date set forth in the notice given by the Master Servicer under Section 9.02, the Master Servicer shall prepare and the Trustee, at the expense of the "tax matters person," shall adopt a plan of complete liquidation within the meaning of section 860F(a)(4) of the Code which, as evidenced by an Opinion of Counsel (which opinion shall not be an expense of the Trustee or the Tax Matters Person), meets the requirements of a qualified liquidation; and

IX-2

<PAGE>

(2) Within 90 days after the time of adoption of such a plan of complete liquidation, the Trustee shall sell all of the assets of the Trust Fund to the Master Servicer for cash in accordance with Section 9.01.

(b) The Trustee, as agent for any REMIC created under this Agreement, hereby agrees to adopt and sign such a plan of complete liquidation upon the written request of the Master Servicer, and the receipt of the Opinion of Counsel referred to in Section 9.03(a)(1) and to take such other action in connection therewith as may be reasonably requested by the Master Servicer.

(c) By their acceptance of the Certificates, the Holders thereof hereby authorize the Master Servicer to prepare and the Trustee to adopt and sign a plan of complete liquidation.

IX-3

<PAGE>

ARTICLE X

MISCELLANEOUS PROVISIONS

SECTION 10.01. Amendment.

This Agreement may be amended from time to time by the Depositor,
Page 113

PSA CWHL 06-10.txt

each Seller, the Master Servicer and the Trustee without the consent of any of the Certificateholders (i) to cure any ambiguity or mistake, (ii) to correct any defective provision herein or to supplement any provision herein which may be inconsistent with any other provision herein, (iii) to conform this Agreement to the Prospectus and Prospectus Supplement provided to investors in connection with the initial offering of the Certificates, (iv) to add to the duties of the Depositor, any Seller or the Master Servicer, (v) to modify, alter, amend, add to or rescind any of the terms or provisions contained in this Agreement to comply with any rules or regulations promulgated by the Securities and Exchange Commission from time to time, (vi) to add any other provisions with respect to matters or questions arising hereunder or (vii) to modify, alter, amend, add to or rescind any of the terms or provisions contained in this Agreement; provided that any action pursuant to clauses (vi) or (vii) above shall not, as evidenced by an Opinion of Counsel (which Opinion of Counsel shall not be an expense of the Trustee or the Trust Fund), adversely affect in any material respect the interests of any Certificateholder; provided, however, that the amendment shall not be deemed to adversely affect in any material respect the interests of the Certificateholders if the Person requesting the amendment obtains a letter from each Rating Agency stating that the amendment would not result in the downgrading or withdrawal of the respective ratings then assigned to the Certificates; it being understood and agreed that any such letter in and of itself will not represent a determination as to the materiality of any such amendment and will represent a determination only as to the credit issues affecting any such rating. Notwithstanding the foregoing, no amendment that significantly changes the permitted activities of the trust created by this Agreement may be made without the consent of a Majority in Interest of each Class of Certificates affected by such amendment. Each party to this Agreement hereby agrees that it will cooperate with each other party in amending this Agreement pursuant to clause (v) above. The Trustee, each Seller, the Depositor and the Master Servicer also may at any time and from time to time amend this Agreement without the consent of the Certificateholders to modify, eliminate or add to any of its provisions to such extent as shall be necessary or helpful to (i) maintain the qualification of any REMIC as a REMIC under the Code, (ii) avoid or minimize the risk of the imposition of any tax on any REMIC pursuant to the Code that would be a claim at any time prior to the final redemption of the Certificates or (iii) comply with any other requirements of the Code, provided that the Trustee has been provided an Opinion of Counsel, which opinion shall be an expense of the party requesting such opinion but in any case shall not be an expense of the Trustee or the Trust Fund, to the effect that such action is necessary or helpful to, as applicable, (i) maintain such qualification, (ii) avoid or minimize the risk of the imposition of such a tax or (iii) comply with any such requirements of the Code.

This Agreement may also be amended from time to time by the Depositor, each Seller, the Master Servicer and the Trustee with the consent of the Holders of a Majority in Interest of each Class of Certificates affected thereby for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or of modifying in any manner the rights of the Holders of Certificates; provided, however, that no such amendment shall (i) reduce in any manner the amount of, or delay the timing of, payments required to be distributed on any Certificate without the consent of the Holder of such Certificate, (ii) adversely affect in any material respect the interests of the Holders of any Class of Certificates in a manner other than as described in (i), without the consent of the Holders of Certificates of such Class evidencing, as to such Class, Percentage Interests aggregating 66-2/3% or (iii) reduce the aforesaid percentages of Certificates the Holders of which are required to consent to any such amendment, without the consent of the Holders of all such Certificates then outstanding.

X-1

<PAGE>

Notwithstanding any contrary provision of this Agreement, the

PSA CWHL 06-10.txt
Trustee shall not consent to any amendment to this Agreement unless it shall
have first received an Opinion of Counsel, which opinion shall not be an expense
of the Trustee or the Trust Fund, to the effect that such amendment will not
cause the imposition of any tax on any REMIC or the Certificateholders or cause
any REMIC to fail to qualify as a REMIC at any time that any Certificates are
outstanding.

        Promptly after the execution of any amendment to this Agreement
requiring the consent of Certificateholders, the Trustee shall furnish written
notification of the substance or a copy of such amendment to each
Certificateholder and each Rating Agency.

        It shall not be necessary for the consent of Certificateholders
under this Section to approve the particular form of any proposed amendment, but
it shall be sufficient if such consent shall approve the substance thereof. The
manner of obtaining such consents and of evidencing the authorization of the
execution thereof by Certificateholders shall be subject to such reasonable
regulations as the Trustee may prescribe.

        Nothing in this Agreement shall require the Trustee to enter into an
amendment without receiving an Opinion of Counsel (which Opinion shall not be an
expense of the Trustee or the Trust Fund), satisfactory to the Trustee that (i)
such amendment is permitted and is not prohibited by this Agreement and that all
requirements for amending this Agreement have been complied with; and (ii)
either (A) the amendment does not adversely affect in any material respect the
interests of any Certificateholder or (B) the conclusion set forth in the
immediately preceding clause (A) is not required to be reached pursuant to this
Section 10.01.

        SECTION 10.02. Recordation of Agreement; Counterparts.

        This Agreement is subject to recordation in all appropriate public
offices for real property records in all the counties or other comparable
jurisdictions in which any or all of the properties subject to the Mortgages are
situated, and in any other appropriate public recording office or elsewhere,
such recordation to be effected by the Master Servicer at its expense, but only
upon direction by the Trustee accompanied by an Opinion of Counsel to the effect
that such recordation materially and beneficially affects the interests of the
Certificateholders.

        For the purpose of facilitating the recordation of this Agreement as
herein provided and for other purposes, this Agreement may be executed
simultaneously in any number of counterparts, each of which counterparts shall
be deemed to be an original, and such counterparts shall constitute but one and
the same instrument.

        SECTION 10.03. Governing Law.

        THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY
THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND
TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND
REMEDIES OF THE PARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN
ACCORDANCE WITH SUCH LAWS.

        SECTION 10.04. Intention of Parties.

        (a) It is the express intent of the parties hereto that the
conveyance of the (i) Mortgage Loans by the Sellers to the Depositor and (ii)
Trust Fund by the Depositor to the Trustee each be, and be construed as, an
absolute sale thereof to the Trustee. It is, further, not the intention of the

                                    X-2
<PAGE>

PSA CWHL 06-10.txt

parties that such conveyances be deemed a pledge thereof. However, in the event that, notwithstanding the intent of the parties, such assets are held to be the property of any Seller or the Depositor, as the case may be, or if for any other reason this Agreement or any Supplemental Transfer Agreement is held or deemed to create a security interest in either such assets, then (i) this Agreement or any Supplemental Transfer Agreement shall be deemed to be a security agreement (within the meaning of the Uniform Commercial Code of the State of New York) with respect to all such assets and security interests and (ii) the conveyances provided for in this Agreement or any Supplemental Transfer Agreement shall be deemed to be an assignment and a grant pursuant to the terms of this Agreement (i) by each Seller to the Depositor or (ii) by the Depositor to the Trustee, for the benefit of the Certificateholders, of a security interest in all of the assets that constitute the Trust Fund, whether now owned or hereafter acquired.

Each Seller and the Depositor for the benefit of the Certificateholders shall, to the extent consistent with this Agreement, take such actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Trust Fund, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of the Agreement. The Depositor shall arrange for filing any Uniform Commercial Code continuation statements in connection with any security interest granted or assigned to the Trustee for the benefit of the Certificateholders.

(b) The Depositor hereby represents that:

(i) This Agreement creates a valid and continuing security interest (as defined in the Uniform Commercial Code as enacted in the State of New York (the "NY UCC")) in the Mortgage Notes in favor of the Trustee, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Depositor.

(ii) The Mortgage Notes constitutes "instruments" within the meaning of the NY UCC.

(iii) Immediately prior to the assignment of each Mortgage Loan to the Trustee, the Depositor owns and has good and marketable title to such Mortgage Loan free and clear of any lien, claim or encumbrance of any Person.

(iv) The Depositor has received all consents and approvals required by the terms of the Mortgage Loans to the sale of the Mortgage Loans hereunder to the Trustee.

(v) All original executed copies of each Mortgage Note that are required to be delivered to the Trustee pursuant to Section 2.01 have been delivered to the Trustee.

(vi) Other than the security interest granted to the Trustee pursuant to this Agreement, the Depositor has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage Loans. The Depositor has not authorized the filing of and is not aware of any financing statements against the Depositor that include a description of collateral covering the Mortgage Loans other than any financing statement relating to the security interest granted to the Trustee hereunder or that has been terminated. The Depositor is not aware of any judgment or tax lien filings against the Depositor.

(c) The Master Servicer shall take such action as is reasonably necessary to maintain the perfection and priority of the security interest of the Trustee in the Mortgage Loans; provided, however, that the obligation to deliver the Mortgage File to the Trustee pursuant to Section 2.01 shall be

PSA CWHL 06-10.txt
solely the Depositor's obligation and the Master Servicer shall not be
responsible for the safekeeping of the Mortgage Files by the Trustee.

X-3

<PAGE>

(d) It is understood and agreed that the representations and
warranties set forth in subsection (b) above shall survive delivery of the
Mortgage Files to the Trustee. Upon discovery by the Depositor or the Trustee of
a breach of any of the foregoing representations and warranties set forth in
subsection (b) above, which breach materially and adversely affects the interest
of the Certificateholders, the party discovering such breach shall give prompt
written notice to the others and to each Rating Agency.

SECTION 10.05. Notices.

(a) The Trustee shall use its best efforts to promptly provide
notice to each Rating Agency with respect to each of the following of which it
has actual knowledge:

1. Any material change or amendment to this Agreement;

2. The occurrence of any Event of Default that has not been cured;

3. The resignation or termination of the Master Servicer or the
Trustee and the appointment of any successor;

4. The repurchase or substitution of Mortgage Loans pursuant to
Section 2.03;

5. The final payment to Certificateholders; and

6. Any rating action involving the long-term credit rating of
Countrywide, which notice shall be made by first-class mail within two
Business Days after the Trustee gains actual knowledge thereof.

In addition, the Trustee shall promptly furnish to each Rating
Agency copies of the following:

1. Each report to Certificateholders described in Section 4.06;

2. Each annual statement as to compliance described in Section 3.16;

3. Each annual independent public accountants' servicing report
described in Section 11.07; and

4. Any notice of a purchase of a Mortgage Loan pursuant to Section
2.02, 2.03 or 3.11.

(b) All directions, demands and notices hereunder shall be in
writing and shall be deemed to have been duly given when delivered by first
class mail, by courier or by facsimile transmission to (1) in the case of the
Depositor, CWMBS, Inc., 4500 Park Granada, Calabasas, California 91302,
facsimile number: (818) 225-4053, Attention: David A. Spector, (2) in the case
of Countrywide, Countrywide Home Loans, Inc., 4500 Park Granada, Calabasas,
California 91302, facsimile number: (818) 225-4053, Attention: David A. Spector
or such other address as may be hereafter furnished to the Depositor and the
Trustee by Countrywide in writing, (3) in the case of Park Granada LLC, c/o
Countrywide Financial Corporation, 4500 Park Granada, Calabasas, California
91302, facsimile number: (818) 225-4041, Attention: David A. Spector or such
other address as may be hereafter furnished to the Depositor and the Trustee by
Park Granada in writing, (4) in the case of Park Monaco Inc., c/o Countrywide
Financial Corporation, 4500 Park Granada, Calabasas, California 91302, facsimile

PSA CWHL 06-10.txt
number: (818) 225-4041, Attention: David A. Spector or such other address as may
be hereafter furnished to the Depositor and the Trustee by Park Monaco in
writing, (5) in the case of Park Sienna LLC, c/o Countrywide Financial
Corporation, 4500 Park Granada, Calabasas, California 91302, facsimile number:

X-4

<PAGE>

(818) 225-4041, Attention: David A. Spector or such other address as may be
hereafter furnished to the Depositor and the Trustee by Park Sienna in writing,
(6) in the case of the Master Servicer, Countrywide Home Loans Servicing LP, 400
Countrywide Way, Simi Valley, California 93065, facsimile number (805) 520-5623,
Attention: Mark Wong, or such other address as may be hereafter furnished to the
Depositor and the Trustee by the Master Servicer in writing, (7) in the case of
the Trustee, The Bank of New York, 101 Barclay Street, 8W, New York, New York
10286, facsimile number: (212) 815-3986, Attention: Mortgage-Backed Securities
Group, CWMBS, Inc. Series 2006-10, or such other address as the Trustee may
hereafter furnish to the Depositor or Master Servicer, and (8) in the case of
the Rating Agencies, the address specified therefor in the definition
corresponding to the name of such Rating Agency. Notices to Certificateholders
shall be deemed given when mailed, first class postage prepaid, to their
respective addresses appearing in the Certificate Register.

          SECTION 10.06. Severability of Provisions.

          If any one or more of the covenants, agreements, provisions or terms
of this Agreement shall be for any reason whatsoever held invalid, then such
covenants, agreements, provisions or terms shall be deemed severable from the
remaining covenants, agreements, provisions or terms of this Agreement and shall
in no way affect the validity or enforceability of the other provisions of this
Agreement or of the Certificates or the rights of the Holders thereof.

          SECTION 10.07. Assignment.

          Notwithstanding anything to the contrary contained herein, except as
provided in Section 6.02, this Agreement may not be assigned by the Master
Servicer without the prior written consent of the Trustee and Depositor.

          SECTION 10.08. Limitation on Rights of Certificateholders.

          The death or incapacity of any Certificateholder shall not operate
to terminate this Agreement or the trust created hereby, nor entitle such
Certificateholder's legal representative or heirs to claim an accounting or to
take any action or commence any proceeding in any court for a petition or
winding up of the trust created hereby, or otherwise affect the rights,
obligations and liabilities of the parties hereto or any of them.

          No Certificateholder shall have any right to vote (except as
provided herein) or in any manner otherwise control the operation and management
of the Trust Fund, or the obligations of the parties hereto, nor shall anything
herein set forth or contained in the terms of the Certificates be construed so
as to constitute the Certificateholders from time to time as partners or members
of an association; nor shall any Certificateholder be under any liability to any
third party by reason of any action taken by the parties to this Agreement
pursuant to any provision hereof.

          No Certificateholder shall have any right by virtue or by availing
itself of any provisions of this Agreement to institute any suit, action or
proceeding in equity or at law upon or under or with respect to this Agreement,
unless such Holder previously shall have given to the Trustee a written notice
of an Event of Default and of the continuance thereof, as herein provided, and
unless the Holders of Certificates evidencing not less than 25% of the Voting
Rights evidenced by the Certificates shall also have made written request to the

PSA CWHL 06-10.txt

Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby, and the Trustee, for 60 days after its receipt of such notice, request and offer of indemnity shall have neglected or refused to institute any such action, suit or proceeding; it being understood and intended, and being expressly covenanted by each Certificateholder with every other Certificateholder and the Trustee, that no one or more Holders of

X-5

<PAGE>

Certificates shall have any right in any manner whatever by virtue or by availing itself or themselves of any provisions of this Agreement to affect, disturb or prejudice the rights of the Holders of any other of the Certificates, or to obtain or seek to obtain priority over or preference to any other such Holder or to enforce any right under this Agreement, except in the manner herein provided and for the common benefit of all Certificateholders. For the protection and enforcement of the provisions of this Section 10.08, each and every Certificateholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

        SECTION 10.09. Inspection and Audit Rights.

        The Master Servicer agrees that, on reasonable prior notice, it will permit and will cause each Subservicer to permit any representative of the Depositor or the Trustee during the Master Servicer's normal business hours, to examine all the books of account, records, reports and other papers of the Master Servicer relating to the Mortgage Loans, to make copies and extracts therefrom, to cause such books to be audited by independent certified public accountants selected by the Depositor or the Trustee and to discuss its affairs, finances and accounts relating to the Mortgage Loans with its officers, employees and independent public accountants (and by this provision the Master Servicer hereby authorizes said accountants to discuss with such representative such affairs, finances and accounts), all at such reasonable times and as often as may be reasonably requested. Any out-of-pocket expense incident to the exercise by the Depositor or the Trustee of any right under this Section 10.09 shall be borne by the party requesting such inspection; all other such expenses shall be borne by the Master Servicer or the related Subservicer.

        SECTION 10.10. Certificates Nonassessable and Fully Paid.

        It is the intention of the Depositor that Certificateholders shall not be personally liable for obligations of the Trust Fund, that the interests in the Trust Fund represented by the Certificates shall be nonassessable for any reason whatsoever, and that the Certificates, upon due authentication thereof by the Trustee pursuant to this Agreement, are and shall be deemed fully paid.

        SECTION 10.11. [Reserved].

        SECTION 10.12. Protection of Assets.

        (a) Except for transactions and activities entered into in connection with the securitization that is the subject of this Agreement, the Trust Fund created by this Agreement is not authorized and has no power to:

        (i) borrow money or issue debt;

        (ii) merge with another entity, reorganize, liquidate or sell assets; or

        (iii) engage in any business or activities.

Page 119

PSA CWHL 06-10.txt
            (b) Each party to this Agreement agrees that it will not file an
involuntary bankruptcy petition against the Trustee or the Trust Fund or
initiate any other form of insolvency proceeding until after the Certificates
have been paid.

                                    X-6

<PAGE>

                             ARTICLE XI

                        EXCHANGE ACT REPORTING

            SECTION 11.01. Filing Obligations.

            The Master Servicer, the Trustee and each Seller shall reasonably
cooperate with the Depositor in connection with the satisfaction of the
Depositor's reporting requirements under the Exchange Act with respect to the
Trust Fund. In addition to the information specified below, if so requested by
the Depositor for the purpose of satisfying its reporting obligation under the
Exchange Act, the Master Servicer, the Trustee and each Seller shall (and the
Master Servicer shall cause each Subservicer to) provide the Depositor with (a)
such information which is available to such Person without unreasonable effort
or expense and within such timeframe as may be reasonably requested by the
Depositor to comply with the Depositor's reporting obligations under the
Exchange Act and (b) to the extent such Person is a party (and the Depositor is
not a party) to any agreement or amendment required to be filed, copies of such
agreement or amendment in EDGAR-compatible form.

            SECTION 11.02. Form 10-D Filings.

            (a) In accordance with the Exchange Act, the Trustee shall prepare
for filing and file within 15 days after each Distribution Date (subject to
permitted extensions under the Exchange Act) with the Commission with respect to
the Trust Fund, a Form 10-D with copies of the Monthly Report and, to the extent
delivered to the Trustee, no later than 10 days following the Distribution Date,
such other information identified by the Depositor or the Master Servicer, in
writing, to be filed with the Commission (such other information, the
"Additional Designated Information"). If the Depositor or Master Servicer
directs that any Additional Designated Information is to be filed with any Form
10-D, the Depositor or Master Servicer, as the case may be, shall specify the
Item on Form 10-D to which such information is responsive and, with respect to
any Exhibit to be filed on Form 10-D, the Exhibit number. Any information to be
filed on Form 10-D shall be delivered to the Trustee in EDGAR-compatible form or
as otherwise agreed upon by the Trustee and the Depositor or the Master
Servicer, as the case may be, at the Depositor's expense, and any necessary
conversion to EDGAR-compatible format will be at the Depositor's expense. At the
reasonable request of, and in accordance with the reasonable directions of, the
Depositor or the Master Servicer, subject to the two preceding sentences, the
Trustee shall prepare for filing and file an amendment to any Form 10-D
previously filed with the Commission with respect to the Trust Fund. The Master
Servicer shall sign the Form 10-D filed on behalf of the Trust Fund.

            (b) No later than each Distribution Date, each of the Master
Servicer and the Trustee shall notify (and the Master Servicer shall cause any
Subservicer to notify) the Depositor and the Master Servicer of any Form 10-D
Disclosure Item, together with a description of any such Form 10-D Disclosure
Item in form and substance reasonably acceptable to the Depositor. In addition
to such information as the Master Servicer and the Trustee are obligated to
provide pursuant to other provisions of this Agreement, if so requested by the
Depositor, each of the Master Servicer and the Trustee shall provide such
information which is available to the Master Servicer and the Trustee, as
applicable, without unreasonable effort or expense regarding the performance or
servicing of the Mortgage Loans (in the case of the Trustee, based on the
                                  Page 120

PSA CWHL 06-10.txt
information provided by the Master Servicer) as is reasonably required to
facilitate preparation of distribution reports in accordance with Item 1121
of Regulation AB. Such information shall be provided concurrently with the delivery
of the reports specified in Section 4.06(c) in the case of the Master Servicer
and the Monthly Statement in the case of the Trustee, commencing with the first
such report due not less than five Business Days following such request.

          (c) The Trustee shall not have any responsibility to file any items
(other than those generated by it) that have not been received in a format
suitable (or readily convertible into a format suitable) for electronic filing
via the EDGAR system and shall not have any responsibility to convert any

                                   XI-7

<PAGE>

such items to such format (other than those items generated by it or that are
readily convertible to such format). The Trustee shall have no liability to the
Certificateholders, the Trust Fund, the Master Servicer or the Depositor with
respect to any failure to properly prepare or file any of Form 10-D to the
extent that such failure is not the result of any negligence, bad faith or
willful misconduct on its part.

          SECTION 11.03. Form 8-K Filings.

          The Master Servicer shall prepare and file on behalf of the Trust
Fund any Form 8-K required by the Exchange Act. Each Form 8-K must be signed by
the Master Servicer. Each of the Master Servicer (and the Master Servicer shall
cause any Subservicer to promptly notify) and the Trustee shall promptly notify
the Depositor and the Master Servicer (if the notifying party is not the Master
Servicer), but in no event later than one (1) Business Day after its occurrence,
of any Reportable Event of which it has actual knowledge. Each Person shall be
deemed to have actual knowledge of any such event to the extent that it relates
to such Person or any action or failure to act by such Person. Concurrently with
any transfer of Supplemental Mortgage Loans, if any, Countrywide shall notify
the Depositor and the Master Servicer, if any material pool characteristic of
the actual asset pool at the time of issuance of the Certificates differs by 5%
or more (other than as a result of the pool assets converting into cash in
accordance with their terms) from the description of the asset pool in the
Prospectus Supplement.

          SECTION 11.04. Form 10-K Filings.

          Prior to March 30th of each year, commencing in 2007 (or such
earlier date as may be required by the Exchange Act), the Depositor shall
prepare and file on behalf of the Trust Fund a Form 10-K, in form and substance
as required by the Exchange Act. A senior officer in charge of the servicing
function of the Master Servicer shall sign each Form 10-K filed on behalf of the
Trust Fund. Such Form 10-K shall include as exhibits each (i) annual compliance
statement described under Section 3.16, (ii) annual report on assessments of
compliance with servicing criteria described under Section 11.07 and (iii)
accountant's report described under Section 11.07. Each Form 10-K shall also
include any Sarbanes-Oxley Certification required to be included therewith, as
described in Section 11.05.

          If the Item 1119 Parties listed on Exhibit W have changed since the
Closing Date, no later than March 1 of each year, the Master Servicer shall
provide each of the Master Servicer (and the Master Servicer shall provide any
Subservicer) and the Trustee with an updated Exhibit W setting forth the Item
1119 Parties. No later than March 15 of each year, commencing in 2007, the
Master Servicer and the Trustee shall notify (and the Master Servicer shall
cause any Subservicer to notify) the Depositor and the Master Servicer of any
Form 10-K Disclosure Item, together with a description of any such Form 10-K
Disclosure Item in form and substance reasonably acceptable to the Depositor.

PSA CWHL 06-10.txt
Additionally, each of the Master Servicer and the Trustee shall provide, and
shall cause each Reporting Subcontractor retained by the Master Servicer or the
Trustee, as applicable, and in the case of the Master Servicer shall cause each
Subservicer, to provide, the following information no later than March 15 of
each year in which a Form 10-K is required to be filed on behalf of the Trust
Fund: (i) if such Person's report on assessment of compliance with servicing
criteria described under Section 11.07 or related registered public accounting
firm attestation report described under Section 11.07 identifies any material
instance of noncompliance, notification of such instance of noncompliance and
(ii) if any such Person's report on assessment of compliance with the servicing
criteria or related registered public accounting firm attestation report is not
provided to be filed as an exhibit to such Form 10-K, information detailing the
explanation why such report is not included.

        SECTION 11.05. Sarbanes-Oxley Certification.

        Each Form 10-K shall include a certification (the "Sarbanes-Oxley
Certification") required by Rules 13a-14(d) and 15d-14(d) under the Exchange Act
(pursuant to Section 302 of the

                                    XI-8
<PAGE>

Sarbanes-Oxley Act of 2002 and the rules and regulations of the Commission
promulgated thereunder (including any interpretations thereof by the
Commission's staff)). No later than March 15 of each year, beginning in 2007,
the Master Servicer and the Trustee shall (unless such person is the Certifying
Person), and the Master Servicer shall cause each Subservicer and each Reporting
Subcontractor and the Trustee shall cause each Reporting Subcontractor to,
provide to the Person who signs the Sarbanes-Oxley Certification (the
"Certifying Person") a certification (each, a "Performance Certification"), in
the form attached hereto as Exhibit U-1 (in the case of a Subservicer) and
Exhibit U-2 (in the case of the Trustee), on which the Certifying Person, the
entity for which the Certifying Person acts as an officer, and such entity's
officers, directors and Affiliates (collectively with the Certifying Person,
"Certification Parties") can reasonably rely. The senior officer in charge of
the servicing function of the Master Servicer shall serve as the Certifying
Person on behalf of the Trust Fund. Neither the Master Servicer nor the
Depositor will request delivery of a certification under this clause unless the
Depositor is required under the Exchange Act to file an annual report on Form
10-K with respect to the Trust Fund. In the event that prior to the filing date
of the Form 10-K in March of each year, the Trustee or the Depositor has actual
knowledge of information material to the Sarbanes-Oxley Certification, the
Trustee or the Depositor, as the case may be, shall promptly notify the Master
Servicer and the Depositor. The respective parties hereto agree to cooperate
with all reasonable requests made by any Certifying Person or Certification
Party in connection with such Person's attempt to conduct any due diligence that
such Person reasonably believes to be appropriate in order to allow it to
deliver any Sarbanes-Oxley Certification or portion thereof with respect to the
Trust Fund.

