

Kathy D. Patrick
kpatrick@gibbsbruns.com
713.751.5253

October 18, 2010

Facsimile No. 805 520 5623
Countrywide Home Loans Servicing LP
Attn. Mark Wong
400 Countrywide Way
Simi Valley, CA 93065

Facsimile No. 805 520 5623
Countrywide Home Loans Servicing LP
Attn. Mark Wong
7105 Corporate Drive
Plano, TX 75024

Facsimile No. 212 815 3986
The Bank of New York
101 Barclay Street
4 West
Attn: Mortgage Backed Securities Group
 for Trusts Listed on Ex. A
New York, NY 10286

Facsimile No. 212 815 3986
The Bank of New York
101 Barclay Street
Attn: Corporate Trust MBS Administration for Trusts Listed on Ex. A
New York, NY 10286

Mr. Leo Crowley
Ms. Jeanne Naughton Carr
Pillsbury LLP
1540 Broadway
New York, NY 10036-4039

Re:   HOLDERS' NOTICE TO TRUSTEE AND MASTER SERVICER OF FAILURE OF MASTER SERVICER TO PERFORM GIVEN PURSUANT TO §7.01(ii) OF POOLING AND SERVICING AGREEMENTS PERTAINING TO THE RESIDENTIAL MORTGAGE BACKED SECURITIES LISTED ON THE ATTACHED EXHIBIT "A"

Dear Sir or Madam:

Unless otherwise indicated, all capitalized terms used in this letter have the meaning ascribed to them in those certain Pooling and Servicing Agreements (PSAs) governing

Notice of Non-Performance<br>
October 18, 2010<br>
Page 2

Residential Mortgage-Backed Securities (RMBS) evidenced by the Countrywide Mortgage Pass-Through Certificates (Certificates) listed on the attached Exhibit "A."

The undersigned are the Holders of not less than 25% of the Voting Rights in Certificates issued by the Trusts listed on the enclosed Exhibit A.

Pursuant to Section 7.01(ii) of the applicable PSAs, the Trustee and the Master Servicer are hereby notified of the Master Servicer's failure to observe and perform, in material respects, the covenants and agreements imposed on it by the PSAs. Specifically, the Master Servicer has failed and refused to do the following, which have materially affected the rights of Certificateholders:

1. Section 2.03(c) of the PSAs states that "Upon discovery by any of the parties hereto of a breach of a representation or warranty with respect to a Mortgage Loan made pursuant to Section 2.03(a) … that materially and adversely affects the interests of the Certificateholders in that Mortgage Loan, the party discovering such breach shall give prompt notice thereof to the other parties." The Master Servicer has failed to give notice to the other parties in the following respects:

    a. Although it regularly modifies loans, and in the process of doing so has discovered that specific loans violated the required representations and warranties at the time the Seller sold them to the Trusts, the Master Servicer has not notified the other parties of this breach;
    b. Although it has been specifically notified by MBIA, Ambac, FGIC, Assured Guaranty, and other mortgage and mono-line insurers of specific loans that violated the required representations and warranties, the Master Servicer has not notified any other parties of these breaches of representations and warranties;
    c. Although aware of loans that specifically violate the required Seller representations and warranties, the Master Servicer has failed to enforce the Sellers' repurchase obligations, as is required by Section 2.03; and,
    d. Although there are tens of thousands of loans in the RMBS pools that secure the Certificates, the Trustee has advised the Holders that the Master Servicer has *never* notified it of the discovery of *even one* mortgage that violated applicable representations and warranties at the time it was purchased by the Trusts.

2. In violation of its prudent servicing obligations under Section 3.01 of the applicable PSAs, the Master Servicer has:

    a. Failed to maintain accurate and adequate loan and collateral files in a manner consistent with prudent mortgage servicing standards;
    b. Failed to demand that sellers cure deficiencies in mortgage records when deficient loan files and lien records are discovered;
    c. Exacerbated losses experienced by the Trusts;

    d. Incurred wholly avoidable and unnecessary servicing fees and servicing advances to maintain mortgaged property, all as a direct result of the Master Servicer's deficient record-keeping; and,

    e. Prejudiced the interests of the Trusts and the Certificateholders in the mortgages by fostering uncertainty as to the timely recovery of collateral.

