BAC Home Loans Servicing, LP
6400 Legacy Drive
Plano, TX 75024

June 28, 2011

The Bank of New York Mellon, as Trustee or Indenture Trustee
101 Barclay Street
New York, New York 10286
Attn: Mortgage-Backed Securities Group

Ladies and Gentlemen:

**Re: Pooling and Servicing Agreements and Sale and Servicing Agreements**

We refer to the Pooling and Servicing Agreements (the "PSAs") and Sale and Servicing Agreements (the "SSAs" and together with the PSAs, the "Sale Agreements"), as applicable, for the transactions identified on Exhibit 1 hereto, each, in PSAs, among the Depositor thereunder, the Sellers thereunder, BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing, LP), as Master Servicer (the "Master Servicer") and The Bank of New York Mellon (f/k/a The Bank of New York), as trustee (or, in the case of SSAs, the indenture trustee, together the "Trustee") and each, in SSAs, among the Depositor thereunder, BAC Home Loans Servicing, LP (f/k/a Countrywide Home Loans Servicing, LP), as Sponsor and Master Servicer, the Trust thereunder and the Trustee. We also refer to the Guaranty of Bank of America Corporation, dated as of June 28, 2011, attached hereto as Exhibit 2 (the "Guaranty"). Capitalized terms used but not defined in this letter have the meanings specified in the Sale Agreements.

Section 8.05 (*Trustee's Fees and Expenses*) of each PSA and Section 7.03 (*Master Servicer to pay Indenture Trustee's and Owner Trustee's Fees and Expenses*) of each SSA (together, the "Indemnity") each provide, in part, that "The Trustee and any director, officer, employee or agent of the Trustee shall be indemnified by the Master Servicer and held harmless against any loss, liability or expense (including reasonable attorneys fees) (i) incurred in connection with any claim or legal action relating to (a) [the Sale Agreement], (b) the [applicable securities] or (c) in connection with the performance of any of the Trustee's duties [under the Sale Agreement], other than any loss, liability or expense incurred by reason of willful malfeasance, bad faith or negligence in the performance of any of the Trustee's duties hereunder . . . ." Certain Sale Agreements also exclude from the scope of the Indemnity "any loss, liability or expense incurred . . . by reason of any action of the Trustee taken at the direction of the [investors]."[1]

---

[1]      We note that the language referenced in this letter may vary in certain ways in the Sale Agreements. Notwithstanding such variances, we intend this letter to apply, with same effect, to all the Sale Agreements for the transactions identified on Exhibit 1 hereto, except if such variances are material, in which case the parties hereto will consider in good faith how to implement the intent of this letter to such variances if the need arises.

We confirm that we view any actions taken by the Trustee in connection with its entry into the settlement in respect of Mortgage Loan repurchase and other alleged claims against the Sellers and Master Servicer relating to the transactions identified on Exhibit 1 hereto (the "Settlement"), including but not limited to the Trustee's participation in settlement negotiations, the Trustee's analysis of the Settlement, the filing by the Trustee of any petition in connection with the Settlement, the provision of notices concerning the Settlement to interested parties (including investors), and any further actions by the Trustee in support of the Settlement, including the response by the Trustee to any objections to the Settlement and any implementation of the Settlement by the Trustee (such actions together being the "Trustee Settlement Activities") as being actions that, for purposes of the Indemnity, relate to the Sale Agreements, the applicable securities, or the performance of the Trustee's duties under the Sale Agreements.  We also confirm that the manner of entering into the Settlement or undertaking the activities to prepare therefor or contemplated thereby will not serve to disqualify the Trustee from receiving the benefits of the Indemnity or the Guaranty.

We also confirm that we view the Institutional Investor Agreement and any letter or other correspondence from the investors or their counsel which requests that the Trustee take the Trustee Settlement Activities, or any portion thereof, as not being the equivalent of a direction from the investors for purposes of the Indemnity.  We further confirm that neither the receipt by the Trustee of any such letter or other correspondence nor the entry by the Trustee into the Institutional Investor Agreement will disqualify the Trustee from receiving the benefit of either the Indemnity or the Guaranty.

Finally, we note that the Indemnity also provides, with certain exceptions expressly provided for, that "the Master Servicer covenants and agrees . . . to pay or reimburse the Trustee for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any of the provisions of [the Sale Agreement] with respect to (A) the reasonable compensation and the expenses and disbursements of its counsel not associated with the closing of the issuance of the [applicable securities], (B) the reasonable compensation, expenses and disbursements of any accountant, engineer or appraiser that is not regularly employed by the Trustee, to the extent that the Trustee must engage such persons to perform acts or services [under the Sale Agreement] and (C) printing and engraving expenses in connection with preparing any Definitive [securities]."[2]  We confirm that we view reasonable expenses, disbursements and advances otherwise within the Indemnity, if incurred or made by the Trustee in connection with the Trustee Settlement Activities, as being reimbursable by the Master Servicer under the Indemnity.