        SECTION 11.06. Form 15 Filing.

        Prior to January 30 of the first year in which the Depositor is able
to do so under applicable law, the Depositor shall file a Form 15 relating to
the automatic suspension of reporting in respect of the Trust Fund under the
Exchange Act.

        SECTION 11.07. Report on Assessment of Compliance and Attestation.

        (a) On or before March 15 of each calendar year, commencing in 2007:

        (1) Each of the Master Servicer and the Trustee shall deliver to the
                                  Page 122

PSA CWHL_06-10.txt
Depositor and the Master Servicer a report (in form and substance
reasonably satisfactory to the Depositor) regarding the Master
Servicer's or the Trustee's, as applicable, assessment of compliance
with the Servicing Criteria during the immediately preceding
calendar year, as required under Rules 13a-18 and 15d-18 of the
Exchange Act and Item 1122 of Regulation AB. Such report shall be
signed by an authorized officer of such Person and shall address
each of the Servicing Criteria specified on a certification
substantially in the form of Exhibit V hereto delivered to the
Depositor concurrently with the execution of this Agreement. To the
extent any of the Servicing Criteria are not applicable to such
Person, with respect to asset-backed securities transactions taken
as a whole involving such Person and that are backed by the same
asset type backing the Certificates, such report shall include such
a statement to that effect. The Depositor and the Master Servicer,
and each of their respective officers and directors shall be
entitled to rely on upon each such servicing criteria assessment.

(2) Each of the Master Servicer and the Trustee shall deliver to the
Depositor and the Master Servicer a report of a registered public
accounting firm reasonably acceptable to the Depositor that attests
to, and reports on, the assessment of compliance made by Master
Servicer or the Trustee, as applicable, and delivered pursuant to
the preceding paragraphs. Such attestation shall be in accordance
with Rules 1-02(a)(3) and 2-02(g) of Regulation S-X under the
Securities Act and the Exchange Act, including, without

                                XI-9

<PAGE>

limitation that in the event that an overall opinion cannot be
expressed, such registered public accounting firm shall state in
such report why it was unable to express such an opinion. Such
report must be available for general use and not contain restricted
use language. To the extent any of the Servicing Criteria are not
applicable to such Person, with respect to asset-backed securities
transactions taken as a whole involving such Person and that are
backed by the same asset type backing the Certificates, such report
shall include such a statement that that effect.

(3) The Master Servicer shall cause each Subservicer and each
Reporting Subcontractor to deliver to the Depositor an assessment of
compliance and accountant's attestation as and when provided in
paragraphs (a) and (b) of this Section 11.07.

(4) The Trustee shall cause each Reporting Subcontractor to deliver
to the Depositor and the Master Servicer an assessment of compliance
and accountant's attestation as and when provided in paragraphs (a)
and (b) of this Section.

(5) The Master Servicer and the Trustee shall execute (and the
Master Servicer shall cause each Subservicer to execute, and the
Master Servicer and the Trustee shall cause each Reporting
Subcontractor to execute) a reliance certificate to enable the
Certification Parties to rely upon each (i) annual compliance
statement provided pursuant to Section 3.16, (ii) annual report on
assessments of compliance with servicing criteria provided pursuant
to this Section 11.07 and (iii) accountant's report provided
pursuant to this Section 11.07 and shall include a certification
that each such annual compliance statement or report discloses any
deficiencies or defaults described to the registered public
accountants of such Person to enable such accountants to render the
certificates provided for in this Section 11.07. In the event the

PSA CWHL 06-10.txt
Master Servicer, any Subservicer, the Trustee or Reporting
Subcontractor is terminated or resigns during the term of this
Agreement, such Person shall provide a certification to the
Certifying Person pursuant to this Section 11.07 with respect to the
period of time it was subject to this Agreement or provided services
with respect to the Trust Fund, the Certificates or the Mortgage
Loans.

        (b) In the event the Master Servicer, any Subservicer, the Trustee
or Reporting Subcontractor is terminated or resigns during the term of this
Agreement, such Person shall provide documents and information required by this
Section 11.07 with respect to the period of time it was subject to this
Agreement or provided services with respect to the Trust Fund, the Certificates
or the Mortgage Loans.

        (c) Each assessment of compliance provided by a Subservicer pursuant
to Section 11.07(a)(3) shall address each of the Servicing Criteria specified on
a certification substantially in the form of Exhibit V hereto delivered to the
Depositor concurrently with the execution of this Agreement or, in the case of a
Subservicer subsequently appointed as such, on or prior to the date of such
appointment. An assessment of compliance provided by a Subcontractor pursuant to
Section 11.07(a)(3) or (4) need not address any elements of the Servicing
Criteria other than those specified by the Master Servicer or the Trustee, as
applicable, pursuant to Section 11.07(a)(1).

        SECTION 11.08. Use of Subservicers and Subcontractors.

        (a) The Master Servicer shall cause any Subservicer used by the
Master Servicer (or by any Subservicer) for the benefit of the Depositor to
comply with the provisions of Section 3.16 and this Article XI to the same
extent as if such Subservicer were the Master Servicer (except with respect to
the Master Servicer's duties with respect to preparing and filing any Exchange
Act Reports or as the Certifying Person). The Master Servicer shall be
responsible for obtaining from each Subservicer and

                                    XI-10

<PAGE>

delivering to the Depositor any servicer compliance statement required to be
delivered by such Subservicer under Section 3.16, any assessment of compliance
and attestation required to be delivered by such Subservicer under Section 11.07
and any certification required to be delivered to the Certifying Person under
Section 11.05 as and when required to be delivered. As a condition to the
succession to any Subservicer as subservicer under this Agreement by any Person
(i) into which such Subservicer may be merged or consolidated, or (ii) which may
be appointed as a successor to any Subservicer, the Master Servicer shall
provide to the Depositor, at least 15 calendar days prior to the effective date
of such succession or appointment, (x) written notice to the Depositor of such
succession or appointment and (y) in writing and in form and substance
reasonably satisfactory to the Depositor, all information reasonably requested
by the Depositor in order to comply with its reporting obligation under Item
6.02 of Form 8-K.

        (b) It shall not be necessary for the Master Servicer, any
Subservicer or the Trustee to seek the consent of the Depositor or any other
party hereto to the utilization of any Subcontractor. The Master Servicer or the
Trustee, as applicable, shall promptly upon request provide to the Depositor (or
any designee of the Depositor, such as the Master Servicer or administrator) a
written description (in form and substance satisfactory to the Depositor) of the
role and function of each Subcontractor utilized by such Person (or in the case
of the Master Servicer or any Subservicer), specifying (i) the identity of each
such Subcontractor, (ii) which (if any) of such Subcontractors are
"participating in the servicing function" within the meaning of Item 1122 of
                                 Page 124

PSA CWHL_06-10.txt
Regulation AB, and (iii) which elements of the Servicing Criteria will be
addressed in assessments of compliance provided by each Subcontractor identified
pursuant to clause (ii) of this paragraph.

        As a condition to the utilization of any Subcontractor determined to
be a Reporting Subcontractor, the Master Servicer or the Trustee, as applicable,
shall cause any such Subcontractor used by such Person (or in the case of the
Master Servicer or any Subservicer) for the benefit of the Depositor to comply
with the provisions of Sections 11.07 and 11.09 of this Agreement to the same
extent as if such Subcontractor were the Master Servicer (except with respect to
the Master Servicer's duties with respect to preparing and filing any Exchange
Act Reports or as the Certifying Person) or the Trustee, as applicable. The
Master Servicer or the Trustee, as applicable, shall be responsible for
obtaining from each Subcontractor and delivering to the Depositor and the Master
Servicer, any assessment of compliance and attestation required to be delivered
by such Subcontractor under Section 11.05 and Section 11.07, in each case as and
when required to be delivered.

        SECTION 11.09. Amendments.

        In the event the parties to this Agreement desire to further clarify
or amend any provision of this Article XI, this Agreement shall be amended to
reflect the new agreement between the parties covering matters in this Article
XI pursuant to Section 10.01, which amendment shall not require any Opinion of
Counsel or Rating Agency confirmations or the consent of any Certificateholder.
If, during the period that the Depositor is required to file Exchange Act
Reports with respect to the Trust Fund, the Master Servicer is no longer an
Affiliate of the Depositor, the Depositor shall assume the obligations and
responsibilities of the Master Servicer in this Article XI with respect to the
preparation and filing of the Exchange Act Reports and/or acting as the
Certifying Person, if the Depositor has received indemnity from such successor
Master Servicer satisfactory to the Depositor, and such Master Servicer has
agreed to provide a Sarbanes-Oxley Certification to the Depositor substantially
in the form of Exhibit X, and the certificates referred to in Section 11.07.

                                 XI-11

<PAGE>

        SECTION 11.10. Reconciliation of Accounts.

        Any reconciliation of Accounts performed by any party hereto, or any
Subservicer or Subcontractor shall be prepared no later than 45 calendar days
after the bank statement cutoff date.

                         *  *  *  *  *  *

                                 XI-12

<PAGE>

        IN WITNESS WHEREOF, the Depositor, the Trustee, the Sellers and the
Master Servicer have caused their names to be signed hereto by their respective
officers thereunto duly authorized as of the day and year first above written.

                        CWMBS, INC.,
                        as Depositor

                        By:  /s/ Darren Bigby
                        ----------------------------------------
                             Name:  Darren Bigby
                             Title:  Vice President

                        THE BANK OF NEW YORK,
                        as Trustee
                             Page 125

PSA CWHL 06-10.txt

By:  /s/ AnnMarie Cassano
     -----------------------------------------
          Name:  AnnMarie Cassano
          Title:  Assistant Treasurer

COUNTRYWIDE HOME LOANS, INC.,
as a Seller

By:  /s/ Darren Bigby
     -----------------------------------------
          Name:  Darren Bigby
          Title:  Senior Vice President

PARK GRANADA LLC,
as a Seller

<PAGE>

By:  /s/ Darren Bigby
     -----------------------------------------
          Name:  Darren Bigby
          Title:  Vice President

PARK MONACO INC.,
as a Seller

By:  /s/ Darren Bigby
     -----------------------------------------
          Name:  Darren Bigby
          Title:  Vice President

PARK SIENNA LLC,
as a Seller

By:  /s/ Darren Bigby
     -----------------------------------------
          Name:  Darren Bigby
          Title:  Assistant Vice President

COUNTRYWIDE HOME LOANS SERVICING LP,
as Master Servicer

By:  COUNTRYWIDE GP, INC.

By:  /s/ Darren Bigby
     -----------------------------------------
          Name:  Darren Bigby
          Title:  Senior Vice President

                14

<PAGE>

Acknowledged solely with respect to its obligations
under Section 4.01(b)

THE BANK OF NEW YORK, in its individual capacity

By:  /s/ Paul Connolly
     -----------------------------------------
          Name:  Paul Connolly
          Title:  Vice President

                Page 126

PSA CWHL 06-10.txt

<PAGE>

SCHEDULE I

Mortgage Loan Schedule

[Delivered at Closing to Trustee]

S-I-1

<PAGE>

SCHEDULE II-A

CWMBS, Inc.

Mortgage Pass-Through Certificates

Series 2006-10

Representations and Warranties of Countrywide

Countrywide Home Loans, Inc. ("Countrywide") hereby makes the representations and warranties set forth in this Schedule II-A to the Depositor, the Master Servicer and the Trustee, as of the Closing Date or if so specified herein, as of the Initial Cut-off Date. Capitalized terms used but not otherwise defined in this Schedule II-A shall have the meanings ascribed thereto in the Pooling and Servicing Agreement (the "Pooling and Servicing Agreement") relating to the above-referenced Series, among Countrywide Home Loans, Inc., as a seller, Park Granada LLC, as a seller, Park Monaco Inc., as a seller, Park Sienna LLC, as a seller, Countrywide Home Loans Servicing LP, as master servicer, CWMBS, Inc., as depositor, and The Bank of New York, as trustee.

(1) Countrywide is duly organized as a New York corporation and is validly existing and in good standing under the laws of the State of New York and is duly authorized and qualified to transact any and all business contemplated by the Pooling and Servicing Agreement to be conducted by Countrywide in any state in which a Mortgaged Property is located or is otherwise not required under applicable law to effect such qualification and, in any event, is in compliance with the doing business laws of any such state, to the extent necessary to perform any of its obligations under the Pooling and Servicing Agreement and each Supplemental Transfer Agreement in accordance with the terms thereof.

(2) Countrywide has the full corporate power and authority to sell each Countrywide Mortgage Loan, and to execute, deliver and perform, and to enter into and consummate the transactions contemplated by the Pooling and Servicing Agreement and each Supplemental Transfer Agreement and has duly authorized by all necessary corporate action on the part of Countrywide the execution, delivery and performance of the Pooling and Servicing Agreement and each Supplemental Transfer Agreement; and the Pooling and Servicing Agreement and each Supplemental Transfer Agreement, assuming the due authorization, execution and delivery thereof by the other parties thereto, constitutes a legal, valid and binding obligation of Countrywide, enforceable against Countrywide in accordance with its terms, except that (a) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(3) The execution and delivery of the Pooling and Servicing Agreement and each Supplemental Transfer Agreement by Countrywide, the sale of the Countrywide Mortgage Loans by Countrywide under the Pooling and Servicing

PSA CWHL 06-10.txt

Agreement and each Supplemental Transfer Agreement, the consummation of any other of the transactions contemplated by the Pooling and Servicing Agreement, and the fulfillment of or compliance with the terms thereof are in the ordinary course of business of Countrywide and will not (A) result in a material breach of any term or provision of the charter or by-laws of Countrywide or (B) materially conflict with, result in a material breach, violation or acceleration of, or result in a material default under, the terms of any other material agreement or instrument to which Countrywide is a party or by which it may be bound, or (C) constitute a material violation of any statute, order or regulation applicable to Countrywide of any court, regulatory body, administrative agency or governmental body having jurisdiction over Countrywide; and Countrywide is not in breach or violation of any material indenture or other material agreement or instrument, or in violation of any statute, order or regulation of any court, regulatory body, administrative agency or governmental body having jurisdiction over it which breach or violation may materially impair Countrywide's ability to perform or meet any of its obligations under the Pooling and Servicing Agreement.

S-II-A-1

<PAGE>

        (4) Countrywide is an approved servicer of conventional mortgage loans for FNMA or FHLMC and is a mortgagee approved by the Secretary of Housing and Urban Development pursuant to sections 203 and 211 of the National Housing Act.

        (5) No litigation is pending or, to the best of Countrywide's knowledge, threatened, against Countrywide that would materially and adversely affect the execution, delivery or enforceability of the Pooling and Servicing Agreement or the ability of Countrywide to sell the Countrywide Mortgage Loans or to perform any of its other obligations under the Pooling and Servicing Agreement in accordance with the terms thereof.

        (6) No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Countrywide of, or compliance by Countrywide with, the Pooling and Servicing Agreement or the consummation of the transactions contemplated thereby, or if any such consent, approval, authorization or order is required, Countrywide has obtained the same.

        (7) Countrywide intends to treat the transfer of the Countrywide Mortgage Loans to the Depositor as a sale of the Countrywide Mortgage Loans for all tax, accounting and regulatory purposes.

        (8) Countrywide is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the MERS Mortgage Loans in the Trust Fund for as long as such Mortgage Loans are registered with MERS.

S-II-A-2

<PAGE>

SCHEDULE II-B

CWMBS, Inc.

Mortgage Pass-Through Certificates

Series 2006-10

Representations and Warranties of Park Granada

Park Granada LLC ("Park Granada") and Countrywide Home Loans, Inc.
Page 128

PSA CWHL 06-10.txt
("Countrywide"), each hereby makes the representations and warranties set forth in this Schedule II-B to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if so specified herein, as of the Initial Cut-off Date. Capitalized terms used but not otherwise defined in this Schedule II-B shall have the meanings ascribed thereto in the Pooling and Servicing Agreement (the "Pooling and Servicing Agreement") relating to the above-referenced Series, among Park Granada LLC, as a seller, Park Monaco Inc., as a seller, Park Sienna LLC, as a seller, Countrywide Home Loans, Inc. as a seller, Countrywide Home Loans Servicing LP, as master servicer, CWMBS, Inc., as depositor, and The Bank of New York, as trustee.

(1) Park Granada is a limited liability company duly formed and validly existing and in good standing under the laws of the State of Delaware.

(2) Park Granada has the full corporate power and authority to sell each Park Granada Mortgage Loan, and to execute, deliver and perform, and to enter into and consummate the transactions contemplated by the Pooling and Servicing Agreement and each Supplemental Transfer Agreement and has duly authorized by all necessary corporate action on the part of Park Granada the execution, delivery and performance of the Pooling and Servicing Agreement; and the Pooling and Servicing Agreement, assuming the due authorization, execution and delivery thereof by the other parties thereto, constitutes a legal, valid and binding obligation of Park Granada, enforceable against Park Granada in accordance with its terms, except that (a) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(3) The execution and delivery of the Pooling and Servicing Agreement and each Supplemental Transfer Agreement by Park Granada, the sale of the Park Granada Mortgage Loans by Park Granada under the Pooling and Servicing Agreement and each Supplemental Transfer Agreement, the consummation of any other of the transactions contemplated by the Pooling and Servicing Agreement, and the fulfillment of or compliance with the terms thereof are in the ordinary course of business of Park Granada and will not (A) result in a material breach of any term or provision of the certificate of formation or the limited liability company agreement of Park Granada or (B) materially conflict with, result in a material breach, violation or acceleration of, or result in a material default under, the terms of any other material agreement or instrument to which Park Granada is a party or by which it may be bound, or (C) constitute a material violation of any statute, order or regulation applicable to Park Granada of any court, regulatory body, administrative agency or governmental body having jurisdiction over Park Granada; and Park Granada is not in breach or violation of any material indenture or other material agreement or instrument, or in violation of any statute, order or regulation of any court, regulatory body,

S-II-B-1

<PAGE>

administrative agency or governmental body having jurisdiction over it which breach or violation may materially impair Park Granada's ability to perform or meet any of its obligations under the Pooling and Servicing Agreement.

(4) No litigation is pending or, to the best of Park Granada's knowledge, threatened, against Park Granada that would materially and adversely affect the execution, delivery or enforceability of the Pooling and Servicing Agreement or the ability of Park Granada to sell the Park Granada Mortgage Loans or to perform any of its other obligations under the Pooling and Servicing

PSA CWHL 06-10.txt
Agreement in accordance with the terms thereof.

        (5) No consent, approval, authorization or order of any court or
governmental agency or body is required for the execution, delivery and
performance by Park Granada of, or compliance by Park Granada with, the Pooling
and Servicing Agreement or the consummation of the transactions contemplated
thereby, or if any such consent, approval, authorization or order is required,
Park Granada has obtained the same.

        (6) Park Granada intends to treat the transfer of the Park Granada
Mortgage Loans to the Depositor as a sale of the Park Granada Mortgage Loans for
all tax, accounting and regulatory purposes.

                                    S-II-B-2
<PAGE>

                              SCHEDULE II-C

                               CWMBS, Inc.

                    Mortgage Pass-Through Certificates

                              Series 2006-10

                 Representations and Warranties of Park Monaco

        Park Monaco Inc. ("Park Monaco") and Countrywide Home Loans, Inc.
("Countrywide"), each hereby makes the representations and warranties set forth
in this Schedule II-C to the Depositor, the Master Servicer and the Trustee, as
of the Closing Date, or if so specified herein, as of the Initial Cut-off Date.
Capitalized terms used but not otherwise defined in this Schedule II-C shall
have the meanings ascribed thereto in the Pooling and Servicing Agreement (the
"Pooling and Servicing Agreement") relating to the above-referenced Series,
among Park Monaco, as a seller, Countrywide, as a seller, Park Granada LLC, as a
seller, Park Sienna LLC, as a seller, Countrywide Home Loans Servicing LP, as
master servicer, CWMBS, Inc., as depositor, and The Bank of New York, as
trustee.

        (1) Park Monaco is a corporation duly formed and validly existing
and in good standing under the laws of the State of Delaware.

        (2) Park Monaco has the full corporate power and authority to sell
each Park Monaco Mortgage Loan, and to execute, deliver and perform, and to
enter into and consummate the transactions contemplated by the Pooling and
Servicing Agreement each Supplemental Transfer Agreement and has duly authorized
by all necessary corporate action on the part of Park Monaco the execution,
delivery and performance of the Pooling and Servicing Agreement; and the Pooling
and Servicing Agreement, assuming the due authorization, execution and delivery
thereof by the other parties thereto, constitutes a legal, valid and binding
obligation of Park Monaco, enforceable against Park Monaco in accordance with
its terms, except that (a) the enforceability thereof may be limited by
bankruptcy, insolvency, moratorium, receivership and other similar laws relating
to creditors' rights generally and (b) the remedy of specific performance and
injunctive and other forms of equitable relief may be subject to equitable
defenses and to the discretion of the court before which any proceeding therefor
may be brought.

        (3) The execution and delivery of the Pooling and Servicing
Agreement and each Supplemental Transfer Agreement by Park Monaco, the sale of
the Park Monaco Mortgage Loans by Park Monaco under the Pooling and Servicing
Agreement and each Supplemental Transfer Agreement, the consummation of any
other of the transactions contemplated by the Pooling and Servicing Agreement,
and the fulfillment of or compliance with the terms thereof are in the ordinary

PSA CWHL 06-10.txt

course of business of Park Monaco and will not (A) result in a material breach
of any term or provision of the certificate of incorporation or by-laws of Park
Monaco or (B) materially conflict with, result in a material breach, violation
or acceleration of, or result in a material default under, the terms of any
other material agreement or instrument to which Park Monaco is a party or by
which it may be bound, or (C) constitute a material violation of any statute,
order or regulation applicable to Park Monaco of any court, regulatory body,
administrative agency or governmental body having jurisdiction over Park Monaco;
and Park Monaco is not in breach or violation of any material indenture or other
material agreement or instrument, or in violation of any statute, order or
regulation of any court, regulatory body, administrative agency or governmental
body having jurisdiction over it which breach or violation may materially impair
Park Monaco's ability to perform or meet any of its obligations under the
Pooling and Servicing Agreement.

                              S-II-C-1

<PAGE>

        (4) No litigation is pending or, to the best of Park Monaco's
knowledge, threatened, against Park Monaco that would materially and adversely
affect the execution, delivery or enforceability of the Pooling and Servicing
Agreement or the ability of Park Monaco to sell the Park Monaco Mortgage Loans
or to perform any of its other obligations under the Pooling and Servicing
Agreement in accordance with the terms thereof.

        (5) No consent, approval, authorization or order of any court or
governmental agency or body is required for the execution, delivery and
performance by Park Monaco of, or compliance by Park Monaco with, the Pooling
and Servicing Agreement or the consummation of the transactions contemplated
thereby, or if any such consent, approval, authorization or order is required,
Park Monaco has obtained the same.

        (6) Park Monaco intends to treat the transfer of the Park Monaco
Mortgage Loans to the Depositor as a sale of the Park Monaco Mortgage Loans for
all tax, accounting and regulatory purposes.

                              S-II-C-2

<PAGE>

                          SCHEDULE II-D

                           CWMBS, Inc.

                 Mortgage Pass-Through Certificates

                          Series 2006-10

           Representations and Warranties of Park Sienna

        Park Sienna LLC ("Park Sienna") and Countrywide Home Loans, Inc.
("Countrywide"), each hereby makes the representations and warranties set forth
in this Schedule II-D to the Depositor, the Master Servicer and the Trustee, as
of the Closing Date, or if so specified herein, as of the Initial Cut-off Date.
Capitalized terms used but not otherwise defined in this Schedule II-D shall
have the meanings ascribed thereto in the Pooling and Servicing Agreement (the
"Pooling and Servicing Agreement") relating to the above-referenced Series,
among Park Sienna, as a seller, Countrywide, as a seller, Park Granada LLC, as a
seller, Park Monaco Inc., as a seller, Countrywide Home Loans Servicing LP, as
master servicer, CWMBS, Inc., as depositor, and The Bank of New York, as
trustee.

        (1) Park Sienna is a limited liability company duly formed and
validly existing and in good standing under the laws of the State of Delaware.
                              Page 131

PSA CWHL 06-10.txt

(2) Park Sienna has the full corporate power and authority to sell each Park Sienna Mortgage Loan, and to execute, deliver and perform, and to enter into and consummate the transactions contemplated by the Pooling and Servicing Agreement and each Supplemental Transfer Agreement and has duly authorized by all necessary corporate action on the part of Park Sienna the execution, delivery and performance of the Pooling and Servicing Agreement; and the Pooling and Servicing Agreement, assuming the due authorization, execution and delivery thereof by the other parties thereto, constitutes a legal, valid and binding obligation of Park Sienna, enforceable against Park Sienna in accordance with its terms, except that (a) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

(3) The execution and delivery of the Pooling and Servicing Agreement and each Supplemental Transfer Agreement by Park Sienna, the sale of the Park Sienna Mortgage Loans by Park Sienna under the Pooling and Servicing Agreement and each Supplemental Transfer Agreement, the consummation of any other of the transactions contemplated by the Pooling and Servicing Agreement, and the fulfillment of or compliance with the terms thereof are in the ordinary course of business of Park Sienna and will not (A) result in a material breach of any term or provision of the certificate of formation or the limited liability company agreement of Park Sienna or (B) materially conflict with, result in a material breach, violation or acceleration of, or result in a material default under, the terms of any other material agreement or instrument to which Park Sienna is a party or by which it may be bound, or (C) constitute a material violation of any statute, order or regulation applicable to Park Sienna of any court, regulatory body, administrative agency or governmental body having jurisdiction over Park Sienna; and Park Sienna is not in breach or violation of any material indenture or other material agreement or instrument, or in violation of any statute, order or regulation of any court, regulatory body, administrative agency or governmental body having jurisdiction over it which breach or violation may materially impair Park Sienna's ability to perform or meet any of its obligations under the Pooling and Servicing Agreement.

S-II-D-1

<PAGE>

(4) No litigation is pending or, to the best of Park Sienna's knowledge, threatened, against Park Sienna that would materially and adversely affect the execution, delivery or enforceability of the Pooling and Servicing Agreement or the ability of Park Sienna to sell the Park Sienna Mortgage Loans or to perform any of its other obligations under the Pooling and Servicing Agreement in accordance with the terms thereof.

(5) No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Park Sienna of, or compliance by Park Sienna with, the Pooling and Servicing Agreement or the consummation of the transactions contemplated thereby, or if any such consent, approval, authorization or order is required, Park Sienna has obtained the same.

(6) Park Sienna intends to treat the transfer of the Park Sienna Mortgage Loans to the Depositor as a sale of the Park Sienna Mortgage Loans for all tax, accounting and regulatory purposes.

S-II-D-2

<PAGE>

PSA CWHL 06-10.txt
SCHEDULE III-A

CWMBS, Inc.