3. Section 3.11 (a) states that the Master Servicer "use reasonable efforts to foreclose upon or otherwise comparably convert the ownership of properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments." Despite these covenants, the Master Servicer has continued to keep defaulted mortgages on its books, rather than foreclose or liquidate them, in order to wrongfully maximize its Servicing Fee, at the expense of the Certificateholders' best interests, including rights to recover from pool or financial guaranty insurance policies. In addition, the applicable provisions of the PSAs contemplate that foreclosures and liquidations of defaulted mortgages will proceed forthwith and in accordance with applicable law, provided the documentation is in order, as a matter of fairness to all parties. The Servicers' failure to proceed appropriately and their failure to maintain records in an accurate, appropriate, and adequate manner has impeded this process and caused wholly avoidable delays that have injured investors, borrowers, neighborhoods, and communities. To make matters worse, these delays have also enriched the Servicers, as they have continued to charge unearned and unwarranted servicing fees on mortgages which would have been liquidated but for the Servicers' breach of their duties;

4. Section 3.11 of the PSAs provides that "Countrywide may agree to a modification of any Mortgage Loan" in certain specified circumstances. The Holders do not seek to halt bona fide modifications of troubled loans for borrowers who need them. When, however, modifications are required to remedy predatory lending violations, Section 2.03(c) of the PSAs requires that the offending seller of the mortgage bear the costs to "cure such breach in all material respects...." Nowhere do the PSAs permit the costs of curing predatory loans to be imposed on the Trusts or the Certificateholders. Despite these provisions, the Master Servicer has breached the PSAs by agreeing to modify loans held in the Trusts for the purpose of settling predatory lending claims made by various Attorneys' General against its parent company while breaching its obligation to demand that the offending mortgage seller (its parent company) bear the costs of curing the violation, as well as the expenses reasonably incurred in enforcement of the mortgage seller's obligation to cure predatory mortgages. *Id.* at §2.03(c). The Master Servicer has also unjustly enriched its parent company by using Trust collateral to settle claims that are not, and could never be, made against the Trusts, in a manner that has "materially and adversely affected the interest of the Certificateholders…" *Id.* The Master Servicer has therefore:

    a. Failed to perform its obligation to demand that Countrywide *comply* with the requirement that it cure or repurchase predatory and ineligible loans it has agreed to modify in the Attorney General settlement;

    b. Failed to track or notify the Trustee concerning which specific loans the Master Servicer has modified pursuant to these provisions, even though the PSAs require that "the Modified Mortgage Loan shall be automatically be deemed transferred and assigned to Countrywide…"; and,

    c. Failed to perform its obligation to "deliver to the Trustee a certification of a Servicing Officer to the effect that all requirements of this paragraph have been satisfied with respect to the Modified Mortgage Loan."

5. Section 3.14 of the PSAs provides that the Master Servicer shall be entitled to recover Servicing Advances that are "customary, reasonable and necessary 'out of pocket' costs and expenses incurred in the performance by the Master Servicer of its Servicing Obligations including but not limited to the cost of (i) the preservation, restoration, and protection of a Mortgaged Property…" Despite the requirement that Servicing Advances were to be incurred only for reasonable and necessary out of pocket costs, the Master Servicer instead utilized affiliated vendors--who marked up their services to a level 100% or more above the market price--to provide services related to the preservation, restoration, and protection of" Mortgaged Property, in a fraudulent, unauthorized, and deceptive effort to supplement its Servicing income. *See* ¶ 3(a) and (b), above.

6. Section 3.01 of the PSAs requires that the Master Servicer "shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and customary and usual standards of practice of prudent mortgage servicers." Despite this requirement, the Master Servicer has repeatedly and deliberately failed to perform this covenant by:

    a. Creating Countrywide-affiliated vendors to provide maintenance, inspection, and other services with regard to defaulted mortgages that should have been undertaken *only* if they were in the Certificateholders' best interest. The Federal Trade Commission, however, found that Countrywide repeatedly and deliberately overcharged for these services by as much as 100% or more in order to increase its profits from default-related service fees; and,[1]

    b. As a result of these wrongful practices, Countrywide has increased the losses to the Trusts.

Each of these failures to perform the Master Servicer's covenants and agreements violated the prudent servicing obligations imposed on the Master Servicer by PSA §3.01. Each of these failures to perform the Master Servicer's covenants and agreements also materially affected the rights of the Certificateholders. Each of these failures to perform is continuing. If

---

[1] The specific details of the Master Servicers' wrongful conduct are available in a press release issued by the Federal Trade Commission, which is accessible at the following website:
http://www.ftc.gov/opa/2010/06/countrywide.shtm.

Notice of Non-Performance  
October 18, 2010  
Page 5

they continue for an additional sixty days from the date of this letter, each of them—independently—will constitute an Event of Default.

**[INTENTIONALLY LEFT BLANK]**

The undersigned Holders therefore demand that the Master Servicer immediately cure these endemic and grievous defaults in its obligations under the PSAs. By this letter, the Holders further notify the Trustee of the Master Servicer's failure to perform its covenants and agreements.