Without limiting any of the foregoing, we confirm that following the entry by the Trustee into the Settlement, Bank of America Corporation, BAC Home Loans Servicing, LP, Countrywide Financial Corporation and/or Countrywide Home Loans, Inc. shall pay the reasonable fees and expenses of the Trustee for Trustee Settlement Activities (including its reasonable attorneys' fees and expenses) on a current and ongoing basis (including all accrued

---

[2]    We note that the language referenced in this letter may vary in certain ways in the Sale Agreements. Notwithstanding such variances, we intend this letter to apply, with same effect, to all the Sale Agreements for the transactions identified on Exhibit 1 hereto, except if such variances are material, in which case the parties hereto will consider in good faith how to implement the intent of this letter to such variances if the need arises.

and unpaid fees and expenses as of the date hereof, which shall be paid in full no later than 15 days from the execution of the Settlement).

Except as noted above, nothing herein is intended to limit, modify, supersede, or in any way affect any exceptions to the liability of the Master Servicer under the Indemnity that are based on the conduct of the Trustee.  It is understood and agreed that the Indemnity does not cover any loss or liability incurred by reason of any tax consequences of the Settlement or arising out of the determination, administration or distribution (including distribution within each Covered Trust) of the Allocable Shares pursuant to the Settlement, which the Final Order and Judgment to be entered with respect to the Settlement shall provide shall not give rise to liability on the part of the BNYM Parties, the Bank of America Parties or the Countrywide Parties (all as defined in the Settlement Agreement).  Nothing herein is intended to limit, modify, or in any way affect the limitations on the liability of the Master Servicer under Section 6.03 (*Limitation on Liability of the Depositor, the Sellers, the Master Servicer and Others*) of each PSA and Section 5.03 (*Limitation on Liability of the Seller, the Master Servicer and Others*) of each SSA.

Please acknowledge your agreement by countersigning this letter in the space provided below and returning a copy to us.

3

Sincerely,

BAC HOME LOANS SERVICING, L.P.

By: _Terrence [signature]_

Name: Terrence P. Laughlin

Title: Legacy Asset Servicing
Division President,
Bank of America, N.A.

By: BAC GP, LLC, Its general partner

By: Bank of America, N.A., Its manager

4

Accepted and Agreed:


BANK OF AMERICA CORPORATION


By: _____
Name: Terrence P. Laughlin
Title: Legacy Asset Servicing
Division President.



THE BANK OF NEW YORK MELLON


By: _____
Name:
Title:

Accepted and Agreed:


BANK OF AMERICA CORPORATION


By: _____
Name:
Title:



THE BANK OF NEW YORK MELLON

By: _____
Name: Loretta A. Lundberg
Title: Managing Director

5

**Exhibit 1**

| | | | |
|---|---|---|---|
| CWALT 2004-10CB | CWALT 2005-17 | CWALT 2005-63 | CWALT 2006-18CB |
| CWALT 2004-12CB | CWALT 2005-18CB | CWALT 2005-64CB | CWALT 2006-19CB |
| CWALT 2004-13CB | CWALT 2005-1CB | CWALT 2005-65CB | CWALT 2006-20CB |
| CWALT 2004-14T2 | CWALT 2005-2 | CWALT 2005-66 | CWALT 2006-21CB |
| CWALT 2004-15 | CWALT 2005-20CB | CWALT 2005-67CB | CWALT 2006-23CB |
| CWALT 2004-16CB | CWALT 2005-21CB | CWALT 2005-69 | CWALT 2006-24CB |
| CWALT 2004-17CB | CWALT 2005-23CB | CWALT 2005-6CB | CWALT 2006-25CB |
| CWALT 2004-18CB | CWALT 2005-24 | CWALT 2005-70CB | CWALT 2006-26CB |
| CWALT 2004-20T1 | CWALT 2005-25T1 | CWALT 2005-71 | CWALT 2006-27CB |
| CWALT 2004-22CB | CWALT 2005-26CB | CWALT 2005-72 | CWALT 2006-28CB |
| CWALT 2004-24CB | CWALT 2005-27 | CWALT 2005-73CB | CWALT 2006-29T1 |
| CWALT 2004-25CB | CWALT 2005-28CB | CWALT 2005-74T1 | CWALT 2006-2CB |
| CWALT 2004-26T1 | CWALT 2005-29CB | CWALT 2005-75CB | CWALT 2006-30T1 |
| CWALT 2004-27CB | CWALT 2005-30CB | CWALT 2005-76 | CWALT 2006-31CB |
| CWALT 2004-28CB | CWALT 2005-31 | CWALT 2005-77T1 | CWALT 2006-32CB |
| CWALT 2004-29CB | CWALT 2005-32T1 | CWALT 2005-79CB | CWALT 2006-33CB |
| CWALT 2004-2CB | CWALT 2005-33CB | CWALT 2005-7CB | CWALT 2006-34 |
| CWALT 2004-30CB | CWALT 2005-34CB | CWALT 2005-80CB | CWALT 2006-35CB |
| CWALT 2004-32CB | CWALT 2005-35CB | CWALT 2005-82 | CWALT 2006-36T2 |
| CWALT 2004-33 | CWALT 2005-36 | CWALT 2005-83CB | CWALT 2006-39CB |
| CWALT 2004-34T1 | CWALT 2005-37T1 | CWALT 2005-84 | CWALT 2006-40T1 |
| CWALT 2004-35T2 | CWALT 2005-38 | CWALT 2005-85CB | CWALT 2006-41CB |
| CWALT 2004-36CB | CWALT 2005-3CB | CWALT 2005-86CB | CWALT 2006-42 |
| CWALT 2004-3T1 | CWALT 2005-4 | CWALT 2005-9CB | CWALT 2006-43CB |
| CWALT 2004-4CB | CWALT 2005-40CB | CWALT 2005-AR1 | CWALT 2006-45T1 |
| CWALT 2004-5CB | CWALT 2005-41 | CWALT 2005-IM1 | CWALT 2006-46 |
| CWALT 2004-6CB | CWALT 2005-42CB | CWALT 2005-J10 | CWALT 2006-4CB |
| CWALT 2004-7T1 | CWALT 2005-43 | CWALT 2005-J11 | CWALT 2006-5T2 |
| CWALT 2004-8CB | CWALT 2005-44 | CWALT 2005-J12 | CWALT 2006-6CB |
| CWALT 2004-9T1 | CWALT 2005-45 | CWALT 2005-J13 | CWALT 2006-7CB |
| CWALT 2004-J10 | CWALT 2005-46CB | CWALT 2005-J14 | CWALT 2006-8T1 |
| CWALT 2004-J11 | CWALT 2005-47CB | CWALT 2005-J3 | CWALT 2006-9T1 |
| CWALT 2004-J12 | CWALT 2005-48T1 | CWALT 2005-J4 | CWALT 2006-HY10 |
| CWALT 2004-J13 | CWALT 2005-49CB | CWALT 2005-J5 | CWALT 2006-HY11 |
| CWALT 2004-J2 | CWALT 2005-50CB | CWALT 2005-J6 | CWALT 2006-HY12 |
| CWALT 2004-J3 | CWALT 2005-51 | CWALT 2005-J7 | CWALT 2006-HY13 |
| CWALT 2004-J5 | CWALT 2005-53T2 | CWALT 2005-J8 | CWALT 2006-HY3 |
| CWALT 2004-J6 | CWALT 2005-54CB | CWALT 2005-J9 | CWALT 2006-J1 |
| CWALT 2004-J7 | CWALT 2005-55CB | CWALT 2006-11CB | CWALT 2006-J2 |
| CWALT 2004-J8 | CWALT 2005-56 | CWALT 2006-12CB | CWALT 2006-J3 |
| CWALT 2004-J9 | CWALT 2005-57CB | CWALT 2006-13T1 | CWALT 2006-J4 |
| CWALT 2005-10CB | CWALT 2005-58 | CWALT 2006-14CB | CWALT 2006-J5 |
| CWALT 2005-11CB | CWALT 2005-59 | CWALT 2006-15CB | CWALT 2006-J6 |
| CWALT 2005-14 | CWALT 2005-60T1 | CWALT 2006-16CB | CWALT 2006-J7 |
| CWALT 2005-16 | CWALT 2005-61 | CWALT 2006-17T1 | CWALT 2006-J8 |