Mortgage Pass-Through Certificates

Series 2006-10

Representations and Warranties of Countrywide as to all of the Mortgage Loans

Countrywide Home Loans, Inc. ("Countrywide") hereby makes the representations and warranties set forth in this Schedule III-A to the Depositor, the Master Servicer and the Trustee, with respect to all of the Initial Mortgage Loans as of the Closing Date, or if so specified herein, as of the Initial Cut-off Date, and with respect to all of the Supplemental Mortgage Loans as of the related Supplemental transfer Date or, if so specified herein, as of the related Supplemental Cut-off Date. Capitalized terms used but not otherwise defined in this Schedule III-A shall have the meanings ascribed thereto in the Pooling and Servicing Agreement (the "Pooling and Servicing Agreement") relating to the above-referenced Series, among Countrywide, as a seller, Park Granada LLC, as a seller, Park Monaco Inc., as a seller, Park Sienna LLC, as a seller, Countrywide Home Loans Servicing LP, as master servicer, CWMBS, Inc., as depositor, and The Bank of New York, as trustee.

(1) The information set forth on Schedule I to the Pooling and Servicing Agreement with respect to each Initial Mortgage Loan is true and correct in all material respects as of the Closing Date and with respect to each Supplemental Mortgage Loan is true and correct in all material respects as of the related Supplemental Transfer Date.

(2) As of the Closing Date, all payments due with respect to each Mortgage Loan prior to the Cut-off Date have been made; and as of the Cut-off Date, no Mortgage Loan has been contractually delinquent for 30 or more days more than once during the twelve months prior to the Cut-off Date.

(3) None of the Initial Mortgage Loans had a Loan-to-Value Ratio at origination in excess of 95.00%.

(4) Each Mortgage is a valid and enforceable first lien on the Mortgaged Property subject only to (a) the lien of non delinquent current real property taxes and assessments, (b) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage, such exceptions appearing of record being acceptable to mortgage lending institutions generally or specifically reflected in the appraisal made in connection with the origination of the related Mortgage Loan, and (c) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by such Mortgage.

(5) There is no delinquent tax or assessment lien against any Mortgaged Property.

(6) There is no valid offset, defense or counterclaim to any Mortgage Note or Mortgage, including the obligation of the Mortgagor to pay the unpaid principal of or interest on such Mortgage Note.

S-III-A-1

<PAGE>

(7) There are no mechanics' liens or claims for work, labor or material affecting any Mortgaged Property which are or may be a lien prior to, or equal with, the lien of such Mortgage, except those which are insured against by the title insurance policy referred to in item (12) below.

PSA CWHL 06-10.txt

(8) As of the Closing Date with respect to the Initial Mortgage Loans and as of the related Supplemental Transfer Date with respect to the Supplemental Mortgage Loans, to the best of Countrywide's knowledge, each Mortgaged Property is free of material damage and in good repair.

(9) Each Mortgage Loan at origination complied in all material respects with applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, predatory and abusive lending laws, real estate settlement procedures, truth-in-lending and disclosure laws, and consummation of the transactions contemplated hereby will not involve the violation of any such laws.

(10) As of the Closing Date with respect to the Initial Mortgage Loans and as of the related Supplemental Transfer Date with respect to the Supplemental Mortgage Loans, neither of the Sellers nor any prior holder of any Mortgage has modified the Mortgage in any material respect (except that a Mortgage Loan may have been modified by a written instrument which has been recorded or submitted for recordation, if necessary, to protect the interests of the Certificateholders and the original or a copy of which has been delivered to the Trustee); satisfied, cancelled or subordinated such Mortgage in whole or in part; released the related Mortgaged Property in whole or in part from the lien of such Mortgage; or executed any instrument of release, cancellation, modification or satisfaction with respect thereto.

(11) A lender's policy of title insurance together with a condominium endorsement and extended coverage endorsement, if applicable, in an amount at least equal to the Cut-off Date Stated Principal Balance of each such Mortgage Loan or a commitment (binder) to issue the same was effective on the date of the origination of each Mortgage Loan, each such policy is valid and remains in full force and effect, and each such policy was issued by a title insurer qualified to do business in the jurisdiction where the Mortgaged Property is located and acceptable to FNMA or FHLMC and is in a form acceptable to FNMA or FHLMC, which policy insures Countrywide and successor owners of indebtedness secured by the insured Mortgage, as to the first priority lien of the Mortgage subject to the exceptions set forth in paragraph (4) above; to the best of Countrywide's knowledge, no claims have been made under such mortgage title insurance policy and no prior holder of the related Mortgage, including Countrywide, has done, by act or omission, anything which would impair the coverage of such mortgage title insurance policy.

(12) Each Mortgage Loan was originated (within the meaning of Section 3(a)(41) of the Securities Exchange Act of 1934, as amended) by an entity that satisfied at the time of origination the requirements of Section 3(a)(41) of the Securities Exchange Act of 1934, as amended.

(13) To the best of Countrywide's knowledge, all of the improvements which were included for the purpose of determining the Appraised Value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of such property, and no improvements on adjoining properties encroach upon the Mortgaged Property.

(14) To the best of Countrywide's knowledge, no improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation. To the best of Countrywide's knowledge, all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy and fire underwriting

S-III-A-2

<PAGE>

PSA_CWHL_06-10.txt

certificates, have been made or obtained from the appropriate authorities, unless the lack thereof would not have a material adverse effect on the value of such Mortgaged Property, and the Mortgaged Property is lawfully occupied under applicable law.

(15) Each Mortgage Note and the related Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms and under applicable law. To the best of Countrywide's knowledge, all parties to the Mortgage Note and the Mortgage had legal capacity to execute the Mortgage Note and the Mortgage and each Mortgage Note and Mortgage have been duly and properly executed by such parties.

(16) The proceeds of the Mortgage Loans have been fully disbursed, there is no requirement for future advances thereunder and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making, or closing or recording the Mortgage Loans were paid.

(17) The related Mortgage contains customary and enforceable provisions which render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security, including, (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure.

(18) With respect to each Mortgage constituting a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in such Mortgage, and no fees or expenses are or will become payable by the Certificateholders to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(19) Each Mortgage Note and each Mortgage is in substantially one of the forms acceptable to FNMA or FHLMC, with such riders as have been acceptable to FNMA or FHLMC, as the case may be.

(20) There exist no deficiencies with respect to escrow deposits and payments, if such are required, for which customary arrangements for repayment thereof have not been made, and no escrow deposits or payments of other charges or payments due Countrywide have been capitalized under the Mortgage or the related Mortgage Note.

(21) The origination, underwriting and collection practices used by Countrywide with respect to each Mortgage Loan have been in all respects legal, prudent and customary in the mortgage lending and servicing business.

(22) There is no pledged account or other security other than real estate securing the Mortgagor's obligations.

(23) No Mortgage Loan has a shared appreciation feature, or other contingent interest feature.

(24) Each Mortgage Loan contains a customary "due on sale" clause.

(25) Approximately 1.37% of the Mortgage Loans in Loan Group 1 by aggregate Stated Principal Balance of the Mortgage Loans in that Loan Group as of the Cut-off Date, provide for a Prepayment Charge.

S-III-A-3

<PAGE>

(26) Each Mortgage Loan which had a Loan-to-Value Ratio at origination in excess of 80.00% is the subject of a Primary Insurance Policy

PSA CWHL_06-10.txt

that insures that portion of the principal balance equal to a specified percentage times the sum of the remaining principal balance of the related Mortgage Loan, the accrued interest thereon and the related foreclosure expenses. The specified coverage percentage for mortgage loans with terms to maturity of between 25 and 30 years is 12% for Loan-to-Value Ratios between 80.01% and 85.00%, 25% for Loan-to-Value Ratios between 85.01% and 90.00%, 30% for Loan-to-Value Ratios between 90.01% and 95.00% and 35% for Loan-to-Value Ratios between 95.01% and 100%. The specified coverage percentage for mortgage loans with terms to maturity of up to 20 years ranges from 6% to 12% for Loan-to-Value Ratios between 80.01% and 85.00%, from 12% to 20% for Loan-to-Value Ratios between 85.01% to 90.00% and 20% to 25% for Loan-to-Value Ratios between 90.01% to 95.00%. Each such Primary Insurance Policy is issued by a Qualified Insurer. All provisions of any such Primary Insurance Policy have been and are being complied with, any such policy is in full force and effect, and all premiums due thereunder have been paid. Any Mortgage subject to any such Primary Insurance Policy obligates either the Mortgagor or the mortgagee thereunder to maintain such insurance and to pay all premiums and charges in connection therewith, subject, in each case, to the provisions of Section 3.09(b) of the Pooling and Servicing Agreement. The Mortgage Rate for each Mortgage Loan is net of any such insurance premium.

        (27) As of the Closing Date or the related Supplemental Transfer Date, as applicable, the improvements upon each Mortgaged Property are covered by a valid and existing hazard insurance policy with a generally acceptable carrier that provides for fire and extended coverage and coverage for such other hazards as are customary in the area where the Mortgaged Property is located in an amount which is at least equal to the lesser of (i) the maximum insurable value of the improvements securing such Mortgage Loan or (ii) the greater of (a) the outstanding principal balance of the Mortgage Loan and (b) an amount such that the proceeds of such policy shall be sufficient to prevent the Mortgagor and/or the mortgagee from becoming a co-insurer. If the Mortgaged Property is a condominium unit, it is included under the coverage afforded by a blanket policy for the condominium unit. All such individual insurance policies and all flood policies referred to in item (28) below contain a standard mortgagee clause naming Countrywide or the original mortgagee, and its successors in interest, as mortgagee, and Countrywide has received no notice that any premiums due and payable thereon have not been paid; the Mortgage obligates the Mortgagor thereunder to maintain all such insurance including flood insurance at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor.

        (28) If the Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, a flood insurance policy in a form meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with respect to such Mortgaged Property with a generally acceptable carrier in an amount representing coverage not less than the least of (A) the original outstanding principal balance of the Mortgage Loan, (B) the minimum amount required to compensate for damage or loss on a replacement cost basis, or (C) the maximum amount of insurance that is available under the Flood Disaster Protection Act of 1973, as amended.

        (29) To the best of Countrywide's knowledge, there is no proceeding occurring, pending or threatened for the total or partial condemnation of the Mortgaged Property.

        (30) There is no material monetary default existing under any Mortgage or the related Mortgage Note and, to the best of Countrywide's knowledge, there is no material event which,

PSA CWHL 06-10.txt

<PAGE>

with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration under the Mortgage or the related Mortgage Note; and Countrywide has not waived any default, breach, violation or event of acceleration.

(31) Each Mortgaged Property is improved by a one- to four-family residential dwelling including condominium units and dwelling units in PUDs, which, to the best of Countrywide's knowledge, does not include cooperatives or mobile homes and does not constitute other than real property under state law.

(32) Each Mortgage Loan is being master serviced by the Master Servicer.

(33) Any future advances made prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the consolidated principal amount, as consolidated, bears a single interest rate and single repayment term reflected on the Mortgage Loan Schedule. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan. The Mortgage Note does not permit or obligate the Master Servicer to make future advances to the Mortgagor at the option of the Mortgagor.

(34) All taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed, but is not yet due and payable. Except for (A) payments in the nature of escrow payments, and (B) interest accruing from the date of the Mortgage Note or date of disbursement of the Mortgage proceeds, whichever is later, to the day which precedes by one month the Due Date of the first installment of principal and interest, including without limitation, taxes and insurance payments, the Master Servicer has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required by the Mortgage.

(35) Each Mortgage Loan was underwritten in all material respects in accordance with Countrywide's underwriting guidelines as set forth in the Prospectus Supplement.

(36) Other than with respect to any Streamlined Documentation Mortgage Loan as to which the loan-to-value ratio of the related Original Mortgage Loan was less than 90% at the time of the origination of such Original Mortgage Loan, prior to the approval of the Mortgage Loan application, an appraisal of the related Mortgaged Property was obtained from a qualified appraiser, duly appointed by the originator, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan; such appraisal is in a form acceptable to FNMA and FHLMC.

(37) None of the Mortgage Loans are graduated payment mortgage loans or a growing equity mortgage loans, and none of the Mortgage Loans are subject to a buydown or similar arrangement.

(38) Any leasehold estate securing a Mortgage Loan has a term of not less than five years in excess of the term of the related Mortgage Loan.

(39) The Mortgage Loans were selected from among the outstanding fixed-rate one- to four-family mortgage loans in the portfolios of the Sellers at the Closing Date as to which the representations and warranties made as to the Mortgage Loans set forth in this Schedule III-A can be

PSA CWHL 06-10.txt
S-III-A-5

<PAGE>

made. Such selection was not made in a manner intended to adversely affect the interests of Certificateholders.

(40) Except for 246 Initial Mortgage Loans in Loan Group 1 and 33 Initial Mortgage Loans in Loan Group 2, all of the Initial Mortgage Loans have a payment date on or before the Due Date in the month of the first Distribution Date.

(41) With respect to any Mortgage Loan as to which an affidavit has been delivered to the Trustee certifying that the original Mortgage Note is a Lost Mortgage Note, if such Mortgage Loan is subsequently in default, the enforcement of such Mortgage Loan or of the related Mortgage by or on behalf of the Trustee will not be materially adversely affected by the absence of the original Mortgage Note. A "Lost Mortgage Note" is a Mortgage Note the original of which was permanently lost or destroyed and has not been replaced.

(42) The Mortgage Loans, individually and in the aggregate, conform in all material respects to the descriptions thereof in the Prospectus Supplement.

(43) No proceeds from any Mortgage Loan underlying the Certificates were used to finance single-premium credit insurance policies.

(44) The master servicer has furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information on its borrower credit files related to the mortgage loans to Equifax, Experian and Trans Union Credit Information Company on a monthly basis.

(45) The original principal balance of each Mortgage Loan is within the dollar amount limits of Freddie Mac and Fannie Mae for conforming one- to four-family mortgage loans.

(46) No Mortgage Loan in any Loan Group originated between October 1, 2002 and March 7, 2003 is subject to the Georgia Fair Lending Act, as amended. No Mortgage Loan in Loan Group 1 or Loan Group 2 originated between October 1, 2002 and March 7, 2003 is secured by a Mortgaged Property located in the state of Georgia, and there is no Mortgage Loan originated on or after March 7, 2003 that is a "high cost home loan" as defined under the Georgia Fair Lending Act.

(47) None of the Mortgage Loans are "high cost" loans as defined by applicable predatory and abusive lending laws.

(48) None of the Mortgage Loans are covered by the Home Ownership and Equity Protection Act of 1994 ("HOEPA").

(49) No Mortgage Loan is a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003 (N.J.S.A. 46:10B-22 et seq.).

(50) No Mortgage Loan is a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 (N.M. Stat. Ann. Sections 58-21a-1 et seq.).

(51) No Mortgage Loan is a "High-Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004 (Mass. Gen. Law ch. 183C).

S-III-A-6

<PAGE>

PSA CWHL 06-10.txt

(52) No Mortgage Loan originated on or after January 1, 2005 is a "High-Cost Home Loan" as defined in the Indiana Home Loan Practices Act, effective January 1, 2005 (Ind. Code Ann. Sections 24-9-1 through 24-9-9).

(53) All of the Mortgage Loans were originated in compliance with all applicable laws, including, but not limited to, all applicable anti-predatory and abusive lending laws.

(54) No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable, and with respect to the foregoing, the terms "High Cost Loan" and "Covered Loan" have the meaning assigned to them in the then current Standard & Poor's LEVELS(R) Version 5.6d Glossary Revised, Appendix E which is attached hereto as Exhibit Q (the "Glossary") where (x) a "High Cost Loan" is each loan identified in the column "Category under applicable anti-predatory lending law" of the table entitled "Standard & Poor's High Cost Loan Categorization" in the Glossary as each such loan is defined in the applicable anti-predatory lending law of the State or jurisdiction specified in such table and (y) a "Covered Loan" is each loan identified in the column "Category under applicable anti-predatory lending law" of the table entitled "Standard & Poor's Covered Loan Categorization" in the Glossary as each such loan is defined in the applicable anti-predatory lending law of the State or jurisdiction specified in such table.

(55) No Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act.

(56) The Master Servicer for each Mortgage Loan in any Loan Group has fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (i.e., favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company (three of the credit repositories) on a monthly basis.

(57) Each Mortgage Loan had an original principal balance that conforms to Freddie Mac and Fannie Mae guidelines concerning original principal balance limits at the time of the origination of such Mortgage Loan.

(58) No Mortgagor related to a Mortgage Loan in any Loan Group was required to purchase any single premium credit insurance policy (e.g., life, disability, accident, unemployment, or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit; no Mortgagor related to a Mortgage Loan in any Loan Group obtained a prepaid single-premium credit insurance policy (e.g., life, disability, accident, unemployment, mortgage or health insurance) in connection with the origination of such Mortgage Loan; no proceeds from any Mortgage Loan in any Loan Group were used to purchase single premium credit insurance policies or debt cancellation agreements as part of the origination or, or as a condition to closing, such Mortgage Loan.

(59) No Mortgage Loan in any Loan Group originated prior to October 1, 2002 will impose prepayment penalties for a term in excess of five years after origination.

(60) With respect to all of the Mortgage Loans originated from August 1, 2004 through April 30, 2005, if the related Mortgage Loan or the related Mortgage Note, or any document relating to the loan transaction, contains a mandatory arbitration clause (that is, a clause that requires the borrower to submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage loan transaction), Countrywide will (i) notify the related borrower in writing within 60 days after the Closing Date that none of the related seller, the related servicer or any subsequent party that

PSA CWHL 06-10.txt

S-III-A-7

<PAGE>

acquires an interest in the Mortgage Loan or services the Mortgage Loan will enforce the arbitration clause against the borrower, but that the borrower will continue to have the right to submit a dispute to arbitration and (ii) place a copy of that notice in the Mortgage File; and with respect to any Mortgage Loan originated on or after May 1, 2005, neither the related mortgage nor the related mortgage note requires the borrower to submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage loan transaction.

(61) Each Mortgage Loan constitutes a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code.

S-III-A-8

<PAGE>

SCHEDULE III-B

CWMBS, Inc.

Mortgage Pass-Through Certificates

Series 2006-10

Representations and Warranties of Countrywide as to the Countrywide Mortgage Loans

Countrywide Home Loans, Inc. ("Countrywide") hereby makes the representations and warranties set forth in this Schedule III-B to the Depositor, the Master Servicer and the Trustee, with respect to the Countrywide Mortgage Loans that are Initial Mortgage Loans as of the Closing Date, or if so specified herein, as of the Initial Cut-off Date, and with respect to Countrywide Mortgage Loans that are Supplemental Mortgage Loans, as of the related Supplemental Transfer Date or if so specified herein, as of the related Supplemental Cut-off Date. Capitalized terms used but not otherwise defined in this Schedule III-B shall have the meanings ascribed thereto in the Pooling and Servicing Agreement (the "Pooling and Servicing Agreement") relating to the above-referenced Series, among Countrywide, as a seller, Park Granada LLC, as a seller, Park Monaco Inc., as a seller, Park Sienna LLC, as a seller, Countrywide Home Loans Servicing LP, as master servicer, CWMBS, Inc., as depositor, and The Bank of New York, as trustee.

(1) Immediately prior to the assignment of each Countrywide Mortgage Loan to the Depositor, Countrywide had good title to, and was the sole owner of, such Countrywide Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign the same pursuant to the Pooling and Servicing Agreement.

S-III-B-1

<PAGE>

SCHEDULE III-C

CWMBS, Inc.

Mortgage Pass-Through Certificates

Series 2006-10

Representations and Warranties of Park Granada as to the Park Granada Mortgage

PSA CWHL 06-10.txt
Loans

        Park Granada LLC ("Park Granada") hereby makes the representations
and warranties set forth in this Schedule III-C to the Depositor, the Master
Servicer and the Trustee, with respect to the Park Granada Mortgage Loans that
are Mortgage Loans as of the Initial Closing Date, or if so specified herein, as
of the Initial Cut-off Date and with respect to Park Granada Mortgage Loans that
are Supplemental Mortgage Loans, as of the related Supplemental Transfer Date or
if so specified herein, as of the related Supplemental Cut-off Date. Capitalized
terms used but not otherwise defined in this Schedule III-C shall have the
meanings ascribed thereto in the Pooling and Servicing Agreement (the "Pooling
and Servicing Agreement") relating to the above-referenced Series, among
Countrywide Home Loans, Inc., as a seller, Park Granada LLC, as a seller, Park
Monaco Inc., as a seller, Park Sienna LLC, as a seller, Countrywide Home Loans
Servicing LP, as master servicer, CWMBS, Inc., as depositor, and The Bank of New
York, as trustee.

        (1) (1) Immediately prior to the assignment of each Park Granada
Mortgage Loan to the Depositor, Park Granada had good title to, and was the sole
owner of, such Park Granada Mortgage Loan free and clear of any pledge, lien,
encumbrance or security interest and had full right and authority, subject to no
interest or participation of, or agreement with, any other party, to sell and
assign the same pursuant to the Pooling and Servicing Agreement.

                              S-III-C-1

<PAGE>

                          SCHEDULE III-D

                            CWMBS, Inc.

                Mortgage Pass-Through Certificates

                          Series 2006-10

    Representations and Warranties of Park Monaco as to the Park Monaco Mortgage
                                Loans

        Park Monaco Inc. ("Park Monaco") hereby makes the representations
and warranties set forth in this Schedule III-D to the Depositor, the Master
Servicer and the Trustee, with respect to the Park Monaco Mortgage Loans that
are Initial Mortgage Loans as of the Closing Date, or if so specified herein, as
of the Initial Cut-off Date, and with respect to Park Monaco Mortgage Loans that
are Supplemental Mortgage Loans, as of the related Supplemental Transfer Date or
if so specified herein, as of the related Supplemental Cut-off Date. Capitalized
terms used but not otherwise defined in this Schedule III-D shall have the
meanings ascribed thereto in the Pooling and Servicing Agreement (the "Pooling
and Servicing Agreement") relating to the above-referenced Series, among
Countrywide Home Loans, Inc., as a seller, Park Monaco, as a seller, Park
Granada LLC, as a seller, Park Sienna LLC, as a seller, Countrywide Home Loans
Servicing LP, as master servicer, CWMBS, Inc., as depositor, and The Bank of New
York, as trustee.

        (1) Immediately prior to the assignment of each Park Monaco Mortgage
Loan to the Depositor, Park Monaco had good title to, and was the sole owner of,
such Park Monaco Mortgage Loan free and clear of any pledge, lien, encumbrance
or security interest and had full right and authority, subject to no interest or
participation of, or agreement with, any other party, to sell and assign the
same pursuant to the Pooling and Servicing Agreement.

                              S-III-D-1

<PAGE>

                            Page 141

PSA CWHL 06-10.txt
SCHEDULE III-E

CWMBS, Inc.

Mortgage Pass-Through Certificates

Series 2006-10

Representations and Warranties of Park Sienna as to the Park Sienna Mortgage
Loans

Park Sienna LLC ("Park Sienna") hereby makes the representations and
warranties set forth in this Schedule III-E to the Depositor, the Master
Servicer and the Trustee, with respect to the Park Sienna Mortgage Loans that
are Initial Mortgage Loans as of the Closing Date, or if so specified herein, as
of the Initial Cut-off Date, and with respect to Park Sienna Mortgage Loans that
are Supplemental Mortgage Loans, as of the related Supplemental Transfer Date or
if so specified herein, as of the related Supplemental Cut-off Date. Capitalized
terms used but not otherwise defined in this Schedule III-E shall have the
meanings ascribed thereto in the Pooling and Servicing Agreement (the "Pooling
and Servicing Agreement") relating to the above-referenced Series, among
Countrywide Home Loans, Inc., as a seller, Park Sienna LLC, as a seller, Park
Monaco Inc., as a seller, Park Granada LLC, as a seller, Countrywide Home Loans
Servicing LP, as master servicer, CWMBS, Inc., as depositor, and The Bank of New
York, as trustee.

(1) Immediately prior to the assignment of each Park Sienna Mortgage
Loan to the Depositor, Park Sienna had good title to, and was the sole owner of,
such Park Sienna Mortgage Loan free and clear of any pledge, lien, encumbrance
or security interest and had full right and authority, subject to no interest or
participation of, or agreement with, any other party, to sell and assign the
same pursuant to the Pooling and Servicing Agreement.

S-III-E-1

<PAGE>

SCHEDULE IV

CWMBS, Inc.

Mortgage Pass-Through Certificates

Series 2006-10

Representations and Warranties of the Master Servicer

Countrywide Home Loans Servicing LP ("Countrywide Servicing") hereby
makes the representations and warranties set forth in this Schedule IV to the
Depositor, the Sellers and the Trustee, as of the Closing Date. Capitalized
terms used but not otherwise defined in this Schedule IV shall have the meanings
ascribed thereto in the Pooling and Servicing Agreement (the "Pooling and
Servicing Agreement") relating to the above-referenced Series, among Countrywide
Home Loans, Inc., as a seller, Park Granada LLC, as a seller, Park Monaco Inc.,
as a seller, Park Sienna LLC, as a seller, Countrywide Home Loans Servicing LP,
as master servicer, CWMBS, Inc., as depositor, and The Bank of New York, as
trustee.

(1) Countrywide Servicing is duly organized as a limited partnership
and is validly existing and in good standing under the laws of the State of
Texas and is duly authorized and qualified to transact any and all business
contemplated by the Pooling and Servicing Agreement to be conducted by
Countrywide Servicing in any state in which a Mortgaged Property is located or
is otherwise not required under applicable law to effect such qualification and,

PSA CWHL 06-10.txt
in any event, is in compliance with the doing business laws of any such state,
to the extent necessary to perform any of its obligations under the Pooling and
Servicing Agreement in accordance with the terms thereof.

(2) Countrywide Servicing has the full partnership power and
authority to service each Mortgage Loan, and to execute, deliver and perform,
and to enter into and consummate the transactions contemplated by the Pooling
and Servicing Agreement and has duly authorized by all necessary partnership
action on the part of Countrywide Servicing the execution, delivery and
performance of the Pooling and Servicing Agreement; and the Pooling and
Servicing Agreement, assuming the due authorization, execution and delivery
thereof by the other parties thereto, constitutes a legal, valid and binding
obligation of Countrywide Servicing, enforceable against Countrywide Servicing
in accordance with its terms, except that (a) the enforceability thereof may be
limited by bankruptcy, insolvency, moratorium, receivership and other similar
laws relating to creditors' rights generally and (b) the remedy of specific
performance and injunctive and other forms of equitable relief may be subject to
equitable defenses and to the discretion of the court before which any
proceeding therefor may be brought.

(3) The execution and delivery of the Pooling and Servicing
Agreement by Countrywide Servicing, the servicing of the Mortgage Loans by
Countrywide Servicing under the Pooling and Servicing Agreement, the
consummation of any other of the transactions contemplated by the Pooling and
Servicing Agreement, and the fulfillment of or compliance with the terms thereof
are in the ordinary course of business of Countrywide Servicing and will not (A)
result in a material breach of any term or provision of the certificate of
limited partnership, partnership agreement or other organizational document of
Countrywide Servicing or (B) materially conflict with, result in a material
breach, violation or acceleration of, or result in a material default under, the
terms of any other material agreement or instrument to which Countrywide
Servicing is a party or by which it may be bound, or (C) constitute a material
violation of any statute, order or regulation applicable to Countrywide
Servicing of any court, regulatory body, administrative agency or governmental
body having jurisdiction over Countrywide Servicing; and Countrywide Servicing
is not in breach or violation of any material indenture or other material
agreement or instrument, or in violation of any statute, order or regulation of
any court, regulatory body, administrative agency or governmental body having
jurisdiction over it which breach or

S-IV-1

<PAGE>

violation may materially impair the ability of Countrywide Servicing to perform
or meet any of its obligations under the Pooling and Servicing Agreement.