The undersigned Holders also reserve all other rights and remedies they may have, individually and under the PSAs, as a result of the matters described in this letter. We invite you to communicate with our counsel, Ms. Kathy Patrick of Gibbs & Bruns LLP, should you wish to discuss this matter further.

Very truly yours,

BlackRock Financial Management, Inc. and
its advisory afffiliates

By: _____
Printed Name: _____John Vibert_____
Title: ____Managing Director_____


Freddie Mac Corporation


By: _____
Printed Name: _____
Title: _____


Kore Advisors, LP


By: _____
Printed Name: _____
Title: _____

The undersigned Holders therefore demand that the Master Servicer immediately cure these endemic and grievous defaults in its obligations under the PSAs. By this letter, the Holders further notify the Trustee of the Master Servicer's failure to perform its covenants and agreements.

The undersigned Holders also reserve all other rights and remedies they may have, individually and under the PSAs, as a result of the matters described in this letter. We invite you to communicate with our counsel on this matter, Ms. Kathy Patrick of Gibbs & Bruns LLP, should you wish to discuss this matter further.

Very truly yours,

Blackrock Financial Management, Inc. and
its advisory affiliates

By: _____
Printed Name: _____
Title: _____

Federal Home Loan Mortgage Corporation in
Conservatorship ("Freddie Mac")

By: _[signature]_
Printed Name: _Ray Romano_
Title: _EVP Chief Credit Officer_

Kore Advisors, LP

By: _____
Printed Name: _____
Title: _____

The undersigned Holders therefore demand that the Master Servicer immediately cure these endemic and grievous defaults in its obligations under the PSAs. By this letter, the Holders further notify the Trustee of the Master Servicer's failure to perform its covenants and agreements.

The undersigned Holders also reserve all other rights and remedies they may have, individually and under the PSAs, as a result of the matters described in this letter. We invite you to communicate with our counsel, Ms. Kathy Patrick of Gibbs & Bruns LLP, should you wish to discuss this matter further.

Very truly yours,


Blackrock Financial Management, Inc. and
its advisory affiliates


By: _____
Printed Name: _____
Title: _____




Freddie Mac Corporation


By: _____
Printed Name: _____
Title: _____


Kore Advisors, LP

By: _____
Printed Name: J. Gary Kosinski
Title: Principal

Maiden Lane, LLC; Maiden Lane II, LLC; and,
Maiden Lane III, LLC by
Federal Reserve Bank of New York,
Managing Member

By: _____
Printed Name: _Zachary Taylor_
Title: _Assistant Vice President_

Metropolitan Life Insurance Company

By: _____
Printed Name: _____
Title: _____

Neuberger Berman Europe, Ltd.
   as investment manager to a managed account client

By: _____
Printed Name: _____
Title: _____

PIMCO Investment Management Company LLC

By: _____
Printed Name: _____
Title: _____

Western Asset Management Company,
for its clients and managed accounts

By: _____
Printed Name: _____
Title: _____

Maiden Lane, LLC; Maiden Lane II, LLC; and,
Maiden Lane III, LLC by
Federal Reserve Bank of New York,
Managing Member

By: _____
Printed Name: _____
Title: _____

Metropolitan Life Insurance Company

By: *[signature]*
Printed Name: _Charles S. Scully_
Title: _Managing Director_

Neuberger Berman Europe, Ltd.
   as investment manager to a managed account client

By: _____
Printed Name: _____
Title: _____

PIMCO Investment Management Company LLC

By: _____
Printed Name: _____
Title: _____

Western Asset Management Company,
for its clients and managed accounts

By: _____
Printed Name: _____
Title: _____

Maiden Lane, LLC; Maiden Lane II, LLC; and,
Maiden Lane III, LLC by
Federal Reserve Bank of New York,
Managing Member


By: _____
Printed Name: _____
Title: _____


Metropolitan Life Insurance Company


By: _____
Printed Name: _____
Title: _____


Neuberger Berman Europe, Ltd.
   as investment manager to a managed account client

By: *[signature]*
Printed Name: OPE  AGBAJE
Title: EXECUTIVE DIRECTOR


PIMCO Investment Management Company LLC


By: _____
Printed Name: _____
Title: _____


Western Asset Management Company,
for its clients and managed accounts


By: _____
Printed Name: _____
Title: _____

Maiden Lane, LLC; Maiden Lane II, LLC; and,
Maiden Lane III, LLC by
Federal Reserve Bank of New York,
Managing Member

By: _____
Printed Name: _____
Title: _____

Metropolitan Life Insurance Company

By: _____
Printed Name: _____
Title: _____

Neuberger Berman Europe, Ltd.
  as investment manager to a managed account client