| | | | |
|---|---|---|---|
| CWALT 2006-OA1 | CWALT 2007-5CB | CWHL 2004-18 | CWHL 2005-26 |
| CWALT 2006-OA10 | CWALT 2007-6 | CWHL 2004-19 | CWHL 2005-27 |
| CWALT 2006-OA11 | CWALT 2007-7T2 | CWHL 2004-2 | CWHL 2005-28 |
| CWALT 2006-OA12 | CWALT 2007-8CB | CWHL 2004-20 | CWHL 2005-29 |
| CWALT 2006-OA14 | CWALT 2007-9T1 | CWHL 2004-21 | CWHL 2005-3 |
| CWALT 2006-OA16 | CWALT 2007-AL1 | CWHL 2004-22 | CWHL 2005-30 |
| CWALT 2006-OA17 | CWALT 2007-HY2 | CWHL 2004-23 | CWHL 2005-31 |
| CWALT 2006-OA18 | CWALT 2007-HY3 | CWHL 2004-24 | CWHL 2005-7 |
| CWALT 2006-OA2 | CWALT 2007-HY4 | CWHL 2004-25 | CWHL 2005-9 |
| CWALT 2006-OA21 | CWALT 2007-HY6 | CWHL 2004-29 | CWHL 2005-HYB1 |
| CWALT 2006-OA22 | CWALT 2007-HY7C | CWHL 2004-3 | CWHL 2005-HYB2 |
| CWALT 2006-OA3 | CWALT 2007-HY8C | CWHL 2004-5 | CWHL 2005-HYB3 |
| CWALT 2006-OA6 | CWALT 2007-HY9 | CWHL 2004-6 | CWHL 2005-HYB4 |
| CWALT 2006-OA7 | CWALT 2007-J2 | CWHL 2004-7 | CWHL 2005-HYB5 |
| CWALT 2006-OA8 | CWALT 2007-OA11 | CWHL 2004-HYB1 | CWHL 2005-HYB6 |
| CWALT 2006-OA9 | CWALT 2007-OA2 | CWHL 2004-HYB2 | CWHL 2005-HYB7 |
| CWALT 2006-OC1 | CWALT 2007-OA3 | CWHL 2004-HYB3 | CWHL 2005-HYB8 |
| CWALT 2006-OC10 | CWALT 2007-OA4 | CWHL 2004-HYB4 | CWHL 2005-HYB10[1] |
| CWALT 2006-OC11 | CWALT 2007-OA6 | CWHL 2004-HYB5 | CWHL 2005-J1 |
| CWALT 2006-OC2 | CWALT 2007-OA7 | CWHL 2004-HYB6 | CWHL 2005-J2 |
| CWALT 2006-OC3 | CWALT 2007-OA8 | CWHL 2004-HYB7 | CWHL 2005-J3 |
| CWALT 2006-OC4 | CWALT 2007-OA9 | CWHL 2004-HYB8 | CWHL 2005-J4 |
| CWALT 2006-OC5 | CWALT 2007-OH1 | CWHL 2004-HYB9 | CWHL 2006-1 |
| CWALT 2006-OC6 | CWALT 2007-OH2 | CWHL 2004-J2 | CWHL 2006-10 |
| CWALT 2006-OC7 | CWALT 2007-OH3 | CWHL 2004-J3 | CWHL 2006-11 |
| CWALT 2006-OC8 | CWALT 2004-J4 | CWHL 2004-J4 | CWHL 2006-12 |
| CWALT 2006-OC9 | CWALT 2005-13CB | CWHL 2004-J5 | CWHL 2006-13 |
| CWALT 2007-10CB | CWALT 2005-19CB | CWHL 2004-J6 | CWHL 2006-14 |
| CWALT 2007-11T1 | CWALT 2005-22T1 | CWHL 2004-J7 | CWHL 2006-15 |
| CWALT 2007-12T1 | CWALT 2005-52CB | CWHL 2004-J8 | CWHL 2006-16 |
| CWALT 2007-13 | CWALT 2005-62 | CWHL 2004-J9 | CWHL 2006-17 |
| CWALT 2007-14T2 | CWALT 2005-81 | CWHL 2005-1 | CWHL 2006-18 |
| CWALT 2007-16CB | CWALT 2005-J1 | CWHL 2005-10 | CWHL 2006-19 |
| CWALT 2007-17CB | CWALT 2005-J2 | CWHL 2005-11 | CWHL 2006-20 |
| CWALT 2007-18CB | CWALT 2006-OA19 | CWHL 2005-12 | CWHL 2006-21 |
| CWALT 2007-19 | CWALT 2007-15CB | CWHL 2005-13 | CWHL 2006-3 |
| CWALT 2007-1T1 | CWALT 2007-J1 | CWHL 2005-14 | CWHL 2006-6 |
| CWALT 2007-20 | CWALT 2007-OA10 | CWHL 2005-16 | CWHL 2006-8 |
| CWALT 2007-21CB | CWHEQ 2006-A | CWHL 2005-17 | CWHL 2006-9 |
| CWALT 2007-22 | CWHEQ 2007-G | CWHL 2005-18 | CWHL 2006-HYB1 |
| CWALT 2007-23CB | CWHL 2004-11 | CWHL 2005-2 | CWHL 2006-HYB2 |
| CWALT 2007-24 | CWHL 2004-12 | CWHL 2005-20 | CWHL 2006-HYB3 |
| CWALT 2007-25 | CWHL 2004-13 | CWHL 2005-21 | CWHL 2006-HYB4 |
| CWALT 2007-2CB | CWHL 2004-14 | CWHL 2005-22 | CWHL 2006-HYB5 |
| CWALT 2007-3T1 | CWHL 2004-15 | CWHL 2005-23 | |
| CWALT 2007-4CB | CWHL 2004-16 | CWHL 2005-25 | |