(4) Countrywide Servicing is an approved servicer of conventional
mortgage loans for FNMA or FHLMC and is a mortgagee approved by the Secretary of
Housing and Urban Development pursuant to sections 203 and 211 of the National
Housing Act.

(5) No litigation is pending or, to the best of Countrywide
Servicing's knowledge, threatened, against Countrywide Servicing that would
materially and adversely affect the execution, delivery or enforceability of the
Pooling and Servicing Agreement or the ability of Countrywide Servicing to
service the Mortgage Loans or to perform any of its other obligations under the
Pooling and Servicing Agreement in accordance with the terms thereof.

(6) No consent, approval, authorization or order of any court or
governmental agency or body is required for the execution, delivery and
performance by Countrywide Servicing of, or compliance by Countrywide Servicing
with, the Pooling and Servicing Agreement or the consummation of the
transactions contemplated thereby, or if any such consent, approval,

Page 143

PSA CWHL 06-10.txt
authorization or order is required, Countrywide Servicing has obtained the same.

        (7) Countrywide Servicing is a member of MERS in good standing, and
will comply in all material respects with the rules and procedures of MERS in
connection with the servicing of the MERS Mortgage Loans for as long as such
Mortgage Loans are registered with MERS.

                              S-IV-2

<PAGE>


                              SCHEDULE V
                      Principal Balances Schedule

          [Attached to Prospectus Supplement, if applicable]

                              S-V-1

<PAGE>


                              SCHEDULE VI
                  Form of Monthly Master Servicer Report

                    LOAN LEVEL REPORTING SYSTEM

                        DATABASE STRUCTURE

                          [MONTH, YEAR]


<TABLE>
<CAPTION>

| Field Number | Field Name | Field Type | Field Width | Dec |
|-------------|-----------|-----------|------------|-----|
| <S> | <C> | <C> | <C> | <C> |
| 1 | INVNUM | Numeric | 4 | |
| 2 | INVBLK | Numeric | 4 | |
| 3 | INACNU | Character | 8 | |
| 4 | BEGSCH | Numeric | 15 | 2 |
| 5 | SCHPRN | Numeric | 13 | 2 |
| 6 | TADPRN | Numeric | 11 | 2 |
| 7 | LIQEPB | Numeric | 11 | 2 |
| 8 | ACTCOD | Numeric | 11 | |
| 9 | ACTDAT | Numeric | 4 | |
| 10 | INTPMT | Numeric | 8 | |
| 11 | PRNPMT | Numeric | 13 | 2 |
| 12 | ENDSCH | Numeric | 13 | 2 |
| 13 | SCHNOT | Numeric | 13 | 2 |
| 14 | SCHPAS | Numeric | 7 | 3 |
| 15 | PRINPT | Numeric | 7 | 3 |
| 16 | PRIBAL | Numeric | 11 | 2 |
| 17 | LPIDTE | Numeric | 13 | 2 |
| 18 | DELPRN | Numeric | 7 | |
| 19 | PPDPRN | Numeric | 11 | 2 |
| 20 | DELPRN | Numeric | 11 | 2 |
| 21 | NXTCHG | Numeric | 8 | |
| 22 | ARMNOT | Numeric | 7 | 3 |
| 23 | ARMPAS | Numeric | 7 | 3 |
| 24 | ARMPMT | Numeric | 11 | 2 |
| 25 | ZZTYPE | Character | 2 | |
| 26 | ISSUID | Character | 1 | |
| 27 | KEYNAME | Character | 8 | |
| | | | ----- | |
| TOTAL | | | 240 | |
| | | | ----- | |

  Suggested Format:    DBASE file

```
                         PSA CWHL 06-10.txt
                       Modem transmission
</TABLE>

                              S-VI-1

<PAGE>

                              S-VI-2

<PAGE>

                            EXHIBIT A

                    [FORM OF SENIOR CERTIFICATE]
```

[UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE
DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT
FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED
IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY
AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO
SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY
TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON
IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST
HEREIN.]

[SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR
INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE
DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF
1986, AS AMENDED (THE "CODE").]

[UNTIL THIS CERTIFICATE HAS BEEN THE SUBJECT OF AN ERISA-QUALIFYING
UNDERWRITING, NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE
TRANSFERRED UNLESS THE TRANSFEREE DELIVERS TO THE TRUSTEE EITHER (a) A
REPRESENTATION LETTER TO THE EFFECT THAT SUCH TRANSFEREE IS NOT, AND IS NOT
INVESTING ASSETS OF, AN EMPLOYEE BENEFIT PLAN SUBJECT TO THE EMPLOYEE RETIREMENT
INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), OR A PLAN or arrangement
SUBJECT TO SECTION 4975 OF THE CODE, OR (b) AN OPINION OF COUNSEL IN ACCORDANCE
WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN. SUCH REPRESENTATION
SHALL BE DEEMED TO HAVE BEEN MADE TO THE TRUSTEE BY THE TRANSFEREE'S ACCEPTANCE
OF A CERTIFICATE OF THIS CLASS AND BY A BENEFICIAL OWNER'S ACCEPTANCE OF ITS
INTEREST IN A CERTIFICATE OF THIS CLASS. NOTWITHSTANDING ANYTHING ELSE TO THE
CONTRARY HEREIN, UNTIL THIS CERTIFICATE HAS BEEN THE SUBJECT OF AN
ERISA-QUALIFYING UNDERWRITING, ANY PURPORTED TRANSFER OF THIS CERTIFICATE TO, OR
TO A PERSON INVESTING ASSETS OF, AN EMPLOYEE BENEFIT PLAN SUBJECT TO ERISA OR A
PLAN OR ARRANGEMENT SUBJECT TO SECTION 4975 OF THE CODE WITHOUT THE OPINION OF
COUNSEL SATISFACTORY TO THE TRUSTEE AS DESCRIBED ABOVE SHALL BE VOID AND OF NO
EFFECT.]

```
                              A-1
<PAGE>

<TABLE>
<S>                                   <C>                    <C>
Certificate No.                       :

Cut-off Date                          :

First Distribution Date               :

Initial Certificate Balance
of this Certificate
("Denomination")                      :                      $

Initial Certificate Balance
of all Certificates of
```

```
                              PSA CWHL 06-10.txt
this Class                        :                    $

CUSIP                             :

Interest Rate                     :

Maturity Date                     :
</TABLE>
```

                                    CWMBS, INC.
                 Mortgage Pass-Through Certificates, Series 200____-____
                                      Class [ ]

        evidencing a percentage interest in the distributions allocable to the
        Certificates of the above-referenced Class with respect to a Trust Fund
        consisting primarily of a pool of conventional mortgage loans (the
        "Mortgage Loans") secured by first liens on one- to four-family
        residential properties

                            CWMBS, Inc., as Depositor

        Principal in respect of this Certificate is distributable monthly as set
forth herein. Accordingly, the Certificate Balance at any time may be less than
the Certificate Balance as set forth herein. This Certificate does not evidence
an obligation of, or an interest in, and is not guaranteed by the Depositor, the
Sellers, the Master Servicer or the Trustee referred to below or any of their
respective affiliates. Neither this Certificate nor the Mortgage Loans are
guaranteed or insured by any governmental agency or instrumentality.

        This certifies that _____ is the registered owner of the Percentage
Interest evidenced by this Certificate (obtained by dividing the denomination of
this Certificate by the aggregate Initial Certificate Balance of all
Certificates of the Class to which this Certificate belongs) in certain monthly
distributions with respect to a Trust Fund consisting primarily of the Mortgage

                                      A-2
<PAGE>

Loans deposited by CWMBS, Inc. (the "Depositor"). The Trust Fund was created
pursuant to a Pooling and Servicing Agreement dated as of the Cut-off Date
specified above (the "Agreement") among the Depositor, Countrywide Home Loans,
Inc., as a seller ("CHL"), Park Granada LLC, as a seller ("Park Granada"), Park
Monaco Inc., as a seller ("Park Monaco"), and Park Sienna LLC, as a seller
("Park Sienna" and, together with CHL, Park Granada and Park Monaco, the
"Sellers"), Countrywide Home Loans Servicing LP, as master servicer (the "Master
Servicer"), and The Bank of New York, as trustee (the "Trustee"). To the extent
not defined herein, the capitalized terms used herein have the meanings assigned
in the Agreement. This Certificate is issued under and is subject to the terms,
provisions and conditions of the Agreement, to which Agreement the Holder of
this Certificate by virtue of the acceptance hereof assents and by which such
Holder is bound.

        [Until this certificate has been the subject of an ERISA-Qualifying
Underwriting, no transfer of a Certificate of this Class shall be made unless
the Trustee shall have received either (i) a representation letter from the
transferee of such Certificate, acceptable to and in form and substance
satisfactory to the Trustee, to the effect that such transferee is not an
employee benefit plan subject to Section 406 of ERISA or a plan or arrangement
subject to Section 4975 of the Code, or a person acting on behalf of or
investing plan assets of any such benefit plan or arrangement, which
representation letter shall not be an expense of the Trustee, the Master
Servicer or the Trust Fund, or (ii) in the case of any such Certificate
presented for registration in the name of an employee benefit plan subject to

PSA CWHL 06-10.txt

ERISA or a plan or arrangement subject to Section 4975 of the Code (or comparable provisions of any subsequent enactments), a trustee of any such benefit plan or arrangement or any other person acting on behalf of any such benefit plan or arrangement, an Opinion of Counsel satisfactory to the Trustee to the effect that the purchase and holding of such Certificate will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, and will not subject the Trustee or the Master Servicer to any obligation in addition to those undertaken in the Agreement, which Opinion of Counsel shall not be an expense of the Trustee, the Master Servicer or the Trust Fund. Unless the transferee delivers the Opinion of Counsel described above, such representation shall be deemed to have been made to the Trustee by the Transferee's acceptance of a Certificate of this Class and by a beneficial owner's acceptance of its interest in a Certificate of this Class. Notwithstanding anything else to the contrary herein, until such certificate has been the subject of an ERISA-Qualifying Underwriting, any purported transfer of a Certificate of this Class to, or to a person investing assets of, an employee benefit plan subject to ERISA or a plan or arrangement subject to Section 4975 of the Code without the opinion of counsel satisfactory to the Trustee as described above shall be void and of no effect.]

        Reference is hereby made to the further provisions of this Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

        This Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose unless manually countersigned by an authorized signatory of the Trustee.

                                    A-3

<PAGE>

        IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated:_____, 20__

                                        THE BANK OF NEW YORK,
                                        as Trustee

                                        By _____

Countersigned:

By _____
        Authorized Signatory of
        THE BANK OF NEW YORK,
        as Trustee

                                    A-4

<PAGE>

                            EXHIBIT B

                [FORM OF SUBORDINATED CERTIFICATE]

[UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST

PSA CWHL 06-10.txt

HEREIN.]

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE").

THIS CERTIFICATE IS SUBORDINATED IN RIGHT OF PAYMENT TO CERTAIN CERTIFICATES AS DESCRIBED IN THE AGREEMENT REFERRED TO HEREIN.

THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"). ANY RESALE OR TRANSFER OF THIS CERTIFICATE WITHOUT REGISTRATION THEREOF UNDER THE ACT MAY ONLY BE MADE IN A TRANSACTION EXEMPTED FROM THE REGISTRATION REQUIREMENTS OF THE ACT AND IN ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN.

[NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE TRANSFERRED UNLESS THE TRANSFEREE DELIVERS TO THE TRUSTEE EITHER (A) A REPRESENTATION LETTER TO THE EFFECT THAT (i) SUCH TRANSFEREE IS NOT AN EMPLOYEE BENEFIT PLAN SUBJECT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), A PLAN OR ARRANGEMENT SUBJECT TO SECTION 4975 OF THE CODE, OR A PERSON ACTING ON BEHALF OF OR INVESTING THE ASSETS OF SUCH A BENEFIT PLAN OR ARRANGEMENT TO EFFECT THE TRANSFER, OR (ii) IF SUCH CERTIFICATE HAS BEEN THE SUBJECT OF AN ERISA-QUALIFYING UNDERWRITING AND THE TRANSFEREE IS AN INSURANCE COMPANY, A REPRESENTATION THAT THE TRANSFEREE IS PURCHASING SUCH CERTIFICATE WITH FUNDS CONTAINED IN AN "INSURANCE COMPANY GENERAL ACCOUNT" AS SUCH TERM IS DEFINED IN SECTION V(e) OF PROHIBITED TRANSACTION CLASS EXEMPTION ("PTCE") 95-60, AND THE

B-1

<PAGE>

PURCHASE AND HOLDING OF THE CERTIFICATE SATISFY THE REQUIREMENTS FOR EXEMPTIVE RELIEF UNDER SECTIONS I AND III OF PTCE 95-60, OR (B) AN OPINION OF COUNSEL IN ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN. NOTWITHSTANDING ANYTHING ELSE TO THE CONTRARY HEREIN, ANY PURPORTED TRANSFER OF THIS CERTIFICATE TO OR ON BEHALF OF AN EMPLOYEE BENEFIT PLAN SUBJECT TO ERISA OR A PLAN OR ARRANGEMENT SUBJECT TO SECTION 4975 OF THE CODE WITHOUT THE OPINION OF COUNSEL SATISFACTORY TO THE TRUSTEE AS DESCRIBED ABOVE SHALL BE VOID AND OF NO EFFECT.]

B-2

<PAGE>

<TABLE>
<S>                                   <C>                   <C>
Certificate No.                       :

Cut-off Date                          :

First Distribution Date               :

Initial Certificate Balance
of this Certificate
("Denomination")                      :                     $

Initial Certificate Balance
of all Certificates of
this Class                            :                     $

CUSIP                                 :

Interest Rate                         :

PSA CWHL 06-10.txt

Maturity Date                          :
</TABLE>

CWMBS, INC.
Mortgage Pass-Through Certificates, Series 200____-____
Class [ ]

evidencing a percentage interest in the distributions allocable to the
Certificates of the above-referenced Class with respect to a Trust Fund
consisting primarily of a pool of conventional mortgage loans (the
"Mortgage Loans") secured by first liens on one- to four-family
residential properties

CWMBS, Inc., as Depositor

Principal in respect of this Certificate is distributable monthly as set
forth herein. Accordingly, the Certificate Balance at any time may be less than
the Certificate Balance as set forth herein. This Certificate does not evidence
an obligation of, or an interest in, and is not guaranteed by the Depositor, the
Sellers, the Master Servicer or the Trustee referred to below or any of their
respective affiliates. Neither this Certificate nor the Mortgage Loans are
guaranteed or insured by any governmental agency or instrumentality.

This certifies that _____ is the registered owner of the Percentage
Interest evidenced by this Certificate (obtained by dividing the denomination of
this Certificate by the aggregate Initial Certificate Balance of all
Certificates of the Class to which this Certificate

B-3

<PAGE>

belongs) in certain monthly distributions with respect to a Trust Fund
consisting primarily of the Mortgage Loans deposited by CWMBS, Inc. (the
"Depositor"). The Trust Fund was created pursuant to a Pooling and Servicing
Agreement dated as of the Cut-off Date specified above (the "Agreement") among
the Depositor, Countrywide Home Loans, Inc., as a seller ("CHL"), Park Granada
LLC, as a seller ("Park Granada"), Park Monaco Inc., as a seller ("Park
Monaco"), and Park Sienna LLC, as a seller ("Park Sienna" and, together with
CHL, Park Granada and Park Monaco, the "Sellers"), Countrywide Home Loans
Servicing LP, as master servicer (the "Master Servicer"), and The Bank of New
York, as trustee (the "Trustee"). To the extent not defined herein, the
capitalized terms used herein have the meanings assigned in the Agreement. This
Certificate is issued under and is subject to the terms, provisions and
conditions of the Agreement, to which Agreement the Holder of this Certificate
by virtue of the acceptance hereof assents and by which such Holder is bound.

[No transfer of a Certificate of this Class shall be made unless such
transfer is made pursuant to an effective registration statement under the
Securities Act and any applicable state securities laws or is exempt from the
registration requirements under said Act and such laws. In the event that a
transfer is to be made in reliance upon an exemption from the Securities Act and
such laws, in order to assure compliance with the Securities Act and such laws,
the Certificateholder desiring to effect such transfer and such
Certificateholder's prospective transferee shall each certify to the Trustee in
writing the facts surrounding the transfer. In the event that such a transfer is
to be made within three years from the date of the initial issuance of
Certificates pursuant hereto, there shall also be delivered (except in the case
of a transfer pursuant to Rule 144A of the Securities Act) to the Trustee an
Opinion of Counsel that such transfer may be made pursuant to an exemption from
the Securities Act and such state securities laws, which Opinion of Counsel
shall not be obtained at the expense of the Trustee, the Sellers, the Master
Servicer or the Depositor. The Holder hereof desiring to effect such transfer
shall, and does hereby agree to, indemnify the Trustee and the Depositor against

PSA CWHL 06-10.txt

any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.]

        [No transfer of a Certificate of this Class shall be made unless the Trustee shall have received either (i) a representation letter from the transferee of such Certificate, acceptable to and in form and substance satisfactory to the Trustee, to the effect that such transferee is not an employee benefit plan subject to Section 406 of ERISA or a plan or arrangement subject to Section 4975 of the Code, or a person acting on behalf of or investing plan assets of any such benefit plan or arrangement, which representation letter shall not be an expense of the Trustee, the Master Servicer or the Trust Fund, (ii) if such certificate has been the subject of an ERISA-Qualifying Underwriting and the transferee is an insurance company, a representation that the transferee is purchasing such Certificate with funds contained in an "insurance company general account" (as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("PTCE 95-60")) and that the purchase and holding of such Certificate satisfy the requirements for exemptive relief under Sections I and III of PTCE 95-60, or (iii) in the case of any such Certificate presented for registration in the name of an employee benefit plan subject to ERISA or a plan or arrangement subject to Section 4975 of the Code (or comparable provisions

                                    B-4

<PAGE>

of any subsequent enactments), a trustee of any such benefit plan or arrangement or any other person acting on behalf of any such benefit plan or arrangement, an Opinion of Counsel satisfactory to the Trustee to the effect that the purchase and holding of such Certificate will not result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, and will not subject the Trustee or the Master Servicer to any obligation in addition to those undertaken in the Agreement, which Opinion of Counsel shall not be an expense of the Trustee, the Master Servicer or the Trust Fund. Notwithstanding anything else to the contrary herein, any purported transfer of a Certificate of this Class to or on behalf of an employee benefit plan subject to ERISA or a plan or arrangement subject to Section 4975 of the Code without the opinion of counsel satisfactory to the Trustee as described above shall be void and of no effect.]

        Reference is hereby made to the further provisions of this Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

        This Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose unless manually countersigned by an authorized signatory of the Trustee.

                              * * *

                                    B-5

<PAGE>

            IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated:_____, 20__


                                    THE BANK OF NEW YORK,
                                    as Trustee

                                    By _____

Countersigned:

                              Page 150

PSA CWHL 06-10.txt

By _____
        Authorized Signatory of
        THE BANK OF NEW YORK,
        as Trustee

                                    B-6

<PAGE>

                          EXHIBIT C-1

                  [FORM OF RESIDUAL CERTIFICATE]

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "RESIDUAL
INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE
DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF
1986, AS AMENDED (THE "CODE").

NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE TRANSFERRED UNLESS THE
PROPOSED TRANSFEREE DELIVERS TO THE TRUSTEE A TRANSFER AFFIDAVIT IN ACCORDANCE
WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN.

NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE TRANSFERRED UNLESS THE
TRANSFEREE DELIVERS TO THE TRUSTEE EITHER (A) A REPRESENTATION LETTER TO THE
EFFECT THAT (i) SUCH TRANSFEREE IS NOT AN EMPLOYEE BENEFIT PLAN SUBJECT TO THE
EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), A PLAN or
arrangement SUBJECT TO SECTION 4975 OF THE CODE, OR A PERSON ACTING ON BEHALF OF
OR INVESTING THE ASSETS OF SUCH A Benefit plan or arrangement TO EFFECT THE
TRANSFER, OR (ii) if such certificate has been the subject of an
ERISA-Qualifying Underwriting and the TRANSFEREE is an insurance company, a
representation that the TRANSFEREE is purchasing such Certificate with funds
contained in an "INSURANCE COMPANY GENERAL ACCOUNT" AS SUCH TERM IS DEFINED IN
SECTION V(e) OF Prohibited Transaction Class Exemption ("ptce") 95-60, and the
purchase and holding of the certificate satisfy the requirements for exemptive
relief under sections i and iii of ptce 95-60, or (B) AN OPINION OF COUNSEL IN
ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN.
NOTWITHSTANDING ANYTHING ELSE TO THE CONTRARY HEREIN, ANY PURPORTED TRANSFER OF
THIS CERTIFICATE TO OR ON BEHALF OF AN EMPLOYEE BENEFIT PLAN SUBJECT TO ERISA OR
A PLAN or arrangement SUBJECT TO SECTION 4975 OF THE CODE WITHOUT THE OPINION OF
COUNSEL SATISFACTORY TO THE TRUSTEE AS DESCRIBED ABOVE SHALL BE VOID AND OF NO
EFFECT.

[THIS CERTIFICATE REPRESENTS THE "TAX MATTERS PERSON RESIDUAL INTEREST" ISSUED
UNDER THE POOLING AND SERVICING AGREEMENT REFERRED TO BELOW AND MAY NOT BE
TRANSFERRED TO ANY PERSON EXCEPT IN CONNECTION WITH THE ASSUMPTION BY THE
TRANSFEREE OF THE DUTIES OF THE SERVICER UNDER SUCH AGREEMENT.]

                                   C-1-1

<PAGE>

<TABLE>
<S>                                 <C>                 <C>
Certificate No.                     :

Cut-off  Date                       :

First Distribution Date             :

Initial Certificate Balance
of this Certificate
("Denomination")                    :                   $

Initial Certificate Balance
of all Certificates of

                              Page 151

```
                         PSA CWHL 06-10.txt
this Class                          :                $

CUSIP                               :

Interest Rate                       :

Maturity Date                       :
</TABLE>
```

                         CWMBS, INC.
        Mortgage Pass-Through Certificates, Series 200____-____
                         Class A-R

        evidencing the distributions allocable to the Class A-R Certificates with
        respect to a Trust Fund consisting primarily of a pool of conventional
        mortgage loans (the "Mortgage Loans") secured by first liens on one- to
        four-family residential properties

                   CWMBS, Inc., as Depositor

        Principal in respect of this Certificate is distributable monthly as set
forth herein. Accordingly, the Certificate Balance at any time may be less than
the Certificate Balance as set forth herein. This Certificate does not evidence
an obligation of, or an interest in, and is not guaranteed by the Depositor, the
Sellers, the Master Servicer or the Trustee referred to below or any of their
respective affiliates. Neither this Certificate nor the Mortgage Loans are
guaranteed or insured by any governmental agency or instrumentality.

        This certifies that _____ is the registered owner of the Percentage
Interest (obtained by dividing the Denomination of this Certificate by the
aggregate Initial Certificate Balance of all Certificates of the Class to which
this Certificate belongs) in certain monthly distributions with respect to a
Trust Fund consisting of the Mortgage Loans deposited by CWMBS, Inc. (the

                              C-1-2
<PAGE>
"Depositor"). The Trust Fund was created pursuant to a Pooling and Servicing
Agreement dated as of the Cut-off Date specified above (the "Agreement") among
the Depositor, Countrywide Home Loans, Inc., as a seller ("CHL"), Park Granada
LLC, as a seller ("Park Granada"), Park Monaco Inc., as a seller ("Park
Monaco"), and Park Sienna LLC, as a seller ("Park Sienna" and, together with
CHL, Park Granada and Park Monaco, the "Sellers"), Countrywide Home Loans
Servicing LP, as master servicer (the "Master Servicer"), and The Bank of New
York, as trustee (the "Trustee"). To the extent not defined herein, the
capitalized terms used herein have the meanings assigned in the Agreement. This
Certificate is issued under and is subject to the terms, provisions and
conditions of the Agreement, to which Agreement the Holder of this Certificate
by virtue of the acceptance hereof assents and by which such Holder is bound.

        Any distribution of the proceeds of any remaining assets of the Trust Fund
will be made only upon presentment and surrender of this Class A-R Certificate
at the Corporate Trust Office or the office or agency maintained by the Trustee
in New York, New York.

        No transfer of a Class A-R Certificate shall be made unless the Trustee
shall have received either (i) a representation letter from the transferee of
such Certificate, acceptable to and in form and substance satisfactory to the
Trustee, to the effect that such transferee is not an employee benefit plan
subject to Section 406 of ERISA or a plan or arrangement subject to Section 4975
of the Code, or a person acting on behalf of or investing plan assets of any
such benefit plan or arrangement, which representation letter shall not be an
expense of the Trustee, the Master Servicer or the Trust Fund, (ii) if such

PSA CWHL 06-10.txt

certificate has been the subject of an ERISA-Qualifying Underwriting and the transferee is an insurance company, a representation that the transferee is purchasing such Certificate with funds contained in an "insurance company general account" (as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("PTCE 95-60")) and that the purchase and holding of such Certificate satisfy the requirements for exemptive relief under Sections I and III of PTCE 95-60, or (iii) in the case of any such Certificate presented for registration in the name of an employee benefit plan subject to ERISA or a plan or arrangement subject to Section 4975 of the Code (or comparable provisions of any subsequent enactments), a trustee of any such benefit plan or arrangement or any other person acting on behalf of any such benefit plan or arrangement, an Opinion of Counsel satisfactory to the Trustee to the effect that the purchase and holding of such Certificate will not result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, and will not subject the Trustee or the Master Servicer to any obligation in addition to those undertaken in the Agreement, which Opinion of Counsel shall not be an expense of the Trustee, the Master Servicer or the Trust Fund. Notwithstanding anything else to the contrary herein, any purported transfer of a Class A-R Certificate to or on behalf of an employee benefit plan subject to ERISA or a plan or arrangement subject to Section 4975 of the Code without the opinion of counsel satisfactory to the Trustee as described above shall be void and of no effect.

Each Holder of this Class A-R Certificate will be deemed to have agreed to be bound by the restrictions of the Agreement, including but not limited to the restrictions that (i) each person holding or acquiring any Ownership Interest in this Class A-R Certificate must be a Permitted Transferee, (ii) no Ownership Interest in this Class A-R Certificate may be transferred without

C-1-3

<PAGE>

delivery to the Trustee of (a) a transfer affidavit of the proposed transferee and (b) a transfer certificate of the transferor, each of such documents to be in the form described in the Agreement, (iii) each person holding or acquiring any Ownership Interest in this Class A-R Certificate must agree to require a transfer affidavit and to deliver a transfer certificate to the Trustee as required pursuant to the Agreement, (iv) each person holding or acquiring an Ownership Interest in this Class A-R Certificate must agree not to transfer an Ownership Interest in this Class A-R Certificate if it has actual knowledge that the proposed transferee is not a Permitted Transferee and (v) any attempted or purported transfer of any Ownership Interest in this Class A-R Certificate in violation of such restrictions will be absolutely null and void and will vest no rights in the purported transferee.