By: _____
Printed Name: _____
Title: _____

PIMCO Investment Management Company LLC

By: _____
Printed Name:  Daniel J. Ivascyn
Title:   Managing Director

Western Asset Management Company,
for its clients and managed accounts

By: _____
Printed Name: _____
Title: _____

Maiden Lane, LLC; Maiden Lane II, LLC; and,
Maiden Lane III, LLC by
Federal Reserve Bank of New York,
Managing Member

By: _____
Printed Name: _____
Title: _____

Metropolitan Life Insurance Company

By: _____
Printed Name: _____
Title: _____

Neuberger Berman Europe, Ltd.
    as investment manager to a managed account client

By: _____
Printed Name: _____
Title: _____

PIMCO Investment Management Company LLC

By: _____
Printed Name: _____
Title: _____

Western Asset Management Company,
for its clients and managed accounts

By: _*C. a R.*_____
Printed Name: _e. A. Ryji de Perez_
Title: _General Counsel_

## Exhibit "A"

| Deal Name | Deal Name | Deal Name |
|---|---|---|
| CWALT 2004-32CB | CWHL 2004-22 | CWL 2006-15 |
| CWALT 2004-6CB | CWHL 2004-25 | CWL 2006-16 |
| CWALT 2004-J1 | CWHL 2004-29 | CWL 2006-19 |
| CWALT 2005-14 | CWHL 2004-HYB9 | CWL 2006-2 |
| CWALT 2005-21CB | CWHL 2005-11 | CWL 2006-20 |
| CWALT 2005-24 | CWHL 2005-14 | CWL 2006-22 |
| CWALT 2005-32T1 | CWHL 2005-18 | CWL 2006-24 |
| CWALT 2005-35CB | CWHL 2005-19 | CWL 2006-25 |
| CWALT 2005-36 | CWHL 2005-2 | CWL 2006-26 |
| CWALT 2005-44 | CWHL 2005-3 | CWL 2006-3 |
| CWALT 2005-45 | CWHL 2005-30 | CWL 2006-5 |
| CWALT 2005-56 | CWHL 2005-9 | CWL 2006-7 |
| CWALT 2005-57CB | CWHL 2005-HYB3 | CWL 2006-9 |
| CWALT 2005-64CB | CWHL 2005-HYB9 | CWL 2006-BC2 |
| CWALT 2005-72 | CWHL 2005-R3 | CWL 2006-BC3 |
| CWALT 2005-73CB | CWHL 2006-9 | CWL 2006-BC4 |
| CWALT 2005-74T1 | CWHL 2006-HYB2 | CWL 2006-BC5 |
| CWALT 2005-81 | CWHL 2006-HYB5 | CWL 2006-SD1 |
| CWALT 2005-AR1 | CWHL 2006-J2 | CWL 2006-SD3 |
| CWALT 2005-J5 | CWHL 2006-OA5 | CWL 2006-SD4 |
| CWALT 2005-J9 | CWHL 2006-R2 | CWL 2006-SPS2 |
| CWALT 2006-14CB | CWHL 2007-12 | CWL 2007-2 |
| CWALT 2006-20CB | CWHL 2007-16 | CWL 2007-5 |
| CWALT 2006-37R | CWHL 2008-3R | CWL 2007-6 |
| CWALT 2006-41CB | CWL 2005-10 | CWL 2007-7 |
| CWALT 2006-HY12 | CWL 2005-11 | CWL 2007-9 |
| CWALT 2006-OA11 | CWL 2005-13 | CWL 2007-BC1 |
| CWALT 2006-OA16 | CWL 2005-16 | CWL 2007-BC2 |
| CWALT 2006-OA17 | CWL 2005-2 | CWL 2007-BC3 |
| CWALT 2006-OA6 | CWL 2005-4 | CWL 2007-QH1 |
| CWALT 2006-OA9 | CWL 2005-5 | CWL 2007-S3 |
| CWALT 2006-OC10 | CWL 2005-6 | |
| CWALT 2006-OC2 | CWL 2005-7 | |
| CWALT 2006-OC4 | CWL 2005-8 | |
| CWALT 2006-OC5 | CWL 2005-9 | |
| CWALT 2006-OC6 | CWL 2005-AB2 | |
| CWALT 2006-OC7 | CWL 2005-AB3 | |
| CWALT 2007-17CB | CWL 2005-AB4 | |
| CWALT 2007-23CB | CWL 2005-BC5 | |
| CWALT 2007-24 | CWL 2005-IM1 | |
| CWALT 2007-OA7 | CWL 2006-10 | |
| CWALT 2008-2R | CWL 2006-12 | |