[1] Appears on Bloomberg
as CWHL 2005-HY10

CWHL 2006-J1
CWHL 2006-J2
CWHL 2006-J3
CWHL 2006-J4
CWHL 2006-OA4
CWHL 2006-OA5
CWHL 2006-TM1
CWHL 2007-1
CWHL 2007-10
CWHL 2007-11
CWHL 2007-12
CWHL 2007-13
CWHL 2007-14
CWHL 2007-15
CWHL 2007-16
CWHL 2007-17
CWHL 2007-18
CWHL 2007-19
CWHL 2007-2
CWHL 2007-20
CWHL 2007-21
CWHL 2007-3
CWHL 2007-4
CWHL 2007-5
CWHL 2007-6
CWHL 2007-7
CWHL 2007-8
CWHL 2007-9
CWHL 2007-HY1
CWHL 2007-HY3
CWHL 2007-HY4
CWHL 2007-HY5
CWHL 2007-HY6
CWHL 2007-HY7
CWHL 2007-HYB1
CWHL 2007-HYB2
CWHL 2007-J1
CWHL 2007-J2
CWHL 2007-J3
CWHL 2008-1
CWHL 2004-10
CWHL 2004-4
CWHL 2004-8
CWHL 2004-9
CWHL 2005-15
CWHL 2005-24

CWHL 2005-5
CWHL 2005-6
CWL 2004-1
CWL 2004-11
CWL 2004-14
CWL 2004-2
CWL 2004-3
CWL 2004-4
CWL 2004-5
CWL 2004-6
CWL 2004-7
CWL 2004-AB2
CWL 2004-BC2
CWL 2004-BC3
CWL 2004-BC4
CWL 2004-BC5
CWL 2004-ECC1
CWL 2004-ECC2
CWL 2004-S1
CWL 2004-SD2
CWL 2004-SD3
CWL 2004-SD4
CWL 2005-10
CWL 2005-2
CWL 2005-5
CWL 2005-6
CWL 2005-8
CWL 2005-9
CWL 2005-AB1
CWL 2005-AB2
CWL 2005-AB3
CWL 2005-AB4
CWL 2005-AB5
CWL 2005-BC1
CWL 2005-BC2
CWL 2005-BC3
CWL 2005-BC4
CWL 2005-BC5
CWL 2005-HYB9[2]
CWL 2005-IM1
CWL 2005-IM2
CWL 2005-IM3
CWL 2005-SD1
CWL 2005-SD2

———————————
[2] Appears on Bloomberg as CWHL 2005-HYB9

CWL 2005-SD3
CWL 2006-1
CWL 2006-10
CWL 2006-12
CWL 2006-14
CWL 2006-16
CWL 2006-17
CWL 2006-18
CWL 2006-19
CWL 2006-2
CWL 2006-20
CWL 2006-24
CWL 2006-25
CWL 2006-3
CWL 2006-4
CWL 2006-5
CWL 2006-6
CWL 2006-7
CWL 2006-8
CWL 2006-9
CWL 2006-ABC1
CWL 2006-BC1
CWL 2006-BC2
CWL 2006-BC3
CWL 2006-BC4
CWL 2006-BC5
CWL 2006-IM1
CWL 2006-QH1
CWL 2006-SD1
CWL 2006-SD2
CWL 2006-SD3
CWL 2006-SD4
CWL 2006-SPS1
CWL 2006-SPS2
CWL 2007-10
CWL 2007-11
CWL 2007-12
CWL 2007-3
CWL 2007-5
CWL 2007-6
CWL 2007-7
CWL 2007-8
CWL 2007-9
CWL 2007-BC1
CWL 2007-BC2
CWL 2007-BC3

CWL 2007-SD1
CWL 2007-SEA1
CWL 2007-SEA2
CWL 2004-10
CWL 2004-12
CWL 2004-13
CWL 2004-15
CWL 2004-8
CWL 2004-9
CWL 2004-AB1
CWL 2005-1
CWL 2005-11
CWL 2005-12
CWL 2005-13
CWL 2005-14
CWL 2005-15
CWL 2005-16
CWL 2005-17
CWL 2005-3
CWL 2005-4
CWL 2005-7
CWL 2006-11
CWL 2006-13
CWL 2006-15
CWL 2006-21
CWL 2006-22
CWL 2006-23
CWL 2006-26
CWL 2007-1
CWL 2007-13
CWL 2007-2
CWL 2007-4

EXECUTION COPY

<u>GUARANTY</u>

This GUARANTY (as amended, supplemented, amended and restated or otherwise modified from time to time, this "<u>Guaranty</u>"), dated as of June 28, 2011, is made by BANK OF AMERICA CORPORATION (the "<u>Guarantor</u>"), in favor of THE BANK OF NEW YORK MELLON (f/k/a THE BANK OF NEW YORK) (the "<u>Guaranteed Party</u>").