Reference is hereby made to the further provisions of this Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose unless manually countersigned by an authorized signatory of the Trustee.

* * *

C-1-4

<PAGE>

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated:_____, 20__

Page 153

PSA CWHL 06-10.txt

                                    THE BANK OF NEW YORK,
                                    as Trustee

                              By _____

Countersigned:

By _____
        Authorized Signatory of
        THE BANK OF NEW YORK,
        as Trustee

                                C-1-5
<PAGE>

                            EXHIBIT C-2

                            [RESERVED]

                                C-2-1
<PAGE>

                            EXHIBIT C-3

                            [RESERVED]

                                C-3-1
<PAGE>

                            EXHIBIT D

                [FORM OF NOTIONAL AMOUNT CERTIFICATE]

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE
DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT
FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED
IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY
AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO
SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY
TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON
IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST
HEREIN.

THIS CERTIFICATE HAS NO PRINCIPAL BALANCE AND IS NOT ENTITLED TO ANY
DISTRIBUTION IN RESPECT OF PRINCIPAL.

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR
INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE
DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF
1986, AS AMENDED (THE "CODE").

[UNTIL THIS CERTIFICATE HAS BEEN THE SUBJECT OF AN ERISA-QUALIFYING
UNDERWRITING, NEITHER THIS CERTIFICATE NOR ANY INTEREST HEREIN MAY BE
TRANSFERRED UNLESS THE TRANSFEREE DELIVERS TO THE TRUSTEE EITHER (A) A
REPRESENTATION LETTER TO THE EFFECT THAT SUCH TRANSFEREE IS NOT, AND IS NOT
INVESTING ASSETS OF, AN EMPLOYEE BENEFIT PLAN SUBJECT TO THE EMPLOYEE RETIREMENT
INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), OR A PLAN OR ARRANGEMENT
SUBJECT TO SECTION 4975 OF THE CODE, OR (B) AN OPINION OF COUNSEL IN ACCORDANCE
WITH THE PROVISIONS OF THE AGREEMENT REFERRED TO HEREIN. SUCH REPRESENTATION
SHALL BE DEEMED TO HAVE BEEN MADE TO THE TRUSTEE BY THE TRANSFEREE'S ACCEPTANCE
OF A CERTIFICATE OF THIS CLASS AND BY A BENEFICIAL OWNER'S ACCEPTANCE OF ITS
INTEREST IN A CERTIFICATE OF THIS CLASS. NOTWITHSTANDING ANYTHING ELSE TO THE
CONTRARY HEREIN, UNTIL THIS CERTIFICATE HAS BEEN THE SUBJECT OF AN

PSA CWHL 06-10.txt
ERISA-QUALIFYING UNDERWRITING, ANY PURPORTED TRANSFER OF THIS CERTIFICATE TO, OR
A PERSON INVESTING ASSETS OF, AN EMPLOYEE BENEFIT PLAN SUBJECT TO ERISA OR A
PLAN OR ARRANGEMENT SUBJECT TO SECTION 4975 OF THE CODE WITHOUT THE OPINION OF
COUNSEL SATISFACTORY TO THE TRUSTEE AS DESCRIBED ABOVE SHALL BE VOID AND OF NO
EFFECT.]

                                    D-1
<PAGE>

<TABLE>
<S>                                 <C>                    <C>
Certificate No.                     :

Cut-off Date                        :

First Distribution Date             :

Initial Notional Amount
of this Certificate
("Denomination")                    :                      $

Initial Notional Amount
of all Certificates
of this Class                       :                      $

CUSIP                               :

Interest Rate                       :                      Interest Only

Maturity Date                       :
</TABLE>

                            CWMBS, INC.
            Mortgage Pass-Through Certificates, Series 200____-____
                            Class [ ]

        evidencing a percentage interest in the distributions allocable to the
        Certificates of the above-referenced Class with respect to a Trust Fund
        consisting primarily of a pool of conventional mortgage loans (the
        "Mortgage Loans") secured by first liens on one- to four-family
        residential properties

                        CWMBS, Inc., as Depositor

        The Notional Amount of this certificate at any time, may be less than the
Notional Amount as set forth herein. This Certificate does not evidence an
obligation of, or an interest in, and is not guaranteed by the Depositor, the
Sellers, the Master Servicer or the Trustee referred to below or any of their
respective affiliates. Neither this Certificate nor the Mortgage Loans are
guaranteed or insured by any governmental agency or instrumentality.

        This certifies that _____ is the registered owner of the Percentage
Interest evidenced by this Certificate (obtained by dividing the denomination of
this Certificate by the aggregate Initial Notional Amount of all Certificates of
the Class to which this Certificate belongs) in certain monthly distributions
with respect to a Trust Fund consisting primarily of the Mortgage Loans
deposited by CWMBS, Inc. (the "Depositor"). The Trust Fund was created

                                    D-2
<PAGE>

pursuant to a Pooling and Servicing Agreement dated as of the Cut-off Date
specified above (the "Agreement") among the Depositor, Countrywide Home Loans,
                            Page 155

PSA CWHL 06-10.txt

Inc., as a seller ("CHL"), Park Granada LLC, as a seller ("Park Granada"), Park Monaco Inc., as a seller ("Park Monaco"), and Park Sienna LLC, as a seller ("Park Sienna" and, together with CHL, Park Granada and Park Monaco, the "Sellers"), Countrywide Home Loans Servicing LP, as master servicer (the "Master Servicer"), and The Bank of New York, as trustee (the "Trustee"). To the extent not defined herein, the capitalized terms used herein have the meanings assigned in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of the acceptance hereof assents and by which such Holder is bound.

[Until this certificate has been the subject of an ERISA-Qualifying Underwriting, no transfer of a Certificate of this Class shall be made unless the Trustee shall have received either (i) a representation letter from the transferee of such Certificate, acceptable to and in form and substance satisfactory to the Trustee, to the effect that such transferee is not an employee benefit plan subject to Section 406 of ERISA or a plan or arrangement subject to Section 4975 of the Code, or a person acting on behalf of or investing plan assets of any such benefit plan or arrangement, which representation letter shall not be an expense of the Trustee, the Master Servicer or the Trust Fund, or (ii) in the case of any such Certificate presented for registration in the name of an employee benefit plan subject to ERISA or a plan or arrangement subject to Section 4975 of the Code (or comparable provisions of any subsequent enactments), a trustee of any such benefit plan or arrangement or any other person acting on behalf of any such benefit plan or arrangement, an Opinion of Counsel satisfactory to the Trustee to the effect that the purchase and holding of such Certificate will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, and will not subject the Trustee or the Master Servicer to any obligation in addition to those undertaken in the Agreement, which Opinion of Counsel shall not be an expense of the Trustee, the Master Servicer or the Trust Fund. When the transferee delivers the Opinion of Counsel described above, such representation shall be deemed to have been made to the Trustee by the Transferee's acceptance of a Certificate of this Class and by a beneficial owner's acceptance of its interest in a Certificate of this Class. Notwithstanding anything else to the contrary herein, until such certificate has been the subject of an ERISA-Qualifying Underwriting, any purported transfer of a Certificate of this Class to, or a person investing assets of, an employee benefit plan subject to ERISA or a plan or arrangement subject to Section 4975 of the Code without the opinion of counsel satisfactory to the Trustee as described above shall be void and of no effect.]

Reference is hereby made to the further provisions of this Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose unless manually countersigned by an authorized signatory of the Trustee.

* * *

D-3

<PAGE>

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed.

Dated:_____, 20__

                                        THE BANK OF NEW YORK,
                                        as Trustee

PSA CWHL 06-10.txt

By_____

Countersigned:

By_____
        Authorized Signatory of
        THE BANK OF NEW YORK,
        as Trustee

                                D-4

<PAGE>

                        EXHIBIT E

            [FORM OF] REVERSE OF CERTIFICATES

                        CWMBS, INC.
            Mortgage Pass-Through Certificates

        This Certificate is one of a duly authorized issue of Certificates
designated as CWMBS, Inc. Mortgage Pass-Through Certificates, of the Series
specified on the face hereof (herein collectively called the "Certificates"),
and representing a beneficial ownership interest in the Trust Fund created by
the Agreement.

        The Certificateholder, by its acceptance of this Certificate, agrees that
it will look solely to the funds on deposit in the Distribution Account for
payment hereunder and that the Trustee is not liable to the Certificateholders
for any amount payable under this Certificate or the Agreement or, except as
expressly provided in the Agreement, subject to any liability under the
Agreement.

        This Certificate does not purport to summarize the Agreement and reference
is made to the Agreement for the interests, rights and limitations of rights,
benefits, obligations and duties evidenced thereby, and the rights, duties and
immunities of the Trustee.

        Pursuant to the terms of the Agreement, a distribution will be made on the
25th day of each month or, if such day is not a Business Day, the Business Day
immediately following (the "Distribution Date"), commencing on the first
Distribution Date specified on the face hereof, to the Person in whose name this
Certificate is registered at the close of business on the applicable Record Date
in an amount equal to the product of the Percentage Interest evidenced by this
Certificate and the amount required to be distributed to Holders of Certificates
of the Class to which this Certificate belongs on such Distribution Date
pursuant to the Agreement. The Record Date applicable to each Distribution Date
is the last Business Day of the month next preceding the month of such
Distribution Date.

        Distributions on this Certificate shall be made by wire transfer of
immediately available funds to the account of the Holder hereof at a bank or
other entity having appropriate facilities therefor, if such Certificateholder
shall have so notified the Trustee in writing at least five Business Days prior
to the related Record Date and such Certificateholder shall satisfy the
conditions to receive such form of payment set forth in the Agreement, or, if
not, by check mailed by first class mail to the address of such
Certificateholder appearing in the Certificate Register. The final distribution
on each Certificate will be made in like manner, but only upon presentment and
surrender of such Certificate at the Corporate Trust Office or such other
location specified in the notice to Certificateholders of such final
distribution.

                        Page 157

PSA CWHL 06-10.txt

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Trustee and the rights of the Certificateholders under the Agreement at any time by the Depositor, the Master Servicer and the

E-1

<PAGE>

Trustee with the consent of the Holders of Certificates affected by such amendment evidencing the requisite Percentage Interest, as provided in the Agreement. Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in exchange therefor or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable in the Certificate Register of the Trustee upon surrender of this Certificate for registration of transfer at the Corporate Trust Office or the office or agency maintained by the Trustee in New York, New York, accompanied by a written instrument of transfer in form satisfactory to the Trustee and the Certificate Registrar duly executed by the holder hereof or such holder's attorney duly authorized in writing, and thereupon one or more new Certificates of the same Class in authorized denominations and evidencing the same aggregate Percentage Interest in the Trust Fund will be issued to the designated transferee or transferees.

The Certificates are issuable only as registered Certificates without coupons in denominations specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, Certificates are exchangeable for new Certificates of the same Class in authorized denominations and evidencing the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No service charge will be made for any such registration of transfer or exchange, but the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

The Depositor, the Master Servicer, the Sellers and the Trustee and any agent of the Depositor or the Trustee may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and neither the Depositor, the Trustee, nor any such agent shall be affected by any notice to the contrary.

On any Distribution Date on which the Pool Stated Principal Balance is less than or equal to 10% of the Cut-off Date Pool Principal Balance, the Master Servicer will have the option, subject to the limitations set forth in the Agreement, to repurchase, in whole, from the Trust Fund all remaining Mortgage Loans and all property acquired in respect of the Mortgage Loans at a purchase price determined as provided in the Agreement. In the event that no such optional termination occurs, the obligations and responsibilities created by the Agreement will terminate upon the later of the maturity or other liquidation (or any advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund or the disposition of all property in respect thereof and the distribution to Certificateholders of all amounts required to be distributed pursuant to the Agreement. In no event, however, will the trust created by the Agreement continue beyond the

E-2

<PAGE>

Page 158

PSA CWHL 06-10.txt
expiration of 21 years from the death of the last survivor of the descendants
living at the date of the Agreement of a certain person named in the Agreement.

        Any term used herein that is defined in the Agreement shall have the
meaning assigned in the Agreement, and nothing herein shall be deemed
inconsistent with that meaning.

                                E-3
<PAGE>

                            ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s)
unto _____
_____
_____
(Please print or typewrite name and address including postal zip code of
assignee)

the Percentage Interest evidenced by the within Certificate and hereby
authorizes the transfer of registration of such Percentage Interest to assignee
on the Certificate Register of the Trust Fund.

        I (We) further direct the Trustee to issue a new Certificate of a like
denomination and Class, to the above named assignee and deliver such Certificate
to the following address:

                    _____

Dated:

                    _____
                    Signature by or on behalf of assignor

                    DISTRIBUTION INSTRUCTIONS

        The assignee should include the following for purposes of distribution:

        Distributions shall be made, by wire transfer or otherwise, in immediately
available funds to, _____
_____
_____,
for the account of _____,
account number _____, or, if mailed by check, to _____.
Applicable statements should be mailed to _____,
_____
_____.

        This information is provided by _____
the assignee named above, or _____
as its agent.

                                E-4
<PAGE>

STATE OF            )
                    )  Section:
COUNTY OF           )

        On the _____day of _____, 20___ before me, a notary public
in and for said State, personally appeared_____,
known to me who, being by me duly sworn, did depose and say that he executed the
foregoing instrument.
                        Page 159

PSA CWHL 06-10.txt

_____
                            Notary Public

[Notarial Seal]

E-5

<PAGE>

EXHIBIT F-1

[FORM OF] INITIAL CERTIFICATION OF TRUSTEE
(INITIAL MORTGAGE LOANS)

[date]

[Depositor]

[Master Servicer]

[Countrywide]

_____
_____

Re:   Pooling and Servicing  Agreement  among CWMBS,  Inc., as
      Depositor, Countrywide Home Loans, Inc. ("Countrywide"),
      as a Seller,  Park Granada LLC, as a Seller, Park Monaco
      Inc.,  as a  Seller,  Park  Sienna  LLC,  as a  Seller,
      Countrywide Home Loans Servicing LP, as Master Servicer,
      and  The  Bank  of  New  York,  as  Trustee,   Mortgage
      Pass-Through Certificates, Series 200 -

Gentlemen:

      In accordance with Section 2.02 of the above-captioned Pooling and
Servicing Agreement (the "Pooling and Servicing Agreement"), the undersigned, as
Trustee, hereby certifies that, as to each Initial Mortgage Loan listed in the
Mortgage Loan Schedule (other than any Initial Mortgage Loan paid in full or
listed on the attached schedule) it has received:

      (i) (a) the original Mortgage Note endorsed in the following form: "Pay to
the order of _____, without recourse" or (b) with respect to any Lost
Mortgage Note, a lost note affidavit from Countrywide stating that the original
Mortgage Note was lost or destroyed; and

      (ii) a duly executed assignment of the Mortgage (which may be included in
a blanket assignment or assignments).

      Based on its review and examination and only as to the foregoing
documents, such documents appear regular on their face and related to such
Mortgage Loan.

      The Trustee has made no independent examination of any documents contained
in each Mortgage File beyond the review specifically required in the Pooling and
Servicing Agreement.

F-1-1

<PAGE>

The Trustee makes no representations as to: (i) the validity, legality,
sufficiency, enforceability or genuineness of any of the documents contained in
each Mortgage File of any of the Initial Mortgage Loans identified on the

PSA CWHL 06-10.txt
Mortgage Loan Schedule, or (ii) the collectability, insurability, effectiveness
or suitability of any such Initial Mortgage Loan.

                            F-1-2

<PAGE>

     Capitalized words and phrases used herein shall have the respective
meanings assigned to them in the Pooling and Servicing Agreement.

                        THE BANK OF NEW YORK,
                          as Trustee

                        By:
                            ------------------------------
                        Name:
                        Title:

                            F-1-3

<PAGE>

                        EXHIBIT F-2

                [FORM OF] INITIAL CERTIFICATION OF TRUSTEE
                      (SUPPLEMENTAL MORTGAGE LOANS)

                            [date]


[Depositor]

[Master Servicer]

[Countrywide]

_____
_____

            Re:   Pooling and Servicing  Agreement  among CWMBS,  Inc., as
                  Depositor,  Countrywide  Home Loans,  Inc., as a Seller,
                  Park  Granada LLC, as a Seller,  Park Monaco Inc.,  as a
                  Seller,  Park Sienna LLC, as a Seller,  Countrywide Home
                  Loans Servicing LP, as Master Servicer,  and The Bank of
                  New  York,   as  Trustee,   Mortgage   Pass-Through
                  Certificates,   Series  20__-__  and  the   Supplemental
                  Transfer  Agreement dated as of [month] _____, 200_ among
                  CWMBS,  Inc., as Depositor, Countrywide Home Loans, Inc.,
                  as a Seller,  Park Granada LLC, as a Seller, Park Monaco
                  Inc., as a Seller, Park Sienna LLC, as a Seller, and The
                  Bank of New York, as Trustee

Gentlemen:

     In accordance with Section 2.02 of the above-captioned Pooling and
Servicing Agreement (the "Pooling and Servicing Agreement") and the Supplemental
Transfer Agreement, dated as of [month] _____, 200_, the undersigned, as
Trustee, hereby certifies that, as to each Supplemental Mortgage Loan listed in
the Mortgage Loan Schedule (other than any Supplemental Mortgage Loan paid in
full or listed on the attached schedule) it has received:

     (i) (a) the original Mortgage Note endorsed in the following form: "Pay to
the order of _____, without recourse" or (b) with respect to any Lost
Mortgage Note, a lost note affidavit from the Seller stating that the original
Mortgage Note was lost or destroyed; and

                        Page 161

PSA CWHL 06-10.txt
    (ii) a duly executed assignment of the Mortgage (which may be included in
a blanket assignment or assignments).

                              F-2-1

<PAGE>

    Based on its review and examination and only as to the foregoing
documents, such documents appear regular on their face and related to such
Mortgage Loan.

    The Trustee has made no independent examination of any documents contained
in each Mortgage File beyond the review specifically required in the Pooling and
Servicing Agreement. The Trustee makes no representations as to: (i) the
validity, legality, sufficiency, enforceability or genuineness of any of the
documents contained in each Mortgage File of any of the Supplemental Mortgage
Loans identified on the Mortgage Loan Schedule, or (ii) the collectability,
insurability, effectiveness or suitability of any such Supplemental Mortgage
Loan.

                              F-2-2

<PAGE>

    Capitalized words and phrases used herein shall have the respective
meanings assigned to them in the Pooling and Servicing Agreement.

                         THE BANK OF NEW YORK,
                           as Trustee

                         By:
                            --------------------------------
                         Name:
                         Title:

                              F-2-3

<PAGE>

                         EXHIBIT G-1

                [FORM OF] DELAY DELIVERY CERTIFICATION
                      (INITIAL MORTGAGE LOANS)

                            [date]


[Depositor]

[Master Servicer]

[Countrywide]
_____
_____

              Re:   Pooling and Servicing  Agreement  among CWMBS,  Inc., as
                    Depositor, Countrywide Home Loans, Inc. ("Countrywide"),
                    as a Seller,  Park Granada LLC, as a Seller,  Park Monaco
                    Inc.,  as a  Seller,  Park Sienna LLC,  as  a  Seller,
                    Countrywide Home Loans Servicing LP, as Master Servicer,
                    and  The  Bank  of New  York,  as  Trustee,   Mortgage
                    Pass-Through - Certificates, Series 200 -

Gentlemen:

    Reference is made to the Initial Certification of Trustee relating to the
above-referenced series, with the schedule of exceptions attached thereto (the
                            Page 162

PSA CWHL 06-10.txt
"Schedule A"), delivered by the undersigned, as Trustee, on the Closing Date in accordance with Section 2.02 of the above-captioned Pooling and Servicing Agreement (the "Pooling and Servicing Agreement"). The undersigned hereby certifies that, as to each Delay Delivery Initial Mortgage Loan listed on Schedule A attached hereto (other than any Initial Mortgage Loan paid in full or listed on Schedule B attached hereto) it has received:

(i)     the original Mortgage Note, endorsed by Countrywide or the originator of such Mortgage Loan, without recourse in the following form: "Pay to the order of _____ without recourse", with all intervening endorsements that show a complete chain of endorsement from the originator to Countrywide, or, if the original Mortgage Note has been lost or destroyed and not replaced, an original lost note affidavit from Countrywide, stating that the original Mortgage Note was lost or destroyed, together with a copy of the related Mortgage Note;

(ii)    in the case of each Initial Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage, [and in the case of each Initial Mortgage Loan that is a MERS Mortgage Loan, the original Mortgage, noting thereon the presence of

G-1-1

<PAGE>

the MIN of the Initial Mortgage Loan and language indicating that the Initial Mortgage Loan is a MOM Loan if the Initial Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded];

(iii)   in the case of each Initial Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage to "The Bank of New York, as trustee under the Pooling and Servicing Agreement dated as of [month] 1, 2004, without recourse", or, in the case of each Initial Mortgage Loan with respect to property located in the State of California that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage in blank (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which such assignment relates);

(iv)    the original recorded assignment or assignments of the Mortgage together with all interim recorded assignments of such Mortgage [(noting the presence of a MIN in the case of each MERS Mortgage Loan)];

(v)     the original or copies of each assumption, modification, written assurance or substitution agreement, if any, with evidence of recording thereon if recordation thereof is permissible under applicable law; and

(vi)    the original or duplicate original lender's title policy or a printout of the electronic equivalent and all riders thereto or, in the event such original title policy has not been received from the insurer, any one of an original title binder, an original preliminary title report or an original title commitment, or a copy thereof certified by the title company, with the original policy of title insurance to be delivered within one year of the Closing Date.

     In the event that in connection with any Mortgage Loan that is not a MERS Mortgage Loan Countrywide cannot deliver the original recorded Mortgage or all interim recorded assignments of the Mortgage satisfying the requirements of

PSA CWHL 06-10.txt

clause (ii), (iii) or (iv), as applicable, the Trustee has received, in lieu
thereof, a true and complete copy of such Mortgage and/or such assignment or
assignments of the Mortgage, as applicable, each certified by Countrywide, the
applicable title company, escrow agent or attorney, or the originator of such
Initial Mortgage Loan, as the case may be, to be a true and complete copy of the
original Mortgage or assignment of Mortgage submitted for recording.

Based on its review and examination and only as to the foregoing
documents, (i) such documents appear regular on their face and related to such
Initial Mortgage Loan, and (ii) the information set forth in items (i), (iv),
(v), (vi), (viii), (xi) and (xiv) of the definition of the "Mortgage Loan
Schedule" in Article I of the Pooling and Servicing Agreement accurately
reflects information set forth in the Mortgage File.

The Trustee has made no independent examination of any documents contained
in each Mortgage File beyond the review specifically required in the
above-referenced Pooling and

G-1-2

<PAGE>

Servicing Agreement. The Trustee makes no representations as to: (i) the
validity, legality, sufficiency, enforceability or genuineness of any of the
documents contained in each Mortgage File of any of the Initial Mortgage Loans
identified on the [Mortgage Loan Schedule][Loan Number and Borrower
Identification Mortgage Loan Schedule] or (ii) the collectibility, insurability,
effectiveness or suitability of any such Mortgage Loan.

G-1-3

<PAGE>

Capitalized words and phrases used herein shall have the respective
meanings assigned to them in the Pooling and Servicing Agreement.

THE BANK OF NEW YORK,
  as Trustee

By:
    ----------------------------------
    Name:
    Title:

G-1-4

<PAGE>

EXHIBIT G-2

[FORM OF] DELAY DELIVERY CERTIFICATION
(SUPPLEMENTAL MORTGAGE LOANS)

[date]

[Depositor]

[Master Servicer]

[Countrywide]

Re:   Pooling and Servicing  Agreement  among CWMBS,  Inc., as
      Depositor, Countrywide Home Loans,  Inc., as a Seller,
      Park Granada LLC, as a Seller,  Park Monaco Inc.,  as a
      Seller,  Park Sienna LLC, as a Seller, Countrywide Home
      Loans Servicing LP, as Master Servicer,  and The Bank of

Page 164

PSA CWHL 06-10.txt

                    New   York,   as   Trustee,   Mortgage   Pass-Through
                    Certificates,   Series   20__-__   and   the   Supplemental
                    Transfer   Agreement dated as of [month] ____, 200_ among
                    CWMBS, Inc., as Depositor, Countrywide Home Loans, Inc.,
                    as a Seller,  Park Granada LLC, as a Seller, Park Monaco
                    Inc., as a Seller, Park Sienna LLC, as a Seller, and The
                    Bank of New York, as Trustee

Gentlemen:

        Reference is made to the Initial Certification of Trustee relating to the
above-referenced series, with the schedule of exceptions attached thereto (the
"Schedule A"), delivered by the undersigned, as Trustee, on [month] __, 200_
(such date being the related "Supplemental Transfer Date" in accordance with
Section 2.02 of the above-captioned Pooling and Servicing Agreement (the
"Pooling and Servicing Agreement"). The undersigned hereby certifies that, as to
each Delay Delivery Supplemental Mortgage Loan listed on Schedule A attached
hereto (other than any Supplemental Mortgage Loan paid in full or listed on
Schedule B attached hereto) it has received:

        (i)     the original Mortgage Note, endorsed by the Seller or the originator
                of such Mortgage Loan, without recourse in the following form: "Pay
                to the order of _____ without recourse", with all
                intervening endorsements that show a complete chain of endorsement
                from the originator to the Seller, or, if the

                                    G-2-1

<PAGE>

                original Mortgage Note has been lost or destroyed and not replaced,
                an original lost note affidavit from the Seller, stating that the
                original Mortgage Note was lost or destroyed, together with a copy
                of the related Mortgage Note;

        (ii)    in the case of each Supplemental Mortgage Loan that is not a MERS
                Mortgage Loan, the original recorded Mortgage, [and in the case of
                each Supplemental Mortgage Loan that is a MERS Mortgage Loan, the
                original Mortgage, noting thereon the presence of the MIN of the
                Supplemental Mortgage Loan and language indicating that the
                Supplemental Mortgage Loan is a MOM Loan if the Supplemental
                Mortgage Loan is a MOM Loan, with evidence of recording indicated
                thereon, or a copy of the Mortgage certified by the public recording
                office in which such Mortgage has been recorded];

        (iii)   in the case of each Supplemental Mortgage Loan that is not a MERS
                Mortgage Loan, a duly executed assignment of the Mortgage to "The
                Bank of New York, as trustee under the Pooling and Servicing
                Agreement dated as of [month] 1, 2004, without recourse", or, in the
                case of each Supplemental Mortgage Loan with respect to property
                located in the State of California that is not a MERS Mortgage Loan,
                a duly executed assignment of the Mortgage in blank (each such
                assignment, when duly and validly completed, to be in recordable
                form and sufficient to effect the assignment of and transfer to the
                assignee thereof, under the Mortgage to which such assignment
                relates);

        (iv)    the original recorded assignment or assignments of the Mortgage
                together with all interim recorded assignments of such Mortgage
                [(noting the presence of a MIN in the case of each MERS Mortgage
                Loan)];

        (v)     the original or copies of each assumption, modification, written
                assurance or substitution agreement, if any, with evidence of

PSA CWHL 06-10.txt
recording thereon if recordation thereof is permissible under
applicable law; and

(vi)   the original or duplicate original lender's title policy or a
       printout of the electronic equivalent and all riders thereto or, in
       the event such original title policy has not been received from the
       insurer, any one of an original title binder, an original
       preliminary title report or an original title commitment, or a copy
       thereof certified by the title company, with the original policy of
       title insurance to be delivered within one year of the Closing Date.