W I T N E S S E T H :

WHEREAS, pursuant to the Pooling and Servicing Agreements and Sale and Servicing Agreements for the transactions identified on Exhibit 1 hereto (together the "<u>Sale Agreements</u>," and each a "<u>Sale Agreement</u>"), each, in Pooling and Servicing Agreements, among the Depositor thereunder, the Sellers thereunder, BAC Home Loans Servicing, L.P. (f/k/a Countrywide Home Loans Servicing, L.P.), as Master Servicer (the "<u>Master Servicer</u>") and the Guaranteed Party, as Trustee, and each, in Sale and Servicing Agreements, among the Depositor thereunder, BAC Home Loans Servicing, L.P. (f/k/a Countrywide Home Loans Servicing, L.P.), as Sponsor and Master Servicer, the Trust thereunder and the Guaranteed Party, as Indenture Trustee, the Master Servicer agreed to indemnify the Guaranteed Party in respect of certain losses, liabilities and expenses that might be incurred by the Guaranteed Party thereunder; and

WHEREAS, in connection with the activities of the Guaranteed Party that relate to the settlement of Mortgage Loan repurchase and other claims now or hereafter arising against the Sellers and/or the Master Servicer relating to the transactions identified on Exhibit 1 hereto (the "<u>Settlement</u>"), the Guarantor has agreed to execute and deliver this Guaranty.

NOW THEREFORE, for good and valuable consideration the receipt of which is hereby acknowledged, the Guarantor agrees, for the benefit of the Guaranteed Party, as follows.

ARTICLE I
DEFINITIONS

SECTION 1.1.  <u>Certain Terms</u>.  The following terms (whether or not underscored) when used in this Guaranty, including its preamble and recitals, shall have the following meanings (such definitions to be equally applicable to the singular and plural forms thereof):

"<u>Guaranteed Party</u>" is defined in the <u>preamble</u>.

"<u>Guarantor</u>" is defined in the <u>preamble</u>.

"<u>Guaranty</u>" is defined in the <u>preamble</u>.

"<u>Master Servicer</u>" is defined in the first recital.

"<u>Material Adverse Effect</u>" means a material adverse effect on (i) the business, assets, operations, prospects or condition, financial or otherwise, of the Guarantor or (ii) the ability of the Guarantor to perform any of its obligations under this Guaranty.

"Obligations" means the payment obligations of the Master Servicer, whether now or hereafter arising, direct or indirect, absolute or contingent, under any Sale Agreement, in accordance with the terms and conditions thereof, to indemnify, hold harmless or otherwise reimburse the Guaranteed Party against certain losses, liabilities or expenses that may arise in connection with the Settlement.

"Parties" means the Guarantor and the Guaranteed Party.

"Sale Agreement" is defined in the first recital.

"Settlement" is defined in the second recital.

SECTION 1.2.  Sale Agreement Definitions.  Unless otherwise defined herein or the context otherwise requires, terms used in this Guaranty, including its preamble and recitals, have the meanings provided in each applicable Sale Agreement solely with regard to that Sale Agreement (and not the other Sale Agreements).

ARTICLE II
GUARANTY PROVISIONS

SECTION 2.1.  Guaranty.  The Guarantor hereby absolutely, unconditionally and irrevocably guarantees the full and punctual payment when due of all existing and future Obligations and indemnifies and holds harmless the Guaranteed Party for any and all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Guaranteed Party in enforcing any rights under this Guaranty.  This Guaranty constitutes a guaranty of payment when due and not of collection, and the Guarantor specifically agrees that it shall not be necessary or required that the Guaranteed Party exercise any right, assert any claim or demand or enforce any remedy whatsoever against the Master Servicer or any other Person before or as a condition to the obligations of the Guarantor hereunder.

SECTION 2.2.  Reinstatement, etc.  The Guarantor hereby agrees that this Guaranty shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment (in whole or in part) of any of the Obligations is invalidated, declared to be fraudulent or preferential, set aside, rescinded or must otherwise be restored by the Guaranteed Party as though such payment had not been made.

SECTION 2.3.  Guaranty Absolute, etc.  This Guaranty shall in all respects be a continuing, absolute, unconditional and irrevocable guaranty of payment, and shall remain in full force and effect until the Obligations shall have been paid in full in cash and the Master Servicer shall have no further obligation under any Sale Agreement to indemnify, hold harmless or otherwise reimburse the Guaranteed Party.  The Guarantor guarantees that the Obligations of the Master Servicer will be paid strictly in accordance with the terms of each Sale Agreement under which they arise.  The liability of the Guarantor under this Guaranty shall be absolute, unconditional and irrevocable irrespective of:

(a)  any lack of validity, legality or enforceability of the Obligations;

2

(b) whether or not the Settlement is ever finally approved or consummated;

(c) the failure of the Guaranteed Party (i) to assert any claim or demand or to enforce any right or remedy against the Master Servicer or any other Person under the provisions of any Sale Agreement or otherwise, or (ii) to exercise any right or remedy against any other guarantor of, or collateral securing, any Obligations;

(d) any amendment to, rescission, waiver or other modification of, or any consent to or departure from, any of the terms of any Sale Agreement; or

(e) any other circumstance (other than payment of the Obligations in full in cash) which might otherwise constitute a legal or equitable discharge of any surety or any guarantor.