     In the event that in connection with any Mortgage Loan that is not a MERS
Mortgage Loan the Seller cannot deliver the original recorded Mortgage or all
interim recorded assignments of the Mortgage satisfying the requirements of
clause (ii), (iii) or (iv), as applicable, the Trustee has received, in lieu
thereof, a true and complete copy of such Mortgage and/or such assignment or
assignments of the Mortgage, as applicable, each certified by the Seller, the
applicable title company, escrow agent or attorney, or the originator of such
Supplemental

                                   G-2-2

<PAGE>

Mortgage Loan, as the case may be, to be a true and complete copy of the
original Mortgage or assignment of Mortgage submitted for recording.

     Based on its review and examination and only as to the foregoing
documents, (i) such documents appear regular on their face and related to such
Supplemental Mortgage Loan, and (ii) the information set forth in items (i),
(iv), (v), (vi), (viii), (xi) and (xiv) of the definition of the "Mortgage Loan
Schedule" in Section 1.01 of the Pooling and Servicing Agreement accurately
reflects information set forth in the Mortgage File.

     The Trustee has made no independent examination of any documents contained
in each Mortgage File beyond the review specifically required in the
above-referenced Pooling and Servicing Agreement. The Trustee makes no
representations as to: (i) the validity, legality, sufficiency, enforceability
or genuineness of any of the documents contained in each Mortgage File of any of
the Supplemental Mortgage Loans identified on the [Mortgage Loan Schedule][Loan
Number and Borrower Identification Mortgage Loan Schedule] or (ii) the
collectibility, insurability, effectiveness or suitability of any such Mortgage
Loan.

                                   G-2-3

<PAGE>

     Capitalized words and phrases used herein shall have the respective
meanings assigned to them in the Pooling and Servicing Agreement.

                              THE BANK OF NEW YORK,
                                as Trustee

                              By:
                                 --------------------------------
                              Name:
                              Title:

                                   G-2-4

<PAGE>

                              EXHIBIT H-1

                    [FORM OF] FINAL CERTIFICATION OF TRUSTEE
                                  Page 166

```
                          PSA CWHL 06-10.txt
                        (INITIAL MORTGAGE LOANS)
                              [date]
```

[Depositor]

[Master Servicer]

[Countrywide]

-----------------------

-----------------------

Re:   Pooling and Servicing Agreement among CWMBS, Inc., as
      Depositor, Countrywide Home Loans, Inc. ("Countrywide"),
      as a Seller, Park Granada LLC, as a Seller, Park Monaco
      Inc., as a Seller, Park Sienna LLC, as a Seller,
      Countrywide Home Loans Servicing LP, as Master Servicer,
      and The Bank of New York, as Trustee, Mortgage
      Pass-Through Certificates, Series 200 -

Gentlemen:

In accordance with Section 2.02 of the above-captioned Pooling and
Servicing Agreement (the "Pooling and Servicing Agreement"), the undersigned, as
Trustee, hereby certifies that as to each Initial Mortgage Loan listed in the
Mortgage Loan Schedule (other than any Initial Mortgage Loan paid in full or
listed on the attached Document Exception Report) it has received:

(i)   the original Mortgage Note, endorsed by Countrywide or the
      originator of such Mortgage Loan, without recourse in the following
      form: "Pay to the order of _____ without recourse", with
      all intervening endorsements that show a complete chain of
      endorsement from the originator to Countrywide, or, if the original
      Mortgage Note has been lost or destroyed and not replaced, an
      original lost note affidavit from Countrywide, stating that the
      original Mortgage Note was lost or destroyed, together with a copy
      of the related Mortgage Note;

(ii)  in the case of each Initial Mortgage Loan that is not a MERS
      Mortgage Loan, the original recorded Mortgage, [and in the case of
      each Initial Mortgage Loan that is

                              H-1-1

<PAGE>

      a MERS Mortgage Loan, the original Mortgage, noting thereon the
      presence of the MIN of the Mortgage Loan and language indicating
      that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM
      Loan, with evidence of recording indicated thereon, or a copy of the
      Mortgage certified by the public recording office in which such
      Mortgage has been recorded];

(iii) in the case of each Initial Mortgage Loan that is not a MERS
      Mortgage Loan, a duly executed assignment of the Mortgage to "The
      Bank of New York, as trustee under the Pooling and Servicing
      Agreement dated as of [month] 1, 2004, without recourse", or, in the
      case of each Initial Mortgage Loan with respect to property located
      in the State of California that is not a MERS Mortgage Loan, a duly
      executed assignment of the Mortgage in blank (each such assignment,
      when duly and validly completed, to be in recordable form and
      sufficient to effect the assignment of and transfer to the assignee
```

PSA CWHL 06-10.txt
thereof, under the Mortgage to which such assignment relates);

(iv)   the original recorded assignment or assignments of the Mortgage
        together with all interim recorded assignments of such Mortgage
        [(noting the presence of a MIN in the case of each Initial Mortgage
        Loan that is a MERS Mortgage Loan)];

(v)    the original or copies of each assumption, modification, written
        assurance or substitution agreement, if any, with evidence of
        recording thereon if recordation thereof is permissible under
        applicable law; and

(vi)   the original or duplicate original lender's title policy or a
        printout of the electronic equivalent and all riders thereto or, in
        the event such original title policy has not been received from the
        insurer, any one of an original title binder, an original
        preliminary title report or an original title commitment, or a copy
        thereof certified by the title company, with the original policy of
        title insurance to be delivered within one year of the Closing Date.

    In the event that in connection with any Initial Mortgage Loan that is not
a MERS Mortgage Loan Countrywide cannot deliver the original recorded Mortgage
or all interim recorded assignments of the Mortgage satisfying the requirements
of clause (ii), (iii) or (iv), as applicable, the Trustee has received, in lieu
thereof, a true and complete copy of such Mortgage and/or such assignment or
assignments of the Mortgage, as applicable, each certified by Countrywide, the
applicable title company, escrow agent or attorney, or the originator of such
Initial Mortgage Loan, as the case may be, to be a true and complete copy of the
original Mortgage or assignment of Mortgage submitted for recording.

    Based on its review and examination and only as to the foregoing
documents, (i) such documents appear regular on their face and related to such
Initial Mortgage Loan, and (ii) the information set forth in items (i), (iv),
(v), (vi), (viii), (xi) and (xiv) of the definition of the

                                    H-1-2

<PAGE>

"Mortgage Loan Schedule" in Article I of the Pooling and Servicing Agreement
accurately reflects information set forth in the Mortgage File.

    The Trustee has made no independent examination of any documents contained
in each Mortgage File beyond the review specifically required in the
above-referenced Pooling and Servicing Agreement. The Trustee makes no
representations as to: (i) the validity, legality, sufficiency, enforceability
or genuineness of any of the documents contained in each Mortgage File of any of
the Initial Mortgage Loans identified on the [Mortgage Loan Schedule][Loan
Number and Borrower Identification Mortgage Loan Schedule] or (ii) the
collectibility, insurability, effectiveness or suitability of any such Initial
Mortgage Loan.

                                    H-1-3

<PAGE>

    Capitalized words and phrases used herein shall have the respective
meanings assigned to them in the Pooling and Servicing Agreement.

                            THE BANK OF NEW YORK,
                             as Trustee

                            By :
                                -----------------------------------
                            Name:

```
                        PSA CWHL 06-10.txt
                           Title:

                           H-1-4
<PAGE>

                         EXHIBIT H-2

          [FORM OF] FINAL CERTIFICATION OF TRUSTEE
                (SUPPLEMENTAL MORTGAGE LOANS)

                          [date]


[Depositor]

[Master Servicer]

[Countrywide]

----------------------------

----------------------------

                    Re:   Pooling and Servicing Agreement among CWMBS, Inc.,
                          as Depositor, Countrywide Home Loans, Inc., as a
                          Seller, Park Granada LLC, as a Seller, Park Monaco
                          Inc., as a Seller, Park Sienna LLC, as a Seller,
                          Countrywide Home Loans Servicing LP, as Master
                          Servicer, and The Bank of New York, as Trustee,
                          Mortgage Pass-Through Certificates, Series 20__-__
                          and the Supplemental Transfer Agreement dated as
                          of [month] ____, 200_ among CWMBS, Inc., as
                          Depositor, Countrywide Home Loans, Inc., as a
                          Seller, Park Granada LLC, as a Seller, Park Monaco
                          Inc., as a Seller, Park Sienna LLC, as a Seller,
                          and The Bank of New York, as Trustee

                          ------------------------------

Gentlemen:

      In accordance with Section 2.02 of the above-captioned Pooling and
Servicing Agreement (the "Pooling and Servicing Agreement"), the undersigned, as
Trustee, hereby certifies that as to each Supplemental Mortgage Loan listed in
the Mortgage Loan Schedule (other than any Supplemental Mortgage Loan paid in
full or listed on the attached Document Exception Report) it has received:

      (i)   the original Mortgage Note, endorsed by the Seller or the originator
            of such Mortgage Loan, without recourse in the following form: "Pay
            to the order of _____ without recourse", with all
            intervening endorsements that show a complete chain of endorsement
            from the originator to the Seller, or, if the original Mortgage Note
            has been lost or destroyed and not replaced, an original

                           H-2-1
<PAGE>

            lost  note affidavit from the Seller, stating that the original
            Mortgage Note was lost or destroyed, together with a copy of the
            related Mortgage Note;

      (ii)  in the case of each Supplemental Mortgage Loan that is not a MERS
            Mortgage Loan, the original recorded Mortgage, [and in the case of
            each Supplemental Mortgage Loan that is a MERS Mortgage Loan, the
                           Page 169
```

PSA CWHL 06-10.txt

original Mortgage, noting thereon the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded];

(iii)   in the case of each Supplemental Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage to "The Bank of New York, as trustee under the Pooling and Servicing Agreement dated as of [month] 1, 2004, without recourse", or, in the case of each Supplemental Mortgage Loan with respect to property located in the State of California that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage in blank (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which such assignment relates);

(iv)   the original recorded assignment or assignments of the Mortgage together with all interim recorded assignments of such Mortgage [(noting the presence of a MIN in the case of each Supplemental Mortgage Loan that is a MERS Mortgage Loan)];

(v)   the original or copies of each assumption, modification, written assurance or substitution agreement, if any, with evidence of recording thereon if recordation thereof is permissible under applicable law; and

(vi)   the original or duplicate original lender's title policy or a printout of the electronic equivalent and all riders thereto or, in the event such original title policy has not been received from the insurer, any one of an original title binder, an original preliminary title report or an original title commitment, or a copy thereof certified by the title company, with the original policy of title insurance to be delivered within one year of the Closing Date.

In the event that in connection with any Supplemental Mortgage Loan that is not a MERS Mortgage Loan the Seller cannot deliver the original recorded Mortgage or all interim recorded assignments of the Mortgage satisfying the requirements of clause (ii), (iii) or (iv), as applicable, the Trustee has received, in lieu thereof, a true and complete copy of such Mortgage and/or such assignment or assignments of the Mortgage, as applicable, each certified by the Seller, the applicable title company, escrow agent or attorney, or the originator of such Supplemental Mortgage Loan, as the case may be, to be a true and complete copy of the original Mortgage or assignment of Mortgage submitted for recording.

H-2-2

<PAGE>

Based on its review and examination and only as to the foregoing documents, (i) such documents appear regular on their face and related to such Supplemental Mortgage Loan, and (ii) the information set forth in items (i), (iv), (v), (vi), (viii), (xi) and (xiv) of the definition of the "Mortgage Loan Schedule" in Section 1.01 of the Pooling and Servicing Agreement accurately reflects information set forth in the Mortgage File.

The Trustee has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the above-referenced Pooling and Servicing Agreement. The Trustee makes no representations as to: (i) the validity, legality, sufficiency, enforceability or genuineness of any of the documents contained in each Mortgage File of any of

PSA CWHL 06-10.txt
the Supplemental Mortgage Loans identified on the [Mortgage Loan Schedule][Loan Number and Borrower Identification Mortgage Loan Schedule] or (ii) the collectibility, insurability, effectiveness or suitability of any such Supplemental Mortgage Loan.

H-2-3

<PAGE>

      Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

                              THE BANK OF NEW YORK,
                               as Trustee

                              By :    ------------------------------------
                              Name:
                              Title:

                              H-2-4

<PAGE>

                              EXHIBIT I

                        [FORM OF] TRANSFER AFFIDAVIT

                              CWMBS, Inc.
                   Mortgage Pass-Through Certificates
                              Series 200 -

STATE OF            )
                    ) Section:
COUNTY OF           )

      The undersigned, being first duly sworn, deposes and says as follows:

            1. The undersigned is an officer of _____, the proposed Transferee of an Ownership Interest in a Class A-R Certificate  (the "Certificate") issued pursuant to the Pooling and Servicing Agreement, dated as of _____ __, 2___ (the "Agreement"), by and among CWMBS, Inc., as depositor (the "Depositor"), Countrywide Home Loans, Inc. (the "Company"), as a Seller, Park Granada LLC, as a Seller, Park Monaco, Inc., as a Seller, Park Sienna LLC, as a Seller (and together with the Company, Park Granada and Park Monaco, the "Sellers"), Countrywide Home Loans Servicing LP, as Master Servicer and The Bank of New York, as Trustee. Capitalized terms used, but not defined herein or in Exhibit 1 hereto, shall have the meanings ascribed to such terms in the Agreement. The Transferee has authorized the undersigned to make this affidavit on behalf of the Transferee.

            2. The Transferee is not an employee benefit plan that is subject to Title I of ERISA or to section 4975 of the Internal Revenue Code of 1986, nor is it acting on behalf of or with plan assets of any such plan. The Transferee is, as of the date hereof, and will be, as of the date of the Transfer, a Permitted Transferee. The Transferee will endeavor to remain a Permitted Transferee for so long as it retains its Ownership Interest in the Certificate. The Transferee is acquiring its Ownership Interest in the Certificate for its own account.

            3. The Transferee has been advised of, and understands that (i) a tax will be imposed on Transfers of the Certificate to Persons that are not Permitted Transferees; (ii) such tax will be imposed on the transferor, or, if such Transfer is through an agent (which includes a broker, nominee or middleman) for a Person that is not a Permitted Transferee, on the agent; and (iii) the Person otherwise liable for the tax shall be relieved of liability for

PSA CWHL_06-10.txt
the tax if the subsequent Transferee furnished to such Person an affidavit that
such subsequent Transferee is a Permitted Transferee and, at the time of
Transfer, such Person does not have actual knowledge that the affidavit is
false.

        4. The Transferee has been advised of, and understands that a tax
will be imposed on a "pass-through entity" holding the Certificate if at any
time during the taxable year of the pass-through entity a Person that is not a
Permitted Transferee is the record holder of an

                                    I-1

<PAGE>

interest in such entity. The Transferee understands that such tax will not be
imposed for any period with respect to which the record holder furnishes to the
pass-through entity an affidavit that such record holder is a Permitted
Transferee and the pass-through entity does not have actual knowledge that such
affidavit is false. (For this purpose, a "pass-through entity" includes a
regulated investment company, a real estate investment trust or common trust
fund, a partnership, trust or estate, and certain cooperatives and, except as
may be provided in Treasury Regulations, persons holding interests in
pass-through entities as a nominee for another Person.)

        5. The Transferee has reviewed the provisions of Section 5.02(c) of
the Agreement (attached hereto as Exhibit 2 and incorporated herein by
reference) and understands the legal consequences of the acquisition of an
Ownership Interest in the Certificate including, without limitation, the
restrictions on subsequent Transfers and the provisions regarding voiding the
Transfer and mandatory sales. The Transferee expressly agrees to be bound by and
to abide by the provisions of Section 5.02(c) of the Agreement and the
restrictions noted on the face of the Certificate. The Transferee understands
and agrees that any breach of any of the representations included herein shall
render the Transfer to the Transferee contemplated hereby null and void.

        6. The Transferee agrees to require a Transfer Affidavit from any
Person to whom the Transferee attempts to Transfer its Ownership Interest in the
Certificate, and in connection with any Transfer by a Person for whom the
Transferee is acting as nominee, trustee or agent, and the Transferee will not
Transfer its Ownership Interest or cause any Ownership Interest to be
Transferred to any Person that the Transferee knows is not a Permitted
Transferee. In connection with any such Transfer by the Transferee, the
Transferee agrees to deliver to the Trustee a certificate substantially in the
form set forth as Exhibit J-1 to the Agreement (a "Transferor Certificate") to
the effect that such Transferee has no actual knowledge that the Person to which
the Transfer is to be made is not a Permitted Transferee.

        7. The Transferee does not have the intention to impede the
assessment or collection of any tax legally required to be paid with respect to
the Class A-R Certificates.

        8. The Transferee's taxpayer identification number is _____.

        9. The Transferee is a U.S. Person as defined in Code section
7701(a)(30) and, unless the Transferor (or any subsequent transferor) =
expressly waives such requirement, will not cause income from the Certificate to
be attributable to a foreign permanent establishment or fixed base (within the
meaning of an applicable income tax treaty) of the Transferee or another U.S.
taxpayer.

        10. The Transferee is aware that the Class A-R Certificates may be
"noneconomic residual interests" within the meaning of Treasury Regulation
Section 1.860E-1(c) and that the transferor of a noneconomic residual interest
will remain liable for any taxes due with respect to the income on such residual

PSA CWHL_06-10.txt

interest, unless no significant purpose of the transfer was to impede the
assessment or collection of tax. In addition, as the Holder of a

                                    I-2

<PAGE>

noneconomic residual interest, the Transferee may incur tax liabilities in
excess of any cash flows generated by the interest and the Transferee hereby
represents that it intends to pay taxes associated with holding the residual
interest as they become due.

        11. The Transferee has provided financial statements or other
financial information requested by the Transferor in connection with the
transfer of the Certificate to permit the Transferor to assess the financial
capability of the Transferee to pay such taxes. The Transferee historically has
paid its debts as they have come due and intends to pay its debts as they come
due in the future.

        12. Unless the Transferor (or any subsequent transferor) expressly
waives such requirement, the Transferee (and any subsequent transferee)
certifies (or will certify), respectively, that the transfer satisfies either
the "Asset Test" imposed by Treasury Regulation Section 1.860E-1(c)(5) or the
"Formula Test" imposed by Treasury Regulation Section 1.860E-1(c)(7).

                                   * * *

                                    I-3

<PAGE>

        IN WITNESS WHEREOF, the Transferee has caused this instrument to be
executed on its behalf by its duly authorized officer, this_____ day of
_____, 2___.

                            ------------------------------------------
                            PRINT NAME OF TRANSFEREE

                            By: ---------------------------------------
                            Name:
                            Title:

[Corporate Seal]

ATTEST:

-----------------------------
[Assistant] Secretary

        Personally appeared before me the above-named _____, known or proved
to me to be the same person who executed the foregoing instrument and to be the
of the Transferee, and acknowledged that he executed the same as his free act
and deed and the free act and deed of the Transferee.

        Subscribed and sworn before me this_____ day of , 20 __.

                            ------------------------------------------
                            NOTARY PUBLIC

                            My Commission expires the
                            ___ day of _____,20__

                                    I-4

<PAGE>

                              Page 173

PSA CWHL 06-10.txt

WAIVER OF REQUIREMENT THAT TRANSFEREE CERTIFIES TRANSFER OF
CERTIFICATE SATISFIES CERTAIN REGULATORY "SAFE HARBORS"

The Transferor hereby waives the requirement that the Transferee
certify that the transfer of the Certificate satisfies either the "Asset Test"
imposed by Treasury Regulation Section 1.860E-1(c)(5) or the "Formula Test"
imposed by Treasury Regulation Section 1.860E-1(c)(7).

CWMBS, INC.

By:    ------------------------------------
Name:
Title:

I-5

<PAGE>

EXHIBIT 1 to
EXHIBIT I

Certain Definitions

"Asset Test": A transfer satisfies the Asset Test if: (i) At the time
of the transfer, and at the close of each of the transferee's two fiscal years
preceding the transferee's fiscal year of transfer, the transferee's gross
assets for financial reporting purposes exceed $100 million and its net assets
for financial reporting purposes exceed $10 million. The gross assets and net
assets of a transferee do not include any obligation of any "related person" or
any other asset if a principal purpose for holding or acquiring the other asset
is to permit the transferee to satisfy such monetary conditions; (ii) The
transferee must be an "eligible corporation" and must agree in writing that any
subsequent transfer of the interest will be to another eligible corporation in a
transaction that satisfies paragraphs 9 through 11 of this Transfer Affidavit
and the Asset Test. A transfer fails to meet the Asset Test if the transferor
knows, or has reason to know, that the transferee will not honor the
restrictions on subsequent transfers of the Certificate; and (iii) A reasonable
person would not conclude, based on the facts and circumstances known to the
transferor on or before the date of the transfer, that the taxes associated with
the Certificate will not be paid. The consideration given to the transferee to
acquire the Certificate is only one factor to be considered, but the transferor
will be deemed to know that the transferee cannot or will not pay if the amount
of consideration is so low compared to the liabilities assumed that a reasonable
person would conclude that the taxes associated with holding the Certificate
will not be paid. For purposes of applying the Asset Test, (i) an "eligible
corporation" means any domestic C corporation (as defined in section 1361(a)(2)
of the Code) other than (A) a corporation which is exempt from, or is not
subject to, tax under section 11 of the Code, (B) an entity described in section
851(a) or 856(a) of the Code, (C) A REMIC, or (D) an organization to which part
I of subchapter T of chapter 1 of subtitle A of the Code applies; (ii) a
"related person" is any person that (A) bears a relationship to the transferee
enumerated in section 267(b) or 707(b)(1) of the Code, using "20 percent"
instead of "50 percent" where it appears under the provisions, or (B) is under
common control (within the meaning of section 52(a) and (b)) with the
transferee.

"Formula Test": A transfer satisfies the formula test if the present
value of the anticipated tax liabilities associated with holding the Certificate
does not exceed the sum of (i) the present value of any consideration given to
the transferee to acquire the Certificate; (ii) the present value of the
expected future distributions on the Certificate; and (iii) the present value of
the anticipated tax savings associated with holding the Certificate as the

PSA CWHL 06-10.txt
issuing REMIC generates losses. For purposes of applying the Formula Test: (i) The transferee is assumed to pay tax at a rate equal to the highest rate of tax specified in section 11(b)(1) of the Code. If the transferee has been subject to the alternative minimum tax under section 55 of the Code in the preceding two years and will compute its taxable income in the current taxable year using the alternative minimum tax rate, then the tax rate specified in section 55(b)(1)(B) of the Code may be used in lieu of the highest rate specified in section 11(b)(1) of the Code; (ii) The transfer must satisfy paragraph 9 of the Transfer Affidavit; and (iii) Present values are computed using a

I-6

<PAGE>

discount rate equal to the Federal short-term rate prescribed by section 1274(d) of the Code for the month of the transfer and the compounding period used by the taxpayer.

"Ownership Interest": As to any Certificate, any ownership interest in such Certificate, including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial.

"Permitted Transferee": Any person other than (i) the United States, any State or political subdivision thereof, or any agency or instrumentality of any of the foregoing, (ii) a foreign government, International Organization or any agency or instrumentality of either of the foregoing, (iii) an organization (except certain farmers' cooperatives described in section 521 of the Code) that is exempt from tax imposed by Chapter 1 of the Code (including the tax imposed by section 511 of the Code on unrelated business taxable income) on any excess inclusions (as defined in section 860E(c)(1) of the Code) with respect to any Class A-R Certificate, (iv) rural electric and telephone cooperatives described in section 1381(a)(2)(C) of the Code, (v) an "electing large partnership" as defined in section 775 of the Code, (vi) a Person that is not a citizen or resident of the United States, a corporation, partnership, or other entity (treated as a corporation or a partnership for federal income tax purposes) created or organized in or under the laws of the United States, any state thereof or the District of Columbia, or an estate whose income from sources without the United States is includible in gross income for United States federal income tax purposes regardless of its connection with the conduct of a trade or business within the United States, or a trust if a court within the United States is able to exercise primary supervision over the administration of the trust and one or more United States persons have authority to control all substantial decisions of the trustor unless such Person has furnished the transferor and the Trustee with a duly completed Internal Revenue Service Form W-8ECI, and (vii) any other Person so designated by the Trustee based upon an Opinion of Counsel that the Transfer of an Ownership Interest in a Class A-R Certificate to such Person may cause any REMIC formed under the Agreement to fail to qualify as a REMIC at any time that any Certificates are Outstanding. The terms "United States," "State" and "International Organization" shall have the meanings set forth in section 7701 of the Code or successor provisions. A corporation will not be treated as an instrumentality of the United States or of any State or political subdivision thereof for these purposes if all of its activities are subject to tax and, with the exception of the Federal Home Loan Mortgage Corporation, a majority of its board of directors is not selected by such government unit.

"Person": Any individual, corporation, limited liability company, partnership, joint venture, bank, joint stock company, trust (including any beneficiary thereof), unincorporated organization or government or any agency or political subdivision thereof.

"Transfer": Any direct or indirect transfer or sale of any Ownership Interest in a Certificate, including the acquisition of a Certificate by the

PSA CWHL 06-10.txt

Depositor.

        "Transferee": Any Person who is acquiring by Transfer any Ownership
Interest in a Certificate.

                                    I-7

<PAGE>

                                                    EXHIBIT 2 to
                                                    EXHIBIT I

                    Section 5.02(c) of the Agreement

        (c) Each Person who has or who acquires any Ownership Interest in a
Class A-R Certificate shall be deemed by the acceptance or acquisition of such
Ownership Interest to have agreed to be bound by the following provisions, and
the rights of each Person acquiring any Ownership Interest in a Class A-R
Certificate are expressly subject to the following provisions:

        (1) Each Person holding or acquiring any Ownership Interest in a
Class A-R Certificate shall be a Permitted Transferee and shall promptly
notify the Trustee of any change or impending change in its status as a
Permitted Transferee.

        (2) Except in connection with (i) the registration of the Tax
Matters Person Certificate in the name of the Trustee or (ii) any
registration in the name of, or transfer of a Class A-R Certificate to, an
affiliate of the Depositor (either directly or through a nominee) in
connection with the initial issuance of the Certificates, no Ownership
Interest in a Class A-R Certificate may be registered on the Closing Date
or thereafter transferred, and the Trustee shall not register the Transfer
of any Class A-R Certificate unless, the Trustee shall have been furnished
with an affidavit (a "Transfer Affidavit") of the initial owner or the
proposed transferee in the form attached hereto as Exhibit I.

        (3) Each Person holding or acquiring any Ownership Interest in a
Class A-R Certificate shall agree (A) to obtain a Transfer Affidavit from
any other Person to whom such Person attempts to Transfer its Ownership
Interest in a Class A-R Certificate, (B) to obtain a Transfer Affidavit
from any Person for whom such Person is acting as nominee, trustee or
agent in connection with any Transfer of a Class A-R Certificate and (C)
not to Transfer its Ownership Interest in a Class A-R Certificate, or to
cause the Transfer of an Ownership Interest in a Class A-R Certificate to
any other Person, if it has actual knowledge that such Person is not a
Permitted Transferee.

        (4) Any attempted or purported Transfer of any Ownership Interest in
a Class A-R Certificate in violation of the provisions of this Section
5.02(c) shall be absolutely null and void and shall vest no rights in the
purported Transferee. If any purported transferee shall become a Holder of
a Class A-R Certificate in violation of the provisions of this Section
5.02(c), then the last preceding Permitted Transferee shall be restored to
all rights as Holder thereof retroactive to the date of registration of
Transfer of such Class A-R Certificate. The Trustee shall be under no
liability to any Person for any registration of Transfer of a Class A-R
Certificate that is in fact not permitted by Section 5.02(b) and this
Section 5.02(c) or for making any payments due on such Certificate to the
Holder thereof or taking any other action with respect to such Holder
under the provisions of this Agreement so long as the Transfer was
registered after receipt of the related Transfer Affidavit and Transferor
Certificate. The Trustee shall be entitled but not obligated to recover
from any Holder of a Class A-R Certificate that was in fact not a
Permitted

                                Page 176

PSA CWHL 06-10.txt

I-8

<PAGE>

Transferee at the time it became a Holder or, at such subsequent
time as it became other than a Permitted Transferee, all payments made on
such Class A-R Certificate at and after either such time. Any such
payments so recovered by the Trustee shall be paid and delivered by the
Trustee to the last preceding Permitted Transferee of such Certificate.

(5) The Depositor shall use its best efforts to make available, upon
receipt of written request from the Trustee, all information necessary to
compute any tax imposed under section 860E(e) of the Code as a result of a
Transfer of an Ownership Interest in a Class A-R Certificate to any Holder
who is not a Permitted Transferee.

The restrictions on Transfers of a Class A-R Certificate set forth in this
section 5.02(c) shall cease to apply (and the applicable portions of the legend
on a Class A-R Certificate may be deleted) with respect to Transfers occurring
after delivery to the Trustee of an Opinion of Counsel, which Opinion of Counsel
shall not be an expense of the Trustee, the Sellers or the Master Servicer, to
the effect that the elimination of such restrictions will not cause any
constituent REMIC of any REMIC formed hereunder to fail to qualify as a REMIC at
any time that the Certificates are outstanding or result in the imposition of
any tax on the Trust Fund, a Certificateholder or another Person. Each Person
holding or acquiring any Ownership Interest in a Class A-R Certificate hereby
consents to any amendment of this Agreement that, based on an Opinion of Counsel
furnished to the Trustee, is reasonably necessary (a) to ensure that the record
ownership of, or any beneficial interest in, a Class A-R Certificate is not
transferred, directly or indirectly, to a Person that is not a Permitted
Transferee and (b) to provide for a means to compel the Transfer of a Class A-R
Certificate that is held by a Person that is not a Permitted Transferee to a
Holder that is a Permitted Transferee.

I-9

<PAGE>

EXHIBIT J-1

[FORM OF] TRANSFEROR CERTIFICATE
(RESIDUAL)

----------------------
Date

CWMBS, Inc.
4500 Park Granada
Calabasas, California  91302
Attention:  David A. Spector

The Bank of New York
101 Barclay Street - 8W
New York, New York  10286

Attention:  Mortgage-Backed Securities Group
            Series 200_-_
            Re:  CWMBS, Inc. Mortgage Pass-Through Certificates,
            Series 200_-_, Class

Ladies and Gentlemen:

In connection with our disposition of the above Certificates we
certify that to the extent we are disposing of a Class A-R Certificate, we have

PSA CWHL_06-10.txt
no knowledge the Transferee is not a Permitted Transferee.

Very truly yours,

-------------------------------------
Print Name of Transferor

By: -------------------------------------------
                    Authorized Officer

J-1-1

<PAGE>

EXHIBIT J-2

[FORM OF] TRANSFEROR CERTIFICATE
(PRIVATE)

----------------------
Date

CWMBS, Inc.
4500 Park Granada
Calabasas, California  91302
Attention:   David A. Spector

The Bank of New York
101 Barclay Street - 8W
New York, New York  10286

Attention:   Mortgage-Backed Securities Group
             Series 200_-_
             Re:  CWMBS, Inc. Mortgage Pass-Through Certificates,
             Series 200_-_, Class

Ladies and Gentlemen:

        In connection with our disposition of the above Certificates we
certify that (a) we understand that the Certificates have not been registered
under the Securities Act of 1933, as amended (the "Act"), and are being disposed
by us in a transaction that is exempt from the registration requirements of the
Act, (b) we have not offered or sold any Certificates to, or solicited offers to
buy any Certificates from, any person, or otherwise approached or negotiated
with any person with respect thereto, in a manner that would be deemed, or taken
any other action which would result in, a violation of Section 5 of the Act.

Very truly yours,

-----------------------------------------
Print Name of Transferor

By: -------------------------------------------
                    Authorized Officer

J-2-1

<PAGE>

EXHIBIT K

[FORM OF] INVESTMENT LETTER (NON-RULE 144A)

Page 178

PSA CWHL 06-10.txt

_____

Date

CWMBS, Inc.
4500 Park Granada
Calabasas, California  91302
Attention:  David A. Spector

The Bank of New York
101 Barclay Street - 8W
New York, New York  10286

Attention:   Mortgage-Backed Securities Group
              Series 200_-_

         Re:   CWMBS, Inc. Mortgage Pass-Through Certificates,
               Series 200_-_, Class

Ladies and Gentlemen:

        In connection with our acquisition of the above Certificates we
certify that (a) we understand that the Certificates are not being registered
under the Securities Act of 1933, as amended (the "Act"), or any state
securities laws and are being transferred to us in a transaction that is exempt
from the registration requirements of the Act and any such laws, (b) we are an
"accredited investor," as defined in Regulation D under the Act, and have such
knowledge and experience in financial and business matters that we are capable
of evaluating the merits and risks of investments in the Certificates, (c) we
have had the opportunity to ask questions of and receive answers from the
Depositor concerning the purchase of the Certificates and all matters relating
thereto or any additional information deemed necessary to our decision to
purchase the Certificates, (d) either (i) we are not an employee benefit plan
that is subject to the Employee Retirement Income Security Act of 1974, as
amended ("ERISA"), or a plan or arrangement that is subject to Section 4975 of
the Internal Revenue Code of 1986, as amended, nor are we acting on behalf of or
investing the assets of any such benefit plan or arrangement to effect such
acquisition or (ii) if the Certificates have been the subject of an
ERISA-Qualifying Underwriting and we are an insurance company, we are purchasing
such Certificates with funds contained in an "insurance company general account"
(as such term is defined in Section V(e) of Prohibited Transaction Class
Exemption 95-60 ("PTCE 95-60")) and the purchase and holding of such
Certificates satisfy the requirements for exemptive relief under Sections I and
III of PTCE 95-60,

                                    K-1

<PAGE>

(e) we are acquiring the Certificates for investment for our own account and not
with a view to any distribution of such Certificates (but without prejudice to
our right at all times to sell or otherwise dispose of the Certificates in
accordance with clause (g) below), (f) we have not offered or sold any
Certificates to, or solicited offers to buy any Certificates from, any person,
or otherwise approached or negotiated with any person with respect thereto, or
taken any other action which would result in a violation of Section 5 of the
Act, and (g) we will not sell, transfer or otherwise dispose of any Certificates
unless (1) such sale, transfer or other disposition is made pursuant to an
effective registration statement under the Act or is exempt from such
registration requirements, and if requested, we will at our expense provide an
opinion of counsel satisfactory to the addressees of this Certificate that such
sale, transfer or other disposition may be made pursuant to an exemption from
the Act, (2) the purchaser or transferee of such Certificate has executed and
delivered to you a certificate to substantially the same effect as this
certificate, and (3) the purchaser or transferee has otherwise complied with any