SECTION 2.4.  Waiver, etc.  The Guarantor hereby waives promptness, diligence, notice of acceptance and any other notice with respect to any of the Obligations and this Guaranty and any requirement that the Guaranteed Party exhaust any right or take any action against the Master Servicer or any other Person (including any other guarantor) or entity or any collateral securing the Obligations, as the case may be.

SECTION 2.5.  Postponement of Subrogation, etc.  The Guarantor agrees that it will not exercise any rights which it may acquire by way of rights of subrogation until all of the Obligations shall have been paid in full in cash and the Master Servicer shall have no further obligation under any Sale Agreement to indemnify, hold harmless or otherwise reimburse the Guaranteed Party in respect of the Obligations.  Any amount paid to the Guarantor on account of any such subrogation right in violation of the foregoing limitation shall be held in trust for the benefit of the Guaranteed Party and shall immediately be paid and turned-over to the Guaranteed Party in the exact form received by the Guarantor (duly endorsed in favor of the Guaranteed Party, if required) to be credited and applied against the Obligations.

SECTION 2.6.  Payments.  The Guarantor hereby agrees with the Guaranteed Party that all payments made by the Guarantor hereunder will be made in lawful currency of the United States to the Guaranteed Party, without set-off, counterclaim or other defense (other than that payment is not due) and without withholding or deduction for or on account of any present or future taxes, duties or other charges, unless the withholding or deduction of such taxes or duties is required by law.


# ARTICLE III
# REPRESENTATIONS AND WARRANTIES

SECTION 3.1.  Representations.  The Guarantor hereby represents and warrants to the Guaranteed Party as set forth below.

(a) The Guarantor is a corporation incorporated under the laws of the State of Delaware, duly organized or formed, validly existing and in good standing and is duly qualified to do business, and is in good standing in, every jurisdiction in which the nature

3

of its business requires it to be so qualified, except where the failure to be so qualified would not reasonably be expected to have a Material Adverse Effect.  This Guaranty has been duly authorized, executed and delivered by the Guarantor;

(b)  the execution, delivery and performance of this Guaranty have been and remain duly authorized by all necessary organizational action and do not contravene any provision of (i) the Guarantor's organizational documents, (ii) any law, rule or regulation, (iii) any contractual restriction binding on Guarantor or its property or (iv) any order, writ, judgment, award, injunction or decree binding on or affecting the Guarantor or its property, except in the case of the foregoing clauses (ii) through (iv), where such contravention would not reasonably be expected to have a Material Adverse Effect and would not reasonably be expected to impose any liability on the Guaranteed Party;

(c)  all consents, licenses, clearances, authorizations and approvals of, and registrations and declarations with, any governmental authority or regulatory body necessary for the due execution, delivery and performance of this Guaranty have been obtained and remain in full force and effect and all conditions thereof have been duly complied with, except where the failure to so obtain such consents, licenses, clearances, authorizations and approvals, registration or declarations or to satisfy the conditions thereof would not reasonably be expected to have a Material Adverse Effect, and no other action by, and, except as contemplated herein, no notice to or filing with any governmental authority or regulatory body is required in connection with the execution, delivery or performance of this Guaranty; and

(d)  this Guaranty constitutes the legal, valid and binding obligation of the Guarantor enforceable against the Guarantor in accordance with its terms, subject to general principles of equity and applicable bankruptcy, insolvency, reorganization or similar laws affecting creditors' rights generally.


## ARTICLE IV
## MISCELLANEOUS PROVISIONS

SECTION 4.1.  <u>Binding on Successors, Transferees and Assigns; Assignment</u>.  This Guaranty shall be binding upon the Guarantor and its successors, transferees and assigns and shall inure to the benefit of and be enforceable by the Guaranteed Party and its successors, transferees and assigns.

SECTION 4.2.  <u>Amendments, etc</u>.  No amendment to or waiver of any provision of this Guaranty, nor consent to any departure by the Guarantor herefrom, shall in any event be effective unless the same shall be in writing and signed by the Guaranteed Party and the Guarantor and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 4.3.  <u>Notices</u>.  All notices and other communications provided for hereunder shall be in writing (including facsimile communication) and mailed, telecopied or delivered to the Guarantor, attention Edward P. O'Keefe, General Counsel, Bank of America Corporation, at

4

100 N. Tryon Street, Charlotte, North Carolina 28255-0001, or, if such notice or communication is to the Guaranteed Party, attention Jane Sherburne, General Counsel, The Bank of New York Mellon, at One Wall Street, New York, New York 10286. All such notices and other communications, when mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any such notice or communication, if transmitted by facsimile, shall be deemed given when the confirmation of transmission thereof is received by the transmitter.