```
                            PSA CWHL 06-10.txt
conditions for transfer set forth in the Pooling and Servicing Agreement.

                            Very truly yours,

                            -----------------------------------------
                            Print Name of Transferee

                            By:
                               -------------------------------------------
                            Authorized Officer

                                    K-2
<PAGE>

                            EXHIBIT L

                    [FORM OF] RULE 144A LETTER


                                     _____
                                     Date

CWMBS, Inc.
4500 Park Granada
Calabasas, California  91302
Attention: David A. Spector

The Bank of New York
101 Barclay Street - 8W
New York, New York  10286

Attention:     Mortgage-Backed Securities Group
               Series 200_-_

        Re:    CWMBS, Inc. Mortgage Pass-Through Certificates,
               Series 200_-_, Class

Ladies and Gentlemen:

        In connection with our acquisition of the above Certificates we
certify that (a) we understand that the Certificates are not being registered
under the Securities Act of 1933, as amended (the "Act"), or any state
securities laws and are being transferred to us in a transaction that is exempt
from the registration requirements of the Act and any such laws, (b) we have
such knowledge and experience in financial and business matters that we are
capable of evaluating the merits and risks of investments in the Certificates,
(c) we have had the opportunity to ask questions of and receive answers from the
Depositor concerning the purchase of the Certificates and all matters relating
thereto or any additional information deemed necessary to our decision to
purchase the Certificates, (d) either (i) we are not an employee benefit plan
that is subject to the Employee Retirement Income Security Act of 1974, as
amended ("ERISA"), or a plan or arrangement that is subject to Section 4975 of
the Internal Revenue Code of 1986, as amended, nor are we acting on behalf of or
investing the assets of any such benefit plan or arrangement to effect such
acquisition or (ii) if the Certificates have been the subject of an
ERISA-Qualifying Underwriting and we are an insurance company, we are purchasing
such Certificates with funds contained in an "insurance company general account"
(as such term is defined in Section V(e) of Prohibited Transaction Class
Exemption 95-60 ("PTCE 95-60")) and the purchase and holding of such
Certificates satisfy the requirements for exemptive relief under Sections I and
III of PTCE 95-60, (e) we have not, nor has anyone acting on our behalf offered,
transferred, pledged, sold or

                            L-1
                            Page 180
```

PSA CWHL 06-10.txt

<PAGE>

otherwise disposed of the Certificates, any interest in the Certificates or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Certificates, any interest in the Certificates or any other similar security from, or otherwise approached or negotiated with respect to the Certificates, any interest in the Certificates or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action, that would constitute a distribution of the Certificates under the Securities Act or that would render the disposition of the Certificates a violation of Section 5 of the Securities Act or require registration pursuant thereto, nor will act, nor has authorized or will authorize any person to act, in such manner with respect to the Certificates, (f) we are a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act and have completed either of the forms of certification to that effect attached hereto as Annex 1 or Annex 2. We are aware that the sale to us is being made in reliance on Rule 144A. We are acquiring the Certificates for our own account or for resale pursuant to Rule 144A and further, understand that such Certificates may be resold, pledged or transferred only (i) to a person reasonably believed to be a qualified institutional buyer that purchases for its own account or for the account of a qualified institutional buyer to whom notice is given that the resale, pledge or transfer is being made in reliance on Rule 144A, or (ii) pursuant to another exemption from registration under the Securities Act.

<div style="text-align:right">

Very truly yours,

_____

Print Name of Transferee

By: _____
    Authorized Officer

</div>

L-2

<PAGE>

<div style="text-align:right">ANNEX 1 TO EXHIBIT L</div>

QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

[For Transferees Other Than Registered Investment Companies]

The undersigned (the "Buyer") hereby certifies as follows to the parties listed in the Rule 144A Transferee Certificate to which this certification relates with respect to the Certificates described therein:

1. As indicated below, the undersigned is the President, Chief Financial Officer, Senior Vice President or other executive officer of the Buyer.

2. In connection with purchases by the Buyer, the Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933, as amended ("Rule 144A") because (i) the Buyer owned and/or invested on a discretionary basis either at least $100,000 in securities or, if Buyer is a dealer, Buyer must own and/or invest on a discretionary basis at least $10,000,000 in securities (except for the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A and (ii) the Buyer satisfies the criteria in the category marked below.

- Corporation, etc. The Buyer is a corporation (other than a bank, savings and loan association or similar institution),

PSA_CWHL 06-10.txt

Massachusetts or similar business trust, partnership, or
charitable organization described in Section 501(c)(3) of the
Internal Revenue Code of 1986, as amended.

- Bank. The Buyer (a) is a national bank or banking institution
  organized under the laws of any State, territory or the
  District of Columbia, the business of which is substantially
  confined to banking and is supervised by the State or
  territorial banking commission or similar official or is a
  foreign bank or equivalent institution, and (b) has an audited
  net worth of at least $25,000,000 as demonstrated in its
  latest annual financial statements, a copy of which is
  attached hereto.

- Savings and Loan. The Buyer (a) is a savings and loan
  association, building and loan association, cooperative bank,
  homestead association or similar institution, which is
  supervised and examined by a State or Federal authority having
  supervision over any such institutions or is a foreign savings
  and loan association or equivalent institution and (b) has an
  audited net worth of at least $25,000,000 as demonstrated in
  its latest annual financial statements, a copy of which is
  attached hereto.

L-3

<PAGE>

- Broker-dealer. The Buyer is a dealer registered pursuant to
  Section 15 of the Securities Exchange Act of 1934.

- Insurance Company. The Buyer is an insurance company whose
  primary and predominant business activity is the writing of
  insurance or the reinsuring of risks underwritten by insurance
  companies and which is subject to supervision by the insurance
  commissioner or a similar official or agency of a State,
  territory or the District of Columbia.

- State or Local Plan. The Buyer is a plan established and
  maintained by a State, its political subdivisions, or any
  agency or instrumentality of the State or its political
  subdivisions, for the benefit of its employees.

- ERISA Plan. The Buyer is an employee benefit plan within the
  meaning of Title I of the Employee Retirement Income Security
  Act of 1974.

- Investment Advisor. The Buyer is an investment advisor
  registered under the Investment Advisors Act of 1940.

- Small Business Investment Company. Buyer is a small business
  investment company licensed by the U.S. Small Business
  Administration under Section 301(c) or (d) of the Small
  Business Investment Act of 1958.

- Business Development Company. Buyer is a business development
  company as defined in Section 202(a)(22) of the Investment
  Advisors Act of 1940.

3. The term "securities" as used herein does not include (i)
securities of issuers that are affiliated with the Buyer, (ii) securities that
are part of an unsold allotment to or subscription by the Buyer, if the Buyer is
a dealer, (iii) securities issued or guaranteed by the U.S. or any
instrumentality thereof, (iv) bank deposit notes and certificates of deposit,

Page 182

PSA CWHL 06-10.txt
(v) loan participations, (vi) repurchase agreements, (vii) securities owned but
subject to a repurchase agreement and (viii) currency, interest rate and
commodity swaps.

        4. For purposes of determining the aggregate amount of securities
owned and/or invested on a discretionary basis by the Buyer, the Buyer used the
cost of such securities to the Buyer and did not include any of the securities
referred to in the preceding paragraph, except (i) where the Buyer reports its
securities holdings in its financial statements on the basis of their market
value, and (ii) no current information with respect to the cost of those
securities has been published. If clause (ii) in the preceding sentence applies,
the securities may be valued at market. Further, in determining such aggregate
amount, the Buyer may have included securities owned by subsidiaries of the
Buyer, but only if such subsidiaries are consolidated with the Buyer in its
financial statements prepared in accordance with generally accepted accounting
principles and if the investments of such subsidiaries are managed under the
Buyer's direction. However, such securities were not included if the Buyer is a
majority-owned,

                                    L-4

<PAGE>

consolidated subsidiary of another enterprise and the Buyer is
not itself a reporting company under the Securities Exchange Act of 1934, as
amended.

        5. The Buyer acknowledges that it is familiar with Rule 144A and
understands that the seller to it and other parties related to the Certificates
are relying and will continue to rely on the statements made herein because one
or more sales to the Buyer may be in reliance on Rule 144A.

        6. Until the date of purchase of the Rule 144A Securities, the Buyer
will notify each of the parties to which this certification is made of any
changes in the information and conclusions herein. Until such notice is given,
the Buyer's purchase of the Certificates will constitute a reaffirmation of this
certification as of the date of such purchase. In addition, if the Buyer is a
bank or savings and loan is provided above, the Buyer agrees that it will
furnish to such parties updated annual financial statements promptly after they
become available.


                          _____
                                 Print Name of Buyer

                          By: _____
                          Name:
                          Title:

                          Date: _____

                                    L-5

<PAGE>

                                              ANNEX 2 TO EXHIBIT L

        QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

        [For Transferees That are Registered Investment Companies]

        The undersigned (the "Buyer") hereby certifies as follows to the
parties listed in the Rule 144A Transferee Certificate to which this
certification relates with respect to the Certificates described therein:

            1. As indicated below, the undersigned is the President, Chief

PSA CWHL 06-10.txt

Financial Officer or Senior Vice President of the Buyer or, if the Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933, as amended ("Rule 144A") because Buyer is part of a Family of Investment Companies (as defined below), is such an officer of the Adviser.

2. In connection with purchases by Buyer, the Buyer is a "qualified institutional buyer" as defined in SEC Rule 144A because (i) the Buyer is an investment company registered under the Investment Company Act of 1940, as amended and (ii) as marked below, the Buyer alone, or the Buyer's Family of Investment Companies, owned at least $100,000,000 in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year. For purposes of determining the amount of securities owned by the Buyer or the Buyer's Family of Investment Companies, the cost of such securities was used, except (i) where the Buyer or the Buyer's Family of Investment Companies reports its securities holdings in its financial statements on the basis of their market value, and (ii) no current information with respect to the cost of those securities has been published. If clause (ii) in the preceding sentence applies, the securities may be valued at market.

- The Buyer owned $___ in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

- The Buyer is part of a Family of Investment Companies which owned in the aggregate $___ in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

3. The term "Family of Investment Companies" as used herein means two or more registered investment companies (or series thereof) that have the same investment adviser or investment advisers that are affiliated (by virtue of being majority owned subsidiaries of the same parent or because one investment adviser is a majority owned subsidiary of the other).

L-6

<PAGE>

4. The term "securities" as used herein does not include (i) securities of issuers that are affiliated with the Buyer or are part of the Buyer's Family of Investment Companies, (ii) securities issued or guaranteed by the U.S. or any instrumentality thereof, (iii) bank deposit notes and certificates of deposit, (iv) loan participations, (v) repurchase agreements, (vi) securities owned but subject to a repurchase agreement and (vii) currency, interest rate and commodity swaps.

5. The Buyer is familiar with Rule 144A and understands that the parties listed in the Rule 144A Transferee Certificate to which this certification relates are relying and will continue to rely on the statements made herein because one or more sales to the Buyer will be in reliance on Rule 144A. In addition, the Buyer will only purchase for the Buyer's own account.

6. Until the date of purchase of the Certificates, the undersigned will notify the parties listed in the Rule 144A Transferee Certificate to which this certification relates of any changes in the information and conclusions herein. Until such notice is given, the Buyer's purchase of the Certificates will constitute a reaffirmation of this certification by the undersigned as of the date of such purchase.

PSA CWHL 06-10.txt

```
                    _____
                              Print Name of Buyer or Adviser

                    By: _____

                    Name:
                    Title:

                    IF AN ADVISER:

                    _____
                              Print Name of Buyer
```

                              L-7

&lt;PAGE&gt;

                         EXHIBIT M

                  [FORM OF] REQUEST FOR RELEASE
                         (for Trustee)

CWMBS, Inc.
Mortgage Pass-Through Certificates
Series 200_-_

Loan Information

         Name of Mortgagor:     _____

         Servicer Loan No.:     _____

Trustee

         Name:                  _____

         Address:               _____

                                _____

                                _____

         Trustee

         Mortgage File No.:     _____

     The undersigned Master Servicer hereby acknowledges that it has received
from The Bank of New York, as Trustee for the Holders of Mortgage Pass-Through
Certificates, of the above-referenced Series, the documents referred to below
(the "Documents"). All capitalized terms not otherwise defined in this Request
for Release shall have the meanings given them in the Pooling and Servicing
Agreement (the "Pooling and Servicing Agreement") relating to the
above-referenced Series among the Trustee, Countrywide Home Loans, Inc., as a
Seller, Park Granada LLC, as a Seller, Park Monaco Inc., as a Seller, Park
Sienna LLC, as a Seller, Countrywide Home Loans Servicing LP, as Master Servicer
and CWMBS, Inc., as Depositor.

(  )  Mortgage Note dated _____, 20__, in the original principal sum
      of $_____, made by _____, payable to, or
      endorsed to the order of, the Trustee.

(  )  Mortgage recorded on _____ as instrument no.
      _____ in the County Recorder's Office of the County of

PSA CWHL 06-10.txt

_____, State of _____ in book/reel/docket
_____ of official records at page/image
_____.

M-1

<PAGE>

( )   Deed of Trust recorded on _____ as instrument no. _____ in
      the County Recorder's Office of the County of _____, State of
      _____ in book/reel/docket _____ of official
      records at page/image _____.

( )   Assignment of Mortgage or Deed of Trust to the Trustee, recorded on
      _____ as instrument no. _____ in the County
      Recorder's Office of the County of _____, State of
      _____ in book/reel/docket _____ of official records at
      page/image _____.

( )   Other documents, including any amendments, assignments or other
      assumptions of the Mortgage Note or Mortgage.

      ( ) _____

      ( ) _____

      ( ) _____

      ( ) _____

The undersigned Master Servicer hereby acknowledges and agrees as follows:

      (1) The Master Servicer shall hold and retain possession of the
Documents in trust for the benefit of the Trustee, solely for the purposes
provided in the Agreement.

      (2) The Master Servicer shall not cause or knowingly permit the
Documents to become subject to, or encumbered by, any claim, liens,
security interest, charges, writs of attachment or other impositions nor
shall the Servicer assert or seek to assert any claims or rights of setoff
to or against the Documents or any proceeds thereof.

      (3) The Master Servicer shall return each and every Document
previously requested from the Mortgage File to the Trustee when the need
therefor no longer exists, unless the Mortgage Loan relating to the
Documents has been liquidated and the proceeds thereof have been remitted
to the Certificate Account and except as expressly provided in the
Agreement.

      (4) The Documents and any proceeds thereof, including any proceeds
of proceeds, coming into the possession or control of the Master Servicer
shall at all times be earmarked for the account of the Trustee, and the
Master Servicer shall keep the Documents and any proceeds separate and
distinct from all other property in the Master Servicer's possession,
custody or control.

M-2

<PAGE>

                              COUNTRYWIDE HOME LOANS
                              SERVICING LP

                              By _____

Page 186

```
                          PSA CWHL 06-10.txt
                          Its _____
```

Date:_____, 20__

                                   M-3

<PAGE>

                              EXHIBIT N

                 [FORM OF] REQUEST FOR RELEASE OF DOCUMENTS

To:   The Bank of New York                    Attn:  Mortgage Custody
                                                     Services

      Re:   The Pooling & Servicing Agreement dated [month] 1, 200_, among
            Countrywide Home Loans, Inc., as a Seller, Park Granada LLC, as a
            Seller, Park Monaco Inc., as a Seller, Park Sienna LLC, as a Seller,
            Countrywide Home Loans Servicing LP, as Master Servicer, CWMBS, Inc.
            and The Bank of New York, as Trustee

Ladies and Gentlemen:

      In connection with the administration of the Mortgage Loans held by you as
Trustee for CWMBS, Inc., we request the release of the Mortgage Loan File for
the Mortgage Loan(s) described below, for the reason indicated.

FT Account #:                          Pool #:

Mortgagor's Name, Address and Zip Code:

Mortgage Loan Number:

Reason for Requesting Documents (check one)

      1.    Mortgage Loan paid in full (Countrywide Home Loans, Inc. hereby
            certifies that all amounts have been received).

      2.    Mortgage Loan Liquidated (Countrywide Home Loans, Inc. hereby
            certifies that all proceeds of foreclosure, insurance, or other
            liquidation have been finally received).

      3.    Mortgage Loan in Foreclosure.

      4.    Other (explain):

      If item 1 or 2 above is checked, and if all or part of the Mortgage File
was previously released to us, please release to us our previous receipt on file
with you, as well as any additional documents in your possession relating to the
above-specified Mortgage Loan. If item 3 or 4 is checked, upon return of all of
the above documents to you as Trustee, please acknowledge your receipt by
signing in the space indicated below, and returning this form.

                                   N-1

<PAGE>

COUNTRYWIDE HOME LOANS, INC.
4500 Park Granada
Calabasas, California  91302

By: _____
Name: _____
Title: _____
Date: _____
                              Page 187

PSA CWHL 06-10.txt

TRUSTEE CONSENT TO RELEASE AND
ACKNOWLEDGEMENT OF RECEIPT

By: _____
Name: _____
Title: _____
Date: _____

N-2

<PAGE>

EXHIBIT O

[RESERVED]

O-1

<PAGE>

EXHIBIT P

[FORM OF] SUPPLEMENTAL TRANSFER AGREEMENT

        THIS SUPPLEMENTAL TRANSFER AGREEMENT, dated as of _____, 200_
(this "Supplemental Transfer Agreement"), among CWMBS, INC., a Delaware
corporation, as depositor (the "Depositor"), COUNTRYWIDE HOME LOANS, INC.
("CHL"), a New York corporation, as a seller (a "Seller"), PARK GRANADA LLC
("Park Granada"), a Delaware limited liability company, as a seller (a
"Seller"), PARK MONACO INC. ("Park Monaco"), a Delaware limited liability
corporation, as a seller (a "Seller"), PARK SIENNA LLC ("Park Sienna"), a
Delaware limited liability company, as a seller (a "Seller" and together with
CHL, Park Granada and Park Monaco, the "Sellers") under the Pooling and
Servicing Agreement referred to below, and THE BANK OF NEW YORK, a New York
banking corporation, as trustee (the "Trustee");

        WHEREAS, the Depositor, the Sellers, the Trustee and Countrywide
Home Loans Servicing LP, as Master Servicer, have entered in the Pooling and
Servicing Agreement, dated as of [month] 1, 2003 (the "Pooling and Servicing
Agreement"), in relation to the CHL Mortgage Pass-Through Trust 200_-_, Mortgage
Pass-Through Certificates, Series 200_-_;

        WHEREAS, Section 2.01(e) of the Pooling and Servicing Agreement
provides for the parties hereto to enter into this Supplemental Transfer
Agreement in accordance with the terms and conditions of the Pooling and
Servicing Agreement;

        NOW, THEREFORE, in consideration of the premises and for other good
and valuable consideration the receipt and adequacy of which are hereby
acknowledged the parties hereto agree as follows:

        (a) The "Supplemental Transfer Date" with respect to this Supplemental
Transfer Agreement shall be _____, 200_.

        (b) The "Aggregate Supplemental Purchase Amount" with respect to this
Supplemental Transfer Agreement shall be $_____; provided, however, that such
amount shall not exceed the amount on deposit in the Supplemental Loan Account.

        (c) The "Capitalized Interest Requirement" with respect to this
Supplemental Transfer Agreement shall be $_____; provided, however, that such
amount shall not exceed the amount on deposit in the Capitalized Interest
Account.

        (d) [Reserved]

Page 188

PSA CWHL 06-10.txt

    (e) In case any provision of this Supplemental Transfer Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions or obligations shall not in any way be affected or impaired thereby.

P-1

&lt;PAGE&gt;

    (f) In the event of any conflict between the provisions of this Supplemental Transfer Agreement and the Pooling and Servicing Agreement, the provisions of the Pooling and Servicing Agreement shall prevail.

    (g) This Supplemental Transfer Agreement shall be governed by, and shall be construed and enforced in accordance with the laws of the State of New York.

    (h) The Supplemental Transfer Agreement may be executed in one or more counterparts, each of which so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

P-2

&lt;PAGE&gt;

    IN WITNESS WHEREOF, the parties to this Supplemental Transfer Agreement have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

    CWMBS, INC.,
      as Depositor

    By: _____
       Name:
       Title:

    COUNTRYWIDE HOME LOANS, INC.,
      as Seller

    By: _____
       Name:
       Title:

    PARK GRANADA LLC,
      as a Seller

    By: _____
       Name:
       Title:

    PARK MONACO INC.,
      as a Seller

    By: _____
       Name:
       Title:

P-3

&lt;PAGE&gt;

    PARK SIENNA LLC,
      as a Seller

    By: _____

```
                            PSA CWHL 06-10.txt
                                     Name:
                                     Title:

                              THE BANK OF NEW YORK,
                                not in its individual capacity,
                                but solely as Trustee

                         By:  _____
                                     Name:
                                     Title:
```

Acknowledged and Agreed:

COUNTRYWIDE HOME LOANS SERVICING LP,
  as Master Servicer

By:  COUNTRYWIDE GP, INC.

By:  _____
       Name:
       Title:

                                    P-4
<PAGE>

                                EXHIBIT Q

       STANDARD & POOR'S LEVELS(R) VERSION 5.6c GLOSSARY REVISED, APPENDIX E

APPENDIX E - STANDARD & POOR'S PREDATORY LENDING CATEGORIES

       Standard & Poor's has categorized loans governed by anti-predatory lending
laws in the Jurisdictions listed below into three categories based upon a
combination of factors that include (a) the risk exposure associated with the
assignee liability and (b) the tests and thresholds set forth in those laws.
Note that certain loans classified by the relevant statute as Covered are
included in Standard & Poor's High Cost Loan Category because they included
thresholds and tests that are typical of what is generally considered High Cost
by the industry.

STANDARD & POOR'S HIGH COST LOAN CATEGORIZATION

<TABLE>
<CAPTION>

| CATEGORY UNDER APPLICABLE ANTI-PREDATORY LENDING STATE/JURISDICTION LAW | NAME OF ANTI-PREDATORY LENDING LAW/EFFECTIVE DATE |
| --- | --- |
| <S> <C> | <C> |
| Arkansas High Cost Home Loan | Arkansas Home Loan Protection Act, Ark. Code Ann. Sections 23-53-101 et seq. Effective July 16, 2003 |
| Cleveland Heights, OH Covered Loan | Ordinance No. 72-2003 (PSH), Mun. Code Sections |

Page 190

```
                             PSA CWHL 06-10.txt
                             757.01 et seq.