SECTION 4.4. <u>No Waiver; Remedies</u>. In addition to, and not in limitation of, <u>Section 2.3</u> and <u>Section 2.4</u>, no failure on the part of the Guaranteed Party to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

SECTION 4.5. <u>Captions</u>. Section captions used in this Guaranty are for convenience of reference only, and shall not affect the construction of this Guaranty.

SECTION 4.6. <u>Severability</u>. Wherever possible each provision of this Guaranty shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

SECTION 4.7. <u>Governing Law, Entire Agreement, etc</u>. **THIS GUARANTY SHALL BE DEEMED TO BE A CONTRACT MADE UNDER AND GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING FOR SUCH PURPOSE SECTIONS 5-1401 AND 5-1402 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK). THIS GUARANTY CONSTITUTES THE ENTIRE UNDERSTANDING AMONG THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF AND SUPERSEDES ANY PRIOR AGREEMENTS, WRITTEN OR ORAL, WITH RESPECT THERETO.**

SECTION 4.8. <u>Forum Selection and Consent to Jurisdiction</u>. **ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF THE GUARANTEED PARTY OR THE GUARANTOR SHALL BE BROUGHT AND MAINTAINED IN THE COURTS OF THE STATE OF NEW YORK, NEW YORK COUNTY OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. EACH PARTY HEREBY EXPRESSLY AND IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, NEW YORK COUNTY AND OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSE OF ANY SUCH LITIGATION AS SET FORTH ABOVE. EACH PARTY IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS BY REGISTERED MAIL, POSTAGE PREPAID, OR BY PERSONAL SERVICE WITHIN**

OR WITHOUT THE STATE OF NEW YORK TO THE INDIVIDUAL DESIGNATED
TO RECEIVE NOTICES UNDER <u>SECTION 4.3</u>.  EACH PARTY HEREBY
EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT
PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY HAVE OR HEREAFTER
MAY HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT
IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH
LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  TO THE
EXTENT THAT ANY PARTY HAS OR HEREAFTER MAY ACQUIRE ANY
IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL
PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR
TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH
RESPECT TO ITSELF OR ITS PROPERTY, SUCH PARTY HEREBY IRREVOCABLY
WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS
GUARANTY.

SECTION 4.9.  <u>Counterparts, etc</u>.  This Guaranty may be executed by the Parties hereto
in several counterparts, each of which shall be deemed to be an original and all of which shall
constitute together but one and the same agreement.  A copy of this Guaranty executed and
delivered by facsimile or in electronic form, including as a PDF file, shall be effective as
delivery of an originally executed counterpart of this Guaranty.

SECTION 4.10.  <u>Counsel Representation</u>.  EACH PARTY ACKNOWLEDGES AND
AGREES THAT IT HAS BEEN REPRESENTED BY COMPETENT COUNSEL IN THE
NEGOTIATION OF THIS GUARANTY, AND THAT ANY RULE OR CONSTRUCTION
OF LAW ENABLING ANY PARTY TO ASSERT THAT ANY AMBIGUITIES OR
INCONSISTENCIES IN THE DRAFTING OR PREPARATION OF THE TERMS OF
THIS GUARANTY SHOULD DIMINISH ANY RIGHTS OR REMEDIES OF THE
OTHER PARTY ARE HEREBY WAIVED.

SECTION 4.11.  <u>Waiver of Jury Trial</u>.  EACH PARTY HEREBY KNOWINGLY,
VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO
A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR
ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS GUARANTY OR
ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER
ORAL OR WRITTEN) OR ACTIONS OF THE OTHER PARTY.  EACH PARTY
ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND
SUFFICIENT CONSIDERATION FOR THIS PROVISION.

IN WITNESS WHEREOF, this Guaranty has been duly executed and delivered by the Guarantor to the Guaranteed Party as of the date first above written.

BANK OF AMERICA CORPORATION

By: _____

Title: Legacy Asset Servicing Division President


ACCEPTED AND AGREED:


THE BANK OF NEW YORK MELLON


By:_____
    Title:

IN WITNESS WHEREOF, this Guaranty has been duly executed and delivered by the Guarantor to the Guaranteed Party as of the date first above written.

BANK OF AMERICA CORPORATION

By:_____
    Title:

ACCEPTED AND AGREED:

THE BANK OF NEW YORK MELLON

By:_____
Title: Loretta A Lundberg
      Managing Director

7

**Exhibit 1 to Guaranty**