                             Effective June 2, 2003
Colorado                     Consumer Equity Protection, Colo. Stat.
     Covered Loan
                             Ann. Sections 5-3.5-101 et seq.

                             Effective for covered loans offered or entered
into
                             on or after January 1, 2003.  Other provisions of
                             the Act took effect on June 7, 2002

Connecticut                  Connecticut Abusive Home Loan
     High Cost Home Loan
                             Lending Practices Act, Conn. Gen. Stat
                             Sections 36a-746 et seq.

                             Effective October 1, 2001

District of Columbia         Home Loan Protection Act, D.C. Code
     Covered Loan
                             Sections 26-1151.01 et seq.

                             Effective for loans closed on or after January
28,
                             2003
</TABLE>

                                   Q-1
<PAGE>

STANDARD & POOR'S HIGH COST LOAN CATEGORIZATION

<TABLE>
<CAPTION>

     CATEGORY UNDER

     APPLICABLE ANTI-
                                   NAME OF ANTI-PREDATORY LENDING
     PREDATORY LENDING
          STATE/JURISDICTION          LAW/EFFECTIVE DATE
             LAW
--------------------------------
----------------------------------------------  --------------------
<S>                          <C>
     <C>
Florida                      Fair Lending Act, Fla. Stat. Ann. Sections
     High Cost Home LOAn
                             494.0078 et seq.

                             Effective October 2, 2002

Georgia (Oct. 1, 2002 - Mar. 6,   Georgia Fair Lending Act, Ga. Code
     High Cost Home Loan
2003)                        Ann. Sections 7-6A-1 et seq.

                             Effective October 1, 2002 - March 6, 2003

Georgia as amended (Mar. 7, 2003   Georgia Fair Lending Act, Ga. Code
     High Cost Home Loan
- current)                   Ann. Sections 7-6A-1 et seq.
                                 Page 191
```

PSA CWHL 06-10.txt

| HOEPA Section 32<br>High Cost Loan | Effective for loans closed on or after March 7, 2003 Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1639, 12 C.F.R. Sections 226.32 and 226.34<br><br>Effective October 1, 1995, amendments October 1, 2002 |
|---|---|
| Illinois<br>High Risk Home Loan<br><br>Act | High Risk Home Loan Act, Ill. Comp. Stat. tit. 815, Sections 137/5 et seq.<br><br>Effective January 1, 2004 (prior to this date, regulations under Residential Mortgage License effective from May 14, 2001) |
| Kansas<br>High Loan to Value<br>Consumer Loan (id.<br>Section 16a-3-207) and;<br><br><br><br>High APR Consumer<br>Loan (id. Section 16a-<br>3-308a) | Consumer Credit Code, Kan. Stat. Ann. Sections 16a-1-101 et seq.<br><br><br>Sections 16a-1-301 and 16a-3-207 became effective April 14, 1999; Section 16a-3-308a became effective July 1, 1999 |
| Kentucky<br>High Cost Home Loan | 2003 KY H.B. 287 - High Cost Home Loan Act, Ky. Rev. Stat. Sections 360.100 et seq.<br><br>Effective June 24, 2003 |

</TABLE>

Q-2

<PAGE>

STANDARD & POOR'S HIGH COST LOAN CATEGORIZATION

<TABLE>
<CAPTION>

| STATE/JURISDICTION | CATEGORY UNDER APPLICABLE ANTI-PREDATORY LENDING LAW | NAME OF ANTI-PREDATORY LENDING LAW/EFFECTIVE DATE |
|---|---|---|
| ------------------------------- | ------------------------------- | -------------------- |
| <S> | <C> | |

Page 192

PSA CWHL 06-10.txt

<C>
| Maine | Truth in Lending, Me. Rev. Stat. tit. 9 |
| High Rate High Fee | A, Sections 8-101 et seq. |
| Mortgage | |
| | Effective September 29, 1995 and as amended from time to time |
| Massachusetts | Part 40 and Part 32, 209 C.M.R. Sections |
| High Cost Home Loan | 32.00 et seq. and 209 C.M.R. Sections 40.01 et seq. |
| | Effective March 22, 2001 and amended from time to time |
| Nevada | Assembly Bill No. 284, Nev. Rev. Stat. |
| Home Loan | Sections 598D.010 et seq. |
| | Effective October 1, 2003 |
| New Jersey | New Jersey Home Ownership Security Act of 2002, |
| High Cost Home Loan | N.J. Rev. Stat. Sections 46:10B 22 et seq. |
| | Effective for loans closed on or after November |
| 27, | 2003 |
| New Mexico | Home Loan Protection Act, N.M. Rev. Stat. |
| Sections    High Cost Home Loan | 58-21A-1 et seq. |
| | Effective as of January 1, 2004; Revised as of February 26, 2004 |
| New York | N.Y. Banking Law Article 6-l |
| High Cost Home Loan | |
| | Effective for applications made on or after April 1, 2003 |
| North Carolina | Restrictions and Limitations on High Cost Home |
| High Cost Home Loan | Loans, N.C. Gen. Stat. Sections 24-1.1E et seq. |
| | Effective July 1, 2000; amended October 1, 2003 (adding open-end lines of credit) |
| Ohio | H.B. 386 (codified in various sections of the |
| Ohio    Covered Loan | Code), Ohio Rev. Code Ann. |

</TABLE>

Q-3

<PAGE>

STANDARD & POOR'S HIGH COST LOAN CATEGORIZATION

<TABLE>
<CAPTION>

Page 193

PSA CWHL 06-10.txt

| STATE/JURISDICTION | CATEGORY UNDER APPLICABLE ANTI-PREDATORY LENDING LAW | NAME OF ANTI-PREDATORY LENDING LAW/EFFECTIVE DATE |
|---|---|---|
| `<S>` | `<C>` | `<C>` |
|  |  | Sections 1349.25 et seq. |
|  |  | Effective May 24, 2002 |
| Oklahoma sections | Subsection 10 Mortgage | Consumer Credit Code (codified in various of Title 14A) |
|  |  | Effective July 1, 2000; amended effective January 1, 2004 |
| South Carolina | High Cost Home Loan | South Carolina High Cost and Consumer Home Loans Act, S.C. Code Ann. Sections 37-23-10 et seq. |
|  |  | Effective for loans taken on or after January 1, 2004 |
| West Virginia 31-17-1 | West Virginia Mortgage Loa Act Loan | West Virginia Residential Mortgage Lender, Broker and Servicer Act, W. Va. Code Ann. Sections et seq. |
|  |  | Effective June 5, 2002 |

`</TABLE>`

STANDARD & POOR'S COVERED LOAN CATEGORIZATION

`<TABLE>`
`<CAPTION>`

| STATE/JURISDICTION | CATEGORY UNDER APPLICABLE ANTI-PREDATORY LENDING LAW | NAME OF ANTI-PREDATORY LENDING LAW/EFFECTIVE DATE |
|---|---|---|
| `<S>` | `<C>` | `<C>` |
| Georgia (Oct. 1, 2002 - Mar. 6, 2003) | Covered Loan | Georgia Fair Lending Act, Ga. Code Ann. Sections 7-6A-1 et seq. |
|  |  | Effective October 1, 2002 - March 6, 2003 |

```
                              PSA CWHL 06-10.txt
New Jersey                    New Jersey Home Ownership Security Act of 2002,
    Covered Home Loan
                              N.J. Rev. Stat. Sections 46:10B
                              22 et seq. Effective November 27, 2003 - July 5,
                              2004
</TABLE>

STANDARD & POOR'S HOME LOAN CATEGORIZATION

                                        Q-4
<PAGE>

<TABLE>
<CAPTION>

      CATEGORY UNDER

       APPLICABLE ANTI-
                                           NAME OF ANTI-PREDATORY LENDING
       PREDATORY LENDING
          STATE/JURISDICTION                    LAW/EFFECTIVE DATE
            LAW
-----------------------------------
-------------------------------------------------   --------------------
<S>                                     <C>
      <C>
Georgia (Oct. 1, 2002 - Mar. 6,         Georgia Fair Lending Act, Ga. Code Ann. Sections
    Home Loan
2003)                                   7-6A-1 et seq.

                                        Effective October 1, 2002 - March 6, 2003
New Jersey                              New Jersey Home Ownership Security
    Home Loan
                                        Act of 2002, N.J. Rev. Stat. Sections 46:10B 22
et
                                        seq.

                                        Effective for loans closed on or after November
27,
                                        2003
New Mexico                              Home Loan Protection Act, N.M. Rev.Stat. Sections
    Home Loan
                                        58-21A-1 et seq.

                                        Effective as of January 1, 2004; Revised as of
                                        February 26, 2004
North Carolina                          Restrictions and Limitations on High Cost Home
    Consumer Home Loan
                                        Loans, N.C. Gen. Stat. Sections 24-1.1E et seq.

                                        Effective July 1, 2000; amended October 1, 2003
                                        (adding open-end lines of credit)
South Carolina                          South Carolina High Cost and Consumer Home Loans
    Consumer Home Loan
                                        Act, S.C. Code

                                        Ann. Sections 37-23-10 et seq.

                                        Effective for loans taken on or after January 1,
                                            Page 195
```

```
                          PSA CWHL 06-10.txt
                              2004
</TABLE>
                               Q-5
<PAGE>

                            EXHIBIT R

                            [RESERVED]

                               R-1
<PAGE>

                           EXHIBIT S-1

                            [RESERVED]

                              S-1-1
<PAGE>

                           EXHIBIT S-2

                            [RESERVED]

                              S-2-1
<PAGE>

                            EXHIBIT T

         [FORM OF] OFFICER'S CERTIFICATE WITH RESPECT TO PREPAYMENTS

                      MORTGAGE BACKED CERTIFICATES,
                           Series 200_-__

                              [Date]

Via Facsimile

------------------,
        as Trustee

---------------
----------------------

Dear Sir or Madam:

       Reference is made to the Pooling and Servicing Agreement, dated as of
_____, 200_, (the "Pooling and Servicing Agreement") among [CWMBS, Inc.], as
Depositor, [Countrywide Home Loans, Inc.], as a Seller, [Park Granada LLC], as a
Seller, [Park Monaco Inc.], as a Seller, [Park Sienna LLC], as a Seller,
[Countrywide Home Loans Servicing LP], as Master Servicer and
_____, as Trustee. Capitalized terms used herein shall have the
meanings ascribed to such terms in the Pooling and Servicing Agreement.

       _____ hereby certifies that he/she is a Servicing Officer,
holding the office set forth beneath his/her name and hereby further certifies
as follows:

       With respect to the Distribution Date in _____ 200_ and each Mortgage
Loan set forth in the attached schedule:

       1. A Principal Prepayment in full or in part was received during the
related Prepayment Period;
                              Page 196
```

PSA CWHL 06-10.txt

2. Any Prepayment Charge due under the terms of the Mortgage Note with respect to such Principal Prepayment was or was not, as indicated on the attached schedule using "Yes" or "No", received from the Mortgagor and deposited in the Certificate Account;

3. As to each Mortgage Loan set forth on the attached schedule for which all or part of the Prepayment Charge required in connection with the Principal Prepayment was waived by the Master Servicer, such waiver was, as indicated on the attached schedule, based upon:

(i) the Master Servicer's determination that such waiver would maximize recovery of Liquidation Proceeds for such Mortgage Loan, taking into account the value of such Prepayment Charge, or

(ii)(A) the enforceability thereof is limited (1) by bankruptcy, insolvency, moratorium, receivership, or other similar law relating to creditors' rights generally or (2) due to

T-1

<PAGE>

acceleration in connection with a foreclosure or other involuntary payment, or (B) the enforceability is otherwise limited or prohibited by applicable law; and

4. we certify that all amounts due in connection with the waiver of a Prepayment Charge inconsistent with clause 3 above which are required to be deposited by the Master Servicer pursuant to Section 3.19 of the Pooling and Servicing Agreement, have been or will be so deposited.

[COUNTRYWIDE HOME LOANS, INC.],
as Master Servicer

T-2

<PAGE>

SCHEDULE OF MORTGAGE LOANS FOR WHICH A PREPAYMENT WAS RECEIVED DURING
THE RELATED PREPAYMENT PERIOD

<TABLE>
<CAPTION>

| LOAN NUMBER | CLAUSE 2:  YES/NO | CLAUSE 3:  (I) OR (II) |
|-------------|-------------------|------------------------|
| <S>         | <C>               | <C>                    |

</TABLE>

T-3

<PAGE>

EXHIBIT U

MONTHLY STATEMENT

[On file with Trustee]

U-1

<PAGE>

EXHIBIT V-1

[FORM OF] PERFORMANCE CERTIFICATION
(Servicer)
Page 197

PSA CWHL 06-10.txt

[On file with Trustee]

V-1-1

<PAGE>

EXHIBIT V-2

[FORM OF] PERFORMANCE CERTIFICATION
(Trustee)

[On file with Trustee]

V-2-1

<PAGE>

EXHIBIT W

[FORM OF]
SERVICING CRITERIA TO BE ADDRESSED IN
ASSESSMENT OF COMPLIANCE STATEMENT

    The assessment of compliance to be delivered by [the Master Servicer]
[Trustee] [Name of Subservicer] shall address, at a minimum, the criteria
identified as below as "Applicable Servicing Criteria":

<TABLE>
<CAPTION>

           APPLICABLE

            SERVICING                           SERVICING CRITERIA
            CRITERIA

    -----------------------------------------------------------------
    ------------
      REFERENCE                                 CRITERIA
    -----------------
    -----------------------------------------------------------------
<S>           <C>          <C>
                                GENERAL SERVICING CONSIDERATIONS
                      Policies and procedures are instituted to monitor any
performance
1122(d)(1)(i)         or other triggers and events of default in accordance with the
                      transaction agreements.

                      If any material servicing activities are outsourced to third
                      parties, policies and procedures are instituted to monitor the
                      third party's performance and compliance with such servicing
1122(d)(1)(ii)        activities.

                      Any requirements in the transaction agreements to maintain a
1122(d)(1)(iii)       back-up servicer for the mortgage loans are maintained.

                      A fidelity bond and errors and omissions policy is in effect
on
                      the party participating in the servicing function throughout
the
                      reporting period in the amount of coverage required by and
                      otherwise in accordance with the terms of the transaction
1122(d)(1)(iv)        agreements.
                                Page 198

PSA CWHL 06-10.txt

CASH COLLECTION AND ADMINISTRATION

Payments on mortgage loans are deposited into the appropriate
custodial bank accounts and related bank clearing accounts no
more
than two business days following receipt, or such other number
of
1122(d)(2)(i)        days specified in the transaction agreements.

Disbursements made via wire transfer on behalf of an obligor
or to
1122(d)(2)(ii)       an investor are made only by
</TABLE>

                                    W-1
<PAGE>

<TABLE>
<CAPTION>

         APPLICABLE

          SERVICING                        SERVICING CRITERIA
          CRITERIA

         -----------------------------------------------------------------
         ------------
           REFERENCE                            CRITERIA
         -----------------
         -----------------------------------------------------------------
<S>                  <C>
         <C>
                     authorized personnel.

                     Advances of funds or guarantees regarding collections, cash
flows
                     or distributions, and any interest or other fees charged for
such
1122(d)(2)(iii)      advances, are made, reviewed and approved as specified in the
                     transaction agreements.

                     The related accounts for the transaction, such as cash reserve
                     accounts or accounts established as a form of
                     overcollateralization, are separately maintained (e.g., with
                     respect to commingling of cash) as set forth in the
transaction
1122(d)(2)(iv)       agreements.

                     Each custodial account is maintained at a federally insured
                     depository institution as set forth in the transaction
agreements.
                     For purposes of this criterion, "federally insured depository
                     institution" with respect to a foreign financial institution
means
1122(d)(2)(v)        a foreign financial institution that meets the requirements of
                     Rule 13k-1(b)(1) of the Securities Exchange Act.

1122(d)(2)(vi)       Unissued checks are safeguarded so as to prevent unauthorized
                     access.

                     Reconciliations are prepared on a monthly basis for all
                                    Page 199

PSA CWHL 06-10.txt

asset-backed securities related bank accounts, including
custodial
                    accounts and related bank clearing accounts. These
reconciliations
                    are (A) mathematically accurate; (B) prepared within 30
calendar
                    days after the bank statement cutoff date, or such other
number of
                    days specified in the transaction agreements; (C) reviewed and
                    approved by someone other than the person who prepared the
                    reconciliation; and (D) contain explanations for reconciling
                    items. These reconciling items are resolved within 90 calendar
                    days of their original identification, or such other number of
1122(d)(2)(vii)     days specified in the transaction agreements.

                    INVESTOR REMITTANCES AND REPORTING

1122(d)(3)(i)       Reports to investors, including those to be filed
</TABLE>
                              W-2

<PAGE>

<TABLE>
<CAPTION>

          APPLICABLE

          SERVICING
                              SERVICING CRITERIA
          CRITERIA

-----------------------------------------------------------------
------------
   REFERENCE                              CRITERIA
-----------------
-----------------------------------------------------------------
<S>                 <C>
          <C>
                    with the Commission, are maintained in accordance with the
                    transaction agreements and applicable Commission requirements.
                    Specifically, such reports (A) are prepared in accordance with
                    timeframes and other terms set forth in the transaction
                    agreements; (B) provide information calculated in accordance
with
                    the terms specified in the transaction agreements; (C) are
filed
                    with the Commission as required by its rules and regulations;
and
                    (D) agree with investors' or the trustee's records as to the
                    total unpaid principal balance and number of mortgage loans
                    serviced by the Servicer.

                    Amounts due to investors are allocated and remitted in
accordance
                    with timeframes, distribution priority and other terms set
forth
1122(d)(3)(ii)      in the transaction agreements.

                    Disbursements made to an investor are posted within two
business
                    days to the Servicer's investor records, or such other number
of

```
                              PSA CWHL 06-10.txt
1122(d)(3)(iii)        days specified in the transaction agreements.

                       Amounts remitted to investors per the investor reports agree
with
                       cancelled checks, or other form of payment, or custodial bank
1122(d)(3)(iv)         statements.

                            POOL ASSET ADMINISTRATION

                       Collateral or security on mortgage loans is maintained as
required
1122(d)(4)(i)          by the transaction agreements or related mortgage loan
documents.

                       Mortgage loan and related documents are safeguarded as
required by
1122(d)(4)(ii)         the transaction agreements.

                       Any additions, removals or substitutions to the asset pool are
                       made, reviewed and approved in accordance with any conditions
or
1122(d)(4)(iii)        requirements in the transaction agreements.

                       Payments on mortgage loans, including any payoffs, made in
                       accordance with the related mortgage loan documents are posted
to
1122(d)(4)(iv)         the
</TABLE>
                                   W-3
<PAGE>

<TABLE>
<CAPTION>

          APPLICABLE

          SERVICING
                                   SERVICING CRITERIA
          CRITERIA

-----------------------------------------------------------------
------------
  REFERENCE                            CRITERIA
-----------------
-----------------------------------------------------------------
<S>                    <C>
          <C>          Servicer's obligor records maintained no more than two
business
                       days after receipt, or such other number of days specified in
the
                       transaction agreements, and allocated to principal, interest
or
                       other items (e.g., escrow) in accordance with the related
                       mortgage loan documents.

                       The Servicer's records regarding the mortgage loans agree with
the
                       Servicer's records with respect to an obligor's unpaid
principal
1122(d)(4)(v)          balance.
                                  Page 201
```

```
                                    PSA CWHL 06-10.txt
                        Changes with respect to the terms or status of an obligor's
                        mortgage loans (e.g., loan modifications or re-agings) are
made,
                        reviewed and approved by authorized personnel in accordance
with
1122(d)(4)(vi)          the transaction agreements and related pool asset documents.

                        Loss mitigation or recovery actions (e.g., forbearance plans,
                        modifications and deeds in lieu of foreclosure, foreclosures
and
                        repossessions, as applicable) are initiated, conducted and
                        concluded in accordance with the timeframes or other
requirements
1122(d)(4)(vii)         established by the transaction agreements.

                        Records documenting collection efforts are maintained during
the
                        period a mortgage loan is delinquent in accordance with the
                        transaction agreements. Such records are maintained on at
least a
                        monthly basis, or such other period specified in the
transaction
                        agreements, and describe the entity's activities in monitoring
                        delinquent mortgage loans including, for example, phone calls,
                        letters and payment rescheduling plans in cases where
delinquency
1122(d)(4)(viii)        is deemed temporary (e.g., illness or unemployment).

                        Adjustments to interest rates or rates of return for mortgage
                        loans with variable rates are computed based on the related
1122(d)(4)(ix)          mortgage loan documents.

                        Regarding any funds held in trust for an obligor (such as
escrow
                        accounts): (A) such funds are analyzed, in accordance with the
1122(d)(4)(x)           obligor's
</TABLE>
                                        W-4

<PAGE>

<TABLE>
<CAPTION>
            APPLICABLE

            SERVICING
                                        SERVICING CRITERIA
            CRITERIA

----------------------------------------------------------------
------------
  REFERENCE                              CRITERIA
----------------
----------------------------------------------------------------
<S>                     <C>
            <C>
                        mortgage loan documents, on at least an annual basis, or
                        such other period specified in the transaction agreements; (B)
                        interest on such funds is paid, or credited, to obligors in
                        accordance with applicable mortgage loan documents and state
laws;
                        and (C) such funds are returned to the obligor within 30
                                        Page 202
```

PSA CWHL 06-10.txt

calendar
          days of full repayment of the related mortgage loans, or such
other number of days specified in the transaction agreements.

          Payments made on behalf of an obligor (such as tax or
insurance
          payments) are made on or before the related penalty or
expiration
          dates, as indicated on the appropriate bills or notices for
such
          payments, provided that such support has been received by the
servicer at least 30 calendar days prior to these dates, or
such
1122(d)(4)(xi)      other number of days specified in the transaction agreements.

          Any late payment penalties in connection with any payment to
be
          made on behalf of an obligor are paid from the servicer's
funds
          and not charged to the obligor, unless the late payment was
due to
1122(d)(4)(xii)    the obligor's error or omission.

          Disbursements made on behalf of an obligor are posted within
two
          business days to the obligor's records maintained by the
servicer,
1122(d)(4)(xiii)   or such other number of days specified in the transaction
agreements.

1122(d)(4)(xiv)   Delinquencies, charge-offs and uncollectible accounts are
recognized and recorded in accordance with the transaction
agreements.

1122(d)(4)(xv)    Any external enhancement or other support, identified in Item
1114(a)(1) through (3) or Item 1115 of Regulation AB, is
maintained as set forth in the transaction agreements.
&lt;/TABLE&gt;

W-5

&lt;PAGE&gt;

                        [NAME OF MASTER SERVICER] [NAME OF
                        TRUSTEE] [NAME OF CO-TRUSTEE] [NAME
                        OF SUBSERVICER]

                        Date:_____

                        By: _____
                        Name:
                        Title:

W-6

&lt;PAGE&gt;

EXHIBIT X

[FORM OF] LIST OF ITEM 1119 PARTIES

CHL MORTGAGE PASS-THROUGH TRUST 200_-__

MORTGAGE PASS-THROUGH CERTIFICATES,
Series 200_-__
Page 203

PSA CWHL 06-10.txt

[Date]

```
<TABLE>
<S>                    <C>
PARTY                  CONTACT INFORMATION
</TABLE>
```

S-2-1

`<PAGE>`

EXHIBIT Y

FORM OF SARBANES-OXLEY CERTIFICATION
(REPLACEMENT OF MASTER SERVICER)

S-2-2

```
</TEXT>
</DOCUMENT>
```